**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

WOMEN OF COLOR FOR EQUAL JUSTICE;
REMO DELLO IOIO, ELIZBETH LOIACONO,
SUZANNE DEEGAN, MARITZA ROMERO, JULIA.
HARDING, CHRISTINE O'REILLY, AYSE P.
USTARES, SARA COOMBS-MORENO, JESUS
COOMBS, ANGELA VELEZ, SANCHA BROWN,
AMOURA BRYAN, ZENA WOUADJOU, CHARISSE
RIDULFO, TRACY-ANN FRANCIS MARTIN, KAREEM
CAMPBELL, MICHELLE HEMMINGS HARRINGTON,
MARK AYNE, CARLA GRANT, OPHELA INNISS,
CASSANDRA CHANDLER, AURA MOODY, EVELYN
ZAPATA, SEAN MILAN, SONIA HERNANDEZ,
BRUCE REID, JOSEPH RULLO, AND CURTIS BOYCE,
individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS
DEPARTMENT OF HEALTH AND MENTAL HYGIENE,

Defendant

**CLASS ACTION COMPLAINT
FOR DAMAGES,
DECLARATORY AND
INJUNCTIVE RELIEF**

**AND JURY DEMAND**

INDEX No.: _____

_____

## INTRODUCTION

1. This action arises out of the refusal of few thousands of City of New York (the "City")

   employees who refused to comply with certain Covid-19 Vaccine Orders issued by the New

   York City Department of Health and Mental Hygiene (NYCDOH) that only applied to City

   employees and not to the general public or residents of the City.

2. This is a civil action for damages and equitable relief based on City's deprivation of Plaintiffs

   rights guaranteed to them by: (i) the workplace safety standards of the Occupational Health

   and Safety Act of 1970 (29 U.S.C. §651 et seq.), and (ii) the anti-discrimination provisions of

the American's with Disability Act, 42 U.S.C. §12101 et seq, Title VII and the New York City Administrative Code §8-107 the New York City Human Rights Act (NYCHRA), which prevent employers from discriminating against employees based on an employees "perceived or regarded as" disabled status and/or based on an employees religious beliefs.

3. Since 1970 the Occupational Health and Safety Act (29 U.S.C. §651 et seq.) (OSH Act) has established that employers have a non-delegable duty to provide employees with a safe workplace and the Occupation Health and Safety Administration has created safety standards that employers are mandated to meet to provide employees with their "human right"[1] to a safe workplace. OSHA applies to the City of New York through the New York OSHA State Plan.

4. Plaintiffs' rights under OSHA where deprived when the then City's former NYCDOH Commissioner Dave A. Chokski enacted and enforced approximate twelve (12) Covid Vaccine Orders applicable only to New York City agency employees and contractors between August 10, 2021 and December 13, 2021 ("Vaccine Orders") all of which were pre-empted by the OSHA standards as the Vaccine Orders only applied to employees workplace safety and health and not to the general public health.

5. Because the Vaccine Orders were pre-empted by the OSHA Standards, the City's subsequent adverse actions against employees who refused to submit to the Vaccine Orders, including placing employees on leave without pay and/or terminating them for failure to comply with the invalid Vaccine Orders, amounted to harassment and created a hostile work environment for Plaintiffs who were also treated unfairly discrimination based on religion and perceived disability status under Title VII, the American's with Disability Act and corresponding New York City Human Rights Act. Rather than comply with the OSHA Standards, the City deliberately failed to disclose to its employees their rights to be provided a safe workplace and

---

[1] See _____

training in respiratory hazards under OSHA and then forced the employees to seek exemptions from the Vaccine Orders that the City was never going to grant because the City wrongly applied an erroneous standard for exemptions under Title VII that did not apply to OSHA standards.

6. Plaintiffs seek class certification to represent the almost 12,000 employees reported in November, 2021 by former Mayor DeBlasio to have submitted requests for exemptions from the Vaccine Orders. See Exhibit #1

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is proper under Title VII of the Civil Rights Act of 1946, 42 U.S.C. 2000(f)(3) et Seq ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq.

8. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(4); and, 42 U.S.C. § 1981, et seq.

9. Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely the New York City Human Rights Law ("NYCHRL") codified in Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

10. The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY.

## JURY DEMAND

11. Plaintiffs hereby demand a trial by jury on all issues properly triable thereby.

## PARTIES

A.  **PLAINTIFFS**

   1.  **Organization Plaintiff**

11. Plaintiff Women of Color for Equal Justice (WOC4EqualJustice) is a nonprofit social justice policy and litigation subsidiary affiliate of the Huntsville Madison County Community and Economic Development Corporation (HMCCEDC) a 501c(3) incorporated in Alabama and has members and operates affiliates organizations in various regions of the United States to seek redress for social justice harms to communities of color. Specifically, WOC4EJ advocates to empower and protect the rights of women, women of color, marginalized communities of color and anyone experiencing discrimination.

