**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

WOMEN OF COLOR FOR EQUAL JUSTICE,
REMO DELLO IOIO, ELIZBETH LOIACONO,
SUZANNE DEEGAN, MARITZA ROMERO, JULIA.
HARDING, CHRISTINE O'REILLY, AYSE P.
USTARES, SARA COOMBS-MORENO, JESUS
COOMBS, ANGELA VELEZ, SANCHA BROWNE,
AMOURA BRYAN, ZENA WOUADJOU, CHARISSE
RIDULFO, TRACY-ANN FRANCIS MARTIN, KAREEM
CAMPBELL, MICHELLE HEMMINGS HARRINGTON,
MARK MAYNE, CARLA GRANT, OPHELA INNISS,
CASSANDRA CHANDLER, AURA MOODY, EVELYN
ZAPATA, SEAN MILAN, SONIA HERNANDEZ,
BRUCE REID, JOSEPH RULLO, AND CURTIS BOYCE,
JOSESPH SAVIANO, MONIQUE MORE, NATALYA
HOGAN, JESSICA CSEPKU, ROSEANNE
MUSTACCHIA, YULONDA SMITH, MARIA FIGARO,
RASHEEN ODOM, FRANKIE TROTMAN,
GEORGIANN GRATSLEY, EDWARD WEBER,
MERVILYN WALLEN, PAULA SMITH individually and
on behalf of similarly situated individuals,

Plaintiffs,

v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS,
COMISSIONER ASHWIN VASAN, MD, PHD
DEPARTMENT OF HEALTH AND MENTAL HYGIENE,
DEPARTMENT OF EDUCATION, AND DOES 1-20

Defendants

**SECOND AMENDED CLASS
ACTION COMPLAINT FOR
DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF**

**AND JURY DEMAND**

INDEX No.:1:22 CV 02234-EK-LB_____

_____

## INTRODUCTION

1.  This action arises out of the City of New York's (the "City") issuance of approximate four (4)

    Covid-19 Vaccine Orders ("Covid Vaccine Orders") issued through the New York City Department

    of Health and Mental Hygiene ("NYCDOH") between August 2021 and December 13, 2021

mandating Plaintiffs and all City employees similarly situated (hereafter "Plaintiffs") including City

contractors vendors, and employees working for private employers in the City to get the Covid-19

vaccine in violation of the Occupational Safety and Health Act of 1970 ("OSH Act") expressed

preemption clause and by the Supremacy Clause, Article VI of the Unites State Constitution. See

Exhibits 1, Vaccine Orders

2. Plaintiffs seek declaratory judgment pursuant to 28 U.S. §2201 declaring the duties and rights

between the City and Plaintiffs pursuant to the OSHA Act and declaring the Covid Vaccine Orders

preempted and invalid, along with a permanent injunction pursuant to Federal Rule of Civil

Procedure §65 enjoining the City's enforcement of the preempted Vaccine Orders so that Plaintiffs

can return to work because enforcement of a preempted—and thus unconstitutional—law

constitutes irreparable injury. See *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992);

*Arcadian Health Plan, Inc. v. Korfman, 2010 WL 5173624, at \*8* (D. Me. Dec. 14, 2010) ("A party

may be irreparably injured in the face of the threatened enforcement of a preempted law.").

3. The City's ongoing enforcement of the preempted Vaccinex Orders has irreparably harmed—and

continues to irreparably harm—Plaintiffs as they have been placed on involuntary leave without

pay and locked out of their jobs since approximately October 4, 2021 because they have refused to

comply with the preempted City Vaccinex Orders based on religious grounds. See *Chamber of

Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) and See also *Roman

Catholic Diocese of Brooklyn New York v. Cuomo*, 592 U.S. ___2022 (holding "The loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury.")

4. The City's Vaccine Orders are preempted because they are not laws of general applicability because

they do not mandate all residents of the City to be vaccinated and the Vaccine Orders conflict with

2

New York States Public Health Law §206, which expressly prohibits "adult" mandatory immunization.

5. Plaintiffs also seek monetary damages for violations of Plaintiffs First Amendment Rights as applied to municipalities pursuant to 42 U.S.C. §1983 and damages, including punitive damages for the City's intentional and/or reckless religious discrimination and harassment against Plaintiffs in violation of the New York City Human Rights Law under NYC Administrative Code 8-107(3); which claims arise out of and are inextricably bound to Plaintiffs federal preemption claim under the OSHA Act.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the City's Vaccinex Orders, as well jurisdiction over Plaintiffs First Amendment violation claims as applied to states and municipalities pursuant to 42 U.S.C. §1983.

7. Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely the New York City Human Rights Law ("NYCHRL") codified in Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

8. The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY.

## JURY DEMAND

9. Plaintiffs hereby demand a trial by jury on all issues properly triable thereby.

## **PARTIES**

### A.  PLAINTIFFS

#### 1.  **Organization Plaintiff**

10. Plaintiff Women of Color for Equal Justice (WOC4EqualJustice) is a nonprofit social justice policy and litigation subsidiary affiliate of the Huntsville Madison County Community and Economic Development Corporation (HMCCEDC) a 501c(3) incorporated in Alabama and has members and operates affiliates organizations in various regions of the United States to seek redress for social justice harms to communities of color. Specifically, WOC4EJ advocates to empower and protect the rights of women, women of color, marginalized communities of color and anyone experiencing discrimination. Plaintiffs are subscribing members of WOC4EJ.

#### 2.  **Individual Plaintiffs & Class Representatives**

11. Plaintiffs bring this action on behalf of themselves and all City employees within any and all the City agencies of approximately 50 city departments, including but not limited to Department of Education, Department of Transportation, Department of Sanitation, Central Administrative Services, Police Department, Department of Children's Services. Plaintiffs make up two (2) classes of City employees, as follows:

   a.  City employees who have refused to submit to the Vaccine Orders, evidenced by having submitted to the City a written request for exemption from the Vaccine Orders that was denied and who were subsequently placed on leave without pay due to their religious practice of refusing to take the Covid-19 vaccine and who have not returned to work after exhausting the City's appeal process because the City has locked them out of their jobs since October 4, 2021 until the present for refusing to take the vaccine based on religious grounds. These are the Locked-Out Class; and

    b.    City employees who also refused to take the Covid-19 vaccine, who submitted to the City's demand that they apply for a religious exemption and all of their request were denied and they were placed on leave without pay and locked out from returning to work because they continued to refuse to take the Covid-19 vaccine for religious grounds, but after being denied pay for several weeks to months where coerced by the financial deprivation to violate their religious practice and they took the Covid-19 vaccine so that they could get their jobs and salary back. These are the "Coerced Class".

