

*Jo Saint-George*
*Phone: 602-326-8663*
*Fax:  (202) 830-2005*
*E-mail:*
*jo@woc4equaljustice.org*

**VIA ECF**

July 25, 2022

Honorable Eric Komitee United States District
Court Easter District of New York 225 Cadman
Plaza East, Courtroom 6G North Brooklyn,
New York 11201 New York, NY 10007

> Re:  <u>Women of Color for Equal Justice et al. v. New York, et. al</u>
> .       Civil Action No: 22-cv-02234 - LM No. 2022-021670
>       **Pre-Motion Letter In Support of Plaintiffs' Motion For Summary Judgement**

Dear Judge Komitee:

Pursuant to Your Honor's Individual Practices and July 20, 2022 Order, Plaintiffs, Woman of Color for Equal Justice, et al. (WOC4EJ) submits this letter in support of its motion for Summary Judgment requesting a declaration that the New York Department of Health Covid-19 Vaccine Orders ("NYC Vax Orders")[1] are unconstitutional violative of the Supremacy Clause, invalid, and void because the Order violate the express preemption provision in the OSHA Act of 1970 and conflicts with its overall objectives.

## I    Federal Question Jurisdiction

This Court has original subject matter jurisdiction over Plaintiffs claims because the complaint seeks declaratory judgment and injunctive relief to invalidate the NYC Vax Orders and to preclude their enforcement as violative of the OSHA Act of 1970[2]. *Fleet Bank, 160 F.3d at 888-89 (2nd Cir. 1998)* (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)). As the Second Circuit explained,

> the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law . . . . A party is not required to pursue "arguably illegal activity . . . or expose itself to criminal liability before bringing suit to challenge" a statute alleged to violate federal law.

See *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144-45 (2d Cir. 2016) (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015)) (holding that plaintiffs who were threatened with escalating fines and other sanctions under the local laws could invoke federal jurisdiction to enjoin enforcement on the ground that the laws were enacted in violation of a federal statute's procedural prerequisites)

## II    Supremacy Clause

The Supremacy Clause of the Constitution "supplies a rule of priority," *Va. Uranium, Inc. v. Warren*, —— U.S. ——, 139 S. Ct. 1894 1901, 204 L.Ed.2d 377 (2019), and provides that the "Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges

---

[1] NYC VAxx Orders – Second Amended Complaint, Page 35 – 42 at https://woc4equaljustice.org/wp-content/uploads/2022/07/Second-Amended-Complaint-Ex-1-4_opt.pdf
[2] OSH Act of 1970 - https://www.osha.gov/laws-regs/oshact/completeoshact



in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding," U.S. Const. art. 6, cl. 2. Thus, where a federal law and a state law conflict, "federal law trumps state law." Fla. *State Conf. of N.A.A.C.P. v. Browning* , 522 F.3d 1153, 1167 (11th Cir. 2008). And, "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta* , 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ; accord Wyeth v. Levine , 555 U.S. 555, 576, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021).

"[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. "The purpose of Congress is the ultimate touchstone." *Allis-Chalmers Corp. v. Lueck*, 471 U. S. 202, 208 (1985) (quoting *Malone v. White Motor Corp*., 435 U. S. 497, 504 (1978)). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll-Rand Co. v. McClendon*, 498 U. S. 133, 138 (1990); see also FMC Corp. v. Holli- day, 498 U. S. 52, 56±57 (1990). The ultimate task for this Court is to "determine whether state regulation [the NYC Vaxx Orders] [are] consistent with the structure and purpose of the…" OSH Act, as a whole…." "looking to the provisions of the whole law, and to its object and policy." *Pilot Life Ins.Co. v. Dedeaux*, 41 U.S.. 41, 51 (1987).

