**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

WOMEN OF COLOR FOR EQUAL JUSTICE, et al.

                        Plaintiffs,

        v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS, COMISSIONER ASHWIN VASAN, MD, PHD DEPARTMENT OF HEALTH AND MENTAL HYGIENE, DEPARTMENT OF EDUCATION, AND DOES 1-20

                     Defendants.

_____

INDEX No.: 1:22 CV 02234-EK-LB

## PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS REGARDING SUBMISSION OF FALSE STATEMENTS OF LAW AND FACT IN DEFENDANTS MOTION TO DISMISS

Jo Saint-George, Esq.
14216 Dunwood Valley Dr.
Bowie MD 20721-1246
jo@woc4equaljustice.org
Phone: 301-447-3600

Donna Este-Green, Esq. Bar#2517688
*25 Fairway Dr.*
*Hempstead, NY 11550*

Tricia S. Lindsay, Esq.
531 E. Lincoln Ave., Suite 5B
Mount Vernon, New York 10552

*Attorneys for Women of Color for Equal*
*Justice Plaintiffs*

TABLE OF CONTENT

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

    A.  The City's Motion To Dismiss Contains False Statements of Law and The City Failed to Correct Any of the Statements Previously Made To the Court.................................2

    B.  The City's Motion Contains False and Misleading Statements of Material Fact ................3

III.  RULE 11 AUTHORITY AND LAW....................................................................5

    A.  The Court Has Authority to Impose Sanctions Under Rule 11 or the Court's Inherent Power..................................................................5

    B.  Legal Standard ..........................................................6

IV.  ARGUMENT .......................................................................................................8

    A.  The City Grossly Misrepresented the Law...........................................8

        1. Not One Court In The U.S. Has Ever Held That No Private Right of Action Exists Under OSHA For Wrongful Discharge For Exercising The OSH Act Right To Refuse Immunization ....................................................... 8

        2. It Is Obvious That the OSHA Secretary Does Not Have Authority Over Section 20(a)(5) Statutory Violations .......................................... 10

        3. The City's Interpretation of the OSH Act Renders Section 20(a)(5) Meaningless ....... 11

        4. A U.S. Supreme Court Opinion Supports A Finding That Plaintiffs Have A Private Right of Action ......................................................... 12

        5. The Legal Claim that Vaccine Mandates Are Lawful And Enforceable Is Also Objectively Unreasonable When Applied To the OSH Act ......................................... 17

        6. The Law of the Case Doctrine Does Not Bind This Court To An Erroneous Previous Ruling Based On A Misrepresentation of the Law....................................... 18

    B.  The City Willfully Misrepresented the Facts .........................................................19

        1. The Evidence Clearly Establishes Plaintiffs Timely & Sufficiently Filed Notices of Claims And That Notice of Claims Are Not Legally Required..................................... 19

        2. The Claim That The Second Circuit Has Already Dismissed All Federal Claims By Plaintiffs is Outrageously Unreasonable When Applied To Plaintiffs OHS Act Claims ...................................................................... 20

V.  APPROPPRIATE SANCTIONS.........................................................................21

TABLE OF AUTHORITIES

<u>Cases</u>

*Matter of Russell Sage Coll. v. State Div. of Human Rights*,

     357 N.Y.S.2d 171 (N.Y. App. Div. 1974) ................................................................... 24

*Mills v County of Monroe*, 59 NY2d 307 (1983) ........................................................... 23

*Picciano v. Nassau Civ. Serv.*, 736 N.Y.S.2d 55 (N.Y. App. Div. 2001) ...................... 23

*Summers v. County of Monroe*, 537 N.Y.S.2d 703 (N.Y. App. Div. 1989) ................... 24


<u>Statutes</u>

OSHA 29 U.S.C. §653 Section 4(b)(4) ............................................................................. 15

OSHA 29 U.S.C. §660 Section 11(c) ............................................................................... 13

OSHA 29 U.S.C. §660 Section 11(c)(1) ........................................................................... 17

OSHA 29 U.S.C. §660 Section 11(c)(2) ..................................................................... 16, 17

OSHA 29 U.S.C. §669 Section 20(a)(5) ......................................................... 14, 15, 16, 17

OSHA 29 U.S.C. §658 (a) Section 9 ................................................................................ 16

OSH Act in 1970 .............................................................................................................. 13

Title 18 U.S.C. Section 241 and 242 ............................................................................... 27


<u>Rules</u>

Fed.R.Civ.Pro Rule 11 ....................................................................................................... 5

Rule 11(b)(1), (2) & (3) ...................................................................................................... 6

Rule 11(c)(1) & (4) ............................................................................................................. 6

Rule 11(c)(3) ....................................................................................................................... 6


<u>United States Supreme Court Cases</u>

*Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990) ............................. 21

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) ........................................................... 20

*United States v. Alpers*, 338 U.S. 680, 682, (1950) ....................................................... 17

*Smith v. Wade*, 461 U.S. 30 (1983) ................................................................................ 26

*Whirlpool Corp. v. Marshall*, 445 U.S. 1, 100 S. Ct. 883 (1980) ................................. 17

<u>Federal Court Cases</u>

*Collie v. Kendall, Civ. 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435 (N.D. Tex. July 6, 1999)* 5

*In re Air Crash Disaster at Washington, DC, 559 F. Supp. 333 (D. D.C. 1983)* ........................ *12*

*Knestrick v. IBM, 945 F. Supp. 1080, 1083 (E.D. Mich. 1996)*.................................................. *13*

*Perez v. United States Postal Service*, 76 F. Supp. 3d 1168, (W.D. Wash 2015…………………...22

*Quirk v. DiFiore, 2022 U.S. Dist. LEXIS 16063 (S.D.N.Y. Jan. 28, 2022)* ................................. *14*

 *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994)………………..22

<u>Federal Court of Appeals</u>

*Associated Indem. Corp. v. Fairchild Indus., Inc*., 961 F.2d 32, 36 (2d Cir. 1992) ...................... 5

*Brubaker v. City of Richmond* , 943 F.2d 1363, 1385 (4th Cir. 1991).......................................... 12

*Donovan v. Occupational Safety & Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983)................ 14

*Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) .................................................................... 11

*Hernandez v. Joliet Police Dep't*, 197 F.3d 256 (7th Cir. 1999)................................................. 13

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc*., 73 F.3d 1253, 1259 (2d Cir. 1996)...................... 11

*O'Brien v. Alexander,* 101 F.3d 1479, 1482 (2nd Cir. 1996)...................................................... 10

*O'Malley v. N.Y.C. Transit Auth*., 896 F.2d 704, 709 (2d Cir. 1990) .......................................... 25

*Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030 (8th Cir. 2003)................................. 12

*Sec. & Exch. Comm'n v. Smith*, Docket 11-3842 (2nd Cir. 2013) ................................................ 25

*Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) .............................................. 11

*U.S. v. Cooper*, 872 F.2d 1, 3 (1st Cir. 1988) ............................................................................. 11

*Van Hoven v. Buckles & Buckles, P. L.C.,* 947 F.3d 889 (6th Cir. 2020) .................................... 12

## I.    INTRODUCTION

It is well settled law that the "making of a false statement of law or fact is ….

reprehensible"[1] and should be sanctioned by federal courts under Rule 11 of the Federal Rules of

Civil Procedure (Fed.R.Civ.Pro Rule 11).  False statements of law in pleadings to the court that

are "utterly unsupportable" or frivolous to the extent that all the law on the subject goes against a

claimed statement of law also warrants imposition sanctions. See *Collie v. Kendall*, Civ. 3:98-

CV-1678-G, 1999 U.S. Dist. LEXIS 10435, at 8-10 (N.D. Tex. July 6, 1999)  Also, groundless

statements of law are also sanctionable. *Associated Indem. Corp. v. Fairchild Indus., Inc*., 961

F.2d 32, 36 (2d Cir. 1992).

We are living in a time where "false narratives" and flat out lying is the norm on social

media, in mainstream media and regretfully in the legal community, as evidenced by admissions

and jail time spent by New York lawyer Michael J. Cohen. The Federal Rule of Civil Procedure

Rule 11 was created to deter flat out lying to the court by lawyers in the pleadings. In the words

of UN Special Independent Judge Diego Garcia-Sayan, "Corruption decreases public trust in

justice and weakens the capacity of the judicial system to guarantee the protection of human

rights."

This motion is necessary because Defendants, City of New York, et al. ("City") have

submitted false statements of law and fact to this Court in their pending Motion to Dismiss.  A

quick search on Westlaw would have revealed that the legal claims where false and documentary

evidence produced by Plaintiffs regarding their notice of claims unequivocally refutes the City's

false claims of law and fact. Consequently, Plaintiffs' requests the Court to enter Rule 11(c)(1) &

(4) sanctions before ruling on the City's Motion to Dismiss or pursuant to Rule 11(c)(3) rule on

---

[1] See *In re Air Crash Disaster at Washington, DC*, 559 F. Supp. 333 (D. D.C. 1983)

the Court's own initiative after its ruling on the City's motion because the City has willfully

violated Rule 11(b)(1), (2) & (3) for the purpose of harassing Plaintiffs and causing needless

delay. The fact that the City so flagrantly submitted false claims of law and fact in three (3)

separate filings to seek dismissal of Plaintiffs valid OSHA and Section 1983 claims is clear

evidence of the City's willful intent to deprive Plaintiffs of their civil rights, warrants substantial

sanctions to effectively prevent one of the greatest conspiracies perpetrated on U.S. citizens from

happening again.

## II.      FACTUAL BACKGROUND

### A.      The City's Motion To Dismiss Contains False Statements of Law and The City Failed to Correct Any of the Statements Previously Made To the Court

On September 2, 2023, Plaintiffs filed a Motion for Temporary Restraining Order and

Preliminary Injunction (TRO/PI) seeking to enjoin the New York City ("City") nine Covid-19

vaccine mandates (collectively the "Vaccine Mandates") and the illegal lockout of thousands of

City employees because the Vaccine Mandates violate the OSH Act safety methods standard and

violates the OSH Act express ban against the wrongful discharge of employees who refuse to

submit to taking the Covid-19 vaccine on religious grounds. See ECF #17.  On September 23,

2023, the City filed a responsive motion in opposition – see ECF #25 and made the following

false statement of law on Page 13:

> As an initial matter, **it is well established that there is no private right of action**
> under the Occupational Safety Heath Act ("OSH Act"). See 29 U.S.C. § 653(b)(4);
> Quirk v. DiFiore, 2022 U.S. Dist. LEXIS 16063, at *12 (S.D.N.Y. Jan. 28, 2022)
> (citing Donovan v. Occupational Safety & Rev. Comm'n, 713 F.2d 918, 926 (2d Cir.
> 1983)). For this reason alone, the Court must reject Plaintiffs' preemption argument.

At no time prior to this Court's order denying Plaintiffs' TRO/PI on November 11, 2023 did the

City correct its false statement of law on which the Court's denial was based upon. See ECF #39

Plaintiffs made clear in their responsive motion that their claims were not based on regulatory

2

violations that would have precluded their private right of action expressly provided in the OSH Act.

On March 8, 2023, the City filed a Motion To Dismiss for Failure to State A Claim and again the City made the following false statement of law on Page 13:

> It is well established that **there is no private right of action under OSHA**…… See 29 U.S.C. § 653(b)(4); *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320, 324-325 (2015); *Quirk v. DiFiore*, 2022 U.S. Dist. LEXIS 16063, at *12 (S.D.N.Y. 2022) (Emphasis Added)

The City also made the following additional false statement of law:

> **It is well established** that the **Vaccine Mandates are lawful and enforceable**. The Second Circuit declared that "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021).

Lastly, the City also made the following false statements of law in its Letter Motion dated April 10, 2023, in Opposition to Plaintiffs Motion for Summary Judgement:

> **It is well settled that there is no private right under the Occupational Safety Health Act** ("OSHA") or the Supremacy Clause. See 29 U.S.C. § 653(b)(4); Quirk v. DiFiore, 2022 U.S. Dist. LEXIS 16063, at *12 (S.D.N.Y. 2022) (OSHA); Armstrong v Exceptional Child Ctr., Inc., 575 U.S. 320, 324-325 (2015) (Supremacy Clause); Women of Color For Equal Justice Plaintiffs v City of N.Y. Defendants, 2022 U.S. Dist. LEXIS 207164 (E.D.N.Y. 2022) (denying request to stay pending appeal); Women of Color For Equal Just. V. City of N.Y., 2022 U.S. Dist. LEXIS 209651, at *5 (E.D.N.Y. 2022) (denying preliminary injunction). Plaintiffs cannot bring a claim of retaliatory discharge under OSHA.

**B.    The City's Motion Contains False and Misleading Statements of Material Fact**

In addition to false statements of law, the City also made the following false and misleading statements of facts in the City's Motion to Dismiss on Page 15:

> Furthermore, the letter failed to identify (a) the claimants, (b) the agencies against whom the notice of claim is being filed, and (c) any facts sufficient to put the Defendants on notice as to the nature of the claims**…… Therefore, Plaintiffs failed to file a timely or sufficient notice of claim**….

