**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

WOMEN OF COLOR FOR EQUAL JUSTICE,
REMO DELLO IOIO, ELIZBETH LOIACONO,
SUZANNE DEEGAN, MARITZA ROMERO, JULIA
HARDING, CHRISTINE O'REILLY, AYSE P.
USTARES, SARA COOMBS-MORENO, JESUS
COOMBS, ANGELA VELEZ, SANCHA BROWNE,
AMOURA BRYAN, ZENA WOUADJOU, CHARISSE
RIDULFO, TRACY-ANN FRANCIS MARTIN, KAREEM
CAMPBELL, MICHELLE HEMMINGS HARRINGTON,
MARK MAYNE, CARLA GRANT, OPHELA INNISS,
CASSANDRA CHANDLER, AURA MOODY, EVELYN
ZAPATA, SEAN MILAN, SONIA HERNANDEZ,
BRUCE REID, JOSEPH RULLO, AND CURTIS BOYCE,
JOSESPH SAVIANO, MONIQUE MORE, NATALYA
HOGAN, JESSICA CSEPKU, ROSEANNE
MUSTACCHIA, YULONDA SMITH, MARIA FIGARO,
RASHEEN ODOM, FRANKIE TROTMAN, EDWARD
WEBER, MERVILYN WALLEN, PAULA SMITH,
CHRISTIAN MURILLO, LYNDSAY WANSER,
JOSEPH SAVIANO, MARVILYN WALLEN,
CHRISTIAN MURILLO, DAWN SCHOL, SUZANNE
SCHROETER, SARAH WIESEL, ALTHEA BRISSETT,
TRACEY HOWARD, MARC ROSIELLO, AUDREY
DENNIS, MARIE JOSEPH, TINA LUNCH, PATRICIA
CATOIRE, MARK WHITSETT, SALLY MUSSAFI,
COLETTE CAESAR, BERTRAM SCOTT, DIANE
PAGEN, STELLA M. PRESTON, AND RACHELLE
GARCA  individually and on behalf of similarly situated
individuals,

Plaintiffs,

v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS,
FORMER  MAYOR BILL deBLASIO,
COMISSIONER ASHWIN VASAN, MD, PHD,  AND
FORMER COMMISSIONER DAVE A. CHOKSHI, M.D.,
MSC., DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, DEPARTMENT OF EDUCATION AND
DOES 1-20

Defendants

**(PROPOSED) FOURTH AMENDED
CLASS ACTION COMPLAINT FOR
DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF**

**AND JURY DEMAND**

INDEX No.:1:22 CV 02234-EK-LB_____

## INTRODUCTION

1. This action arises out of the City of New York's (the "City") wrongful discharge - in violation of Section 11(c)(1) of the 1970 Occupational Safety and Health Act ("OSH Act") at 29 U.S.C. §660, in violation of Plaintiffs Constitutional First Amendment Free Exercise and substantive Due Process Clause rights provided under the Fourteenth Amendment procedurally brought through this 42 U.S.C. Section 1983 claim and in violation of the New York City Human Rights Law (NYCHL) - of Plaintiffs and similarly situated City workers (hereinafter collectively "Plaintiffs") for exercising their fundamental right to refuse to submit to taking the City's illegally mandated Covid-19 vaccine medical treatment based on religious and non-religious grounds.

2. The City's issuance of the approximate nine (9) Covid-19 Vaccine Orders ("Covid Vaccine Orders" or "Vaccine Orders") issued through the New York City Department of Health and Mental Hygiene ("NYCDOH") Commissioner between August 2021 and December 13, 2021 and enforced by the current City Mayor Adams and Commissioner Vasan mandating Plaintiffs and all City employees including City contractors, and employees working for private employers in the City to get the Covid-19 vaccine was in violation of the OSH Act expressed preemption clause which prohibits municipalities governed by an OSHA Plan from enacting unauthorized workplace safety methods that do not meet existing OSH Act minimum safety standards. See OSH Act 29 U.S.C. §667 Section 18(a)

3. Plaintiffs and those similarly situated first seek a declaratory judgment pursuant to the Federal Declaratory Relief Act at 28 U.S. §2201 declaring that the City Covid-19 Vaccine Orders and all liability waivers by City workers arising from the illegal enforcement of the Orders are null and void as preempted by the OSH Act because vaccines do not meet the OSH Act minimum standards for protecting workers from exposure to the Covid-19 airborne virus in the workplace atmosphere

because all immunizations or vaccine (hereinafter referred to collectively as "Vaccines") are incapable of removing any airborne hazard like Covid-19 from the workplace atmosphere and are incapable of shielding employees or the public from exposure to any airborne hazard. Plaintiffs also seek a permanent injunction pursuant to 28 U.S. §2201 to forever ban and enjoin the City from issuing any future immunization or vaccine mandates that violate the OSHA Act and to declare the fundamental rights of Plaintiffs to choose and refuse medical treatment.

4. Plaintiffs also seek immediate reinstatement to their jobs, backpay, compensatory damages against the City for the unlawful enforcement of the Vaccine Orders by the City's Mayor Adams and Commissioner Vassan in their official capacity and punitive damages against former City Mayor Bill de Blasio, the City's current Mayor Adams and former Health Commissioners Dr. Dave A. Chokshi and current Commissioner Vasan in their individual capacities for their intentional and/or reckless disregard for the exercise of Plaintiffs fundamental First Amendment Free Exercise right protected by Section 20(a)5 of the OSHA Act and exercise of Plaintiffs fundamental right to choose or refuse medical treatment protected by the Fourteenth Amendment substantive due process clause, and right to be free from "quid pro quo" religious harassment protected by the NYCHL for which each of the Plaintiffs are entitled to the maximum statutory punitive damage award in the amount of $250,000 pursuant to NYC Administrative Code 8-107.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the City's Vaccine Orders, as well original jurisdiction pursuant to the OSH Act Section 11(c)(2) (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief")  for wrongful discharge of employees in violation of OSH Act Section 11(c)(1), which includes wrongful

discharge of an employee who exercises their right to refuse immunization under Section 20(a)(5) of the OSH Act; and, pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for violations of Plaintiffs First Amendment Free Exercise Clause and Fourteenth Amendment substantive Due Process clause rights.

6.  Moreover, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all claims arising under state law, namely the New York City Human Rights Law ("NYCHRL") codified in Administrative Code §8-109(a) and (f)(i), in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy.

7.  The unlawful employment practice alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY and this case is properly brought in the Eastern District of New York under 28 U.S.C. §1391(b).

8.  Jurisdiction is also appropriate because Plaintiffs have properly and timely served the City's Comptroller on the City statutorily required form - See <u>Exhibit 1</u> - notice of claims on behalf of Plaintiffs and those similarly situated; although notices of claims are not required for claims on behalf of the public interest against New York municipals – see Gen. Mun. Law § 50-e(1)(a)[1] and under information and belief Plaintiffs have exhausted their administrative remedies and received right to sue letters from the EEOC, although exhaustion of administrative remedies are not required for Section 1983. See *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982)

---

[1] Gen. Mun. Law § 50-e(1)(a) states: "actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group are deserving of special treatment. The interests in their resolution on the merits override the State's interest in receiving timely notice before commencement of an action." See also *Mills v County of Monroe*, 59 NY2d 307, 311 (1983) and *Picciano v. Nassau Civ. Serv.*, 290 A.D.2d 164, 736 N.Y.S.2d 55 (N.Y. App. Div. 2001)

## JURY DEMAND

9.  Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to Fed.R.Civ.P. 38(b).

## PARTIES

### A.  PLAINTIFFS

### Individual Plaintiffs & Class Representatives

11. Plaintiffs bring this action on behalf of themselves and all City employees within any and all the City agencies of approximately 50 city departments, including but not limited to Department of Education, Department of Transportation, Department of Sanitation, Central Administrative Services, Police Department, Department of Children's Services. Plaintiffs make up two (2) classes of City employees, as follows:

    a.  City employees who have refused to submit to the Vaccine Orders, evidenced by having submitted to the City a written request for exemption from the Vaccine Orders either for religious reasons, medical reasons or for any reason that was denied and who were subsequently placed on leave without pay due to their practice of refusing to take the Covid-19 vaccine and who have not returned to work because the City has locked them out of their jobs since sometime around September 2021. These are the Locked-Out Class; and

    b.  City employees who also refused to take the Covid-19 vaccine, who submitted an exemption request that was denied, but after being placed on leave without pay several weeks to months where coerced by the City's "quid pro quo" Vaccine Order actions they took the Covid-19 vaccine so that they could get their jobs and salary back. These are the "Coerced Class".

**Locked Out Class**

12. All employees who requested exemption from the City's Covid-19 Vaccine Orders that were denied were placed on indeterminate leave without pay and "locked out" from their jobs because the Vaccine Order denied them entrance into their workplace unless they provided proof of vaccination and these employees were not "terminated" because the City did not institute "good cause" charges against any of the Plaintiffs as required to terminate any City employee pursuant to either Education Law §3020, for all tenured teachers in the Department of Education; or pursuant to New York City Administrative Code §16-1016 for Department of Sanitation employees, or pursuant to New York City Civil Service Law §757 which applies to all other City employees. These are the "Locked Out Class" hereinafter referred to as those who were "wrongly discharged."   Under New York law an unlawful "lock out" is defined as an employee who is denied access to their workplace which forces the employee to cease their work activity pursuant to *McGinnis v. Bankers Life Co., Des Moines Iowa*, 334 N.Y.S. 2nd 270 (N.Y. App. Div. 1972)

13. Remo Dello Ioio, a tenured Home Instructor employee who worked over 17 years for the New York City Department of Education who filed a EEOC Charge No. 520202200117 and received a Right to Sue Letter dated January 19, 2022.  He is part of the Locked-Out Class.