   a.  **Individual Plaintiffs & Class Representatives**

12. Plaintiffs bring this action on behalf of themselves and all City employees within any and all City agencies of approximately 50 city departments, including but not limited to Department of Education, Department of Transportation, Department of Sanitation, Central Administrative Services, Police Department, Department of Children's Services. Plaintiffs make up two (2) classes of City employees, as follows:

   a.  City Employees who have refused to submit to the Vaccine Orders, evidenced by having submitted to the City a written request for exemption from the Vaccine Orders that was denied and who were subsequently placed on leave without pay and/or terminated and have not returned to work after exhausting the City's appeal process because the City prohibits them from returning to work because of their unvaccinated status and because the employees continue to refuse to submit to the Vaccine Order(s) (the "Vaccine Deficient Class"). The Vaccine Deficient Class are divided into two subclasses, namely City employees who:

4

    i.   can perform the essential functions of their job remotely or without contact with the public, clients and/or have minimum contact with co-workers, and whose request for exemption from the Vaccine Order included a request for continued remote work; and

    ii.   Cannot perform the essential functions of their job remotely and their jobs require face to face contact with either the public or City clients.

b.   City Employees who have refused to submit to the Vaccine Orders, evidenced by having submitted a request for exemption that was denied by the City and who were subsequently placed on leave without pay, and/or subsequently terminated, but after experiencing lost pay and loss of other benefits by the City for refusing to submit to the Vaccine Order(s), have been harassed and coerced by City with the deprivation income to submit to the Vaccine Order so they can regain their pay and their right to return to work (the "Coerced Class");

**EEOC Right to Sue Letter Received**

13. Remo Dello Ioio, a tenured Home Instructor employee who worked over 17 years for the New York City Department of Education who filed a EEOC Charge No. 520202200117 and received a Right to Sue Letter dated January 19, 2022.  See Dello Ioio Affidavit attached as Exhibit #2. He represents the Vaccine Deficient Class.

14. Maritza Romero is a former tenured Special Education Teacher who worked for the New York City Department of Education for over 20 years who has been denied the right to work in a safe workplace because she exercised her right to refuse the Vaccine Order. She has filed an EEOC Charge No. 520202200311 and received a Right to Sue Letter dated January 19, 2022. She represents the Vaccine Deficient Class.

15. Elizabeth Loiacono, a former employee of the New York City Department of Education filed a EEOC Charge No. 520202200353 and received a Right to Sue Letter Dated March 24, 2022. She represents the Vaccine Deficient Class. See Ms. Loicono's Affidavit attached as Exhibit #3

16. Suzanne Deegan, a former employee of the New York City Department of Education who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders filed a EEOC Charge No. 520202200109 and received a Right to Sue Letter Dated January 19, 2022. She represents the Vaccine Deficient Class.

17. Julia L. Harding is a former Education Administrator-Central Based Support Team Case Manage for New York City Department of Education who was been placed on leave without pay since October 4, 2021 and was informed she was terminated for refusing to submit to the Vaccine Orders. She has filed a EEOC Charge No. 520202200147 and received a Right to Sue Letter Dated January 19, 2022. She represents the Vaccine Deficient Class See Harding Affidavit attached as Exhibit #4

18. Christine O'Reilly, a tenured teacher in Academic Intervention Services with over 22 years of service with the New York City Department of Education filed a EEOC Charge No. 520202200421 and received a Right to Sue Letter Dated January 19, 2022. She represents the Vaccine Deficient Class.

19. Ayse P. Ustars, is a 20+ year Social Worker for the City's Department of Education who was placed on leave without pay on October 4, 2021 for refusing to submit to the Vaccine Order, filed a EEOC Charge No. 520202200062 and received a Right to Sue letter; but due to the financial hardship she experienced when she was placed on leave without pay for five (5) months, on March 9, 2022, Ms. Ustars was coerced to take the vaccine due to financial hardship of being forced to be on leave without pay for five months submitted to the Vaccine

Order and returned to work on March 15, 2022 and now seeks lost pay and emotional distress damages. She represents the "Coerced Class."  See Usters Affidavit attached as <u>Exhibit #5</u>

**<u>EEOC Complaint Filed</u>**

Under information and belief, the following Class Plaintiffs have filed Charges/Complaints with the EEOC as a prerequisite to filing this complaint.

20.  Sara Coombs-Mereno, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders and later terminated by the City. She seeks represents the Vaccine Deficient Class. See Sara Coombs-Mereno Affidavit attached as <u>Exhibit #6</u>

21. Sancha Brown, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders and subsequently terminated.  See Sancha Brown Affidavit attached as <u>Exhibit #7</u>

22. Amoura Bryan, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders and was subsequently terminated. She represents the Vaccine Deficient Class. See Ms. Bryan's Affidavit attached as <u>Exhibit #8</u>

23. Zena Wouadjou, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders and was subsequently terminated. She represents the Vaccine Deficient Class. See Ms. Wouadjou Affidavit attached as <u>Exhibit #9</u>

24. Evelyn Zapata, Christine O'Reilly, Edward Weber, were all former employees of the Department of Education who were placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders.