12.  All of the named Plaintiffs have filed EEOC complaints to exhaust their administrative remedies; but because Plaintiffs are now seeking claims pursuant to 42 U.S.C. §1983 which does not require exhaustion of administrative remedies, all references below to EEOC complaints are for the purpose of preserving the right to add Title VII claims in the future if necessary.

**Locked Out Class**

13.  Remo Dello Ioio, a tenured Home Instructor employee who worked over 17 years for the New York City Department of Education who filed a EEOC Charge No. 520202200117 and received a Right to Sue Letter dated January 19, 2022.  He is part of the Locked-Out Class.

14.  Maritza Romero is a former tenured Special Education Teacher who worked for the New York City Department of Education for over 20 years who has been denied the right to work in a safe workplace because she exercised her right to refuse the Vaccine Order. She has filed an EEOC Charge No. 520202200311 and received a Right to Sue Letter dated January 19, 2022. She represents the Locked-Out Class.

15.  Elizabeth Loiacono, a former employee of the New York City Department of Education filed a EEOC Charge No. 520202200353 and received a Right to Sue Letter Dated March 24, 2022. She represents the Locked-Out Class.

16. Suzanne Deegan, a former employee of the New York City Department of Education who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious ground. She filed a EEOC Charge No. 520202200109 and received a Right to Sue Letter Dated January 19, 2022. She represents the Locked-Out Class.

17. Julia L. Harding is a former Education Administrator-Central Based Support Team Case Manage for New York City Department of Education who was been placed on leave without pay since October 4, 2021 for refusing to submit to the Vaccine Orders on religious grounds. She has filed a EEOC Charge No. 520202200147 and received a Right to Sue Letter Dated January 19, 2022. She represents the Locked-Out Class.

18. Christine O'Reilly, a tenured teacher in Academic Intervention Services with over 22 years of service with the New York City Department of Education filed a EEOC Charge No. 520202200421 and received a Right to Sue Letter Dated January 19, 2022. She represents the Locked-Out Class who was involuntarily placed on leave without pay since around October 4, 2021 for refusing to take the Covid-19 vaccine for religious grounds.

19. Ayse P. Ustars, is a 20+ year Social Worker for the City's Department of Education who was placed on leave without pay on October 4, 2021 for refusing to submit to the Vaccine Order, filed a EEOC Charge No. 520202200062 and received a Right to Sue letter; but due to the financial hardship she experienced when she was placed on leave without pay for five (5) months, on March 9, 2022, Ms. Ustars was coerced to take the vaccine due to financial hardship of being forced to be on leave without pay for five months submitted to the Vaccine Order and returned to work on March 15, 2022 and now seeks lost pay and emotional distress damages. She represents the "Coerced Class."

6

20.  Sara Coombs-Mereno, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious ground. She represents the Locked-Out Class.

21. Sancha Brown, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders for religious grounds.

22. Amoura Bryan, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious ground. She represents the Locked-Out Class.

23. Zena Wouadjou, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. She represents the Locked Out Class.

24. Evelyn Zapata, Christine O'Reilly, Edward Weber, were all former employees of the Department of Education who were placed on leave without pay refusing to submit to the Vaccine Orders due to her religious practices.

25. Tracy-Ann Francis-Martin, was a supervisor for the Department of Child Protective Services who was put on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. She represents the Locked-Out Class who can work remote.

26. Michelle Hemmings Harrington, was an employee of the Department of Transportation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

27. Ophelia Inniss, was an employee of the Administration of Children Services who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

28. Cassandra Chandler, was an employee of the Administration of Children Services who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

29. Carla Grant, was an employee of the Department of Transportation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

30. Charisse Ridulfo, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. She represents the Locked-Out Class.

31. Kareem Campbell was an employee of the Department of Transportation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. He represents the Locked-Out Class.

32. Bruce Reid, was an employee of the Department of Sanitation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. He represents the Lock-out Class.

33. Joseph Rullo, was an employee of the Department of Sanitation who was placed on leave without pay or refusing to submit to the Vaccine Orders on religious grounds.

34. Sean Milan was an employee of the Department of Sanitation who was placed on leave without pay refusing to submit to the Vaccine Orders on religious grounds. He has filed an EEOC complaint.

35. Sonia Hernandez was an employee of the New York Police Department who was placed on leave without pay refusing to submit to the Vaccine Orders on religious grounds.

36. Plaintiffs Curtis Boyce, Joesph Saviano, Monique More, Natalya Hogan, Jessica Csepku, Roseanne Mustacchia, Yulonda Smith, Maria Figaro, Rasheen Odom, Frankie Trotman, Georgianne Gratsley, Edward Weber, Merylyn Wallen, and Paula Smith and those similarly situated all requested religious exemptions from the Covid-19 Vaccine Orders as required by the City and were denied several request by the City for exemption and all were placed on involuntary leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

**Coerced Class**

37. Angela Velez is a Guidance Counselor for Home Instruction Schools which is a remote position with the Department of Education. Ms. Velez was placed on leave without pay on October 4, 2021 for refusing to submit to the Vaccine orders. But after almost 5 months being on leave without pay as the primary earner in her house and unable to find another job due to her unvaccinated state based on her religious practice, Ms. Velez with tears in her eyes and under duress submitted to the Vaccine Order and returned to work in March. She has filed an EEOC charge. She represents the "Coerced Class".

38. Jesus Coombs is the Chief Architect for the Department of Central-Wide Administrative Services. On January 13, 2022, Mr. Coombs was placed on leave without play for refusing to submit to the Vaccine Orders. He was scheduled to be terminated, but because he is the sole income earner in his home, he with much gilt, anxiety and distress, submitted to the Vaccine Order and returned to work on February 15, 2022. He represents the "Coerced Class" who carries much guilt and anxiety for having to choose between meeting the needs of their family and God.

39. All Plaintiffs have filed with the City's Comptroller's office the statutory required notice of claim as a pre-condition to filing this lawsuit against the City. Attached as <u>Exhibit 2</u> are Plaintiffs Acknowledged Individual Notices of Claims.