Congress passed the Occupational Safety and Health Act of 1970 (OSH Act) and established OSHA "to assure safe and healthful working conditions for the nation's work force and to preserve the nation's human resources." *Asbestos Info. Ass'n/N. Am. v. Occupational Safety & Health Admin*. , 727 F.2d 415, 417 (5th Cir. 1984). The Act was signed into law by President Richard Nixon with bipartisan support to create an agency "dedicated to the basic proposition that no worker should have to choose between their life and their job.[3] It expressly found that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." 29 U.S.C. § 651(a). OSHA is charged with ensuring worker safety and health "by developing innovative methods, techniques, and approaches for dealing with occupational safety and health problems." Id. § 651(b)(5). According to the OSHA agency, "The OSHA Law makes it clear that the right to a safe workplace is a **basic human right**,"[4] (Emphasis added) which makes the OSHA Act the supreme law of the land regarding workplace safety and health.

Congress authorized the Secretary of Labor (the Secretary) "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." Id. § 651(b)(3). The Secretary has "broad authority ... to promulgate different kinds of standards" for health and safety in the workplace. *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst*., 448 U.S. 607, 611, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (plurality opinion); see, e.g., *N. Am.'s Bldg. Trades Unions v. Occupational Safety & Health Admin*., 878 F.3d 271, 281 (D.C. Cir. 2017); *United Steelworkers of Am., AFL-CIO-CLC v. Marshall*, 647 F.2d 1189, 1202, 1311 (D.C. Cir. 1980); 29 C.F.R. §§ 1910.141, 1926.51.

An occupational safety and health standard is one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).  To specifically address infectious communicable diseases of any severity that are spread through airborne transmission of very small particles or droplet nuclei that contain infectious agents that can remain suspended in air for extended periods of time, OSHA over 50 years ago established several OSHA standards and directives to protect workers against transmission of infectious agents, including Covid-19, TB, SARS. These standards include OSHA's Personal Protective Equipment standard (29 CFR 1910.132), the Respiratory Protection standard (29 CFR 1910.134) which mandates employer provide employee respirators, like Powered Air Purifying Respirators(PAPR) that is 99.97% effective[5] in protecting workers and the public from exposure

---

[3] All About OSHA – U.S. Department of Labor Publication – OSHA 3302-01R 2020 – page 3
https://www.osha.gov/sites/default/files/publications/all_about_OSHA.pdf
[4] Id. page 3
[5] See Respirator Guide……..



and contact with droplets and airborne transmissible infectious agents; along with the OSHA General Duty Clause, which mandates employers to eliminate any known workplace hazard. These standards have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Pandemic[6], the Tuberculosis Pandemic[7], and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola.[8] It is undisputed that supply of respirators at the beginning of the Pandemic was increased to meet the demand.[9]

The universal primary objective of Respiratory standard "practices, means, methods, operations, or processes" is the goal of preventing atmospheric contamination in the workplace and to prevent employee exposure to airborne contaminates in the workplace atmosphere. (29 CFR 1910(a)(1). Consequently, employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. (See 29 USC 670 Section 21(d)(3), Pub.. L 105-97, §2 See *Doca v. Marina Mercante Nicaraguense*, S.A., 634 F.2d 30, 1980 AMC 2401 (2nd Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

Vaccines of any type have never been an OSHA approved "method" for eliminating airborne contaminates from the workplace atmosphere. Vaccines are a "medical treatment" that effect the human immune system. See Affidavits of OSHA Experts Dr. Baxter Montgomery and Bruce Miller, Certified Hygienist attached to Plaintiffs Complaint.[10] By definition, vaccines can never meet the universal primary objective of the OSH Act because medical treatments effect the human immune system and do not remove airborne hazards from the workplace nor prevent employee exposure to airborne atmospheric hazards of any kind. The OSH Act does not authorize the Secretary or employers regulated by the Act to prescribe medical treatments to eliminate workplace hazards. The prescribing of medical treatments is exclusively reserved to physicians licensed in the 50 states. (29 USC 651(b) – Powers of the Secretary of Labor)

It is undisputed that the OSHA Bloodborne pathogen standard does include a "process" for making Hepatitis B vaccines available (29 CFR 1910.1030(f)(1)(ii) to employees exposed to bloodborne pathogens, like Hep B and HBV. However, the standard only requires employers to "make available the Hep B vaccine." The Bloodborne pathogen standard is merely a "process" for providing employees "access" to the medical treatment of vaccines and provides a process for employers to document when an "employee…. declines to accept the Hep B vaccine." See 29 CFR 1910.1030(f)(2)(v) The standard is not a method for preventing exposure to bloodborne pathogens.