Attached are copies of the redacted notices of claim forms and cover letter submitted to the City

for Plaintiffs and on behalf of those similarly situated. See **Exhibit 1** (Redacted Notice of Claims

forms) The required notice of claims forms identify each City agency involved in the claim

including the Department of Education as a separate agency. Because the notices were completed

on the City's required notice of claim form, the notices are not only sufficient, but the supporting

letter provides additional information that adequately placed the City and the Department of

Education on notice of the nature of the claims on behalf of all similarly situated employees.

Finally, the City also made the following false contentions of fact on Page 7-8 in its

Motion to Dismiss:

> There, the Court expressly dismissed **with prejudice all federal** and as-applied
> challenges to the DOE Order …….As such, the aforementioned Plaintiffs' claims
> are precluded by their participation in the Broecker litigation…….. Moreover, the
> **instant claims are inextricably tied to the plethora of Vaccine Mandates**
> **litigation pending** in both the Eastern and Southern Districts of New York. The
> outcome of these parallel lawsuits will necessarily, and likely dispositively, affect
> the outcome of this litigation.

While Plaintiffs did not fully recognize the City's fraud in its Motion in Opposition to

Plaintiffs' TRO/PI (as Plaintiffs' counsel focused on the legal issues more so), which said false

statement of law resulted in this Court's denial of Plaintiffs requested injunctive relief, this

Motion seeks sanctions for the same false statements of law and fact continued to be made by the

City in its Motion To Dismiss for which this Court has not ruled and for which Plaintiffs' have

given the City notice of this motion over 25 days before this filing pursuant to the Rule 11 Safe

Harbor provision. (See **Exhibit 2**, Rule 11 Notice Email with Draft Sanction Motion)

Plaintiffs counsel has reviewed over 220 federal district and court of appeals cases related

to private rights of action under OSHA and it is patently clear that the City has flat out lied about

the law regarding OSHA private rights of action and Plaintiffs filing of notice of claims. The law

objectively and clearly does not support the City's claim and the evidence clearly establishes that Plaintiff's did in fact provide proper notices of claims.

The City's fraud has caused substantial harm to Plaintiffs because this Court denied preliminary injunctive relief which has caused unnecessary delay in Plaintiffs receipt of full justice in protection of their human rights.

## III.   RULE 11 AUTHORITY AND LAW

### A.   The Court Has Authority to Impose Sanctions Under Rule 11 or the Court's Inherent Power

Fed. R.Civ.P. Rule11 and the 1993 Amendment state, in summary, that every paper submitted to the district court on behalf of a represented party must be signed by an attorney of record. As amended, Rule 11(b) provides:

> "By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, "or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) **It is not being presented for any improper purpose**, such as to harass or to cause unnecessary delay or needless increase of the cost of litigation;
> >
> > (2) ………**legal contentions are warranted by existing law** or by a nonfrivolous argument…..
> >
> > (3) the **factual contentions have evidentiary support**….." (Emphasis added)

Rule 11 further provides, in subsection (c), that the court may "impose an appropriate sanction" if it finds a violation of subsection (b).   Furthermore, the Second Circuit has held that to "violate the professional standard may result in sanction under Rule 11." *O'Brien v. Alexander,* 101 F.3d 1479, 1482 (2nd Cir. 1996) The New York Rules of Professional Conduct Rule 3.3 regarding "Conduct Before A Tribunal" states as follows:

> (a) A lawyer shall not knowingly: (1) **make a false statement of fact or law** to a tribunal or **fail to correct a false statement of material fact or law previously** made to the tribunal by the lawyer; (Emphasis added)

5

The New York Rules of Professional Conduct further states that "legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it." Rule 3.3 - Page 142[2]

### B.    Legal Standard

Rule 11 places an "affirmative duty" upon attorneys to make "reasonable inquiry" into the facts and the law. *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (internal quotation marks omitted). "The standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) (internal citation omitted) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)) and see *Knitting Fever, Inc. v. Coats Holding Ltd*. (E.D. N.Y. 2012) While the court must use caution when imposing Rule 11 sanctions and seek to resolve doubts in favor of the signer of the pleading, see *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc*., 73 F.3d 1253, 1259 (2d Cir. 1996), the 1993 Advisory Committee Notes explain that Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."

Moreover, the First Circuit held in *U.S. v. Cooper*, 872 F.2d 1, 3 (1st Cir. 1988) that:

> **There is no right to advocate untruth**. **There can be no right in the name of advocacy to conjure up imagined wrongs and sling them with nothing but vindictive purpose**. Indeed the lower court correctly instructs that an attorney is not free to say literally anything and everything imaginable in a courtroom under the pretext of protecting his client's rights to a fair trial and fair representation.

---

[2] New State Bar NY Rules of Professional Conduct  -
https://www.nycourts.gov/ad3/AGC/Forms/Rules/Rules/Rules%20of%20Professional%20Conduct%2022NYCRR%20Part%201200.pdf

The Sixth Circuit further clarified the objective reasonableness standard to be applied to false statement of law when it held as follows in the case *Van Hoven v. Buckles & Buckles, P. L.C.,* 947 F.3d 889 (6th Cir. 2020)

> Just because a court ultimately disagrees with the attorney's argument doesn't mean it was "[un]warranted by existing law" at the time it was made. See *Snow Ingredients, Inc. v. SnoWizard, Inc.* , 833 F.3d 512, 528–29 (5th Cir. 2016) ; see also 5A Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 1334 (4th ed. 2019). **The question instead is whether the legal contention was objectively baseless at the time it was made, making it "legally indefensible,"** *SnoWizard* , 833 F.3d at 529, or **"groundless in law**," *Brubaker v. City of Richmond* , 943 F.2d 1363, 1385 (4th Cir. 1991).

When the Fourth Circuit in the *Brubaker* case affirmed Rule 11 sanctions against a Plaintiff's counsel, the court noted that the ignorance of a party does not justify a "groundless claim" and does not allow a party to escape Rule 11 sanctions, by stating as follows:

> Plaintiffs would have us proceed under a theory where **because of the ignorance of one's adversary, one could advance a claim groundless in law**. Rule 11 does not concern itself with the failure to assert an available defense. **Rule 11 does not permit a plaintiff to avoid sanctions merely because the opposing party or the judge might not immediately recognize that the assertion is groundless.**

Finally, the U.S. District Court for the District of Columbia held in *In re Air Crash Disaster at Washington, DC*, 559 F. Supp. 333 (D. D.C. 1983) that:

> "……. **making of a false statement of law or fact is also reprehensible."**

Likewise, pleadings or motions have been held to be unwarranted by existing law if contrary to settled precedent. See *Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032-33 (8th Cir. 2003) (remanding for imposition of sanctions where "[g]iven the well-settled law of res judicata under the circumstances," counsel should have known second lawsuit was barred); *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 264-65 (7th Cir. 1999) (affirming Rule 11 sanctions where plaintiff's attorney overlooked defendant's "obvious" 11th Amendment defense and failed to voluntarily dismiss defendant after it was brought to his attention).