14. Maritza Romero is a former tenured Special Education Teacher who worked for the New York City Department of Education for over 20 years who has been denied the right to work in a safe workplace because she exercised her right to refuse the Vaccine Order. She has filed an EEOC Charge No. 520202200311 and received a Right to Sue Letter dated January 19, 2022. She represents the Locked-Out Class.

15. Elizabeth Loiacono, a former employee of the New York City Department of Education filed a EEOC Charge No. 520202200353 and received a Right to Sue Letter Dated March 24, 2022. She represents the Locked-Out Class.

16. Suzanne Deegan, a former employee of the New York City Department of Education who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious ground. She filed a EEOC Charge No. 520202200109 and received a Right to Sue Letter Dated January 19, 2022. She represents the Locked-Out Class.

17. Julia L. Harding is a former Education Administrator-Central Based Support Team Case Manage for New York City Department of Education who was been placed on leave without pay since October 4, 2021 for refusing to submit to the Vaccine Orders on religious grounds. She has filed a EEOC Charge No. 520202200147 and received a Right to Sue Letter Dated January 19, 2022. She represents the Locked-Out Class.

18. Christine O'Reilly, a tenured teacher in Academic Intervention Services with over 22 years of service with the New York City Department of Education filed a EEOC Charge No. 520202200421 and received a Right to Sue Letter Dated January 19, 2022. She represents the Locked-Out Class who was involuntarily placed on leave without pay since around October 4, 2021 for refusing to take the Covid-19 vaccine for religious grounds.

19. Ayse P. Ustars, is a 20+ year Social Worker for the City's Department of Education who was placed on leave without pay on October 4, 2021 for refusing to submit to the Vaccine Order, filed a EEOC Charge No. 520202200062 and received a Right to Sue letter; but due to the financial hardship she experienced when she was placed on leave without pay for five (5) months, on March 9, 2022, Ms. Ustars was coerced to take the vaccine due to financial hardship of being forced to be on leave without pay for five months submitted to the Vaccine Order and returned to work on March 15, 2022 and now seeks lost pay and emotional distress damages. She represents the "Coerced Class."

20.   Sara Coombs-Mereno, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious ground. She represents the Locked-Out Class.

21.   Sancha Brown, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders for religious grounds.

22.   Amoura Bryan, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious ground. She represents the Locked-Out Class.

23.   Zena Wouadjou, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. She represents the Locked Out Class.

24.   Evelyn Zapata, Christine O'Reilly, Edward Weber, were all former employees of the Department of Education who were placed on leave without pay refusing to submit to the Vaccine Orders due to her religious practices.

25.   Tracy-Ann Francis-Martin, was a supervisor for the Department of Child Protective Services who was put on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. She represents the Locked-Out Class who can work remote.

26.   Michelle Hemmings Harrington, was an employee of the Department of Transportation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

27.   Ophelia Inniss, was an employee of the Administration of Children Services who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

28.   Cassandra Chandler, was an employee of the Administration of Children Services who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

29. Carla Grant, was an employee of the Department of Transportation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds.

30. Charisse Ridulfo, is a tenured teacher with the Department of Education who was put on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. She represents the Locked-Out Class.

31. Kareem Campbell was an employee of the Department of Transportation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. He represents the Locked-Out Class.

32. Bruce Reid, was an employee of the Department of Sanitation who was placed on leave without pay for refusing to submit to the Vaccine Orders on religious grounds. He represents the Lock-out Class.

33. Joseph Rullo, was an employee of the Department of Sanitation who was placed on leave without pay or refusing to submit to the Vaccine Orders on religious grounds.

34. Sean Milan was an employee of the Department of Sanitation who was placed on leave without pay refusing to submit to the Vaccine Orders on religious grounds. He has filed an EEOC complaint.

35. Sonia Hernandez was an employee of the New York Police Department who was placed on leave without pay refusing to submit to the Vaccine Orders on religious grounds.

36. Plaintiffs Curtis Boyce, Joesph Saviano, Monique More, Natalya Hogan, Jessica Csepku, Roseanne Mustacchia, Yulonda Smith, Maria Figaro, Rasheen Odom, Frankie Trotman, Edward Weber, Merylyn Wallen, and Paula Smith, Jeffrey Hunter, Maria Figaro, Frankie Trotman, Yulanda Smith, Roseanna Mustachhia, Jessica Csepku, Natalya Hogan, Monique Moore, Joseph Saviano, Marvilyn Wallen, Christian Murillo, Dawn Schol, Suzanne Schroeter, Sarah Wiesel, Althea Brissett, Tracey Howard, Marc Rosiello, Audrey Dennis, Marie Joseph, Tina Lunch, Patricia Catoire, Mark Whitsett, Sally Mussafi, Colette Caesar, Bertram Scott, Diane Pagen, Stella M. Preston, Rachelle

Garcia and those similarly situated all requested religious and/or medical exemptions from the Covid-19 Vaccine Orders as required by the City and were denied several request by the City for exemption and all were placed on involuntary leave without pay for refusing to submit to the Vaccine Orders on religious grounds or other grounds.

**Coerced Class**

37. Angela Velez is a Guidance Counselor for Home Instruction Schools which is a remote position with the Department of Education. Ms. Velez was placed on leave without pay on October 4, 2021 for refusing to submit to the Vaccine orders. But after almost 5 months being on leave without pay as the primary earner in her house and unable to find another job due to her unvaccinated state based on her religious practice, Ms. Velez with tears in her eyes and under duress submitted to the Vaccine Order and returned to work in March. She has filed an EEOC charge. She represents the "Coerced Class".

38. Jesus Coombs is the Chief Architect for the Department of Central-Wide Administrative Services. On January 13, 2022, Mr. Coombs was placed on leave without play for refusing to submit to the Vaccine Orders. He was scheduled to be terminated, but because he is the sole income earner in his home, he with much gilt, anxiety and distress, submitted to the Vaccine Order and returned to work on February 15, 2022. He represents the "Coerced Class" who carries much guilt and anxiety for having to choose between meeting the needs of their family and God.


**B. DEFENDANTS**

39. The City including all applicable agencies which are approximately 50 agencies, including but not limited to the New York Police Department, Department of Education, Department of Transportation, Department of Sanitation, Department of Citywide Administrative Services, and Administration for Children's Services. The law of the State in which the district court is located

determines a party's amenability to suit. Under the New York City Charter, "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in the name of any agency, except otherwise provided by law."

40. Mayor Eric Adams is named in his official capacity as mayor of the City who under color of law ratified and enforced the Vaccine Orders of the prior Mayor which caused Plaintiffs to be wrongly discharged in violation of the OSHA Act, Title VII and the NYCHRL for refusing to take the Covid-19 vaccine and Mayor Adams in his individual capacity for his reckless disregard and willful harassment of Plaintiffs rights to refuse the Covid-19 vaccine and willful acts of coercion to force Plaintiffs to submit to the Covid-19 vaccine after they were placed on LWOP and to force them to waive their rights of backpay and compensatory damages.

41. Bill DeBlasio for his knowing and wanton enactment of the Vaccine Orders in direct violation of the OSHA Act and in reckless disregard of Plaintiffs rights to refuse the Covid-19 vaccine and retain their jobs protected by the OSH Act, Title VII and the NYCHRL.

42. The City Department of Health and Mental Hygiene (NYC-DHMH) has been named separately because the New York City Health Code and Rules §3.01 General Powers grants it with exclusive authority for protecting the public health of the residents of the City.

43. The City Commissioner Ashwin Vasan, MD, PHD is named in his official capacity as the Commissioner of the Department of Health and Mental Hygiene (NYDOH) because his actions where taken under color of the laws of New York and in his individual capacity for his reckless and willful failure to repeal all Vaccine Orders as violative of the OSH Act.

44. The former City Commissioner Dave A. Chokshi, M.D., MSc in his individual capacity for willfully and recklessly enacting the Vaccine Order in direct violation of Plaintiffs right protected by the OSH Act and because he knew or should have known that the Vaccine Orders violated the safety standards under the OSH Act.

45.   The Department of Education is hereby named separately because they are a separate legal entity from the City who also enforced the Vaccine Orders against his employees in violation of Plaintiffs rights under the OSH Act, Title VII and the NYCHRL.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.  Facts Relevant to Plaintiffs Claim For Declaratory Judgment

46.   In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described by in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a basic human right" and that employers are responsible for providing a safe and healthful workplace. See Exhibit 2

47.   The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" to meet the minimum standards.

48.   Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" that federal, state and private employers and places of public accommodation are mandated to meet for public health and safety. 29 U.S.C. § 651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty*., 228 Cal. Rptr. 3d 406 (Cal. 2018).