25. Tracy-Ann Francis-Martin, was a supervisor for the Department of Child Protective Services who was put on leave without pay for refusing to submit to the Vaccine Orders and was

subsequently terminated. She represents the Vaccine Deficient Class who can work remote. See Ms. Francis-Martin's Affidavit attached as <u>Exhibit #10</u>

26. Michelle Hemmings Harrington, was an employee of the Department of Transportation who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders. See Ms. Harringtons Affidavit attached as <u>Exhibit #11</u>

27. Ophelia Inniss, was an employee of the Administration of Children Services who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders.

28. Cassandra Chandler, was an employee of the Administration of Children Services who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders.

29. Carla Grant, was an employee of the Department of Transportation who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders.

30. Charisse Ridulfo, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders and was subsequently terminated. She represents the Vaccine Deficient Class.

31. Kareem Campbell was an employee of the Department of Transportation who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders.

32. Bruce Reid, was an employee of the Department of Sanitation who was placed on leave without pay and subsequently terminate for refusing to submit to the Vaccine Orders. Attached is Mr. Reid's Affidavit as <u>Exhibit # 12</u>

33. Joseph Rullo, was an employee of the Department of Sanitation who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders. Attached is Mr. Rullo's Affidavit as <u>Exhibit #13</u>

34. Sean Milan was an employee of the Department of Sanitation who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders. He has filed an EEOC complaint.

35. Sonia Hernandez was an employee of the New York Police Department who was placed on leave without pay and subsequently terminated for refusing to submit to the Vaccine Orders.

**Coerced Class**

36. Angela Velez is a Guidance Counselor for Home Instruction Schools which is a remote position with the Department of Education. Ms. Velez was placed on leave without pay on October 4, 2021 for refusing to submit to the Vaccine orders. But after almost 5 months being on leave without pay as the primary earner in her house and unable to find another job due to her unvaccinated states, Ms. Velez with tears in her eyes and under duress submitted to the Vaccine Order and returned to work in March. She has filed an EEOC charge as required to be included in this action. She represents the "Coerced Class".

37. Jesus Coombs is the Chief Architect for the Department of Central-Wide Administrative Services. On January 13, 2022, Mr. Coombs was placed on leave without play for refusing to submit to the Vaccine Orders. He was scheduled to be terminated, but because he is the sole income earner in his home, he with much gilt, anxiety and distress, submitted to the Vaccine Order and returned to work on February 15, 2022. He represents the "Coerced Class" who carries much guilt and anxiety for having to choose between meeting the needs of their family and God. See Mr. Coombs Affidavit attached as Exhibit #14

38. Under information and belief all Class Plaintiffs have completed other pre-requisites for filing their claims.

B. **DEFENDANTS**

39.   The City of New York including all applicable agencies which are approximately 50 agencies, including but not limited to the New York Police Department, Department of Education, Department of Transportation, Department of Sanitation, Department of Citywide Administrative Services, and Administration for Children's Services. The law of the State in which the district court is located determines a party's amenability to suit. Under the New York City Charter, "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except otherwise provided by law."

40.   The City Department of Health and Mental Hygiene pursuant to the New York City Health Code and Rules §3.01 General Powers, is charged with protecting the public health of the residents of the City.

**FACTUAL BACKGROUND**

41.   On June 23, 2021 New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in voluntary vaccination rates in the state, and declining hospitalizations.

42.   Notwithstanding the end of the state of emergency, on August 2, 2021, then New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of New York City residents, and the EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process. See Exhibit #15

43.   On August 10, 2021, the NYCDOH issued an Order requiring staff providing Covid operated or contracted services in residential and congregate settings to provide proof of Covid-19 vaccination or undergo weekly testing. See Exhibit #16

44.   On August 24, 2021, NYCDOH issued an Order that required all Department of Education employees to provide proof of Covid-19 vaccine with no option to undergo weekly testing. See Exhibit # 17

45.   On August 31, 2021, the Mayor issued Executive Order No. 78, requiring that beginning on September 13, 2021, all City employees were to provide proof of full vaccination by or provide weekly testing until the employee submits to full vaccination. See Exhibit #18

46.   During the August 31, 2021 Press Conference announcing Executive Order No. 78, when asked by media about religious exemptions, then Mayor de Blasio stated that "Those quote unquote, exemptions are not going to be honored. They're just, that's not the way to do things." See Exhibit #18(b) – Press Conference Transcript

47.   During another media press conference on September 8, 2021, then Mayor de Blasio stated as follows:

> "We recognize there are definitely, in a few cases and it's pretty rare where someone medically cannot be vaccinated, but where that is confirmed by a process to make sure that, you know, all the information is accurate, if someone cannot be vaccinated, of course there's grounds for a valid, medical exemption. Equally, and in very few cases we expect, but there are narrow and **specific grounds for religious exemption**. **Those will be honored**. There'll be a process to confirm them, but they will be honored. Those folks will continue to work for us in some capacity, in some location, we got to work that through, but those cases will be honored, but again, expect them to be very rare."