B. **DEFENDANTS**

40. The City including all applicable agencies which are approximately 50 agencies, including but not limited to the New York Police Department, Department of Education, Department of Transportation, Department of Sanitation, Department of Citywide Administrative Services, and Administration for Children's Services. The law of the State in which the district court is located determines a party's amenability to suit. Under the New York City Charter, "all actions and

proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in the name of any agency, except otherwise provided by law."

41.   Mayor Eric Adams is named in his official capacity as mayor who under color of law ratified that actions of the prior Mayor that caused Plaintiffs to be discriminated against because of the Plaintiffs religious practices.

42.   The City Department of Health and Mental Hygiene has been named separately because the New York City Health Code and Rules §3.01 General Powers grants it with exclusive authority for protecting the public health of the residents of the City.

43.   The City Commissioner Ashwin Vasan, MD, PHD is named in his official capacity as the Commissioner of the Department of Health and Mental Hygiene (NYDOH) because his actions where taken under color of the laws of New York.

44.   The Department of Education is hereby named separately because they are a separate legal entity from the City.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

45.   On June 23, 202, then New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in the voluntary vaccination rates in the state, and declining hospitalizations.

46.   Notwithstanding the end of the state of emergency, on August 2, 2021, then New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of New York City residents, and that EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process.

47.     On August 10, 2021, the then Commissioner of the NYCDOH issued an Order requiring staff providing Covid operated or contracted services in residential and congregate settings to provide proof of Covid-19 vaccination or undergo weekly testing.

48.     On August 24, 2021, NYCDOH issued an Order that required all Department of Education employees to provide proof of Covid-19 vaccine with no option to undergo weekly testing. See

49.     On August 31, 2021, the Mayor issued Executive Order No. 78, requiring that beginning on September 13, 2021, all City employees were to provide proof of full vaccination or provide weekly testing until the employee submits to full vaccination.

50.     During the August 31, 2021, Press Conference announcing Executive Order No. 78, when asked by media about religious exemptions, then Mayor de Blasio stated that "Those quote unquote, exemptions are not going to be honored. They're just, that's not the way to do things." See Exhibit #5 – Press Conference Transcript

51.     During another media press conference on September 8, 2021, then Mayor de Blasio stated as follows:

> "We recognize there are definitely, in a few cases and it's pretty rare where someone medically cannot be vaccinated, but where that is confirmed by a process to make sure that, you know, all the information is accurate, if someone cannot be vaccinated, of course there's grounds for a valid, medical exemption. Equally, and in very few cases we expect, but there are narrow **specific grounds for religious exemption**. **Those will be honored**. There'll be a process to confirm them, but they will be honored. Those folks will continue to work for us in some capacity, in some location, we got to work that through, but those cases will be honored, but again, expect them to be very rare."

> See September 8, 2021 Press Conference Transcript

52.     Again during a media press Conference on September 23, 2021, then Mayor de Blasio made the following statements regarding vaccine exemptions:

> **Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope Francis has been abundantly clear that there's nothing in scripture that suggests people shouldn't get vaccinated. Obviously, so many people of all faiths have been getting vaccinated for years and decades. There are, I believe it's two well-established religions, Christian Science and Jehovah's Witnesses that have a history

<u>on this, of a religious opposition</u>. But overwhelmingly the faiths all around the world have been supportive of vaccination. So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection. Go ahead.
See September 23, 2021 Press Conference Transcript

53. On September 12, 2021, the NYCDOH issued an Order requiring City employees working in certain childcare programs to be vaccinated.

54. On September 28, the NYCDOH updated its DOE Order requiring all DOE employees to be vaccinated without a testing option. See

55. On October 20 and 31, the NYCDOH issued Orders requiring all City Employees and Contractors to submit to Covid-19 vaccination. See

56. On December 13, 2021, NYCDOH issued Order requiring all private employers to require employees to submit to Covid-19 vaccination.

57. New York Public Health Law, PBH §206(L) prohibits Public Health Commissioners in the state of New York from authorizing mandatory immunization of adults.

58. The Mayor's Executive Orders and the NYCDOH Orders (collectively the "Vaccine Orders") were only applicable to all City employers and by December 10, 2021, to private employees for "health and safety" in the workplace, which standards are governed by Federal OSHA Standards applicable to the City employees pursuant to the OSHA New York State Plan, which applies to state and municipal governments and their employees.

59. On November 22, 2021, Mayor de Blasio reported that approximately 12,400 City workers applied for exemptions from the City Employee Vaccine Orders since the orders were implemented. Of the 12,400, 6,000 police officers were seeking exemptions from the Vaccine Orders.

60. All City employees were required by the City to apply for an exemption through an online portals called SOLAS to be exempted from the Vaccine Order.

61.     On November 22, 2021, Mayor de Blasio reported that approximate 2,400 City employees were placed on leave without pay (LWOP);

62.     October 21, 2021 during a press conference, Mayor de Blasio indicated that most City employees seeking exemptions did not meet the certain exemption standards, which were not disclosed to the City Employees by that time.

63.     All Plaintiffs were denied their exemption request and were required to appeal to the New York City-Wide Administrative Appeal for reconsideration of their request for exemption based on their religious practice.

64.     All Plaintiffs had their appeals denied, and some Plaintiffs were placed on indefinite involuntary leave without pay in and around October 2021 and others were placed on indefinite involuntary leave without pay sometime after January 1, 2022.

65.     None of the Plaintiffs have been legally terminated because none have had formal misconduct charges made against them pursuant to Education Law Section 3020a, New York Administrative Code §16-101, or Civil Service Law §75.

66.     All Plaintiffs have been illegally "locked out" of their jobs by the City when they were told not to return to their jobs because of they refused to be vaccinated based on the Plaintiffs religious practice of abstaining from the Covid-19.

67.     All other agency Plaintiffs were also placed on leave without pay and terminated.

## GENERAL ALLEGATIONS

68.     Plaintiffs realleges and incorporates by reference Paragraphs 1-67 of this Second Amended Complaint as if fully set forth herein.

69.     All conditions precedent to filing this action and to recovery of all relief sought in this Complaint have been satisfied, excused or waived.