Finally, as part of the overall "human rights" the OSH Act protects, the Act also contains an express "process" by which an employee's right to decline offered immunizations based on religious grounds is protected. See 29 USC 669 Section 20(a)(5). Since its enactment in 1970, the "Religious Objection Protection" standard in 20 USC 669 20(a)(5) has existed which states as follows:

> **Nothing in** this or any other provision of **this Act shall be deemed** to authorize or **require** medical examination, **immunization**, or treatment **for those who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others.

It is clear from a plain reading of standard that the aim of the standard is to protect employee's First Amendment rights by:

---

[6] World Health Organization declared H1N1 a global pandemic in 2009. https://www.youtube.com/watch?v=10Nfk0zcTAk
[7] OSHA report on TB global impact - https://www.osha.gov/tuberculosis
[8] See
[9] See article regarding Ford Motor Co. manufacturing PAPRs in 2020- https://corporate.ford.com/articles/products/ford-producing-respirators-and-masks-for-covid-19-protection.html
[10] See Affidavits starting on Page 59-10 of the Second Amended Complaint - https://woc4equaljustice.org/wp-content/uploads/2022/07/Second-Amended-Complaint-Ex-1-4_opt.pdf



1. providing an "automatic" exemption or right to object to any immunization "recommended" under the OSHA Act;
2. placing no preconditions or prerequisites on an employee's right to object to any immunization related to any workplace "health" or safety; employees do not need to explain their religious beliefs or practices to obtain the exemption or to obtain the safety equipment or measures employers have a duty to provide to create a safe workplace;
3. preventing employers from refusing to provide mandated safety equipment, methods or measures required under the OSH Act to keep the objecting employee safe;

While the Religious Objection Protection standard contains a limit on an employee's right to object on religious grounds, the limit is a "strict scrutiny" exception wherein an employee's religious exemption from immunization can only be rejected after the Secretary or an employer establishes that an immunization is "necessary" for the protection of the health and safety of others.

Because immunizations are not an authorized OSHA safety "method", this Court must look to the standard in 29 USC 655 Section 6(d) on "variances" to determine if any immunization can be "necessary". 29 USC 655 Section 6(b) states as follow:

"Any affected employer may apply to the Secretary for a rule or order for a **variance from a standard** promulgated under this section.. . . .  The Secretary shall issue such rule or order if he determines on the record, after opportunity for an inspection where appropriate and a hearing, that **the proponent of the variance has demonstrated by a preponderance of the evidence** that the conditions, practices, means**, methods**, operations, or processes used or **proposed to be used by an employer will provide** employment and places of employment to his employees which are **as safe and healthful as those which would prevail if he complied with the standard**.

A plain reading of the variance requirement makes clear that an employee's religious objection to any immunization requirement can only be rejected after an employer or the Secretary establish by preponderance of evidence that an immunization can eliminate or remove airborne virus contaminants in the atmosphere or prevent employee exposure to airborne contaminates better than the existing OSH Act Respiratory and General Duty standards.  Because immunizations can never prevent or remove dangerous airborne contaminants from the air and are "medical treatments", there could never be a scenario where vaccines/immunizations could ever be "necessary" pursuant to the OSHA safety scheme. It is for this reason that OSHA has never mandated immunizations of employees in any workplace and the Religious Objection Protection has never been repealed.

It is through this plain reading of the relevant standards of the OSHA Act that the NYC Vaxx Orders must be reviewed for preemption and ultimately determined to be void and unenforceable.