Lastly, an attorney's failure to uncover contrary case law was declared unreasonable and sanctionable because a court easily found contrary cases "simply by running an exceedingly straightforward search in the Westlaw electronic database." *Knestrick v. IBM*, 945 F. Supp. 1080, 1083 (E.D. Mich. 1996)  The *Knestrick* court further held that the defense counsel's conduct evidenced an unreasonable inquiry into the law before signing the notice of removal, which resulted in a frivolous misrepresentation to the court and that court sanctioned the defense counsel. The *Knestrick* court further held that "Rule 11 requires litigants to 'stop-and-think' before making legal contentions…."

## IV.   ARGUMENT

### A.   The City Grossly Misrepresented the Law

#### 1.   Not One Court In The U.S. Has Ever Held That No Private Right of Action Exists Under OSHA For Wrongful Discharge For Exercising The OSH Act Right To Refuse Immunization

The City claims that the law is "well settled or well established" that Plaintiffs do not have a private right of action under OSHA is not only an objectively unreasonable conclusion of the law, the representation and any inference is patently false and baseless for several reasons.

First, no court in the entire United States, since the enactment of the OSH Act in 1970, has ever addressed or ruled on the issue of whether the OSH Act under 29 U.S.C. §660 Section 11(c) provides a private right of action to employees who have been discharged for exercising their the right to refuse immunization provided to all employees under 29 U.S.C. §669 Section 20(a)(5) of the OSH Act. The City cannot and never will be able to point to one state, federal or municipal statute, order or law that was passed since 1970 that mandated vaccines for adults in the workplace.  Since there is no record in the courts that there has ever been any workplace vaccine mandates in the history of America prior to 2021 that resulted in employees losing their jobs for refusing a vaccine, it is impossible for the law to be "well settled" or "well established."

The law cannot be "well settled" on an issue that has never been addressed by any court in the history of OSHA and the history of America.

Second, a quick Westlaw/Lexis or Fastcase legal search would reveal that of the approximately 200 federal court cases decided since 1970 (that have ruled on or mentioned whether the OSH Act contains a private right of action) all cases have held that **only** claims by employees for either: 1) personal injuries sustained due to OSHA workplace safety violations, or 2) discriminatory or retaliatory discharges brought by employees for reporting OSHA regulatory or standards violations **do not** have as private rights of action. (See **Exhibit 3** - list of 200 cases with summary)  Of the 30 U.S. Court of Appeals cases decided in the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th and 11th circuits (See list of cases in **Exhibit 4**) that have also addressed the issue of whether the OSH Act provides a private right of action to employees, all of the cases have only held directly or indirectly that OSHA does not provide a private right of action to employees only for claims involving regulatory violations that have caused injuries or for claims of discrimination or retaliatory discharge of those who have reported regulatory violations. The two Second Circuit cases cited by the City in their Motion To Dismiss, the *Donavan* and *Quirk* cases[3], also only involved claims arising from regulatory violations and had nothing to do with the wrongful termination of employees for exercising their right to refuse immunization on religious grounds protected by 29 U.S.C. §669 Section 20(a)(5) of the OSH Act.

The obvious reason that many federal courts found that no private right of action exists under OSHA in cases involving injured employees caused by OSHA regulatory violations by employers is based on the clear language at 29 U.S.C. §653 Section 4(b)(4) of the OSH Act, which states as follow:

> Section 4(b)(4) - "Nothing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in

---

[3] See *Quirk v. DiFiore*, 2022 U.S. Dist. LEXIS 16063, at *12 (S.D.N.Y. Jan. 28, 2022) and *Donovan v. Occupational Safety & Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983))

any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."

The above provision makes clear that the OSH Act does not provide a separate private right of action for workplace injuries governed by state workers compensation law or any state law in respect to "injuries, diseases, or death" of employee. Plaintiffs' claims have nothing to do with any workplace accident that caused Plaintiffs to experience any injuries, disease or death. Therefore, the City's claim that Plaintiffs do not have a private right of action for exercising their statutory OSH Act right (not regulatory right) to refuse immunization is clearly a lie, unreasonable and groundless at best.

## 2.   It Is Obvious That the OSHA Secretary Does Not Have Authority Over Section 20(a)(5) Statutory Violations

As discussed in Plaintiff's Response to the City's Motion to Dismiss, the right to refuse immunization is a statutory right expressly granted by Congress and it is not a "regulation or standard" controlled by the Secretary of OSHA. The enforcement authority provided to the OSHA Secretary in Sections 8, 9, 10, and 11 of the OSH Act are exclusively for the investigation and sanctioning of employers for OSHA regulatory or standards violations and nothing else.  The scope of the Secretaries authority is clearly articulated in Section 9 of the OSH Act at 29 U.S.C. §658 (a) which states as follows:

"If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a **requirement of section 5 of this Act [employer Duties], of any standard, rule or order promulgated pursuant to section 6 of this Act, or of any regulations prescribed pursuant to this Act**, he shall with reasonable promptness issue a citation to the employer. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the Act, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation."

10

Nowhere in the OSH Act has the OSHA Secretary been given Congressional authority to enforce or sanction an employer for violating the statutory "Automatic Religious Exemption" contained in 29 U.S.C. §669 Section 20(a)(5).[4]  Therefore, the jurisdiction given to United States district courts in 29 U.S.C. §660 Section 11(c)(2) must and can only be interpreted to provide a "private right action" in federal court to employees who have been denied their right to refuse immunization and right to an automatic exemption on religious grounds, which jurisdiction is provided as follows:

> "In **any such action** the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." (Emphasis added)

### 3.  The City's Interpretation of the OSH Act Renders Section 20(a)(5) Meaningless

It is well settled law pronounced by the U.S. Supreme Court that when courts interpret statutory meaning the "rule of *ejusdem generis* cannot be employed to obscure and defeat the intent and purpose of Congress or render general words meaningless." See *United States v. Alpers*, 338 U.S. 680, 682, (1950)  Based on this well-established rule, it is obvious that the plain meaning of the phrase "any such action" in Section 11(c)(2) can only mean that "any employee" who believes that he has been discharged for exercising a right provided by the OSH Act, not governed by the regulatory standards, can file a wrongful discharge claim in the United States district court, including the wrongful discharge for exercising the OSH Act right to refuse any immunization, treatment or examination as provided in Section 20(a)(5).