49.   The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards." *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

50. The City as a municipality must comply with the OSH Act standards and regulations through the New York OSHA State Plan and specifically comply with standards and regulations not under the jurisdiction of the New York State Department of Labor. See Exhibit 3 attached hereto and incorporated herein by this reference.

51. Under the OSH Act General Duty Clause at 29 USC 654 Sec 5(a)(1), Defendants shall provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

52. On March 11, 2020, the World Health Organization declared the infectious airborne Covid-19 virus a Global Pandemic that can cause serious physical harm and death. See Exhibit 4  attached hereto and incorporated herein by this reference.

53.  According to the CDC, the principal mode by which people are infected with the virus is through exposure to respiratory fluids carrying infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them.  See Exhibit 5, attached hereto and incorporated by reference.

54. The list of "minimum safety methods" approved by OSHA that employers can use to meet its duty to provide employees with a safe workplace when a respiratory communicable disease is present in the workplace atmosphere, exclusively includes the General Respiratory Standard at 29 CFR §1910.132, the Personal Protective Equipment standard at 29 CFR §1910.132, the Respiratory Protection standard at 29 CFR §1910.134 and the General duty Clause of the OSH Act 29 U.S.C. §654 (collectively hereinafter "Respiratory Standards"). See Exhibit 6

55. In 1979 OSHA adopted the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which outlines authorized methods for removal of airborne hazards from the workplace atmosphere. See Exhibits 7 & 8

56. Pursuant to the OSHA General Duty Clause and the Respiratory Standards contained in 29 CFR §1910.132 and 29 CFR §1910.134, Defendants have a duty to prevent exposure to airborne hazardous infectious diseases found in the atmosphere of the workplace and public places of business, including but not limited to the infectious diseases of SARS, MRSA, Zika, Pandemic Influenza, Measles, Ebola and Covid-19. (See Exhibit 4)

57. Based on the language in the Respiratory Standards, the primary objective of the OSHA Respiratory Standards is to implement **methods** that, at minimum, either: 1) remove hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd., 32 Cal.3d 762, 772, 654 P.2d 157 (1982) (Held: The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards.")

58. OSHA Respiratory regulations also mandate employers to provide "remote work from home" as an additional safety method when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See Exhibit 9, P. 7+16

59. OSHA Expert Hygienist Bruce Miller explains that "remote work" is an authorized safety method under OSHA.  See Exhibit 9, P.7, 16)

60. OSHA Covid-19 safety guidelines for K-12 schools approved "remote work" for teachers. See Exhibit 10

61. According to the CDC, the Covid-19 is an airborne viral hazard which can cause serious physical injury and/or death. Exhibit 10(a)

62. All Defendants are mandated to comply with the OSHA minimum Respiratory standards by using only the authorized methods approved by OSHA to keep employees safe during an outbreak of the airborne virus that can cause a Covid-19 infection in the workplace.

63. Pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, the City and all employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A*., 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

64. No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard as an approved safety method because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can they shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease.

65. According to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of removing airborne infectious diseases from the air or shielding employees from exposure to any airborne infectious disease, like Covid-19 that can cause serious injury or death.  (See Exhibit 11 Dr. Montgomery Affidavit)

66. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the 1938 Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than

food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

67. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces.

68. Neither does FDA approval of any vaccine for use, nor does a recommendation from the Center for Disease Control (CDC) that the Covid-19 vaccine is "safe and effective," automatically make if or any vaccine, including the Covid-19 vaccine an OSHA approved "safety method" that employers can use to prevent employee exposure to airborne communicable infectious diseases including the Covid-19 airborne viral hazard.

69. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

70. The OSH Act does not authorize the OSHA Secretary nor employers regulated by the OSH Act and regulations to prescribe FDA "medical treatments" to eliminate airborne workplace hazards like Covid-19 that can cause serious injury or death.

71. It is a felony in New York for any unauthorized person to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine. See New York Education Law §6520& §6521 and §6512.

72. Vaccines/immunizations are not OSHA authorized or approved workplace safety methods that any employers is permitted to use to comply with the OSHA mandate that employers protect employees from exposure to airborne hazards.

73. Vaccines/immunizations fall below the approved OSHA Respiratory safety method standards because vaccines cannot shield employees from exposure to airborne hazards in the workplace,

like Covid-19, and vaccines cannot remove any airborne hazard from the atmosphere in any workplace.

74. The OSH Act does not provide any employer or covered entity subject to it, like the City, any exception to compliance with the OSHA regulations and standards, including the Respiratory standards.

75. Other than seeking a variance or temporary extension to comply with OSHA standards or regulations, all employers and cover municipalities are required to pay for any and all OSHA approved safety equipment or make all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

76. Title VII regulations and/or case law do not provide employers with any exception to compliance with OSHA standards and regulations, including the Respiratory standards and regulations.

77. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace.  See Exhibit 12, attached hereto and incorporated by this reference.

78. Between 2009 and 2020, the City never mandated any employee to submit to any vaccine to prevent the spread of the H1N1 airborne communicable disease during the H1N1 Global Pandemic.

79. Covered employers, including the City, are mandated to comply with all OHSA minimum safety standards. 29 U.S.C. §654 Section 5(a)(2)

80. The FDA and the CDC are agencies within the U.S. Federal Department of Health and Human Services (HHS).

81. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary HHS in consultation with the OSHA Secretary can conduct directly or by grants or contracts, research and "experiments" relating to approaches for dealing with occupational health problems.

82. On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See Exhibit 13

83. The HHS/FDA EUA approval of the experimental Covid-19 vaccine is part of the many "activities" authorized under the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1) relating to with occupational health problems in the workplace.

84. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make any vaccines, in general, freely available to the general public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See Exhibit 14 attached hereto and incorporated by this reference.

85. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has Congress authorized HHS or OSHA to mandate any vaccination as a condition of employment with any state, federal or municipal agency.

86. 29 U.S.C §669 Section 20(a)(5) of the OSH Act specifically prohibits the Secretary of HHS or OSHA from requiring or mandating medical examinations, vaccines/immunizations or treatment for employees who object to a vaccine/immunization, medical examination or treatment on religious grounds.

87. Section 20(a)(5) of the OSHA Act states that:

"Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those who object thereto on religious grounds, except where such is necessary for the protection of the health or safety of others."

88. Because vaccine have never been approved by OSHA under any regulation as a "authorized safety method" that meets the minimum methods standards under the Respiratory Regulations to protect employees from exposure to any airborne communicable disease, including Covid-19 virus, neither medical immunizations nor vaccines (including the Covid-19 vaccine) can ever be "necessary" for the protection of the health and safety of others because vaccines do not and are incapable of removing the Covid-19 virus hazard from the workplace atmosphere and neither does the Covid-19 vaccine shield employees from exposure to the Covid-19 virus hazard while in the workplace which is required to meet the OSHA Respiratory method standard and General Duty standard. See Exhibit 12, Affidavit of Expert Dr. Baxter Montgomery attached hereto and incorporated herein by this reference

89. Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter as a condition precedent to an employee refusing or objecting to submitting to any immunization, medical treatment or examination.

90. Section 20(a)(5) of the OSH Act requires employers to provide an "automatic exemption" to employees who object to any immunization, medical treatment or examination on religious grounds.

91. The City's Covid Vaccine Orders are preempted by the OSH Act pursuant to 29 U.S.C. §667 Section 18(a) because OSHA has exclusive jurisdiction over setting "minimum safety standards" specifically setting minimum safety standards for methods used under the Respiratory regulations and standards promulgated by the Secretary to keep employees in workplaces and the public in

places of business safe from exposure to airborne hazards, like the Covid-19 virus, recognized in workplaces and public businesses that can cause serious injury and death. *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

### B. Facts Applicable to Each Plaintiffs Damages Claims

92. On June 23, 2022, then New York Governor Cuomo announced the end of the Covid-19 State of Disaster Emergency on June 24, 2021, due to success in the voluntary vaccination rates in the state, and declining hospitalizations.

93. Notwithstanding the end of the state of emergency, on August 2, 2021, former New York City Mayor Bill de Blasio (Mayor), issued Executive Order 75 ("EO 75") claiming that the pandemic continued to pose a danger to the health and safety of New York City residents, and that EO 75 required all newly hired for employment with any City agency to provide proof of Covid-19 vaccination, unless the newly hired obtained an exemption due to medical or religious reasons through the NYC reasonable accommodation process.

94. On August 10, 2021, former Commissioner Chokshi, MD of the NYCDOH issued an Order requiring staff providing Covid operated or contracted services in residential and congregate settings to provide proof of Covid-19 vaccination or undergo weekly testing.

95. On August 24, 2021, NYCDOH issued an Order that required all Department of Education employees to provide proof of Covid-19 vaccine with no option to undergo weekly testing. See

96. On August 31, 2021, the Mayor issued Executive Order No. 78, requiring that beginning on September 13, 2021, all City employees were to provide proof of full vaccination or provide weekly testing until the employee submits to full vaccination.

97.    During the August 31, 2021, Press Conference announcing Executive Order No. 78, when asked

by media about religious exemptions, then Mayor de Blasio stated that "Those quote unquote,

exemptions are not going to be honored. They're just, that's not the way to do things."