> See September 8, 2021 Press Conference Transcript Exhibit #18(c)

48.   Again during a media press Conference, then Mayor de Blasio made the following statements regarding vaccine exemptions:

> **Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope **Francis has been abundantly clear that there's nothing** in scripture that suggests people shouldn't get vaccinated. Obviously, so many people of all faiths have

been getting vaccinated for years and decades. There are, I believe it's two well-established **religions, Christian Science and Jehovah's Witnesses that have a history on this, of a religious opposition**. But overwhelmingly the faiths all around the world have been supportive of vaccination. So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection. Go ahead.

See September 23, 2021 Press Conference Transcript Exhibit #18(d)

49.    On September 12, 2021, the NYCDOH issued an Order requiring City employees working in certain childcare programs to be vaccinated. See Exhibit #19

50.    On September 28, the NYCDOH updated is DOE Order requiring all DOE employees to be vaccinated without a testing option. See Exhibit #20

51.    On October 20 and 31, the NYCDOH issued Orders requiring all City Employees and Contractors to submit to Covid-19 vaccination. See Exhibit #21

52.    On December 13, 2021, NYCDOH issued Order requiring all private employers to require employees to submit to Covid-19 vaccination. See Exhibit #22

53.    New York Public Health Law, PBH §206(L) prohibits Public Health Commissioners in the state of New York from authorizing mandatory immunization of adults.

54.    The Mayor's Executive Orders and the NYCDOH Orders (collectively the "Vaccine Orders") were only applicable to all City employers and by December 10, 2021, to private employees for "health and safety" in the workplace, which standards are governed by Federal OSHA Standards applicable to the City employees pursuant to the OSHA New York State Plan, which applies to state and municipal governments and their employees.

55.    On November 22, 2021, Mayor de Blasio reported that approximately 12,400 City workers applied for exemptions from the City Employee Vaccine Orders since the orders were implemented. Of the 12,400, 6,000 police officers were seeking exemptions from the Vaccine Orders.  See Exhibit #23

56.   All City employees were required to apply for an exemption through an online portals called SOLAS.

57.   On November 22, 2021, Mayor de Blasio reported that approximate 2,400 City employees were placed on leave without pay (LWOP),

58.   At an October 21, 2021 Mayor de Blasio indicated that most City employees seeking exemptions did not meet the certain exemption standards, which were not disclosed to the City Employees. See Exhibit # 24

59.   All Plaintiffs were denied their exemption request and were required to Appeal to the New York City-Wide Administrative Appeal for reconsideration.

60.   All Plaintiffs had their appeals denied, and all Plaintiffs were placed on Leave without pay and ultimate terminated sometime around January 2022.

61.   While all tenured teachers at the Department of Education have not been properly terminated for "cause" pursuant to New York City Education Law §3020a, which requires the Board of Education to file charges against them, all teachers are prohibited from returning to work.

62.   All other agency Plaintiffs were also placed on leave without pay and terminated.

## **GENERAL ALLEGATIONS**

63.   All conditions precedent to filing this action and to recovery of all relief sought in this Complaint have been satisfied, excused or waived.

64.   Plaintiffs allege that the City Executive Orders are unenforceable as a matter of law for the following reasons:

   a.   They are preempted by the Occupational Safety and Health Act of 1970 ("OSHA Act"), as amended, Public Law 91-596, 29 U.S.C. 651 e seq, because all the Vaccine Orders

only apply to City Employees as workplace safety orders and are not orders for the general "public health".

b.  they violate the Supremacy Clause.

c.  they violate the Commerce Clause; and

d.  they violate the New York State Public Health Law (PHL) §206(1)(l), which prohibits the New York Department of Health and Health Planning Commissioners ("Commissioner") from establishing regulations that mandate adult vaccination. (See PHL §206(1)(l)

65. Pursuant to its exclusive power over matters of occupational health and safety, the federal government (long before the Covid-19 Pandemic) has established a comprehensive systems of laws, regulations, procedures, and administrative agencies to regulate occupational safety and health.

66. Congress created OSHA upon a finding that "personal injuries and illnesses arising out of work situations impose a substantial burden upon and are hindrance to interstate commerce in terms of lost production, wage loss, medical expenses, disability compensation." 29 U.S.C. § 651(a).

67. Congress explicitly stated that the Secretary of Labor was responsible for setting "mandatory occupational safety and health standards applicable to business affecting interstate commerce, and by creating Occupational Safety and Health Review Commission for carrying out adjudicatory functions." 29 U.S.C. §651(b)(3).

68. OSHA standards are applicable to New York City through the New York Public Employee Safety and Health (PESH) which covers all state and local government workers in the state and the New York PESH has adopted all OSHA standards under the New York State Plan included in 29 CFR 1952.24.