70. Plaintiffs allege that the City Orders were and are unenforceable as a matter of law for the following reasons:

    a. They are preempted by the Occupational Safety and Health Act of 1970 ("OSHA Act"), as amended, Public Law 91-596, 29 U.S.C. 651 e seq, because all the Vaccine Orders only apply to City Employees as workplace safety orders and are not orders of general applicability for the general "public health".

    b. they violate the Supremacy Clause; and

    c. they violate the New York State Public Health Law (PHL) §206(1)(l), which prohibits the NYDOH ("Commissioner") from establishing regulations that mandate adult vaccination. (See PHL §206(1)(l)

71. Pursuant to its exclusive power over matters of occupational health and safety, the federal government (long before the Covid-19 Pandemic) has established a comprehensive systems of laws, regulations, procedures, and administrative agencies to regulate occupational safety and health.

72. Congress created OSHA upon a finding that "personal injuries and illnesses arising out of work situations impose a substantial burden upon and are hindrance to interstate commerce in terms of lost production, wage loss, medical expenses, disability compensation." 29 U.S.C. § 651(a).

73. The OSH Act explicitly states that the Secretary of Labor is responsible for setting "mandatory occupational safety and health standards applicable to business affecting interstate commerce, and by creating Occupational Safety and Health Review Commission for carrying out adjudicatory functions." 29 U.S.C. §651(b)(3).

74. OSHA standards are applicable to New York City through the New York Public Employee Safety and Health (PESH) State Plan which covers all state and local government workers in the state and the New York PESH has adopted much of OSHA standards under the New York State Plan included in 29 CFR 1952.24.

75. The OSH Administration has promulgated under the general duties clause Section 5(a) regulations which places on each employer the duty "to furnish to each of his employees' employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; and shall comply with occupation safety and health standards promulgated under the Act". 29 U.S.C. §654a

76. The OSH Administration has promulgated regulations that mandate employers to comply with the "Respiratory Protection" regulations at any time, including during a Pandemic, at 29 C.F.R. §1910.134(a)(1) atmospheric contaminations in the forms of sprays or vapors exist in the workplace, which under the general duty clause, it is the duty of the employer eliminate "recognized hazards" that are causing or are likely to cause death or serious physical harm to employees. See Affidavit of Expert Bruce Miller, Exhibit #2

77. The OSH Administration has promulgated regulations which apply to Respirators and Respiratory Protection Plan pursuant at 29 C.F.R. 1910.134(a)(2) that can protect employees and the public whom employees may serve from exposure to atmospheric contaminations, including the airborne virus that causes Covid-19, that can cause severe injury and death.

78. The OSH Administration has promulgated standards that allow New York City to utilize remote work as an administrative control to meets its general duty and utilize Powered Air Purifying Respirators which are 99.975 effective of preventing an employee's exposure to any airborne virus including Covid-19. See Affidavit of Expert Bruce Miller Exhibit 2, and See Affidavit of Expert Baxter Montgomery, MD, Exhibit #3 See Affidavit Expert Dr. Henry Ealy, NMD Exhibit #4

79. OSHA provides that "the Act is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which Federal standards have been issued under Section 6 of the Act".  29 C.F.R. §1902.1(a).

## CLASS ALLEGATIONS

80. Plaintiffs realleges and incorporates by reference Paragraphs 1-79 of this Second Amended Complaint as if fully set forth herein.

81. Class representative Plaintiffs**,** seek class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of themselves and all persons similarly situated.

82. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

83. The Class claims raise numerous common questions of fact or law, including, but not limited to:

   a. Whether the Vaccine Orders are preempted by OSHA standards because the Vaccine Orders specifically targets City employees and not a larger public health goal;

   b. Whether the enforcement of invalid Vaccine Orders violate the First Amendment, 42 U.S.C. §1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

84. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3). The common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy.

85. The claims of the named Plaintiffs are typical of the claims of the class in that the named Plaintiffs and class members claim that their right to a safe workplace pursuant to OSHA standards have been denied by City's reckless disregard to disclose to Plaintiffs their right to remote work and/or Respiratory Protections provided under OSHA Standards and subsequent denial of their right to

exercise their religious practice of abstaining from the Covid-19 vaccine and keep their job in violation of the First Amendment and the New York City Human Rights Law.

86. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

87. Thus, the named Plaintiffs seek have the same interests and have suffered the same type of damages as the class members, namely loss wages and benefits for being placed on leave without pay and/or terminated due to their refusal to submit to the Vaccine Orders

**COUNT 1 – VIOLATION OF OSHA - PREEMPTION**

88. Plaintiffs realleges and incorporates by reference Paragraphs 1-87 of this Complaint as if fully set forth herein.

89. The federal government regulates worker safety through the Occupational Safety and Health Act of 1970 (OSH Act), which is administered by Occupation Safety and Health Administration (OSHA). See 29 U.S.C. §§651-78.

90. The OSH Act authorizes the Secretary of Labor to promulgate federal occupational safety or health standards, id. § 655, that are "reasonably necessary or appropriate to provide safe or healthful employment and places of employment. § 652(8).

91. The OSH Act does not protect the general public but applies only to employers and employees in workplaces.  See, e.g., id. § 651(b)(1).18

92. The OSH Acts standards are employer mandates for the benefits of employees, without exception unless an employer seeks a variance or some exception from OSHA.

93. The OSH Act provides "Human Rights" to employees to keep them employed in a safe work environment according to the OSHA U.S. Department of Labor 2020 Publication.[1]

94. OSH Act §18b expressly pre-empts any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard, unless the State has obtained the Secretary's approval for its own plan, or any state or private employer can seek a variance to an existing standard for an experimental proposed standard, so long as the experimental variance is as effective as the existing standard. See 29 U.S.C. 655-Section 6(b)(6).

95. Several OSHA standards and directives are directly applicable to protecting workers against transmission of infectious agents, like Covid-19 and any other naval infectious variant. These include OSHA's Bloodborne Pathogens standard (29 CFR 1910.1030) which provides protection of workers from exposures to blood and body fluids that may contain bloodborne infectious agents; OSHA's Personal Protective Equipment standard (29 CFR 1910.132) and Respiratory Protection standard (29 CFR 1910.134) which provide protection for workers when exposed to contact, droplet and airborne transmissible infectious agents; and OSHA's TB compliance directive which protects workers against exposure to TB through enforcement of existing applicable OSHA standards and the General Duty Clause of the OSH Act (collectively "Infectious Disease Standards").