**III      Expressed Preemption by the OSH Act**

The U.S. Supreme Court held in *Gade v. National Solid Wastes Management Assn*., 505 U.S. 88 (1992), that "when a state law directly and substantially regulates workplace safety or health issue with respect to which a federal standard has been established, then the state law or regulation is preempted" and declared unconstitutionally void.  The *Gade* Court found that express preemption exists in the OSH Act at 29 USC 667 Section 18(b) wherein a state must meet the procedural pre-requisite in the section to avoid federal OSHA preemption, as stated below:

"a State "shall" submit a plan if it wishes to assume responsibility for developing and enforcing health and safety standards."

The Supreme Court concluded that the "statute is clear…[t]he most reasonable inference from this language is that when a State does not submit and secure approval of a state plan, it may not enforce occupational safety and health standards in that area….. the structure and language of §18 leave little doubt that in the OSHA statute Congress intended to pre-empt supplementary statute regulations of an



occupational safety and health issue with respect to which a federal standard exists." Id at 112-113.

Although New York State has a State Plan applicable to state and municipal[11] employers and employees, the plan does not include an approved plan for infectious disease or respiratory standards. The New York Department of Labor expressly adopted OSHA Covid-19 ETS of Jun 2021, which among other things, only encourages vaccination by requiring employers to provide reasonable time and paid leave for employee who choose to be vaccinated.

Nothing in the ETS mandated employees to be vaccinate, which is consistent with the OSHA safety scheme. See ETS §1910.502(c). Furthermore, the November 11, 2021 OSHA ETS expressly states that it "encourages vaccination" but does not require employers to mandate vaccination as a term of employment for employee.

These undisputed facts establish that New York City has not obtained approval from Secretary of Labor to implement a Covid-19 vaccination mandate as a new workplace safety "method" for City employees. The NYC Vax Orders does not simply "encourage" employee vaccination. The Orders specifically requires employees to provide proof of vaccination or be removed indefinitely from the workplace and placed in involuntary leave without pay (ILWOP).[12] Nowhere in the OSHA ETS or in the OSH Act are employers empowered to permanently terminate employees or place them on ILWOP.

Because the City has not obtained approval from the Secretary of OSHA and has not obtained a "variance" with proof by a pre-ponderance of the evidence that the Covid-19 vaccine is as effective as a PAPR mandated under the Respiratory Standards or as effective as the method of "remote work" utilized by the City authorized under the General Duty Clause, the NYC Vax Orders are expressly preempted and should be declared void as violative of the OSH Act.

## IV     The NYC Vax Orders Are Not Saved As Laws of General Applicability

While state laws that directly regulate worker health and safety are expressly preempted in the absence of approval of the Secretary, the *Gade* decision also held that state safety laws can be saved from preemption, if the law: 1) is "generally applicable" issued under a states general police power, and 2) does not conflict with OSHA standards. Id. at 109.    The NYC Vaxx Orders, however, are not regulations of general applicability.

The U.S. Supreme Court defined laws of general applicability, in the context of "health and safety" standards generally governed by OSHA standards, as laws that "regulate workers simply as members of the general public…" Examples of laws of general applicability are "traffic safety or fire safety," "taxi, bridges or tunnel regulations or criminal laws that "regulate the conduct of workers and nonworkers alike" or regulate workers in non-workplaces to protect the public. Id. 107, See also *Steel Institute of New York v. City of New York*, 716 F.3d 31,38 (2nd Cir. 2013) (held New York law regulating construction cranes outside the workplace as generally applicable to the safety of the general public.) See also *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 883-90 (1990) (a neutral criminal law that penalizes any person who ingests or smokes Peyote, defined as an illegal controlled substance is a law of general applicability)

"[A] law is not generally applicable if it has a system of individualized and discretionary exemptions that allow the government to consider, and grant an exemption based on, a person's particular reasons and circumstances for deviating from the law. See *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1877 (2021) and *Hashmi v. City of Jersey City* (D. N.J. 2021).