Furthermore, the Merriam-Webster Dictionary defines the word "any" as used to indicate "one or more selected without restriction."  In the case of Section 11(c)(2), the word "any"

---

[4] Section 20(a)(5) states in part: "Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those **who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others."

would refer to any number of cases brought by the Secretary related to regulation violations, or to "any" claim brought by an employee for violation of an OSH Act statutory right, unrelated to an OSHA regulation, as a private right of action. This interpretation of Section 11(c)(1) does not leave the right to refuse immunization, treatment or examination provided to all employees in Section 20(a)(5) meaningless and without enforcement.  The City's proposed interpretation that there is no private right of action for the discharge of Plaintiffs for their exercise of their right to refuse immunization would render Section 20(a)(5) meaningless, which is directly prohibited by the "well settled" law of statutory interpretation.  Again, the City must be sanctioned for its groundless claim that Plaintiffs do not have a private right of action under the OSH Act.

### 4.    A U.S. Supreme Court Opinion Supports A Finding That Plaintiffs Have A Private Right of Action

Finally, the City had a duty to disclose the adverse holding in the U.S. Supreme Court case holding in *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 100 S. Ct. 883 (1980), which is extremely supportive of Plaintiffs' claim that the OSH Act does provide a private right of action to employees wrongly discharged for exercising their OSH Act right to refuse immunization, treatment or examination based on religious grounds provided in 29 U.S.C. §669 Section 20(a)(5).  The *Whirlpool* case was the first case after the enactment of the OSH Act in 1970 to provide a comprehensive evaluation of the rights and administrative remedies granted employees under the OSH Act for claims related to regulatory or standard violations. The *Whirlpool* decision laid the foundation for the decisions in the subsequent 200 federal cases that ruled that the OSH Act does not provide a private right of action for claims related to regulatory violations and that the administrative remedies available to employees under Section 11 are sufficient.

In *Whirlpool*, several employees refused to comply with their foreman's order to perform their usual maintenance duties on a suspended wire mesh screen in their employers

manufacturing facility because they believed the conveyor was unsafe since other employees fell and were seriously injured on the screen. The employees were ordered to punch out without working or being paid for the remainder of the shift and they received a written reprimand that was placed in their employee files. The employees filed a complaint with OSHA alleging that their employer's action of placing them on unpaid leave constituted discrimination in violation of Section 11(c)(1) of the OSH Act.  Consequently, the OSHA Secretary filed suit in federal court seeking injunctive relief and other relief on behalf of the employees. The issue in *Whirlpool* was whether the OSH Act afforded employees the right to walk off the job because of potential unsafe conditions at the workplace – called the "Self -help" remedy. The *Whirlpool* decision is relevant to this case because it establishes that the Plaintiffs, like the Plaintiffs in the *Whirlpool* case, have an expressed statutory OSHA right in Section 20(a)(5) that should be protected by through a private right of action.

The *Whirlpool* court explained the administrative remedies in the OSH Act as follows:

> "The Act itself creates an express mechanism for protecting workers from employment conditions believed to pose an emergent threat of death or serious injury. Upon receipt of an employee inspection request stating reasonable grounds to believe that an imminent danger is present in a workplace, OSHA must conduct an inspection. 29 U.S.C. § 657(f)(1). In the event this inspection reveals workplace conditions or practices that "could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by" the Act, 29 U.S.C. § 662(a), the OSHA inspector must inform the affected employees and the employer of the danger and notify them that he is recommending to the Secretary that injunctive relief be sought. § 662(c). At this juncture, the Secretary can petition a federal court to restrain the conditions or practices giving rise to the imminent danger. By means of a temporary restraining order or preliminary injunction, the court may then require the employer to avoid, correct, or remove the danger or to prohibit employees from working in the area. § 662(a).

> To ensure that this process functions effectively, **the Act expressly accords to every employee several rights, the exercise of which may not subject him to discharge or discrimination.** An employee is given the right to inform OSHA of an imminently dangerous workplace condition or practice and request that OSHA inspect that condition or practice. 29 U.S.C.§ 657(f)(1).  He is given a limited right to assist the OSHA inspector in inspecting the workplace, §§ 657(a)(2), (e), and

13

(f)(2), and the right to aid a court in determining whether or not a risk of imminent danger in fact exists. See § 660(c)(1). Finally, an affected employee is given the right to bring an action to compel the Secretary to seek injunctive relief if he believes the Secretary has wrongfully declined to do so. § 662(d).

Nothing in the Act suggests that those few employees who have to face this dilemma must rely exclusively on the remedies expressly set forth in the Act at the risk of their own safety. But nothing in the Act explicitly provides otherwise. Against this background of legislative silence, the Secretary has exercised his rulemaking power under 29 U.S.C. § 657(g)(2), and has determined that, when an employee, in good faith, finds himself in such a predicament, he may refuse to expose himself to the dangerous condition without being subjected to "subsequent discrimination" by the employer.
The question before us is whether this interpretative regulation constitutes a permissible gloss on the Act by the Secretary in light of the Act's language, structure, and legislative history. (Emphasis added) Id. at P. 9-11

The Supreme Court ultimately held that the employees had an "implied right" to walk off the job when urgent unsafe conditions exist on the job and that the OSHS Secretary had the right to protect that right through the administrative process.  Of extreme importance to this case was the Court's acknowledgment that "the Act expressly accords to every employee several rights, the exercise of which may not subject him to discharge or discrimination….." and that "[n]othing in the Act suggests that …. employees ……must rely exclusively on the remedies expressly set forth in the Act…..  But nothing in the Act explicitly provides otherwise."    Id. at 11

While the *Whirlpool* case focused on the scope of the administrative remedies available to employees under the OSH Act through the Secretaries statutory powers, the holding clearly supports the fact that the OSH Act does provide "several rights" (not all listed in the Whirlpool decision), which includes the non-administrative right provided in Section 20(a)(5) that gives employees the right to refuse vaccines on religious grounds, consistent the fundamental Free Exercise Right provided by the First Amendment. The *Whirlpool* decision stands for the proposition that employees are not required to exclusively rely on the administrative remedies set forth in the OSH Act and that Section 11(c)(2) should be interpreted to provide an express

14

private right of action to employees to remedy statutory violations that cannot be sanctioned by the OSHA Secretary under its administrative powers.