98.    During another media press conference on September 8, 2021, former Mayor de Blasio stated as

follows:

> "We recognize there are definitely, in a few cases and it's pretty rare where someone
> medically cannot be vaccinated, but where that is confirmed by a process to make sure
> that, you know, all the information is accurate, if someone cannot be vaccinated, of
> course there's grounds for a valid, medical exemption. Equally, and in very few cases we
> expect, but there are narrow and **specific grounds for religious exemption**. **Those will
> be honored**. There'll be a process to confirm them, but they will be honored. Those
> folks will continue to work for us in some capacity, in some location, we got to work
> that through, but those cases will be honored, but again, expect them to be very rare."

99.    Again during a media press Conference on September 23, 2021, former Mayor de Blasio made

the following statements regarding vaccine exemptions:

> **Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope **Francis
> has been abundantly clear that there's nothing** in scripture that suggests people
> shouldn't get vaccinated. Obviously, so many people of all faiths have been getting
> vaccinated for years and decades. There are, I believe it's two well-established **religions,
> Christian Science and Jehovah's Witnesses that have a history on this, of a
> religious opposition**. But overwhelmingly the faiths all around the world have been
> supportive of vaccination. So, we are saying very clearly, it's not something someone
> can make up individually. It has to be, you're a standing member of a faith that has a
> very, very specific long-standing objection. Go ahead.
>           See September 23, 2021 Press Conference Transcript  (See <u>Exhibit 15</u> – All
> Mayor Orders & Transcripts)

100.    On September 12, 2021, the NYCDOH former Commissioner Chokshi, MD issued an Order

requiring City employees working in certain childcare programs to be vaccinated.

101.    On September 28, the NYCDOH former Commissioner Chokshi, MD updated its DOE Order

requiring all DOE employees to be vaccinated without a testing option.

102.    On October 20 and 31, the NYCDOH former Commissioner Chokshi, MD issued Orders

requiring all City Employees and Contractors to submit to Covid-19 vaccination.

103. On December 13, 2021, NYCDOH former Commissioner Chokshi, MD issued Order requiring all private employers to require private sector employees in workplaces within the City limits to submit to Covid-19 vaccination in order to enter their private employer workplaces. (See Exhibit 16 – All NYCDOH Vaccine Orders)

104. The former City mayor's Executive Orders and the NYCDOH Orders by the former Commissioner Chokshi, MD (collectively the "Vaccine Orders") were only applicable to all City employers and then on December 13, 2021 the Vaccine Orders applied to private employees for "health and safety" in the workplace of private employers with in the City's jurisdiction, which standards are governed by Federal OSHA Standards applicable to the City employees pursuant to the OSHA New York State Plan, which applies to state and municipal governments and their employees.

105. On November 22, 2021, former Mayor de Blasio reported that approximately 12,400 City workers applied for exemptions from the City Employee Vaccine Orders since the orders were implemented. Of the 12,400, 6,000 police officers were seeking exemptions from the Vaccine Orders. See Exhibit 17

106. All City employees were required by the City to apply for an exemption through an online portals called SOLAS to be exempted from the Vaccine Order. See Exhibit 17(a)

107. On November 22, 2021, former Mayor de Blasio reported that approximate 2,400 City employees were placed on leave without pay (LWOP); See Exhibit 17

108. October 21, 2021 during a press conference, former Mayor de Blasio indicated that most City employees seeking exemptions did not meet the certain exemption standards, which were not disclosed to the City Employees by that time. See Exhibit 17

109. On December 20, 2021, the New York City Law Department Office of the Corporate Counsel issued a legal memorandum titled "Guidance on Accommodations for Workers" instructing

private employers that they could deny requests for religious exemptions from the Vaccine Orders based on the EEOC "undue burden" standard. See Exhibit 18

110.   The City knew or should have known that the EEOC/Title VII and NYCHRL "undue burden" standard/regulation does not provide the City with an exemption from complying with the requirement in OSH Act Section 20(a)(5), which provides an automatic exemption to any employee who refuses to take any immunization, including the Covid-19 vaccine, treatment or examination based on religious grounds.

111.   The City knew or should have known that the Vaccine Orders were preempted by the OSH Act pursuant to 29 U.S.C. §667 Section 18(a).

112.   Under information and belief, Former Mayor DeBlasio knew or should have known through the City's Legal Department that the Vaccine Orders were preempted by the OSH Act and that the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method and that Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations and that in his individual capacity he agree with the City's legal department to ignore the application of the OSH Act standards and OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid-19 vaccine – pursuant to Section 20(a)(5) of the act.

113.   Under information and belief, Mayor Adams knew or should have known through the City's Legal Department that the Vaccine Orders were preempted by the OSH Act and that the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method and that Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations and that in his individual capacity he agree with the City's legal department to ignore the application of the

OSH Act standards and OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid019 vaccine – pursuant to Section 20(a)(5) of the act.

114.    Under information and belief, former Commissioner Chokshi, MD.,  knew or should have known – at least through the City's Legal Department that the Vaccine Orders were preempted by the OSH Act and that the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method and that Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations and that in his individual capacity he agree with the City's legal department to ignore the application of the OSH Act standards and OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid019 vaccine – pursuant to Section 20(a)(5) of the act.

115.    Under information and belief, Commissioner Vason  knew or should have known – at least through the City's Legal Department that the Vaccine Orders were preempted by the OSH Act and that the Covid-19 vaccine did not meet the OSHA Respiratory and General Duty standard and regulations for safety methods and was an unauthorized safety method and that Section 20(a)(5) of the OSH Act gave employees the right to refuse immunization, treatments and examinations and that in his individual capacity he agree with the City's legal department to ignore the application of the OSH Act standards and OSH Act ban that prohibited employers from discharging employees for exercising their right to refuse immunizations – which includes the Covid019 vaccine – pursuant to Section 20(a)(5) of the act.

116.    All Plaintiffs were denied their request for exemption from the Vaccine Order and many were required to appeal to the New York City-Wide Administrative Appeal for reconsideration of their request for exemption based on their religious practice.

117. All Plaintiffs who submitted their appeal for an exemption from the Vaccine Orders to the City-Wide Administrative Appeal Panel had their request denied sometime after January 2022, and Plaintiffs were placed on indefinite involuntary leave without pay in and around October 2021 and others were placed on indefinite involuntary leave without pay sometime after January 1, 2022.

118. None of the Plaintiffs have been legally terminated by the City because none have had formal misconduct charges made against them pursuant to Education Law Section §3020a, New York Administrative Code §16-101, or Civil Service Law §75.

119. All Locked Out Plaintiffs and some Coerced Plaintiffs were "locked out" of their jobs by the City when they were told not to return to their jobs because of they refused to be vaccinated based on the Plaintiffs religious practice of abstaining from the Covid-19. See *Fownes Bros. & Co., Application of*, 204 N.Y.S.2d 998, 25 Misc.2d 349 (N.Y. Sup. Ct. 1960) (held that:  Lockout is defined as, a proceeding by an employer of labor the purpose of which is to bring his employees to his terms by shutting off their employment and persuading other employers engaged in a similar business not to employ them thereby forcing them to return to work for him on his terms.")

120. When Locked Out Plaintiffs were locked out of their jobs they were also placed on indeterminate leave without pay ("LWOP") pursuant to the letter Plaintiffs received. See Notice of LWOP attached and incorporated herein as Exhibit 19

121. Under New York law, Plaintiffs on LWOP are deemed to be discharged from employment because they ceased to be able to engage in work activity according to the New York Court of Appeals in the case *McGinnis v. Bankers Life Co., Des Moines, Iowa*, 334 N.Y.S.2d 270 (N.Y. App. Div. 1972)

122. Sometime after January 2022, Plaintiffs received a letter from the City materially misrepresenting to Plaintiffs that they will be "terminated" when none of the Plaintiffs received formal charges

for a "good cause" administrative hearings that is required to occur before any City employee can be terminated from any job pursuant either to Education Law Section §3020a, New York Administrative Code §16-101, or Civil Service Law §75 and the letter offered Plaintiffs reinstatement to their jobs condition on Plaintiffs taking the Covid-19 vaccine or providing proof of vaccination. See Exhibit 20

123.   Sometime around June/August 2022, many Plaintiffs again received letters from the City again misrepresenting that Plaintiffs had been terminated and offering reinstatement to their jobs conditioned upon them submitting to taking the Covid-19 vaccine. See Exhibit 21

124.   Sometime after October 2022, Mayor Adams failed to automatically reinstate Plaintiffs to their jobs after the New York court declared in the *Garvey v. City of New York*, 2022 NY Slip Op 22335) decided October 24, 2022 that the Vaccine Orders were invalid as "arbitrary and capricious."

125.   Commissioner Vasan also failed to repeal the Vaccines Orders after the *Garvey* decision was decided and after Plaintiffs notified the City that the Vaccine Orders clearly violate the OSH Act minimum safety standards and are preempted.

126.   Around March 2023, Mayor Adams amended the Vaccine Orders applicable to all City workers to allow Plaintiffs to enter the buildings where they formerly worked, but he again failed to automatically reinstate Plaintiffs to their positions and condition reinstatement of Plaintiffs on signing a reinstatement form and waiving their rights to compensatory damages for backpay as outlined in the attached and incorporated Reinstatement Form and Reinstatement Waiver Agreement. See Exhibit 22, Reinstatement Form & Waiver Agreement and Exhibit 23 - Statements of Mayor Adams regarding refusal to reinstate with backpay attached and incorporated herein by this reference.