69. The OSH Administration has promulgated under the general duties clause Section 5(a) regulations which apply to each employer the duty "to furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; and shall comply with occupation safety and health standards promulgated under the Act". 29 U.S.C. §654a

70. The OSH Administration has promulgated regulations that mandate employers to comply with the "Respiratory Protection" regulations at any time, including during a Pandemic, at 29 C.F.R. §1910.134(a)(1) atmospheric contaminations in the forms of sprays or vapors exist in the workplace, which under the general duty clause, it is the duty of the employer eliminate "recognized hazards" that are causing or are likely to cause death or serious physical harm to employees. See **Affidavit of Expert Bruce Miller, Exhibit #25**

71. The OSH Administration has promulgated regulations which apply to Respirators and Respiratory Protection Plan pursuant at 29 C.F.R. 1910.134(a)(2) that can protect employees and the public whom employees may serve from exposure to atmospheric contaminations, including the airborne virus that causes Covid-19, that can cause severe injury and death,

72. The OSH Administration has promulgate regulations that allow New York City to utilize remote work as an administrative control to meets its general duty. See **Affidavit of Expert Bruce Miller, Exhibit #25** and See **Affidavit of Expert Baxter Montgomery, MD, Exhibit #26** See **Affidavit Expert Dr. Henry Ealy, NMD Exhibit #27**

73. OSHA provides that "the Act is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which Federal standards have been issued under Section 6 of the Act".  29 C.F.R. §1902.1(a).

74. Congress stated that "[a]ny State which, at any time, desires to assume responsibility for development and enforcement therein of occupational and safety and health standards relating

to any occupational safety or health issue with respect to which Federal standard has been promulgated under 29 U.S.C. §655 **shall** submit a State Plan for the development of such standards and their enforcement." 29 U.S.C. §667 (emphasis added)

75. The NY City has developed Executive Orders, adopted into law, relate to occupational health and safety issues applicable only to the "workplace" which Federal Standards have been promulgated under 29 U.S.C. §654 and §655. **See Affidavit of Dr. Montgomery, Exhibit #26**

76. The NY City Executive Orders exceeds its authority to regulate "workplace safety for employees" and is pre-empted by OSHA as it regulates how City agencies maintain a safe workplace when the airborne contaminate, namely the airborne virus that causes Covid-19, by specifically requiring employees to submit to a Covid-19 vaccine for the purpose of protecting the health and safety of the workplace, and other employees, which is impermissible under C.F.R. §1910.134(a)(1) and (2) and which is not the duty of employees pursuant to 29 U.S.C. §654.

## CLASS ALLEGATIONS

77. Class representative Plaintiffs**,** seek class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of themselves and all persons similarly situated.

78. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the Defendant would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

79. The Class claims raise numerous common questions of fact or law, including, but not limited to:

    a.   Whether the Vaccine Orders are preempted by OSHA standards because the Vaccine Orders specifically targets City employees and not a larger public health goal;

    b.   Whether the enforcement of invalid Vaccine Orders, amounts to harassment and/or discrimination pursuant to Title VII religious harassment,

80. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3). The common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy.

81. The claims of the named Plaintiffs are typical of the claims of the class in that the named Plaintiffs and class members claim that their right to a safe workplace pursuant to OSHA standards have been denied by Defendants reckless disregard to disclose to Plaintiffs their right to remote work and/or Respiratory Protections provided under OSHA Standards. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption subjected to harassing interrogations regarding their religious beliefs, and discriminated against based on their" perceived disability" and treated differently from employees who were granted accommodations based on their religious beliefs while they were denied any accommodations.

82. Thus, the named Plaintiffs seek have the same interests and have suffered the same type of damages as the class members, namely loss wages and benefits for being placed on leave without pay and/or terminated due to their refusal to submit to the Vaccine Orders

### COUNT 1 – VIOLATION OF OSHA

83. Plaintiffs realleges and incorporates by reference Paragraphs 60-73 of this Complaint as if fully set forth herein.

84. Only the Secretary of Labor can approve a plan submitted by a State that attempts to supersede the requirement of the OSHA.

85. The New York City Department of Heath Vaccine Orders have not been approved as a State Plan.

86.  As a result, the New York City Department of Health Vaccine Orders are in direct violation of the preemption provisions of the OSHA.


## COUNT II – VIOLATION OF THE SUPREMACY CLAUSE
**(Article VI, Section 2, of the United States Constitution; 42 U.S.C. §1983)**

87. Plaintiffs realleges and incorporates by reference Paragraphs 60-73 of this Complaint as full set forth herein.

88. Article VI, Section 2, of the United States Constitution, known as the Supremacy Clause, provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land, and the Judges in every State shall be bound thereby, anything in the Constitution of Laws of any State to the Contrary notwithstanding.

89. The Supremacy Clause mandates that federal law preempts any state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.

90. In 1979, the United State Government through the Department of Labor legislated Safety and health Regulations for General Industry 29 C.F.R. §1910.134. New York City is subject to these OSHA Act requirements.

91. Pursuant to 29 U.S.C. §667, entitled "State Jurisdiction and Plans," state standards for occupation health and safety may be promulgated in the "absence of applicable Federal standards."  Thus, a state agency may assert jurisdiction under state law over any occupation safety or health issue with respect to which no standard is in effect under 29 U.S.C. §655.

92. As set forth in paragraphs 1 through 50 above, the OSH Act provides standards for General Industry to protect employees from air borne contaminants in the workplace through the Respiratory Standard and through administrative controls that include "remote" work for employees promulgated under 29 U.S.C. §655.

93. New York City has not obtained the requisite approval of the Secretary of Labor to enact the Executive Orders.

94. The New York City Executive Orders are occupational safety and health standards relating to occupations safety or health issues with respect to which federal standards have been promulgated and are in direct violation of the preemption provisions of the OSH Act.