96. The existing OSHA Infectious Disease standards apply to the City through the approved New York State Plan approved in 1984.

97. The New York State Plan does not cover standards for Infectious Respiratory Diseases and therefore the State of New York has not taken responsibility for setting standards for any infectious

---

[1] See All About OSHA published by the U.S. Department of Labor OSHA 3302-OTR 2020 - https://www.osha.gov/sites/default/files/publications/all_about_OSHA.pdf

disease including respiratory diseases. See State Plan Standards at 12 NYCRR Part 800.6, 800.7, 800.5, 801 and 820.[2]

98. The City did not apply for a variance to implement the new experimental "Covid-19 standard" as required under 29 U.S.C. 655-Section 6(b)(6).

99. Because the Respiratory Standard and General Duty Clause are broadly written, they apply to the Covid-19 virus although not expressly identified and the existing Respiratory Standards applies specifically to Covid-19, including all variants and new novel airborne diseases.

100. The City's Covid-19 Vaccine Orders expressly states that they directly, substantially, and specifically regulate occupational safety and health for City and private employees only, and therefore, the Orders are occupational safety and health standard within the meaning of the OSH Act despite the fact that the Orders say they are for the benefit of the general public.

101. The City's Vaccine Orders are not laws of "general applicability" under the City's general state powers, because: 1.) the Vaccine Orders expressly violate the New York State Public Health Law PBH §206, which prohibits the Department of Health Commissioners from enforcing "adult immunization mandates" as part of its general policing powers, 2.) they do not expressly apply to all City residents, 3.) there is no automatic opt out provision that allows employees to just pay a reasonable fine for refusing to comply.

102. The City's Vaccine Orders also conflicts with the methods by which the OSHA standards control infectious diseases because the Covid-19 vaccine does not eliminate an employee's exposure to nor remove the Covid-19 airborne viral contaminant from the atmosphere in the workplace, which is the sole objective and method of the OSHA Respiratory standard which is a workplace environmental protocol to works on the outside of the employees' body to keep them safe. See

---

[2] See New York State Plan Codes, Rules and Regulations at https://dol.ny.gov/system/files/documents/2021/03/part801-805.pdf

*International Paper Co. v. Ouellette*, 479 U. S. 481, 494 (1987). (Held that "state law is pre-empted when it conflicts with the method by which the federal statute was designed….").

103. The Vaccine Orders implement a "medical treatment" that is injected into the body of employees that effects the employee's natural immune system but does nothing to shield the employee from exposure to any airborne viral contaminant, specifically the airborne virus that causes Covid-19.

104. The Vaccine Orders also conflict with general scheme of the OSHA Act (which was to place a non-delegable duty on employers to create safe workplaces to retain employees) because the Orders:

    a. shifts the employer's nondelegable duty to provide safety equipment and/or engineering modifications to provide a safe workplace for employees and places that duty onto the employee to submit to an "experimental" method to keep their job and to try to create a safe workplace;

    b. unreasonably penalizes employees with job, wage and retirement loss contrary to the October 5, 1990 OSHA Directive that prohibits employee sanctions; and

    c. the proposed experimental standard is not effective as the existing OSHA Respiratory standards as required by 29 U.S.C.  because it neither removes from the atmosphere nor eliminate an employee's exposure to the airborne virus that causes Covid-19.

105. On May 18, 2021, a New York State agency adopted the OSHA Respiratory standard 29 CFR 1910.134, and lists Powered Air Purifying Respirators (PAPRs) as an engineering safety device, which could have been adopted and implemented by all City agencies in order to provide PAPRs to employees who refused to take the Covid-19 on religious grounds and could not perform their jobs remotely. See Directive 4068 dated 5/18/2021[3]

106. Based on the foregoing, the City's Vaccine Orders are preempted by the OSHA Act.

---

[3] See May 18, 2021 New York State Directive 4068 at https://doccs.ny.gov/system/files/documents/2021/05/4068.pdf

## COUNT II – VIOLATION OF THE SUPREMACY CLAUSE
### (Article VI, Section 2, of the United States Constitution; 42 U.S.C. §1983)

107. Plaintiffs realleges and incorporates by reference Paragraphs 60-73 of this Complaint as full set forth herein.

108. Article VI, Section 2, of the United States Constitution, known as the Supremacy Clause, provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land, and the Judges in every State shall be bound thereby, anything in the Constitution of Laws of any State to the Contrary notwithstanding.

109. The Supremacy Clause mandates that federal law preempts any state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government.

110. In 1979, the United State Government through the Department of Labor legislated Safety and health Regulations for General Industry 29 C.F.R. §1910.134. New York City is subject to these OSHA Act requirements.

111. Pursuant to 29 U.S.C. §667, entitled "State Jurisdiction and Plans," state standards for occupation health and safety may be promulgated in the "absence of applicable Federal standards." Thus, a state agency may assert jurisdiction under state law over any occupation safety or health issue with respect to which no standard is in effect under 29 U.S.C. §655.

112. As set forth in paragraphs 1 through 111 above, the OSH Act provides standards for General Industry to protect employees from air borne contaminants in the workplace through the Respiratory Standard and through administrative controls that include "remote" work for employees promulgated under 29 U.S.C. §655.

113. New York City has not obtained the requisite variance the Secretary of Labor to enact the Vaccine Orders, and the Vaccine Orders are not laws of general applicability, and they conflict with the OSHA standard methods, and general scheme of enforcement.

114. Accordingly, the Vaccine Orders and Mayor Executive Orders are preempted by the Supremacy Order.

## COUNT III – VIOLATION OF THE FIRST AMENDMENT

### (United States Constitution and 42 U.S.C. §1983)

115. Plaintiffs realleges and incorporates by reference Paragraphs 1-114 of this Complaint as full set forth herein.

116. The Commissioner for the City's Department of Health is responsible for issuing public health regulations for the City through the Commissioner's power authorized under N.Y. Public Health Law 206 – Commissioner; General Powers and Duties.

117. The Commissioner is the final policymaker for the issuance of public health regulations for the City.

118. The City's previous Commissioner in 2021 under color of law pursuant to PHL §206 issued the Vaccine Orders that caused Plaintiffs to be placed on leave without pay from around October 4, 2021 until the present for refusing to submit to the Covid-19 Vaccine Orders based on religious grounds in violation of the First Amendment.