The NYC Vaxx Orders do not regulate City and private industry workers as members of the

---

[11] See OSHA approved New York State Plan https://www.osha.gov/stateplans/ny and New York Department of Labor Safety and Health Laws - https://dol.ny.gov/public-employee-safety-health
[12] See New York City Department of Corporate Counsel December 20,2021 legal "Guidance on https://www1.nyc.gov/assets/doh/downloads/pdf/covid/vaccination-workplace-accommodations.pdf



general public. The Orders do not apply to all residents of the City and in no way regulates the conduct of nonworkers the same as workers.  All of the Vaxx Orders only require employees to provide proof of vaccination, including City employees, City contractors, or vendors entering City owned or leased buildings, or employees working for private employers, including self-employed/sole practitioners located in the City.  The Orders directly and substantially regulates only workers in workplaces in the City. The Vaxx Orders do not require unemployed, retired, disabled, or children who reside in the City to provide proof of vaccination to the City in order to live in the City.

Also, the Orders in this case are in no way similar to the City's generally applicable measle vaccine regulation issued April 17, 2019. See *C.F. v. N.Y.C. Dept of Health & Mental Hygiene*, 191 A.D.3d 52 (N.Y. App. Div. 2020). The New York State Court of Appeals, in the *C.F.* case found that the City's measle regulation was generally applicable because it applied to ALL residents over the age of six months old residing in certain areas of Brooklyn/Williamsburg and it allowed anyone to "opt-out" of the mandate by paying a fine, among other exemptions, and the regulation did not declare "unvaccinated people to be a public nuisance". Id at 56-57. While the New York Court of Appeals did not address the issue of whether the fines were unconstitutionally excessive[13], the fact that the regulation had an "automatic opt-out" fine, irrespective of its excessiveness, was dispositive in its determination that the regulation was generally applicable. The law was neutral because it allowed all residents who wanted to be exempt from the regulation to obtain an exemption by paying the fine without having to disclose their religious beliefs or practices, or medical status. Also,  residents were not required to make a request to the City and the City had no discretion to deny the "automatic opt-out fine".

The Vaxx Orders in this case do not contain any "automatic opt-out" fine that any City or private industry employee could pay to be automatically exempted from the requirement to provide proof of vaccination. Furthermore, the City Vaxx Orders requires employees to request a "reasonable accommodation" to be exempted from the Orders, which gives employers the right to refuse any accommodation that the employer does not believe is "reasonable" without reference to OSH Act mandates to provide safety equipment. The Orders state as follows:

"Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law."  See October 21, 2021 Order as Exhibit _____

Also, City Department of Corporate Counsel December 20, 2021 legal memorandum titled *Guidance on Accommodations for Workers* also proves that the Vaxx Orders are not generally applicable because the legal memo expressly states that "workplaces are required to exclude staff who are not vaccinated and do not fit within exceptions" and that "[e]mployers may deny accommodations that impose an undue burden on the employer."  The legal guidance memo references EEOC guidance; but makes no reference to OSHA standards for the mandatory duty of employers to provide workplace safety equipment or job modifications to provide a safety workplace for employees.

Finally, adult vaccination mandates, as contained in the Vaxx Orders are not part of the City DOH Commissioner's general exercise of its powers authorized by New York State Law. The New York State Pubic Health Law §206 expressly prohibits DOH Commissioners from issuing regulations that mandate adult vaccination. PHL §206 General Powers and Duties states as follows:

"Nothing in this paragraph shall authorize mandatory immunization of adults or children….."

Based on the foregoing, the NYC Vaxx Orders cannot be saved from preemption because they are not regulations of "general applicability".