It is abundantly clear that the OSH Act has conferred to all workers the right to refuse immunization, treatment or examinations as plainly outlined in the Act at 29 U.S.C. §20(a)(5) which state as follows:

> **Nothing in this or any other provision of this Act shall be deemed to** authorize or **require** medical examination**, immunization**, or treatment **for those who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others. See §20(a)(5)

The right to refuse medical examination, immunization or treatment (or the right to "Medical Freedom") is not a right that the OSHA agency created by Congressional enactment. The right to Medical Freedom has been a guaranteed substantive common law fundamental right of every U.S citizen first recognized by the U.S. Supreme Court in 1905 in the case *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) when it was held that:

> "the inherent right of every freeman to care for his own body and health in such way as to him seems best…… the liberty secured by the Constitution of the United States to every person within its jurisdiction….." Jacobson at 26

The U.S. Supreme Court further recognized the fundamental right years later in 1990 in the case *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (holding – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.")

Congress protected each citizens fundamental right to Medical Freedom on religious grounds by expressly providing every worker a private right of action against "**any person**" who denies the right as clearly set forth in the Act at 29 U.S.C. §11(c)(1)&(2) below:

> **No person shall discharge any employee………because of the exercise by such employee ……..of any right afforded by this Act**.  Section 11(c)(1) (Emphasis added)

> **Any employee who believes that he has been discharged** or otherwise discriminated against **by any person in violation of this subsection may**, within thirty days after

15

such violation occurs, file a complaint with the Secretary alleging such discrimination. ……. **In any such action** the **United States district courts shall have jurisdiction**, for cause shown to restrain violations of paragraph (1) of this subsection and **order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay**.  Section 11(c)(2)

The federal district court in *Perez v. United States Postal Service*, 76 F. Supp. 3d 1168, (W.D. Wash 2015) further explained the legislative objective of Section 11(c) as follows:

> "Section 11(c) functions to safeguard employees against adverse actions taken on account of their engagement or suspected engagement in activity protected under the Act, thereby ensuring that health and safety violations will be reported." Perez v. U.S. Postal Serv., 76 F.Supp.3d 1168 (W.D. Wash. 2015)

Moreover, the 1st Circuit in *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994) also reviewed the legislative history of the OSH Act and found that the term "all appropriate relief" conveyed on federal courts the power to award compensatory up to 2 times backpay and punitive damages along with rehiring, reinstatement with backpay in a cause of action analogous to an intentional tort. Id. at 1194 (quoting 29 U.S.C. § 660 Section 11(c)(2)). Id at 1190-1191. Courts have also found that appropriate relief includes ……expunging negative employment references, and posting notice. See, e.g., *Marshall v. Wallace*, 1978 WL 18639, *4 (M.D.Penn.1978).

In summary, at the time the City made its claims that Plaintiff's had no private right of action under the OSH Act back in September 2022 when they opposed Plaintiff's TRO/PI and then again in March 2023 as the main argument in the City's Motion to Dismiss, those claims were baseless, indefensible, and objectively absurd. The City flat out willfully disregarded the plain language of the OSH Act and willfully disregard the rights of Plaintiffs.  The City has committed fraud on the Court which must be sanctioned, especially since the City has refused to recant its willfully fraudulent claims.

**5.     The Legal Claim that Vaccine Mandates Are Lawful And Enforceable Is Also Objectively Unreasonable When Applied To the OSH Act**

In the City's Motion to Dismiss and April 10th Opposition Letter Motion, the City admits that challenges made in the other cases, specifically, the See *Kane v. De Blasio*, 2022 U.S. Dist. LEXIS 154260 (S.D.N.Y. Aug. 26, 2022) and *Broecker v N.Y. City Dep't. of Educ*., No. 21-CV-6387 where cases that involved "procedural due process" claims under the 14th Amendment and only challenged the City's vaccine mandates "as applied" to the various litigants in those case. Because Plaintiffs claims in this case challenge the authority of the City to enact any mandate as violative of the OSH Act, it was impossible for the decisions in those cases or any of the cases that did not involve claims under the OSH Act to be the law of the case in matter. No court in the entire United States has held or even declared that vaccine mandates are lawful and enforceable under the OSH Act. The City is fully aware this fact. Also, the City's claim that the Second Circuit decisions (on a preliminary injunction) in the case *Kane v. De Blasio*, 10 F. 4ht 152, 166 (2nd Cir. 2021) that the Vaccine Mandates are lawful and enforceable is also patently false. Decisions on preliminary injunctions do not establish the law of the case. The Second Circuits decision was preliminary and did not determine the merits of the case. Again, the City has flat out lied about *Kane* decision as being a declaration that the Vaccine Mandates are lawful and enforceable. The statement is furthest from the truth.

6.    **The Law of the Case Doctrine Does Not Bind This Court To An Erroneous Previous Ruling Based On A Misrepresentation of the Law**

While this Court previous ruled on Plaintiffs request for preliminary injunction that the OSH Act does not provide a private right of action, the doctrine of the "law of the case" does not preclude this Court from changing its ruling made on a preliminary basis.  The Second Circuit has held that the law of the case "permits a change of position if it appears that the court's original ruling was erroneous."  DiLaura v. Power Authority of State of N.Y., 982 F.2d 73 (2nd Cir. 1992) (citing *Kinsman Transit Co. v. City of Buffalo*, 388 F.2d 821, 825 n. 9 (2d Cir.1968); accord *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318."   The Second Circuit in *DiLaura* further held that:

> "This doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment. Virgin Atl. Airways v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992); see also Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382 1391, 75 L.Ed.2d 318 (1983) ( "Law of the case directs a court's discretion, it does not limit the tribunal's power."). As we have noted, "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " Virgin Atl. Airways, 956 F.2d at 1255 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 790 (1981)) [hereinafter Federal Practice & Procedure ].  *DiLaura* at 75.

The Second Circuit further explained that the doctrine of the "law of the case" does not apply to decisions made on preliminary injunctions when it held in *Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc*., 962 F.2d 268 (2nd Cir. 1992) as follows:

A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment. See A.J. Canfield Co. v. Vess Beverages, Inc., 859 F.2d 36, 38-39 (7th Cir.1988). As we stated in Sierra Club v. United States Army Corps of Eng'rs, 732 F.2d 253, 256 (2d Cir.1984): "A preliminary injunction is issued to maintain the status quo until there can be a hearing on the merits." See also Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir.1985); Arthur Guinness & Sons, PLC v. Sterling Publishing Co., 732 F.2d 1095, 1099 (2d Cir.1984); Diversified Mortgage Investors v. U.S. Life Title Ins. Co., 544 F.2d 571, 576 (2d Cir.1976). It would therefore be anomalous at least in most

cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions.