127. Mayor Adams and NYC-DHMH Commissioner Vasan in their official capacity knew or should have known that the reinstatement waivers violated the OSH Act and the NYCHRL which ban "quid pro quo" illegal conditions on employment and Respiratory regulations for the management of airborne communicable diseases including the Covid-19 virus.

128. Mayor Adams and NYC-DHMH Commissioner Vasan in their official capacity agreed with the City's legal department to continue to enforce the Vaccine Orders despite the fact that the Vaccine Orders conflicted with and violated the OSHA standards and Respiratory regulations for the management of airborne communicable diseases, including the Covid-19 virus.

129. Former Mayor deBlasio in his individual capacity knew or should have known that placing City employees on LWOP (or discharging employees) for refusing to take the Covid-19 vaccine on religious grounds violated the OSH Act Section 11(c)(1) that the Plaintiffs discharge was not necessary to keep other employees safe in the City workplaces.

130. Former Mayor DeBlasio in his individual capacity agreed with the City's legal counsel to place City employees like Plaintiffs on LWOP for exercising their right to refuse the Covid-19 vaccine which was in violation of the OSH Act Section 11(c)(1) and in violation with the City's Civil Servant laws including NYC Education Law §30205, NYC Administrative Code §16-1016; and NYC Civil Service Law §757, which said discharge of Plaintiffs was not necessary to keep other employees safe in the City's workplaces during the Pandemic.

131. Former NYC DHMH Commissioner NYC DHMH Commissioner Chokshi in his individual capacity knew or should have known that failing to repeal the Vaccine Orders and allowing Plaintiffs to be placed on LWOP/discharge from their jobs violated the OSHA Act Section 11(c)(1) and that the Plaintiffs discharge was not necessary to keep other employees safe in the City workplaces that the Plaintiffs discharge was not necessary to keep other employees safe in the City workplaces during the Pandemic.

132. Mayor Adams and Commissioner Vasan in their individual capacities engaged in continual harassment and coercion around February 2022, June 2022, October 2022 and in March 2023 by: 1) sending letters misrepresenting that Plaintiffs where terminated when they were not to coerce them to take the Covid-19 vaccine in order to be reinstated, 2) failing to reinstate Plaintiffs and repeal the Vaccine Orders after New York courts determined that the Vaccine Orders are arbitrary and capricious, and 2.) failing to automatically reinstate Plaintiffs after the Vaccine Orders were amended to allow Plaintiffs to return to their workplaces and requiring Plaintiffs to waive their right to backpay and compensatory damages in order to be reinstated.

133. All of the aforementioned acts deprived Plaintiffs and those similarly situated of the rights, privileges and immunities guaranteed to citizens of the United States by the OSH Act, the First Amendment and the Fourteenth Amendment and Title VII of the 1964 Civil Rights Act in violation of 42 U.S.C. §1983 and in violation of the OSH Act 29 U.S.C. §660 Section 11(c)(1).

134. The acts complained of herein were carried out by the aforementioned individual defendants in their official capacity with actual/or apparent authority and in their individual capacity.


## FEDERAL CLAIMS

### FIRST CAUSE OF ACTION
**(Wrongful Discharge Under 29 U.S.C. §660 Section 11(c)(1)&(2) of the OSH Act and pursuant to 42 U.S.C §1983 of the Civil Rights Act**

135. Plaintiffs realleges and incorporates by reference Paragraphs 1-134 of this Fourth Amended Complaint as if fully set forth herein.

136. Plaintiffs have a federal statutory right under the OSH Act 29 U.S.C. §669 Section 20(a)(5) to refuse any medical examination, medical treatment or immunization/vaccine, which includes the

Covid-19 vaccine, and to be free from wrongful discharge for exercising that statutory right pursuant to 29 U.S.C. §660 Section 11(c)(1).

137. The OSH Act 29 U.S.C. §669 Section 20(a)(5) confer the right to all employees to refuse and obtain an automatic exemption from any mandated medical examination, medical treatment and immunizations/vaccines specifically without preconditions and employees are provided the right to be free from wrongful discharge from employment for exercising their "right to refuse" or "right to obtain an automatic exemption" pursuant to 29 U.S.C. §660 Section 11(c)(1) of the OSH Act as set forth below and any violation of said "rights" provides Plaintiffs a private right of action pursuant to 29 U.S.C. §660 Section 11(c)(2) also outlined below:

**Section 11(c)(1)**

No person shall discharge or in any manner discriminate against any employee because …………of the exercise by such employee ……..of any right afforded by this Act.

**Section 11(c)(2)**

Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may….file a complaint ……In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

138. Pursuant to 29 U.S.C. §660 Section 11(c)(2) the United States district courts shall have direct jurisdiction over "any such action" filed in its court for statutory violations of the OSH Act, including wrongful discharge claims by employees who are discharged for exercising their statutory right to refuse medical treatments, medical examinations or immunization/vaccines provided under 29 U.S.C. §669 Section 20(a)(5).

139. The OSH Act at 29 U.S.C. §660 Section 11(c)(2) does not require Plaintiffs to exhaust any administrative remedies before filing this case in the United Statues District Court because the

OSH Act does not mandate Plaintiffs to first file a complaint with the Secretary of OSHA because Section 11(c)(2) states that employees "may" file a complaint with the Secretary.

140.  Moreover, the Secretary of OSHA does not have enforcement authority or jurisdiction over violations of statutory provisions of the OSH Act, including violations of 29 U.S.C. §669 Section 20(a)(5) because the OSH Act at 29 USC §658 Section 9 only confers power and authority to the Secretary to enforce and cite employers for violations of standards and/or regulations as stated in Section 9a as follows:

> If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has **violated a requirement of section 5 of this Act, of any standard, rule or order promulgated pursuant to section 6 of this Act, or of any regulations prescribed pursuant to this Act**, he shall with reasonable promptness issue a citation to the employer. (Emphasis added)

141.  29 U.S.C. §669 Section 20(a)(5) of the OSH Act is neither a standard or regulations that the Secretary of OSHA can enforce as part of the administrative remedies available to the Secretary and which administrative remedies employees must first exhaust if an employee files a complaint for an employers violation of a standard, regulation or order pursuant to Section 6 of the Act.

142.  The City by and through the Mayor and NYC-DHMH Commissioner in their official capacity caused Plaintiffs to be wrongly discharged by locking Plaintiffs out of their jobs and prohibiting them entrance into their workplace in City buildings pursuant to the Vaccine Orders in violation of the OSH Act Section 11(c)(1) for exercising their right refuse the Covid-19 immunization/vaccine guaranteed by OSH Act Section 20(a)(5).

143.  As a result of the foregoing, Plaintiffs are entitled - pursuant to 29 U.S.C. §660 Section 11(2) of the OSH Act - to reinstatement to the positions Plaintiffs held before the discharge or to a similar position with the same title and job description and seniority and tenure, backpay from the date Plaintiffs were locked out, compensatory damages including but not limited to lost monetary

retirement benefits, unemployment benefits and lost retirement years, vacation, sick and personal leave pay, removal of negative report in their employee file other consequential damages sustained by each of the Plaintiffs as determined by  a jury.

144.  Plaintiffs are further entitled to punitive damages pursuant to Section 11(c)(2) of the OSHA Act and pursuant to the NYCHRL §8-502 against the individual defendants, former Mayor DeBlasio, Mayor Adams, former NYCDHMH Commissioner Chokshi, MD and Commissioner Vason in their individual capacity in an amount to be fixed by a jury or according to a set statutory cap on punitive damages under the NYCHRL under §8-404, plus reasonable attorney's fees, costs and interest under the appropriate federal or state interest rate. See *Reich v. Cambridgeport Air Systems, Inc.*, 26 F.3d 1187, 1190 (1st Cir. 1994)

145.  Plaintiffs OSH Act claims may also be brought pursuant to 42 U.S.C. Section 1983 of the Civil Rights Act because 29 U.S.C. §669 Section 20(a)(5) of the OSH Act is a federal statutory provision, referred to in Section 1983 as "laws" that confers on Plaintiffs the right to receive an "automatic exemption" for refusing to submit to any medical treatment, medical examination or immunization/vaccine based on religious grounds which right to refuse  is based on an individual's religious practice that is an inherent fundamental right protected by Constitution First Amendment Free Exercise Clause and for non-religious reasons under the Fourteenth Amendment Substantive Due Process Clause which substantive right was first defined by the U.S. Supreme Court in *Jacobson v. Massachusetts*,  197 U.S. 11, 26 (1905)

> "the inherent right of every freeman to care for his own body and health in such way as to him seems best……the liberty secured by the Constitution of the United States to every person within its jurisdiction……." *Jacobson* at 26

146.  The OSH Act claims do not conflict with the scope of Section 1983 "one step" remedial scheme which allows litigants to sue directly in federal court, because Section 11(c)(2) of the OSHA

Act also contains a one step private right of action for employees to sue in federal court. See *Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294 (3rd Cir. 2017)

147.   The City by and through its former and current Commissioner of the NY City Department of Health, and former and current Mayors, including its current and former head of the Department of Education in their official capacity and in their individual capacities deprived Plaintiffs – through the enforcement of the Vaccine Orders as a City statute and/or ordinance – of their right to right to refuse the Covid-19 medical treatment and immunization and to receive an "automatic exemption" which said enforcement of the Vaccine Orders caused Plaintiffs to be wrongly locked out of their jobs and discharged for exercising Plaintiffs of their right to refuse the Covid-19 vaccine and remain on their jobs provided by the OSH Act in Section 20(a)(5), and as set forth in more detail in Plaintiffs Second Cause of Action incorporated by reference herein.