95. Accordingly, the New York City Executive Orders are preempted by federal law.


**COUNT III – COMMERCE CLAUSE**
**(United States Constitution, Art. I, §8, cl.3. and 42 U.S.C.A. §1983)**


96. Plaintiffs realleges and incorporates by reference Paragraphs 60-73 of this Complaint as full set forth herein.

97. 29 U.S.C.A. §667 states that "the Secretary shall approve the plan submitted by a State…. If such plan in his judgment provides for the development of safety and health standards relating to one or more safety or health issues… and do not unduly burden interstate commerce."

98. The New York City Executive Orders, which have not been approved by the Secretary, unduly burden interstate commerce.

99. The Commerce Clause provides that "Congress shall have Power to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. 1 §8, cl. 3. The Commerce Clause implicitly restricts the states' power to burden interstate

commerce. The Commerce Clause thus denies the States the power to unjustifiably discriminate against or burden interstate commerce.

100. Pursuant to its exclusive power over matters concerning the Commerce Clause, Congress authorized the "Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions under this chapter." 20 U.S.C. §651©.

101. These federal safety regulations were created through the exercise of [Congress] power to regulate comer among the several States and with foreign nations and to provide for the general welfare…" 29 U.S.C. §651(b).

102. The New York City Executive Orders have enacted a standard for its agencies to require employees to submit to a Covid-19 vaccine in order for the City to meet its duty to its employees to provide a safe workplace pursuant to 29 U.S.C. §654, which requirement directly conflicts with the objective of the general duty clause which requires the employer to utilize existing OSHA standards and regulations to eliminate any airborne contaminates, like the virus that causes Covid-19. See Exhibit #25 and Exhibit #26

103. The New York City Executive Orders also contradicts the objective of 29 U.S.C. §654 which is to eliminate recognized hazards that are "likely to cause" death or serious physical harm by requiring employees to be inoculated with a vaccine that has recognized hazards that are "likely to cause death or serious physical harm". See Exhibit #26.

104. Under the Dormant Commerce Clause, the City cannot enact a regulation which burdens interstate commerce if the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

105. For example, the New York City Executive Order dated August 24 and October 20, 2021, applicable to all New York City employees and private employers which requires all employers in New York City to prevent unvaccinated employees from entering their workplace and the City has terminated Plaintiffs thereby preventing Plaintiffs who live inside and outside New York City and from not only working for the City but also working for private companies unduly burdening interstate commerce.

106. New York City cannot set standards that conflict with OSH Act standards designed to retain employees in the workplace while providing a safe workplace for the employee.

**COUNT IV – VIOLATION OF PROCEDURAL DUE PROCESS**
**(The Due Process Clause of the Fourteenth Amendment; 42 U.S.C. §1983)**

107. Plaintiffs realleges and incorporates by reference Paragraphs 60-73 of this Complaint as full set forth herein.

108. The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person life, liberty, or property, without due process of law; nor to deny to any person within its jurisdiction the equal protection of the laws."

109. The New York City Executive Orders allow for the arbitrary and capricious enforcement of the Covid-19 vaccine requirement on City employees. The New York City has granted religious and/or medical exemptions from the Covid-19 vaccine requirement to approximately 600 employees based on arbitrary and capricious criteria that has not been disclosed to all employees who have sought exemptions from the Covid-19 vaccine requirement.

110. Furthermore, the New York City Executive Orders have arbitrarily exempted its agencies from compliance with the OSH Act standards and regulations applicable to respiratory communicable disease.

## COUNT V
### (Discrimination pursuant to ADA and NYC Admin. Code §8-101, §8-107)

### A. Plaintiffs Are In The Protected Class of those with a "Perceived Disability"

111. Plaintiffs realleges and incorporates by reference Paragraphs 1-107 of this Complaint as full set forth herein.

112. The New York City intentionally and unlawfully harassed, discriminated and retaliated against both Classes of Plaintiffs on the basis of Plaintiffs' religion in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and based on Plaintiffs perceived disability pursuant to the American's with Disability Act.

113. Defendants engaged in extreme and outrageous conduct intentionally or with reckless indifference to Plaintiffs civil rights which caused Plaintiffs severe emotional distress in violation of New York City Human Rights Law (CHRL) codified in Administrative Code § 8-107, entitled "Unlawful Discriminatory Practices" provides in Subdivision (1) (a) (3) that, in the context of "[e]mployment," "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or **perceived . . . disability** . . . status of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment" (§ 8-107 [1] [a] [3].

114. The NYCHRL Administrative Code § 8-107[15][a] goes on to state that "it is an unlawful discriminatory practice …… **not to provide** a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job…..