119. The City's current Commissioner and the City's current Mayor, Eric Adams, has ratified the Vaccine Orders issued by the prior commissioner by failing to repeal the prior commissioners Vaccine Order as violative of the OSH Act express preemption clause, and the First Amendment.

120. The current Commissioner is a licensed M.D. physician in the State of New York who knew or should have known that the issued Vaccine Orders were preempted by the OSHA standards because

they conflicted with the method and scheme of the OSHA standards and the Vaccinex Orders were not regulations of general applicability because they did not apply to all City residents and they violated New York State PHL §206 which prohibits mandatory "adult vaccination".

121. The City is, therefore, liable for the acts of the Commissioner in the issuance of the Vaccinex Orders that caused Plaintiffs to be place on involuntary leave without pay for exercising their right to refuse to take the Covid-19 vaccine for religious ground in violation of the First Amendment.

122. The City's practice, along with the practice of all the City's Departments, of failing to train all City employees (including the City-Wide Panel responsible for reviewing Plaintiffs request to be exempted from the Vaccine Orders) in the OSHA Respiratory Standards and General Duty Standards caused Plaintiffs to be placed on leave without pay for exercising their right to refuse the take the Covid vaccine based on religious grounds protected by the First Amendment.

123.  The City had no compelling reason for requiring its employees to disclose their religious beliefs before meeting its duty to provide Plaintiffs and all employees appropriate infectious disease OSHA workplace safety measures.

124. The City's practice of placing employees on involuntary indefinite leave without pay for refusing to submit to the City's Vaccine Orders based on religious grounds interferes with the religious practices of Plaintiffs.

125. The City's practice and conduct violates Plaintiff's right to the free exercise of religion, in violation of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

126. The City's Vaccine Orders were invalid on the date they were executed because they were preempted by the OSHA Act; and, therefore, the City had absolutely no government interest for enforcing the Vaccine Orders and placing the Plaintiffs on involuntary leave without pay for refusing to take the Covid-19 Vaccine, when the City should have and could have allowed

Plaintiffs to either continue to work remote or provide Plaintiffs with the appropriate PAPR safety equipment so that Plaintiffs could continue to work in a safe workplace.

127. The City's above listed conduct "targeted" religious exercise and violated Plaintiffs right to the First Amendment right to free exercise of religion.

128. By acting under color of state law to deprive Plaintiffs their constitutional rights, the City is in violation of 42 U.S.C. §1983.

129. As a direct and proximate result of the City's enforcement of its preempted, invalid and unauthorized workplace safety standard in violation of the OHA Act, Plaintiffs have suffered injuries and damages, including loss of pay since around October 4, 2021, lost of retirement credits, for some of Plaintiffs and other class members, loss of unemployment benefits, damage to their employment record due to false reporting for the reasons for being placed on leave without pay and emotional distress damages.

130. Plaintiffs and other members of the class have no adequate remedy at law for the deprivation of their right to free exercise of religion and have and are continuing to suffer serious irreparable harm to their constitutional rights unless the City's Vaccine Orders are declared invalid and the City is enjoined from continuing to "lockout" Plaintiffs from working their jobs for exercising their religious practice of refusing to ingest an unauthorized "experimental" safety standard. See *Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U. S. ____* (2020) ("The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." citing Elrod v. Burns, 427 U. S. 347, 373 (1976)) Emphasis added.

131. The City's unlawful conduct was willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed on the City's implementing officials in their individual capacity as legally permissible.

## COUNT IV – VIOLATION OF THE ESTABLISHMENT CLAUSE

132. Plaintiffs realleges and incorporates by reference Paragraphs 1-131 of this Complaint as full set forth herein.

133. The City's Vaccine Orders are not OSHA approved safety standards pursuant to 29 U.S.C. 655, but rather the Orders consist of a prescription from the City's Health Commissioner for all employees to ingest a medical treatment, specifically the Covid-19 vaccine, that affects the human bodies natural immune system. See Exhibit B, Affidavit of Dr. Baxter Montgomery.

134.  The City's Health Commissioner is a M.D. physician licensed under New York laws for medical professionals who engaged in the practice of medicine when he prescribed the Covid-19 vaccine medical treatment to all City employees and private sector employees within the City.

135. The objective of the City's Vaccine Orders, as expressly stated in the Orders, has a general secular goal of reducing serious injury and death in City employees from the airborne virus that causes Covid-19.

136. The City's Vaccine Orders method of achieving its goal by prescribing a "medical treatment" not authorized by OSHA unconstitutionally results in the impermissible state sponsorship of a single religious practice over the religious practice of minority religious groups in the City.

137. The practice of medicine is one of many religious practices practiced by many ancient religions for thousands of years before the establishment of the western American medical system and said religious medical practices are still practice today.

138. Many of the Plaintiffs, including various minority faith groups like the some Hindus, Buddhist, Seventh-Day Adventist, Jainis, Jews and Muslims follow the religious medical practice of plant-based lifestyle medicine wherein adherents only ingest plant-based diet/food as prescribed in their religious teachings, as in the Biblical teaching in the Bible in Genesis 1:29. These minority faith groups also abstain from ingesting animal products to prevent and treat medical conditions,

including viral infections like Covid-19 and abstain from ingesting known harmful substances like alcohol, smoking, blood of an animal.

139.  Plaintiffs and many faith groups around the world practice religious herbal or plant medicine to treat disease. Plaintiffs and various world religious groups and individuals place their faith and trust in the practice of herbal or plant medicine over pharmacological medicine as a faith belief protected by the First Amendment.

140.  The First Amendment of the Constitution protects the individual right to the free exercise of religion, which includes the protection of religious beliefs and religious practices that flow from a belief system (whether from an established religious system or from an athiestic or evolutionary belief system) that touch and concern the human body of the person, which includes but limited to the wearing of beards, the wearing of a burka, the wearing of a yamaka, not taking blood transfusions, not eating pork or any unclean foods, and abstaining from ingesting any animal products or byproducts based on religious beliefs and abstaining from the ingesting of any harmful substances based on a belief system.

141.  The U.S. Attorney General Jeff Session's Memorandum of October 6, 2017[4] interpreting Executive Order No 13798 §4, 89 Fed. Reg. 21675 (May 4, 2017) ("AG Memo") states that a government action that bans an aspect of an adherent's religious observance or practice, compels an action inconsistent with that observance or practice, or substantially pressures the adherent to modify such observance or practice, will quality as a substantial burden on the exercise of religion.