---

[13] The New York Court of Appeals suggested that the $1,000 fine, if enforced (which at the time no one was fined), could have been unconstitutionally excessive by the Courts reserving the issue for a separate action in the event a fine was imposed)



**V       Conflict with the Entire OSH Act Scheme**

Even if a state or municipal regulation may be within a state's authorized power (which Plaintiffs do not concede in this case), the Supreme Court held in *Gade* that if a state/municipal regulation interferes with or is contrary to federal law", under the Supremacy Clause, the municipal regulation must yield and "give way to the paramount federal legislation." Id. at 108. This legal doctrine of "conflict preemption" occurs "where (1) 'compliance with both federal and state regulations is a physical impossibility,' or (2) 'the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (quoting *Arizona v. United States* , 567 U.S. 387, 399, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n , 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) See *Hines v. Davidowitz*, 312 U. S. 52, 67 (1941); *Felder v. Casey*, 487 U. S. 131, 138 (1988); Perez v. Campbell, 402 U. S. 637, 649 (1971).

As previously discussed, the City Vaxx Orders requiring employees to provide proof of Covid-19 vaccination conflicts with the overall methods and processes of the OSHA Act, specifically forcing employees to comply with an unauthorized medical treatment and conflicts with the process of providing automatic exemptions to employees that reject immunization.

The Order also conflict with the OSH Act because employers have a nondelegable duty to eliminate "recognized hazards" that are causing or are likely to cause death or serious physical harm to employees. See *Doca v. Marina Mercante Nicaraguense, S.A*., 634 F.2d 30, 1980 AMC 2401 (2nd Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.) Employers are strictly liable and sanctioned for failing to meet OSH Act standards See 29 USC 658, Section 9(a), and employees can never be sanctioned or penalized for violating an OSHA safety standards.  However, the Vaxx Orders shifts the employers non-delegable duty to provide a safe workplace onto employees by forcing employees to comply with an unauthorized safety method that does not prevent employee exposure to the Covid-19 airborne virus.  The Vaxx Orders penalizes employees for refusing to comply with the City's unapproved safety method by requiring employers to indefinitely remove unvaccinated employees from the workplace by placing them on involuntary leave without pay (ILWOP), despite the fact that employers fail to provide approved safety equipment to employees. The OSHA Directive strictly prohibits penalizing employees for workplace safety violations.[14]

Finally, the OSH Act safety standards do not supersede, enlarge, diminish or affect other statutory prohibitions applicable under any law regarding diseases. The "no conflict" provision of the OSH Act in 29 USC §653(b)(4) states as follows:

Nothing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or **statutory** rights, duties, or **liabilities of employers** and employees **under any law with respect to** injuries**, diseases**, or death **of employees arising out of**, or in the course of, employment.

To the contrary, the Vaxx Orders expressly conflict with New York Education Law Section 6520 which only allows licensed physicians to prescribe a medical treatment for any human disease. According to Education Law Section 6512 it is a class "E" felony to prescribe (require) medical treatment to any human person, including requiring a vaccine, when a person is "unauthorized" to practice medicine. According to the medical expert, Dr. Montgomery, the administration of vaccines is a "medical treatment". Therefore, the Vaxx Orders requires employers to prescribe the Covid-19 vaccine medical treatment to employees without a medical license in violation of Education Law Section.

Based on the foregoing, the NYC Vaxx Orders should declared void in violation of the OSHA Act, and Plaintiffs' Motion for Summary Judgment for declaratory and injunctive relief that includes job reinstatement and backpay for all Plaintiffs and all those similarly situated should be granted.

---

[14] See October 5, 1990 Directive - https://www.osha.gov/laws-regs/standardinterpretations/1990-10-05



Respectfully Submitted,

<u>/s/</u> **Jo Saint-George, Esq.**
Jo Saint-George, Esq.
Chief Legal Officer

cc:      Elisheva L. Rosen
         Assistant Corporation Counsel
         Office of Hon. Sylvia O. Hinds-Radix
         The City of New York Law
         Department 100 Church Street
         New York, New York 10007
         Phone: (212) 356-3522
         E-mail: erosen@law.nyc.gov