Based on the *DiLaura* and the *Goodheart* decisions it would be a serious injustice against Plaintiffs for this Court to allow just false claims of law to be perpetuated without sanctions.  The Court's error was caused by the City's false claims of law that were not corrected for which this Court had discretion to sanction.

        **B.**        **The City Willfully Misrepresented the Facts**

                **1.**        **The Evidence Clearly Establishes Plaintiffs Timely & Sufficiently Filed Notices of Claims And That Notice of Claims Are Not Legally Required**

Again, the City's claim that Plaintiffs failed to file sufficient and "timely" notices of claims is also objectively unreasonable and false for two reasons. First, notice of claims are not required to protect an important right of the public. The New York Court of Appeals held in 1983 in the case *Mills v County of Monroe*, 59 NY2d 307, 311 (1983) and again in 2001 in *Picciano v. Nassau Civ. Serv.*, 736 N.Y.S.2d 55 (N.Y. App. Div. 2001) that a notice of claim pursuant to Gen. Mun. Law § 50-e(1)(a) is not required in cases when:

> "actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group are deserving of special treatment. The interests in their resolution on the merits override the State's interest in receiving timely notice before commencement of an action." *Mills* at 311

In *Picciano v. Nassau Civ. Serv.*, 736 N.Y.S.2d 55 (N.Y. App. Div. 2001), the New York Court of Appeals relied on the earlier decision in *Mills* and specifically held that the "failure to timely serve a notice of claim …. to recover damages based on the Human Rights Law" is not fatal if the action has been brought "to vindicate a public interest."

In this case, Plaintiffs Complaint and all amendments thereto, specifically pled employment civil rights claims under the federal OSH Act and the New York City Human Right Law on behalf of "all similarly situated" City workers who were wrongly discharged by the City

for exercising their fundamental right to refuse the Covid-19 vaccine medical treatment.  The City knows full well that notice of claims are not needed for proposed classes seeking to vindicate every City employees fundamental right to Free Exercise protected by the OSH Act.

Second, Plaintiffs did in fact provide timely notices of claims naming the City and the Department of Education using the Notice of Claim form required by the City. See **Exhibit 1** Finally, it is also well-established New York law that the continuing violation doctrine operates to toll limitation periods, including the 90-day limitation in the notice of claim required in Gen. Mun. Law § 50-e(1)(a). More specifically, it is understood that a continuing wrong is not barred by any statute of limitations. see, *Matter of Russell Sage Coll. v. State Div. of Human Rights*, 357 N.Y.S.2d 171 (N.Y. App. Div. 1974) See also *Summers v. County of Monroe*, 537 N.Y.S.2d 703 (N.Y. App. Div. 1989)  Plaintiffs Third Amended Complaint Count III under Section 1983 expressly claims continuing violations of the fundamental rights of Plaintiffs and similarly situated City employees on page 25, paragraphs 130-131 of the Third-Amended Complaint ECF 22. The City has continued too unlawfully "lockout" of all City workers placed on indeterminate leave without pay because Plaintiffs and those similarly situated are not terminated employees and have the right to return to return to their jobs. Therefore, the City's factual and legal claims are patently false.

### 2. The Claim That The Second Circuit Has Already Dismissed All Federal Claims By Plaintiffs is Outrageously Unreasonable When Applied To Plaintiffs OHS Act Claims

The City's claim that the Eastern District of New York in the *Broecker v. N.Y.C. Dep't of Educ. United States District Court, E.D. New York,* 573 F. Supp. 3d 878 (E.D.N.Y. 2021) has "dismissed all federal claims by Plaintiffs" is also objectively and patently false. As previously mentioned, no federal court has been presented with the exact OSH Act claims presented by Plaintiffs. The City has not and cannot point to one pending or previous lawsuit by any other

plaintiff in the country wherein a federal court has addressed the issue of whether the City's

vaccine mandates violate the OSH Act "minimum safety standards" that relate specifically to

airborne hazards in the workplace. Neither has the City provided one case wherein any federal

court has held that the OSH Act Section 11(c)(1)+(2) does not provide a private right of action

for wrongful discharge of an employee for exercising his/her right to refuse immunization

provided by Section 20(a)(5) of the OSH Act. The City's claim that the *Broeker* decision

dismissed "all federal claims" including Plaintiff's OSH Act is impossible and is a flat out lie

that must be heavily sanctioned to stop such deliberate fraud on the court.

## V.    APPROPPRIATE SANCTIONS

While Rule 11 sanctions are within the sound discretion of the Court, subsection (c)(2) of

Rule 11 provides that "the sanction may consist of, or include, directives of a nonmonetary

nature….." as well as monetary.  The Advisory Committee Notes ("Notes") to the 1993

amendments to Rule 11 state:

> The court has available a variety of possible sanctions to impose
> for violations, such as striking the offending paper, issuing an
> admonition, reprimand, censure, requiring participation in seminars,
> or other education programs, ordering a fine payable to the court;
> referring the matter to disciplinary authorities.

The Second Circuit has held that "[d]istrict courts are given broad discretion in tailoring

appropriate and reasonable sanctions." *O'Malley v. N.Y.C. Transit Auth*., 896 F.2d 704, 709

(2d Cir. 1990); *Wright & Miller, Federal Practice & Procedure §* 1336.3 ("[F]ederal courts

retain broad discretionary power to fashion novel and unique sanctions to fit the particular

case."). See *Sec. & Exch. Comm'n v. Smith*, Docket 11-3842 (2nd Cir. 2013)

The Note further identify factors to consider in determining what sanctions, if any

should be imposed under Rule 11:

21

> Whether the improper conduct was willful, or negligent; whether it whether it was part of a pattern of activity, or an isolated event, whether it infected the entire pleading, or only one particular count or defense, whether the person has engaged in similar conduct in other litigation, whether it was intended to injure, what effect it had on the litigation process in time or expense; Whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case, what amount is needed to deter similar activity by other litigants.