148.   The City's violation of the OSH Act pursuant to Section 20(a)(5) by refusing to provide Plaintiffs with the statutory automatic exemption and for wrongly discharging Plaintiffs in violation of Section 11(c)(1) for exercising their right to refuse the Covid-19 medical treatment, immunization and/or medical exam is also a violation of Plaintiffs fundamental First Amendment Free Exercise right to refuse medical treatments on religious grounds and a violation of Plaintiffs right to refuse medical treatments pursuant to the substantive Due Process Clause of the 14th Amendment, including the Covid-19 vaccine, which said refusal is not a crime under New York State law, federal law or any law in the United States. See Wesley Health Care Ctr. v. DeBuono, 244 F.3d 280 (2nd Cir. 2000)[2]

---

[2] Held:  A plaintiff must show that the violation of the federal law also amounts to the violation of a federal right possessed by the plaintiff. …. In determining whether a statute creates a federal right, the Supreme Court uses a three part test. First, "Congress must have intended that the provision in question benefit the plaintiff." Id. Second, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence." Id. at 340-41 (internal quotations omitted). Finally, "the statute must unambiguously impose a binding obligation on the States." Id. at 341... *Wesley Health Care Ctr. v. DeBuono*, 244 F.3d 280 (2nd Cir. 2000)

## SECOND CAUSE OF ACTION

### (Claim under 42 U.S.C. §1983 for violation of the First Amendment Free Exercise Clause and Substantive Due Process Clause as Applied to the City through the Fourteenth Amendment)

149.  Plaintiffs realleges and incorporates by reference Paragraphs 1-148 of this Fourth Amended Complaint as if fully set forth herein.

150.  42 U.S.C. §1983 is the primary remedial statute for asserting federal civil rights claims against local public entities, officers and employees – which state as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the **deprivation of any rights, privileges, or immunities secured by the Constitution and laws**, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….."

151.  To succeed on a Section 1983 claim, a plaintiff must prove that his/her constitutional rights were violated, and that the violation was caused by a person acting under color of law, also known as Section 1983 Monell Liability. See *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) (case where female employees in the New York City Department of Social Services who were forced to take unpaid pregnancy leaves before such leaves were medically necessary) see also *West v. Atkins*, 487 U.S. 4242 (1988).

152.  The Constitution is applied to states and municipalities through the Fourteenth Amendment, which states that:

> No State shall make or enforce **any law** which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive** any person of life, **liberty,** or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

153.  Since 1905, the U.S. Supreme Court in the Jacobson v. Massachusetts, *197 U.S. 11, 26 (1905)* has defined as a substantive due process "liberty" right  "the inherent right of every freeman to care

33

for his own body and health in such way as to him seems best……the liberty secured by the Constitution of the United States to every person within its jurisdiction…….” subject only generally applicable state criminal laws.

154. The U.S. Supreme Court further recognized the fundamental substantive due process right under the 14th Amendment in 1990 in the case *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) holding – “we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition” and the Supreme Court further recognized in the same year that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment in the case *Washington* v. *Harper*, 494 U.S. 210, 221-222 (1990); *see also id.*, at 229 ("The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty")

155.  Furthermore, the First Amendment Free Exercise Clause applied to municipalities through the 14th Amendment also prohibits municipalities from making a “law …….prohibiting the free exercise thereof …religion.

156. The refusal of medical treatment based on religious practices and beliefs is protected under the First Amendment Free Exercise Clause, so long as the religious refusal is not a crime under any applicable state law based on reasonable public health policy.

157. The right to choose one’s own medical treatment based on one’s religious practices and beliefs, like the practice of Plant-based Lifestyle Medicine based on the belief that the God of the Torah and/or the Bible in the book Genesis specifically prescribes a plant, fruit and herb diet for mankind to provide life and to sustain life, is also a fundament right protected under the First Amendment

Free Exercise Clause, so long as applicable state law does not criminalize the ingestion of certain plants, fruits or herbs based on reasonable public health policy.

158. Plaintiffs, therefore, have the fundamental right to refuse any medical treatment based on their Substantive Due Process right under the 14th Amendment as outlined above and based on Plaintiffs First Amendment Free Exercise right to refuse any medical treatment, including the Covid-19 vaccine, on religious ground or as a religious practice (hereinafter referred to collectively "Constitutional Rights").

159. The Second Circuit held that "[w]hen the right infringed is fundamental, we apply strict scrutiny, and the governmental regulation must be narrowly tailored to serve a compelling state interest." *Immediato v. Rye Neck Sch. Dist.* , 73 F.3d 454, 460 (2d Cir. 1996) (internal quotation marks omitted)."

160. The Vaccine Orders can never serve a compelling state interest because the City does not have a compelling interest in enforcing an illegal Vaccine Orders that do not meet the OSHA minimum safety standards for preventing employee and public exposure to the Covid-19 airborne viral hazard because vaccines are incapable of removing the Covid-19 airborne viral hazard from the atmosphere in any public or private workplace and the vaccine is incapable of shielding employees or the general public from exposure to the airborne virus that causes Covid-19 disease.

161. Defendants, collectively and individually, while acting under color of municipal law promulgated and enforced the illegal Vaccine Orders that deprived Plaintiffs of their right to refuse the Covid-19 vaccine based on religious and non-religious grounds under the Constitution and deprived Plaintiffs of the right to receive the "automatic exemption" provided under the OSH Act which resulted in the wrongful discharge and removal of Plaintiffs from their workplaces in City buildings and placed on indeterminate leave without pay.

162. Said Vaccine Orders were claimed by the City to be a condition of employment according to letters sent by the City to Plaintiffs attached hereto and incorporated herein as <u>Exhibit 26</u>.

163. The custom, policy, usage, practice, procedure and rule of the City included the blocking or locking out of Plaintiffs from their physical workplaces and placing Plaintiffs on indeterminate leave without pay for refusing to submit to taking the Covid-19 vaccine or providing proof of the Covid-19 vaccination based on Plaintiffs religious practices which resulted in the unlawful discharge of Plaintiffs.

164. The Commissioner for the City's Department of Health is responsible for issuing public health regulations for the City through the Commissioner's power authorized under N.Y. Public Health Law 206 – Commissioner; General Powers and Duties.

165. The Commissioner is the final policymaker for the issuance of public health regulations for the City.

166. The City's previous Commissioner in 2021 in his official capacity under color of law pursuant to authorization under the City's PHL §206 issued the Vaccine Orders that caused Plaintiffs to be placed on leave without pay from around October, 2021 until the present for refusing to submit to the Covid-19 Vaccine Orders based on religious grounds in violation of the First Amendment. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (Held in summary that government officials performing discretionary functions are not shielded from liability for civil damages if their conduct "violate clearly established …. constitutional rights which a reasonable person would have known."

167. The City's current Commissioner and the City's current Mayor, Eric Adams, has ratified the Vaccine Orders issued by the prior commissioner by failing to repeal the prior commissioners Vaccine Order as violative of the OSH Act express preemption clause, and the First Amendment.

168. The current Commissioner is a licensed M.D. physician in the State of New York who knew or should have known that the issued Vaccine Orders were preempted by the OSHA standards because they conflicted with the method and scheme of the OSHA standards and the Vaccine Orders were not regulations of general applicability because they did not apply to all City residents, and they violated New York State PHL §206 which prohibits mandatory "adult vaccination".

169. The City is, therefore, liable for the acts of the Commissioner in the issuance of the Vaccine Orders that caused Plaintiffs to be place on involuntary leave without pay (discharged) for exercising their right to refuse to take the Covid-19 vaccine for religious ground in violation of the First Amendment, the Fourteenth Amendment substantive Due Process clauses and the OSH Act Section 11(c)(1)&(2) and Section 20(a)(5).

170. The City's practice, along with the practice of all the City's Departments, of failing to train all City employees (including the City-Wide Panel responsible for reviewing Plaintiffs request to be exempted from the Vaccine Orders) in the OSHA Respiratory Standards and General Duty Standards caused Plaintiffs to be placed on leave without pay for exercising their right to refuse the take the Covid vaccine based on religious grounds protected by the First Amendment.

171.  The City had no compelling reason for requiring its employees to disclose details of their religious beliefs, or for requiring a clergy letter or to require answers questions about their religion when the OSH Act Section 20(a)(5) requires the City to provide automatic exemptions from any immunization requirement when an employee refuses any immunization, including the Covid-19 vaccine, or medical treatment or exam.

172. The City's practice of placing employees on involuntary indefinite leave without pay for refusing to submit to the City's Vaccine Orders based on religious grounds interferes and places a substantial burden on the religious practices of Plaintiffs, specifically their Free Exercise right to abstain from taking the Covid-19 vaccine and remain working based on religious grounds.

173. The City's practice and conduct violates Plaintiff's right to the free exercise of religion, in violation of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment and protected by the OSH Act at Section 20(a)(5) and Section 11(c)(1).