115. On November 1, 2021, the New York City Human Rights Commission issued its anti-discrimination guidelines regarding New York City Human Rights Laws[2] titled "COVID-19 & Employment Protections," which relevant parts state as follows:

> Employers must not discriminate against or harass employees with actual or <u>perceived infection with COVID-19</u>, or based ……..on the <u>presumption that they</u> …….are more <u>likely to contract COVID-19</u> due to their actual or perceived …..religion or another protected status.
>
> (See "Guidelines attached <u>Exhibit #28</u>)

116. By definition, all unvaccinated Plaintiffs City employees are "perceived as having a disability" per the Guidelines because the NYCDOH Emergency Orders expressly declare that the "unvaccinated" are more likely to contract Covid-19, whether they are unvaccinated due to their religion practices or not. The relevant declaration of "perceived disability" in the NYCDOH orders state as follows:

> The October 20, 2021 NYCDOH Vaccine Order states as follows:
>
>> WHEREAS, the Department reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New York City; an
>>
>> (See <u>Exhibit #21</u>, Page 2)

117. Based on the above NYCDOH Vaccine Order declarations, all Plaintiffs who are unvaccinated due to their choice to remain unvaccinated, whether for religious reasons or otherwise, fall into the protected class of persons with a "perceived disability" because they have been declared by the highest healthcare official in New York State, the Commissioner of the New York Department of Health, as being more likely to contract severe Covid-19 because of their choice to remain unvaccinated. See Plaintiffs Affidavits attached as <u>Exhibits #2– 14</u>.

---

[2] See all amendments to the CHRL at <u>https://www1.nyc.gov/site/cchr/law/amendments.page</u>

118. Put in more medical terms, the unvaccinated have a "perceived disability" because they are perceived to suffer from a "Covid-19 vaccine deficiency", wherein they lack the required amount of vaccination, as defined by the DOH Commissioner, to prevent severe Covid. (herein after referred to medically as a "Vaccine Deficiency")[3]

119. The Guidelines go on to authorize and mandate, as a minimum standard, the following list of reasonable accommodations that employers can provide employees who suffer from a Vaccine Deficiency so that they can retain their jobs:

> Employers have an ongoing <u>duty to provide employees with accommodations</u> based on disability (including disabilities related to COVID-19)…..Examples of reasonable accommodations include <u>allowing an employee to work remotely</u>, changing their schedule, allowing them to <u>submit to regular testing for Covid-19 as an alternative to vaccination</u>, and/<u>or providing certain personal protective equipment as mask or changing employment work schedules</u>. Employers must also implement business changes that are responsive to COVID-19 in a manner that allows for reasonable accommodations, unless doing so would pose an undue hardship…… defined as….. an accommodation requiring <u>significant expense</u> or difficulty……(Emphasis added) (the "Authorized Accommodations")

120. All Plaintiffs submitted requests to Defendant requesting an exemption and/or the Authorized Accommodations to allow them to remain Vaccine Deficient and perform the essential functions of their job due to their "perceived disabled" status.

**B.  <u>Refusal to Provide Reasonable Accommodations To Plaintiffs</u>**

121. Most Plaintiffs who had jobs that could be worked remotely requested adjustments to the workplace polices to allow them to work their jobs "remotely" from home.

> (See Plaintiff Affidavits attached to this Complaint  **<u>Exhibits # 2-14</u>** and all exhibits attached to each affidavit).

122. All the Plaintiffs had their requests for exemption and/or for the Authorized Accommodations rejected.

> (See Plaintiff Affidavits attached to this Complaint as <u>Exhibits #2-14</u> and all exhibits attached to each affidavit as <u>Exhibit A</u>).

---

[3] Merriam-Webster Medical Dictionary defines a "deficiency" as the quality or state of being defective or lacking some necessary quality or element, a shortage of substances necessary to health.

### C.  Refusal to Participate in "Good Faith" Cooperative Dialogue

123.  Under information and belief, all of the Plaintiffs were not given the opportunity to engage in "Cooperative Dialogue" with Defendant as required by CHRL §8-102, wherein Defendant made a "good faith" effort either in writing or oral dialogue to discuss with Plaintiffs their individual accommodation needs, the potential accommodations could address each Plaintiffs needs, and neither were any alternative accommodations provided by Defendant.

124.  Under information and belief, none of the Defendant provided any detailed information regarding how the requested Authorized Accommodations would pose any difficulty for the Defendant to pay for or implement.

125.   Under information and belief, all Plaintiff's received rejection letters or emails that contained the same or similar rejection language either rejecting their request because they did not have a "sincere religious belief" or because the request would put an "undue burden" on the City.

126.  Mayor de Blasio admitted that

## COUNT VI

### Constructive Discharge – Hostile Work Environment

127.  Plaintiffs repeat, reiterate, and reallege each and every allegation above and incorporates all statements herein by this reference, specifically all statements made by then Mayor DeBlasio in Exhibits 18a-d.

128. All of the Plaintiffs have been placed on leave without pay because of their "perceived disability" as Vaccine Deficient and were refused the Authorized Accommodation in a

hostile work environment where their faith was disregarded along with their "human rights" under OSHA.

129. Under information and belief all Defendant have collectively refused to provide all Plaintiffs the Authorized Accommodations.

## COUNT VII
### Discrimination & Harassment

130. Plaintiffs repeat, reiterate, and reallege each and every allegation above and incorporates all statements herein by this reference.