142.  A law that conditions receipt of significant government benefits, like the "willingness to work on Saturday substantially burdens the religious practice of those who, as a matter of religious observance or practice, do not work on that day." See AG Memo page 4.

---

[4] See October 6, 2017 U.S. Attorney General Memorandum at https://www.justice.gov/opa/press-release/file/1001891/download

143. The City's Vaccine Orders, as applied, conditions retention of employment and employment benefits on all City employees submitting to the religious pharmacological medical practice of ingesting the Covid-19 vaccine and bans an aspect of Plaintiffs religious practice of abstaining from ingesting the Covid-19 vaccine, which is a substantial burden on the exercise of Plaintiffs religious practices.

144. The City locked out Plaintiffs from their jobs because they do not believe in the religious medical practice of ingesting the Covid-19 vaccine and refused to allow Plaintiffs to exercise their own religious medical practice for preventing and treating exposure to the infectious virus that causes Covid-19, including but not limited to the religious practice of Plaint-based lifestyle medicine which includes herbal remedies and abstaining from unclean foods and products.

145. The City's mandate of prescribing and enforcing only the Covid-19 vaccine as the only medical treatment acceptable to the City to allow a City employee to retain their job, violates the First Amendment Establishment Clause, because it establishes and furthers the practice of only one religious medical treatment over any other and bans all other religious medical practices.

146. Plant-Based Lifestyle Medicine is just one religious medical practice that three (3) international medical journals have determined is at least 75% effective in preventing Covid-19 in healthcare workers, yet Plaintiffs who practice their religious plant-based lifestyle medical practice have been banned from practicing their belief system and have lost their jobs because they choose to their medical practice over the Covid-19 vaccine religious medical practice. See Affidavit of Plaintiff Amoura Bryant attached as Exhibit 5 who practices Biblical Plant-Based Lifestyle Medicine.

147. The City's Order only allows Plaintiffs to remain on their jobs if they bow down to the City's religious medical treatment just because the City's Department of Health Commissioner "believes" and has "faith" in the Covid-19 vaccine to prevent the spread of Covid-19 and to reduce severe injury and death (which has not fully happened) and refuses to permit other religious medical

27

practices that can also increase the human natural immune system's ability to respond to disease and prevent sever injury and death.

148. The City's Vaccine Orders are not needed at all in the "workplace" because of the OSH Act Respiratory standards and General Duty of Clause that permits "remote work" provides the most effective methods of eliminating employee exposure to the airborne virus that causes Covi-19 and

149. The City's Vaccine Orders unduly favor's the religious medical practice of ingesting a vaccine that does not eliminate the spread of Covid-19, when the City had a secular more effective method of protecting employees in the workplace.

150. The City's Vaccine Orders are not generally applicable and are based on a religious "belief" system that the only way to prevent the spread of Covid-19 is the religious practice of utilizing pharmacological vaccines to treat disease rather than allowing other religious medical practices of the Plaintiffs to prevent exposure to the infectious disease.

151. People exercise their faith and belief in the pharmaceutical practice of medicine every time they submit to a physician prescription or take an over-the-counter medication regardless of whether they adhere to any specific faith.

152. In the U.S. there are religious medical practices that include natural pathic herbal medicine, chiropractic medicine, preventative medicine, plant-based lifestyle medicine and collectively they all reflect the belief system of the people they serve.

153. Physicians from any belief/religious medical practice must obtain consent from any person they treat with a prescribed treatment.

154. The City did not receive the consent of Plaintiffs because they did not believe in nor have faith in the pharmacological religious practice of ingesting a Covid1-9 vaccine and therefore, the City's lockout of the Plaintiffs because of their rejection of the religious practice of ingesting the Covid-19

vaccine is the establishment of the one religious pharmacological vaccine practice without including other religious medical practices.

155. Because the City had an alternative means of achieving the same interest of stopping the spread of Covid-19 in the workplace (which was to comply with the OSHA mandates) without raising concerns under the First Amendment, the City's requirement that Plaintiff's disclose their religious beliefs and practices only to deny their religious practice because their practice did not conform to the religious practice of taking the Covid-19 vaccine was for the "purpose" of establishing one religious practice over another. See *Jimmy Swaggart Ministries v. State Bd. of Equalization*, 250 Cal.Rptr. 891, 204 Cal.App.3d 1269 (Cal. App. 1988)

156. The "effective" of the City's Vaccine orders was the violation of the First Amendment Establishment Clause which prohibits government actions that unduly favor one religious practice (the religious Covid-19 vaccine) over another religious practice of abstaining from ingesting the Covid-19 vaccine. Id.

157. The City's Vaccine Orders do not incidentally affect religion; rather the Order as applied allows those who religious practices include ingesting vaccines to keep their jobs, while locking out Plaintiffs whose religious practice do not include ingesting the Covid-19 vaccine. *Kennedy v. Bremerton School District* 597 U.S. ____ (2022)

158. The City's Vaccine Orders imposed the Covid-19 religious pharmacological medical practice as "precondition" for Plaintiffs retaining their jobs.

159. The City's Vaccine Orders is not a time, place and manner regulation.

160. The First Amendment protects the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through "the performance of (or abstention from) physical acts." See *Kennedy v. Bremerton Sch. Dist*., 597 U.S. _____ (2022) citing Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872, 877 (1990).

161.  Plaintiffs do not "shed their constitutional rights" to exercise their religious medical practice just because they consent to work for the City.

## COUNT IV
### (Religious Harassment and Discrimination pursuant New York City Human Rights Law)

162.  Plaintiffs realleges and incorporates by reference Paragraphs 1-161 of this Complaint as full set forth herein.

163.  Because the City's Order was preempted by the OSHA Act, the City had no authority to require Plaintiffs or any City employee to submit to the City's Vaccine Orders nor did the City have authority to make compliance the Vaccine Orders a condition for retaining employment with the City.

164.  The City violated the Plaintiffs rights protected by the City's Human Rights Law (CHRL) when it made the Vaccine Orders a condition for retaining their employment, in violation of the CHRL Administrative Code § 8-107 Subdivision (3)(a), which states that, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer …… to:

> impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day or the observance of any religious custom or usage," (§ 8-107 [1] [a] [3].