The City's entire Motion to Dismiss and April 10th Letter Motion in opposition to Plaintiffs proposed Motion for Summary Judgement are willfully fraudulent at best. The lie that the *Broeker* decision "dismissed all federal claims" including Plaintiffs OSH Act claim is beyond the pale and demonstrates the City's malicious disregard for truth.  The City's entire defense in this case has "infected the entire" pleadings and the entire case. The strongest sanctions must be made to deter this behavior because the fraud is not an isolated incident but has been the pattern of the City's litigation activity throughout this case and other cases on the same subject. While the City is correct that punitive damages cannot be maintained against the City[5], but punitive damages can be maintained against the City's Mayor and officers in their individual capacity  - see *Smith v. Wade*, 461 U.S. 30 (1983) (if a defendant's conduct can be shown to be motivated by evil motive or intent, or when it involves <u>reckless or callous indifference</u> <u>to the federally protected rights of others</u>.' Id. at 56) only serious sanctions against such reckless and callous indifference by the City and its Mayor against the Constitutional and federally protected rights of all City workers can deter the City from perpetuating future lies to this Court and other courts the City is currently litigating in.

Plaintiffs hereby requests sanctions as follows:

---

[5] Plaintiffs Motion to Amend it Complaint includes an amendment to name the Mayor and Dept. of Health Commissioner in their individual capacities.

1. reversal of the November 18, 2022 decision denying preliminary injunction and the granting of a preliminary injunction that orders the City to immediately reinstate Plaintiffs and all similarly situated employees to their form jobs within 5 days of this Court's order which reinstatement shall be without requiring each Plaintiff to complete and sign the City's "Reinstatement form and reinstatement waiver of liability agreement" a copy of which is attached as Exhibit 5 and the order shall require that the reinstatement shall be to the same job or substantially similar position in title, job description, pay seniority with restoration of health benefits, sick-leave and personal leave benefits, retirement benefits with reinstatement of time loss toward retirement, and the order shall require payment of every Plaintiffs backpay from the date each was placed on leave without pay and said backpay payment shall be paid to Plaintiffs Counsel of record within 14 business days of the filing of the Court's order;

2. grant of Plaintiffs motion to file its proposed Fourth Amendment Complaint and grant of Plaintiffs motion for class certification immediately after the City answers the amended complaint;

3. sanction in the form of a public remonstration of the City and its lawyers in the form of a referral of the false statements of law and fact to the New York State Bar for discipline and to the United States Attorney for the Eastern District for investigation into the City and Mayor's conspiracy to "intimidate" City workers who exercised their Constitutional and federal OSH Act right to refuse the Covid-19 vaccine which violates federal criminal statute Title 18 U.S.C. Section 241 and 242. It is obvious that the City's former and current Mayor and lawyers have conspired to deprive City workers of their rights through these and other lies regarding the law and facts of this case, including the fraud against Plaintiffs wherein the City threatened termination and misrepresented that the

Plaintiffs were in fact "terminated" from their jobs as stated in several letters sent to Plaintiffs on several occasions when in fact it was impossible for the City to terminate any tenured City employee without first filing a charge for "good cause" discipline pursuant to either the New York City Education Law §3020 or New York Administrative Code §16-1016 applicable to the City Department of Sanitation employees; and/or pursuant to the City's Civil Service Law §75 applicable to all other employees. See Exhibit 6 – example Termination letter sent to Plaintiffs;   The City through its former and current mayors and commissioners committed fraud against their employees and to the public by:

 a) misrepresenting that the City had authority to enact the Vaccine Orders and had the authority to "lock out" City employees from their jobs if they did not comply – when it did not;

 b) misrepresenting that the City had authority to sanction private employers for failing to comply with the Vaccine Orders that applied to private sector employers in the City;

 c) misrepresenting that City employees were "terminated from their jobs" when it was impossible for them to be terminated;

 d) misrepresenting to this Court that the Plaintiffs do not have private right of action against the City and for the conspiratory agreements between the former and current mayor and the former and current NYCDHMH Commissioners to deprive City workers and private sector workers of their jobs through the fraudulent Vaccine Orders;

 e) misrepresenting that the Covid-19 vaccine is capable of "preventing" the spread of the Covid-19 airborne virus when the City, mayors and commissioners knew or should have known that it is impossible for any vaccine or immunization to

24

remove any airborne hazard from the air or for any vaccine to shield employees

and the public from exposure to any airborne virus like Covid-19, which are the

only two ways that any communicable disease can be "prevented" – the All

Vaccine Orders fraudulently state that:

> "Whereas, in accordance with section 17-109(b) of such Administrative Code,
> the Department may adopt vaccination measures in order to **most effectively
> prevent** the spread of communicable disease;" See Exhibit 5 – Vaccine Orders

Nowhere in the New York City Administrative Code Section 17-109(b) nor in Section 17-

104 is the City or the Commissioner "authorized" to use "vaccines or any immunization" to

"prevent" communicable disease and nowhere in the Code does it say that vaccines can

"prevent" communicable diseases. These representations in the Orders are a lie. See Exhibit

6 – Administrative Code

If the former President of the United States can be investigated and charged for retaining

documents he believed he could keep (whether his belief was correct or not), then the City

and its former and current officials should at least be investigated for making material

misrepresentations that have robbed thousands of City employees and thousands of private

sector employees of their Constitutional and OSHA statutory fundamental right to refuse the

Covid-19 vaccine. This sanction is commensurate with the egregiousness of the fraud.[6]

    4. an award of attorney fees for responding to the Motion to Dismiss and for filing

this Rule 11 motion and supporting documents;

    5. sanction in the form of a Court order requiring the City to provide training to all of

its employees on the topic of employee rights and remedies under the OSH Act including

the right to refuse any immunization, treatment or examination contained in Section

20(a)(5). The order should include that the training shall be provided by an OSHA lawyer

-------------------

25

(that has never been retained by the City) with extensive experience in managing OSHA citations, which training can be accomplished via a live video conference for all employees. Also, the training of all City workers shall take place within a 1 1/2 year of this Court's order and the City shall provide proof of the training in the form of signed confirmations by each employee to this Court on the 2-year anniversary of this Court's sanction order.

6. sanction in the form of an order requiring the City to provide the contact information, including home address, telephone number and email of all City employees who requested an exemption from the City's 9 vaccine mandates with a notation indicating those employees whose exemption was approved. The list of employees shall be in an Excel spreadsheet provided within 14-days of the Court order that indicates each employees' job position, title, agency, years of employment, age, gender, ethnicity and whether the employee was granted or denied any exemption from the Covid-19 vaccine and the date of the first and any subsequent denials.

Under information and belief, there were approximately 12,000 employees who requested exemptions, who must be notified of the Class Certification and their potential claims, which information shall be provided to counsel for Plaintiffs under a Confidentiality Agreement, if necessary.

Dated: July 10, 2023                    Respectfully submitted,

                                        /s/ *Jo Saint-George*
                                        _____
                                        Jo Saint-George, Esq.
                                        14216 Dunwood Valley Dr
                                        Bowie MD 20721-1246
                                        Email: jo@woc4equaljustice.org

26