174. The City's practice of denying any other request for exemption from the Covid-19 vaccine be it medical or non-religious grounds from Plaintiffs and discharging Plaintiffs or any employee for refusing to take the Covid-19 vaccine or provide proof of vaccination violates Plaintiffs and all employee's right to choose or refuse their medical care which is guaranteed to all competent U.S. citizens under the Fourteenth Amendment substantive Due Process Clause and held by the U.S. Supreme Court in the *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) and in the *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 262 (1990) cases.

175. The City's Vaccine Orders were invalid on the date they were executed because they were preempted by the OSHA Act; and, therefore, the City had absolutely no government interest for enforcing the Vaccine Orders and placing the Plaintiffs on involuntary leave without pay for refusing to take the Covid-19 Vaccine, when the City should have and could complied with the existing OSH Act Respiratory standards and regulations that would have allowed Plaintiffs to either continue to work remote or provide Plaintiffs with the appropriate PAPR safety equipment so that Plaintiffs could continue to work in a safe workplace .

176. The City has never obtained a variance from OSHA approving the Covid-19 vaccine as a necessary method for the safety of others.

177. As a direct and proximate result of the City's enforcement of its preempted, invalid and unauthorized workplace safety standard in violation of the OHA Act, Plaintiffs have suffered injuries and damages, including loss of pay since around October 4, 2021, lost of retirement credits, for some of Plaintiffs and other class members, loss of unemployment benefits, damage to

their employment record due to false reporting for the reasons for being placed on leave without pay and emotional distress damages.

178. Mayor Adam continues to "lockout" Plaintiffs from working their jobs for exercising their religious practice of refusing to ingest an unauthorized "experimental" Covid-19 vaccine by requiring Plaintiffs to first waive their rights to backpay and compensatory and other legal remedies in order to be reinstated, which said condition of reinstatement is a continuing violation of Plaintiffs rights protected by the OSH Act, the First, Fourteenth Amendments and the New York City Human Rights Law.

179. The City's continued enforcement of the invalid Vaccine Orders through the requirement that Plaintiffs waive their right to damages is a continuing violation of Plaintiffs' right to object to the Vaccine Orders.

180. Mayor Adams and Commissioner Vason conduct in their individual capacity is willful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed on the City's implementing officials in their individual capacity as legally permissible.

### THIRD CAUSE OF ACTION
**(Federal Declaratory Judgement Act 28 U.S.C. §2201)**
**Permanent Injunctive Relief**

181. Plaintiffs realleges and incorporates by reference Paragraphs 1-174 of this Fourth Amended Complaint as if fully set forth herein.

182. The federal government regulates worker safety through the Occupational Safety and Health Act of 1970 (OSH Act), which is administered by Occupation Safety and Health Administration (OSHA). See 29 U.S.C. §§651-78.

183.  The OSH Act authorizes the Secretary of Labor to promulgate federal occupational safety or health standards as outlined in 29 U.S.C. § 655 Section 6 that are "reasonably necessary or appropriate to provide safe or healthful employment and places of employment. See also 29 U.S.C. § 652(8).

184.  OSH Act §18b expressly pre-empts any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard, unless the State has obtained the Secretary's approval for its own plan, or any state or private employer can seek a variance to an existing standard for an experimental proposed standard, so long as the experimental variance is as effective as the existing standard. See 29 U.S.C. 655-Section 6(b)(6).

185.  The OSH Act provides standards and minimum regulation for airborne hazards, specifically for communicable diseases through the Personal Protective Equipment standard (29 CFR 1910.132) and Respiratory Protection standard (29 CFR 1910.134) which provide protection for workers when exposed to contact, droplet and airborne transmissible infectious agents; and OSHA's TB compliance directive which protects workers against exposure to TB through enforcement of existing applicable OSHA standards and the General Duty Clause of the OSH Act (collectively "Infectious Disease Standards").

186.  The existing OSHA Infectious Disease standards apply to the City through the approved New York State Plan approved in 1984.

187.  The New York State Plan does not cover standards for Infectious Respiratory Diseases and therefore the State of New York has not taken responsibility for setting standards for any infectious disease including respiratory diseases. See State Plan Standards at 12 NYCRR Part 800.6, 800.7, 800.5, 801 and 820.[3]

---

[3] See New York State Plan Codes, Rules and Regulations at https://dol.ny.gov/system/files/documents/2021/03/part801-805.pdf

188. Because the Respiratory Standard and General Duty Clause are broadly written, they apply to the Covid-19 virus because it is an airborne hazard in the workplace and the existing Respiratory Standards applies specifically to Covid-19, including all variants and new novel airborne diseases.

189. The City's Vaccine Orders expressly states that they directly, substantially, and specifically regulate occupational safety and health for City and private employees only, and therefore, the Orders are occupational safety and health standard within the meaning of the OSH Act despite the fact that the Orders say they are for the benefit of the general public.

190. The City's Vaccine Orders also conflicts with the methods by which the OSHA standards control infectious diseases because the Covid-19 vaccine does not eliminate an employee's exposure to nor remove the Covid-19 airborne viral contaminant from the atmosphere in the workplace, which is the sole objective and method of the OSHA Respiratory standard which is a workplace environmental protocol to works on the outside of the employees' body to keep them safe. See *International Paper Co. v. Ouellette*, 479 U. S. 481, 494 (1987). (Held that "state law is pre-empted when it conflicts with the method by which the federal statute was designed….").

191. The Vaccine Orders implement a "medical treatment" that is injected into the body of employees that effects the employee's natural immune system but does nothing to shield the employee from exposure to any airborne viral contaminant, specifically the airborne virus that causes Covid-19.

192. The Covid-19 vaccine as a medical treatment does not meet the "minimum safety standard" requirements to be an approved "method" to manage respiratory communicable diseases under the OSHA regulations and is therefore preempted by the OSH Act standards and regulations.

193. The Vaccine Orders also conflict with general scheme of the OSHA Act (which was to place a non-delegable duty on employers to create safe workplaces to retain employees)

194. On May 18, 2021, a New York State agency adopted the OSHA Respiratory standard 29 CFR 1910.134, and lists Powered Air Purifying Respirators (PAPRs) as an engineering safety device,

which could have been adopted and implemented by all City agencies in order to provide PAPRs to employees who refused to take the Covid-19 on religious grounds and could not perform their jobs remotely. See Directive 4068 dated 5/18/2021[4]

195. Based on the foregoing, Plaintiffs seek a declaratory judgement pursuant to 28 U.S.C. §2201 based on the jurisdiction granted this United States District Court in Section 11(c)(2) of the OSH Act at 29 U.S.C. §660 to "order all appropriate relief" which shall include determining that City's Vaccine Orders are preempted by the OSHA Act and are therefore void and Plaintiffs seek a permanent injunction prohibiting the City from enacting any future Vaccine Mandates in violation of the OSH Act and that violate Plaintiffs Constitutional rig.

196. Plaintiffs also seeks a declaratory determination that the *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) decision regarding the power of states and municipalities to mandate vaccines or immunization under its police power has also been overruled by federal regulation, specifically by the OSH Act and declare that all employees have the right to choose and refuse their medical treatment under the substantive Due Process Clause of the Fourteenth Amendment and as held by the U.S. Supreme Court in *Jacobson* court and the *Cruzan.*[5]

197. Plaintiffs also seek a declaration that "remote work" is an OSHA authorized safety method to protect employees from exposure to airborne hazards in the workplace, including the airborne hazard of the Covid-19 virus.

---

[4] See May 18, 2021 New York State Directive 4068 at https://doccs.ny.gov/system/files/documents/2021/05/4068.pdf
[5] Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 279 (1990) (held – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process) *Jacobson* (held that "the inherent right of every freeman to care for his own body and health in such way as to him seems best……But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.……This court has more than once recognized it as a fundamental principle….")

## FOURTH CAUSE OF ACTION

**(Religious Coercion/Harassment/Discrimination)**
**New York City Human Rights Law - Administrative Code §8-107(3) & §8-109(a)(f)(i)**

198.   Plaintiffs' relegations and incorporates by reference Paragraphs 1-191 of this Complaint as full set forth herein.

199.   Because the City's Order was preempted by the OSHA Act, the City had no authority to require Plaintiffs or any City employee to submit to the City's Vaccine Orders nor did the City have authority to make compliance the Vaccine Orders a condition for retaining employment with the City.

200.   The City violated the Plaintiffs rights protected by the City's Human Rights Law (CHRL) when it made the Vaccine Orders a condition for retaining their employment, in violation of the CHRL Administrative Code § 8-107 Subdivision (3)(a), which states that, "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer …… to:

> impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day or the observance of any religious custom or usage," (§ 8-107 [1] [a] [3].

201.   The City had no authority to require Plaintiffs or any City employee to request a religious exemption and to disclose their religious practices as a pre-condition for them receiving an exemption from the illegal Vaccine Order or as a pre-condition for receiving the OSH Act right to either work remotely or to receive safety equipment, like the PAPR.

202.   The City's investigation into Plaintiffs religious practices and denial of their request for an exemption from the Vaccines Orders was intended to unlawfully harass and coerce Plaintiffs to violate or forego their religious practice of abstaining from taking the Covid-19 vaccine, when the OSHA Act provided more than adequate safety provisions that did not require Plaintiffs compliance Vaccines Orders.