131. Under information and belief, the Defendant' collective agreement to place all Vaccine Deficient employees in their companies on leave without pay before the Christmas holiday and to withhold compensation benefits and to terminate them all on or before December 31, 2021 was done to harass and to retaliate against Plaintiffs based on their "perceived disability" as suffering from a Vaccine Deficiency.

132. The City required each Plaintiff to apply and/or reapply for religious exemptions, when they knew all along that they were never going to provide any accommodation that would allow any of the Plaintiffs to remain in their jobs either within their facilities or to work from home.

133. The City knew or should have known that OSHA pre-empted all of their Vaccine Orders and that the hostility express toward the faith of employees did not absolve the City from its Duties under OSHA.

134. The City's acts of allowing Plaintiffs to make two and three requests for religious accommodations that were never going to be provided were acts of harassment and hostility in violation of the NYCHRL.

135.   According to STAT, an online reporting database that gathers data from the Federal Health Resources and Services Administration, New York City received Billions in Federal Covid Relief Funding to pay for necessary equipment to provide to employees to make the workplace safe.[4]

261.   Plaintiffs' claims of retaliation also sets forth facts to substantiate a claim for harassment pursuant to the NYCHRL.

262.   On November 5, 2021, OSHA published its final Health Emergency Temporary Standards for Covid-19 Health Care Staff which states as follows:

§ 1910.501 Vaccination, testing, and face coverings.

(a) Purpose. This section is intended to establish minimum vaccination, vaccination verification, face covering, and testing requirements to address the grave danger of COVID-19 in the workplace, and to preempt inconsistent state and local requirements relating to these issues, including requirements that ban or limit employers' authority to require vaccination, face covering, or testing, regardless of the number of employees.

Note 1 to paragraph (a): This section establishes minimum requirements that employers must implement. Nothing in this section prevents employers from agreeing with workers and their representatives to additional measures not required by this section and this section does not supplant collective bargaining.

263.   In the final OSHA Health ETS, it expressly exempts person from the OSHA vaccine requirements those who have a disability or a sincerely held religious belief, practice or observance that conflict with the vaccination requirement.

264.   Defendant and each of them have recklessly disregarded the Human Rights of all Plaintiff by over and over denying them the available reasonable accommodations that could have made the workplace safe.

---

[4] See News Report "New York Has Received billions in Covid aid…." - https://spectrumlocalnews.com/nys/central-ny/ny-state-of-politics/2021/11/03/new-york-has-received-billions-in-covid-aid

## REMEDIES

a. Plaintiffs seek immediate reinstatement to their positions at the same pay and seniority.

b. Plaintiffs seek the appropriate workplace safety controls that will allow them to work their jobs safely either remotely for those who can and for those who need respirator equipment to be provided with a PAPR safety equipment for when Plaintiffs come in close contact with the public, so that they can perform their jobs.

c. Plaintiffs seek back pay for the time separated from Defendant until return to work.

d. Loss payments into retirement fund and reinstatement of loss time into retirement calculation,

e. Mental and emotional distress damages.

f. Plaintiffs seek punitive damages in an amount to be determined by a jury.

g. Attorney fees and costs.


Dated: April 19, 2022                               Respectfully submitted,

                                                    /s/ *Donna Este-Green*

                                                    _____
                                                    Donna Este-Green, Esq. Bar#
                                                    *Attorney for Class Plaintiffs*
                                                    *25 Fairway Dr.*
                                                    *Hempstead, NY 11550*
                                                    Women of Color for Equal Justice

                                                    Tricia S. Lindsay, Esq.
                                                    531 E. Lincoln Ave., Suite 5B
                                                    Mount Vernon, New York 10552
                                                    ph:  860-783-8877
                                                    fax:  914-840-1196
                                                    email: TriciaLindsayLaw@gmail.com
                                                    email: attorney@tricialindsaylaw.com
                                                    website: https://tricialindsaylaw.com/

## VERIFICATION


STATE OF NEW YORK                    )
                                     )ss:
COUNTY OF WESTCHESTER                )

I, TRICIA S. LINDSAY, an attorney duly admitted to practice law in the State of New York, states that I am the Principal of THE LAW OFFICES OF TRICIA S. LINDSAY, attorney of record for Plaintiffs, Women Of Color For Equal Justice, R. Toussaint, E. Pallas, D. Chery, P. Thompson, J. Garcia, D. Chong, A. Richardson, T. Crossman, T. Sherman, B. Lindon, M. Mosejczuk, W. Harris, C. Bryan, B. Williams, T. Beswick, J. Baptiste, S. Pagano, T. Anglin, H. Leckie, N. Jack, S. Byfield,  and K. Tantillo, individually and on behalf of similarly situated individuals, in the within action, being duly sworn, I state that I have read the foregoing *Verified Petition* and know the contents thereof; that the same is true to my own knowledge, except for the matters therein stated to be alleged on information and belief, and that those matters I believe to be true.

The reason this verification is made by me and not by the Plaintiffs is that the deponent maintains her office outside the County in which Plaintiffs reside.

Dated: Mount Vernon, New York
         January _____, 2022


                                   _____
                                   TRICIA S. LINDSAY, ESQ.
                                   *Counsel for Plaintiffs*