165.  The City had no authority to require Plaintiffs or any City employee to request a religious exemption and to disclose their religious practices as a pre-condition for them receiving an exemption from the illegal Vaccine Order or as a pre-condition for receiving the OSH Act right to either work remotely or to receive safety equipment, like the PAPR.

166.  The City's investigation into Plaintiffs religious practices and denial of their request for an exemption from the Vaccines Orders was intended to unlawfully harass and coerce Plaintiffs to violate or forego

their religious practice of abstaining from taking the Covid-19 vaccine, when the OSHA Act provided more than adequate safety provisions that did not require Plaintiffs compliance Vaccines Orders.

167. The City's also intentionally failed to train and inform Plaintiffs of their OSH Act right to work remote or to receive safety equipment like the PAPR so that Plaintiff would not file complaints with OSHA and so that the City could continue to harass and coerce Plaintiffs to violate their religious practice of abstaining from taking the Covid-19 vaccine.

168. The City's act of placing Plaintiffs on involuntary leave without pay and locking them out of their jobs because of religious practice of abstaining from taking the Covid-19 vaccine for the purpose is harassment and extreme and outrageous conduct intentionally or with reckless indifference to Plaintiffs to right to practice their religious practice.

169. The City's is continuing to harass Plaintiffs in their most recent letter to them, dated around June 27, 2022 stating that they can return to their jobs if they violate their religious practice and take the Covid-19 vaccine.

170. The City act of denying Plaintiff's their unemployment benefits by falsely claiming to the New York Department of Labor that Plaintiffs were terminated from their jobs because of a violation of "condition of employment" amounts to intentional harassment and extreme and outrageous conduct because the illegal Vaccines Orders were preempted by the OSHA act and therefore not valid "conditions of employment".

171. The City's wrongful intentional harassment and discriminatory adverse action listed above have caused Plaintiffs severe emotional distress in violation of New York City Human Rights Law (CHRL) codified in Administrative Code § 8-107, entitled <u>"Unlawful Discriminatory Practices."</u>

172. On November 1, 2021, the New York City Human Rights Commission issued its anti-discrimination guidelines regarding New York City Human Rights Laws[5] titled "COVID-19 & Employment Protections," which relevant parts state as follows:

> Employers must **not discriminate against** or **harass employees** with actual or perceived infection with COVID-19, or based ……..on the presumption that they …….are more likely to contract COVID-19 due to …..**religion** or another protected status.
> (See "Guidelines attached Exhibit #28)

173. Even after the City's Human Rights Commission issued the anti-harassment and discrimination guidance, the City continued to harass Plaintiffs by keeping them on involuntary leave without pay, and denying them unemployment benefits.

174. Under information and belief, all of the Plaintiffs were not given the opportunity to engage in "Cooperative Dialogue" with the City as required by CHRL §8-102, wherein the City made a "good faith" effort either in writing or oral dialogue to discuss with Plaintiffs the available rights to remote work or receive safety equipment pursuant to OSH Act standards.

175. Because the City's Vaccine Orders violated the OSH Act and the City had a duty to provide either remote work or OSHA approved safety equipment so that Plaintiffs could continue to work, the City could not claim "undue hardship" as an excuse for failing to comply with the existing OSH Act standards.

176. The City required each Plaintiff to apply and/or reapply for religious exemptions, when they knew all along that they were never going to provide any accommodation that would allow any of the Plaintiffs to remain in their jobs either within their facilities or to work from home.

---

[5] See all amendments to the CHRL at https://www1.nyc.gov/site/cchr/law/amendments.page

177.   The City knew or should have known that OSHA pre-empted all of their Vaccine Orders and that the hostility express toward the faith of employees did not absolve the City from its Duties under OSHA.

178.   The City's acts of allowing Plaintiffs to make two and three requests for religious accommodations that were never going to be provided were acts of harassment and hostility in violation of the NYCHRL.

179.   Defendant and each of them have recklessly disregarded the Human Rights of all Plaintiff by over and over denying them their right to safety equipment mandated by OSHA to be provided to them without exception and/or to the available reasonable accommodations that could have made the workplace safe.

## PRAYER FOR RELIEVE

180.   Declaratory judgement pursuant to See 28 U.S.C. § 2201(a), declaring that the OSHA Act preempts the City's Vaccine Orders and are void;

181.   Injunctive relief pursuant to Federal Rules of Civil Procedure §65 enjoining the continued enforcement of the Vaccine Orders and mandating the City to reinstate Plaintiffs from their involuntary leave without pay status as follows:

    a.   Plaintiffs seek immediate reinstatement to their positions at the same pay and seniority.

    b.   Plaintiffs seek the appropriate workplace safety controls that will allow them to work their jobs safely either remotely for those who can and for those who need respirator equipment to be provided with a PAPR safety equipment for when Plaintiffs come in close contact with the public, so that they can perform their jobs.

182.   Pursuant to their Section 1983 Claim and New York City Human Rights Claims, Plaintiffs also seek:

    a.   Plaintiffs seek back pay for the time separated from Defendant until return to work.

    b.   Loss payments into retirement fund and reinstatement of loss time into retirement calculation.

c.  Expungement of discipline codes from each employee's personnel file and records

d.  Mental and emotional distress damages.

e.  Plaintiffs seek punitive damages in an amount to be determined by a jury.

f.  Attorney fees and costs.


Dated: July 11, 2022                          Respectfully submitted,

                                              /s/ *Jo Saint-George*

                                              _____
                                              Jo Saint-George, Esq. (Pro Hoc)
                                              Chief Legal Officer
                                              Women of Color for Equal Justice
                                              Co-Counsel for Class Plaintiffs
                                              14216 Dunwood Valley Dr
                                              Bowie MD 20721-1246
                                              jo@woc4equaljustice.org


                                              Donna Este-Green, Esq. Bar#2517688
                                              *Attorney for Class Plaintiffs*
                                              *25 Fairway Dr.*
                                              *Hempstead, NY 11550*
                                              Women of Color for Equal Justice

                                              Tricia S. Lindsay, Esq.
                                              531 E. Lincoln Ave., Suite 5B
                                              Mount Vernon, New York 10552
                                              ph:  860-783-8877
                                              fax:  914-840-1196
                                              email: TriciaLindsayLaw@gmail.com
                                              email: attorney@tricialindsaylaw.com
                                              website: https://tricialindsaylaw.com/