203. The City's also intentionally failed to train and inform Plaintiffs of their OSH Act right to work remote or to receive safety equipment like the PAPR so that Plaintiff would not file complaints with OSHA and so that the City could continue to harass and coerce Plaintiffs to violate their religious practice of abstaining from taking the Covid-19 vaccine.

204. The City's act of placing Plaintiffs on involuntary leave without pay and locking them out of their jobs because of religious practice of abstaining from taking the Covid-19 vaccine for the purpose is coercion, harassment and extreme and outrageous conduct intentionally or with reckless indifference to Plaintiffs to right to practice their religious practice.

205. The City's Mayor Adams in his individual capacity continues to harass Plaintiffs by refusing to automatically reinstate Plaintiffs and requiring them to provide a waiver of any and all claims and monetary damages against the City as a condition for reinstatement. The "quid-pro quo" requirement along with the "no vax no job" condition amounts to harassment under the NYCHML.

206. The City act of denying Plaintiff's their unemployment benefits by falsely claiming to the New York Department of Labor that Plaintiffs were terminated from their jobs because of a violation of "condition of employment" amounts to intentional harassment and extreme and outrageous conduct because the illegal Vaccines Orders were preempted by the OSHA act and therefore not valid "conditions of employment".

207. The Mayors wrongful intentional harassment and discriminatory adverse action listed above have caused Plaintiffs severe emotional distress in violation of New York City Human Rights Law (CHRL) codified in Administrative Code § 8-107, entitled "Unlawful Discriminatory Practices."

208. On November 1, 2021, the New York City Human Rights Commission issued its anti-discrimination guidelines regarding New York City Human Rights Laws[6] titled "COVID-19 & Employment Protections," which relevant parts state as follows:

> Employers must **not discriminate against** or **harass employees** with actual or perceived infection with COVID-19, or based ……..on the presumption that they …….are more likely to contract COVID-19 due to …..**religion** or another protected status.     (See "Guidelines attached Exhibit 27)

209. Even after the City's Human Rights Commission issued the anti-harassment and discrimination guidance, the City continued to harass Plaintiffs by keeping them on involuntary leave without pay, and denying them unemployment benefits.

210. Under information and belief, all of the Plaintiffs were not given the opportunity to engage in "Cooperative Dialogue" with the City as required by CHRL §8-102, wherein the City made a "good faith" effort either in writing or oral dialogue to discuss with Plaintiffs the available rights to remote work or receive safety equipment pursuant to OSH Act standards.

211. Because the City's Vaccine Orders violated the OSH Act and the City had a duty to provide either remote work or OSHA approved safety equipment so that Plaintiffs could continue to work, the City could not claim "undue hardship" as an excuse for failing to comply with the existing OSH Act standards.

212. The City required each Plaintiff to apply and/or reapply for religious exemptions, when they knew all along that they were never going to provide any accommodation that would allow any of the Plaintiffs to remain in their jobs either within their facilities or to work from home.

213. The City knew or should have known that OSHA pre-empted all of their Vaccine Orders and that the hostility express toward the faith of employees did not absolve the City from its Duties under OSHA.

---

[6] See all amendments to the CHRL at https://www1.nyc.gov/site/cchr/law/amendments.page

214. The City's acts of requiring Plaintiffs to make two and three requests for religious exemptions and to disclose detail about their faith and require clergy letters when the OSH Act requires employers to grant automatic exemptions pursuant to Section 20(a)(5) is evidence of acts of coercion, harassment and hostility in violation of the NYCHRL and the OSH Acts.

215. Mayor Adams in his individual capacity recklessly disregarded the rights of all Plaintiff by over and over denying them their right to their jobs and refusing to provide exemptions from the Vaccine Orders and requiring them to waive their rights to backpay and compensation while denying safety equipment mandated by OSHA amounts to gross coercion and harassment.

## CLASS ALLEGATIONS

216. Plaintiffs realleges and incorporates by reference Paragraphs 1-209 of this Fourth Amended Complaint as if fully set forth herein.

217. Class representative Plaintiffs, seek class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of themselves and all persons similarly situated.

218. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

219. The Class claims raise numerous common questions of fact or law, including, but not limited to:

   a. Whether the Vaccine Orders are preempted by OSHA standards because the Vaccine Orders specifically targets City employees and not a larger public health goal;

   b. Whether the wrongful discharge of Plaintiffs for refusing to take the Covid-19 vaccine based on religious grounds violates the OSH Act, the First Amendment Free Exercise and Fourteen Amendment substantive Due Process liberty right pursuant to 42 U.S.C.

§1983 and amount to religious discrimination and harassment pursuant to the New York City Human Rights Act.

220. Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3). The common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy.

221. The claims of the named Plaintiffs are typical of the claims of the class in that the named Plaintiffs and class members claim that their right to a safe workplace pursuant to OSHA standards have been denied by City's reckless disregard to disclose to Plaintiffs their right to remote work and/or Respiratory Protections provided under OSHA Standards and subsequent denial of their right to exercise their religious practice of abstaining from the Covid-19 vaccine and keep their job in violation of the First Amendment and the New York City Human Rights Law.

222. The named Plaintiffs claim that they were forced to seek an unnecessary religious exemption which subjected them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

223. Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as the class members, namely loss wages and benefits for being placed on leave without pay due to their refusal to submit to the Vaccine Orders

**PRAYER FOR RELIEF**

224. Declaratory judgement pursuant to 28 U.S.C. § 2201(a), declaring that:

   a. All employers, including but not limited, to private employers as well as state and municipal employers, are precluded from mandating immunizations/vaccines, medical treatments and medical examinations, including the Covid-19 vaccine, (so long as refusal of said immunizations/vaccines, medical treatments and medical examinations is not a crime under

any respective state law), as a condition of employment or a condition for receiving employment benefits and from discharging any employee for refusing any immunization, including the Covid-19 vaccine pursuant to Section 20(a)(5) and Section 11(c)(1);

b.   all competent citizens have the right to choose their own medical treatment to reduce the risks associated with any communicable disease, including but not limited to the right to choose plant-based lifestyle medical treatments so long as the medical treatment is not a crime and citizens have the right to refuse any medical treatment; and

c.   declaration that the Vaccine Orders are preempted and are void and all agreements obtained by the City from any employee impacted by the Vaccine Orders, like employee waivers of their rights to backpay or compensatory damages are also void, invalid and the current mandate that Plaintiffs can only be reinstated if they provide a waiver of liability is void and that the statute of limitations runs on Plaintiffs claims from the date that any conditions of reinstatement is lift voluntarily or by order of this Court; and

d.   pursuant to 29 U.S.C §669(a)(5) all employees have an absolute right to obtain a religious exemption from an employer who requires any immunization, medical examination or medical treatment.

225.   Injunctive relief ordering that the Defendants are barred from:

a.   continuing to withhold compensation from Plaintiffs owed to them or which should have been paid to Plaintiffs since the date that each Plaintiff was placed on leave without pay until the day Plaintiffs return to work as ordered herein;

b.   continuing to withhold or preventing Plaintiffs from receiving that portion of unemployment benefits paid by Plaintiffs that should have been paid to Plaintiffs while on leave of absence without pay;

   c.   withholding OSHA authorized safety precautions, including but not limited to "remote work" at home, safety engineering precautions like class room air purification systems, safety equipment like Powered Air Purifying Respirators (PAPR) or any other safety method authorized by the OSHA regulations to prevent employee exposure to airborne viral hazards in the workplace; and

   d.   that the City is shall pay Plaintiffs all backpay owed from the date they were place on leave without pay, to Plaintiffs counsel of record within 21 business days of this Court's order to pay backpay.

226.   Pursuant to Plaintiffs OSH Acct Section 11(c)(2), claim, Section 1983 claims and New York City Human Rights Claims, Plaintiffs also seek damages in the form of:

   a.   loss payments into retirement fund and reinstatement of loss time into retirement calculation;

   b.   expungement of discipline codes from each employee's personnel file and records;

   c.   mental and emotional distress damages;

   d.   punitive damages against Defendants former Mayo deBlaiso, Mayor Adams, former Commissioner Chokshi, MD and Commissioner Vason in their individual capacities in an amount to be determined by a jury or pursuant to the statutory limits under the NYCHRL §8-404;

   e.   interest on any compensation pursuant to applicable law;

   f.   attorney fees and costs; and

   g.   any other remedies allowed by law

Dated: August 22, 2023               Respectfully submitted,

                                    /s/ *Jo Saint-George*

                                _____

                                  Jo Saint-George, Esq.
                                  Women of Color for Equal Justice
                                  14216 Dunwood Valley Dr
                                  Bowie MD 20721-1246
                                  jo@woc4equaljustice.org
                                  *Counsel for Plaintiffs*

Donna Este-Green, Esq. Bar#2517688
*25 Fairway Dr.*
*Hempstead, NY 11550*
*Co-Counsel for Plaintiffs*


Tricia S. Lindsay, Esq.
531 E. Lincoln Ave., Suite 5B
Mount Vernon, New York 10552
ph:  860-783-8877
fax:  914-840-1196
email: TriciaLindsayLaw@gmail.com
*Co-Counsel for Plaintiffs*