# EXIBIT #2

**523 F.Supp.3d 323**

**GROUP ONE LTD., Plaintiff,**
**v.**
**GTE GMBH and Ralf Weigel, Defendants.**

**20-CV-2205 (MKB)**

**United States District Court, E.D. New York.**

**Signed February 3, 2021**

[523 F.Supp.3d 328]

Jonathan David Ball, Greenberg Traurig LLP, New York, NY, for Plaintiff.

Karl Geercken, Neal J. McLaughlin, Alston & Bird LLP, New York, NY, for Defendants.

GTE GmbH, Pro Se.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

Plaintiff Group One Ltd. ("Group One") commenced the above-captioned action on May 15, 2020, against Defendants GTE GmbH ("GTE") and Ralf Weigel, alleging that Defendants infringed on Plaintiff's patents for tennis let detection systems[1] and knowingly spread malicious falsehoods about the capabilities of Plaintiff's systems in order to retain their customers. (Compl. ¶ 1, Docket Entry No. 1.) Plaintiff alleges that Defendants violated section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a) and (c), the New York General Business Law §§ 349(h) and 350(e)(3) (the "NYGBL"), and the Patent Act, 35 U.S.C. §§ 271(a) – (c), and also asserts claims for unfair competition and deceptive trade practices under New York common law, tortious interference with business relations, and trade libel. (Id. ¶¶ 41–139.) Plaintiff seeks permanent injunctive relief, an accounting, damages, and attorneys' fees and costs. (Id. ¶¶ 27–29.)

On July 6, 2020, Plaintiff filed an *ex parte* motion for a temporary restraining order ("TRO"), (Pl.'s Mot. for TRO, Docket Entry No. 6), and on July 8, 2020, the Court granted the TRO, granted alternate service by email, and issued an Order to Show Cause to Defendants to show why a preliminary injunction should not be granted, (Min. Entry dated July 8, 2020; Order to Show Cause dated July 8, 2020, Docket Entry No. 8). On July 30, 2020, the Court granted the parties' request to adjourn the preliminary injunction hearing *sine die* in light of Plaintiff's withdrawal of its motion for a preliminary injunction, (Order dated July 30, 2020; Pl.'s Letter to Adjourn dated July 30, 2020, Docket Entry No. 16), and on September 23, 2020, Defendant filed a motion to dismiss for lack of personal jurisdiction and insufficient service of process pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure,[2] which Plaintiff opposes.[3]

For the reasons explained below, the Court grants the motion to dismiss the case against Weigel pursuant to Rule 12(b)(2) for lack of personal jurisdiction and denies the motion to dismiss the

[523 F.Supp.3d 329]

claims against GTE pursuant to Rule 12(b)(5) for insufficient service of process.

**I. Background**

"Weigel is the [Chief Executive Officer ('CEO')], sole employee, and sole [o]wner of GTE." (Compl. ¶ 6.) Plaintiff and GTE[4] are "direct competitors that provide [let detection] systems to major tennis tournaments, events, leagues, sanctioning bodies, and/or organizations for [tennis] matches which include the let rule."[5] (Id. ¶ 15.) Frederic Goldstein invented "a more accurate and reliable wireless let detection system," which included "net tension regulation, an electronic ball mark inspection sensor, a vibration feature as a signal to chair umpires to indicate a let, and tennis's first integrated shot clock control feature." (Id. ¶ 16.) "Goldstein applied for several patents covering this system and Group One, as the assignee,



began marketing these let detection systems." (*Id.*)

In or around January of 2015, the Association of Tennis Professionals entered into a five-year contract with Plaintiff to "provide [let detection] systems for its tour events" and replace "an older version of [Defendants'] 'Trinity' system" (the "Old Trinity System") with Plaintiff's New System. (*Id.* ¶ 17.) The contract was renewed for another five-year term in 2019. (*Id.* ¶ 18.)

In early 2019, due to market pressure from Plaintiff's Net System, Defendants "changed the Old Trinity System to the present infringing Trinity System" (the "New Trinity System") to "avoid losing additional clients" such as the United States Tennis Association (the "USTA")[6] to Plaintiff. (*Id.* ¶ 20.) Defendants "knowingly misrepresent[ed] the features and capabilities" of the Net System — including the product's battery life, charging system, setup process, quality, and functionality — to Plaintiff's potential customers, including the USTA. (*Id.* ¶¶ 22–25, 27.) Defendants also "falsely stated that, unlike the [New Trinity System], [the Net System] is vulnerable to 'data manipulation,' inferring that the [latter] could be disabled during gameplay," (*id.* ¶ 24), and portrayed misleading facts about the New Trinity System's net tension, (*id.* ¶ 26).

Plaintiff contends that the New Trinity System was "made, used, imported, sold or offered for sale, leased or otherwise made the subject of a commercial contract for Defendant[s'] financial gain at the 2019 U.S. Open," (*id.* ¶ 21), and that as a result of Defendants' misrepresentations, USTA entered into contract with Defendants to supply the New Trinity System for use at the 2020 U.S. Open, (*id.* ¶¶ 28–29). Plaintiff further asserts that Defendants' misrepresentations to "major tennis sanctioning bodies and/or organizations has … caused [Plaintiff] to lose other prospective customers as well as other business opportunities related to [Plaintiff's] other patented and patent-pending inventions in tennis," which "has caused serious and substantial financial and reputational harm to [Plaintiff's] business." (*Id.* ¶ 30.)

On April 18, 2019, Plaintiff's counsel "sent correspondence to [Defendants] notifying

[523 F.Supp.3d 330]

it of the impending issuance of U.S. Patent No. 10,272,307 ('the '307 patent'), providing notice that the Trinity System infringes the '307 patent, and requesting a response concerning [Defendants'] contemplated use of the infringing Trinity System at the 2019 U.S. Open and other … events." (*Id.* ¶ 31.) Defendants did not respond to the letter. (*Id.*)

On April 30, 2019, the United States Patent and Trademark Office (the "USPTO") "issued the '307 patent, titled 'Tennis Net Tension System Including Service Let Indication Feature,' for an invention directed to, *inter alia*, determining if a service let occurs via the detection and measurement of a force exerted by the net." (*Id.* ¶ 32.) The patent also "included the feature of the first integrated shot clock control in tennis, anticipating the new rule in tennis requiring an on court shot clock display." (*Id.*)

In or around November of 2019, Plaintiff's counsel sent Defendants a letter stating that the use of the New Trinity System at the "2020 Australian Open infringed an Australian patent whose parent patent is the '307 patent," and Defendants "did not respond to this letter either." (*Id.* ¶ 33.) On November 26, 2019, Plaintiff's counsel "sent a letter to Tennis Australia's senior legal counsel informing it that the [New Trinity System] it intended to use at the 2020 Australian Open infringed the Australian patent related to the '307 patent." (*Id.* ¶ 34.) "After receiving correspondence from Tennis Australia and an email from … Weigel — who stated that his patent attorneys would take contact within days — [Plaintiff] filed a complaint for patent infringement of the foreign patent related to the '307 patent in Australia," which is pending before a federal court in Australia. (*Id.* ¶ 35.)

On February 26, 2020, Plaintiff's counsel sent correspondence to Defendants "notifying it of the impending issuance of U.S. Patent No. 10,583,341



('the '341 patent'), another U.S. patent related to the '307 patent, [and] asserting that the [New] Trinity System would infringe this patent as well." (*Id.* ¶ 36.) On March 4, 2020, Defendants "responded via a German patent prosecution firm, who stated that it represented [Defendants] and that it had no information about the issued claims of the '341 patent" and therefore was incapable of filing a "substantial response." (*Id.* ¶ 37 (quoting Emails dated Mar. 4, 2020, annexed to Compl. as Ex. H, Docket Entry No. 1-8).) The same day, Plaintiff's counsel provided the claims to Defendants' counsel, "stated that the patent 'will issue in six days,' " and noted "that the claims are 'readily accessible on the USPTO's website.' " (*Id.* ¶ 38 (quoting Emails dated Mar. 4, 2020).)

On March 10, 2020, the USPTO "issued the '341 patent, titled 'Tennis Net Tension System Including Service Let Indication Feature,' for an invention directed to, *inter alia*, a system for determining if a service let occurs via the detection and measurement of a force exerted by the net." (*Id.* ¶ 40.) The patent "also included the feature of the first integrated shot clock control in tennis, anticipating the new rule in tennis requiring an on court shot clock display." (*Id.*)

On May 15, 2020, Plaintiff commenced this action alleging direct and induced infringement of the '307 and '341 patents in violation of the Patent Act, 35 U.S.C. §§ 271(a)– (c), section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a) and (c), and NYGBL §§ 349(h) and 350(e)(3), and also asserting claims for unfair competition and deceptive trade practices under New York common law, tortious interference with business relations, and trade libel. (*Id.* ¶¶ 41–139.) Plaintiff seeks a permanent

[523 F.Supp.3d 331]

injunction, damages, an accounting, and attorneys' fees and costs. (*Id.* at 28.)

On July 6, 2020, Plaintiff filed an *ex parte* motion for a TRO, (Pl.'s Mot. for TRO), and on July 8, 2020, the Court granted the TRO, granted alternate service by email, and issued an Order to Show Cause to Defendants to show why a preliminary injunction should not be granted, (Min. Entry dated July 8, 2020; Order to Show Cause dated July 8, 2020). The Court directed that Plaintiff serve copies of the Order, Complaint, Summons, and documents in support of a motion for preliminary injunction on Defendants "via the email addresses used to communicate with Plaintiff previously, or other email addresses associated with Defendants' business that are known to Plaintiff." (Order to Show Cause dated July 8, 2020, at 3.)

On July 28, 2020, Defendants filed a response to the Order to Show Cause, (Defs.' Resp. to Order to Show Cause, Docket Entry No. 12), and on July 29, 2020, the Court declined to strike the response as untimely and adjourned the preliminary injunction hearing to July 31, 2020, (Min. Entry dated July 29, 2020). On July 30, 2020, Weigel and Sean Carey, the senior director for Professional Tennis Strategy, Officiating, and Pro Circuit at the USTA, filed declarations, (Decl. of Weigel ("Weigel Decl."), Docket Entry No. 14; Decl. of Sean Carey ("Carey Decl."), Docket Entry No. 15), and on the same day, the Court granted the parties' request to adjourn the preliminary injunction hearing *sine die* in light of Plaintiff's withdrawal of its application for a preliminary injunction, (Order dated July 30, 2020; Pl.'s Letter to Adjourn dated July 30, 2020).[7]

On September 23, 2020, Defendants filed a motion to dismiss for lack of personal jurisdiction and insufficient service of process pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5), (Defs.' Mem.; Defs.' Reply), and Plaintiff opposed, (Pl.'s Opp'n).

## II. Discussion

### a. Standards of review

#### i. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal



jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) ). The showing a plaintiff must make to meet that burden is governed by a "sliding scale," which " 'varies depending on the procedural posture of the litigation.' " *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) ). If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) ); *see also Holmes v. Apple*, 797 F. App'x 557, 559 (2d Cir. 2019) (summary order) ("A plaintiff has the burden of establishing personal jurisdiction over an entity against which it seeks to

[523 F.Supp.3d 332]

bring suit, and to survive a motion to dismiss for lack of such jurisdiction, 'a plaintiff must make a *prima facie* showing that jurisdiction exists.' " (quoting *Penguin Grp. (USA) Inc.*, 609 F.3d at 34–35 )); *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (same). Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Holmes*, 797 F. App'x at 559 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) ); *see also Dix v. Peters*, 802 F. App'x 25, 27 (2d Cir. 2020) ("Where the district court grants a Rule 12(b)(2) motion without an evidentiary hearing, we credit the plaintiff's averment of jurisdictional facts as true.") (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) ); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) )). After discovery, the plaintiff's "*prima facie* showing must be factually supported." *See Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *Ball*, 902 F.2d at 197 ). "Conclusory allegations based only on information and belief are not sufficient" to provide such factual support. *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y. 2010) (citing *Jazini*, 148 F.3d at 183–84 ).

The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci IV )*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé*, 616 F.3d at 163 ); *see also Grundstein v. Eide*, 598 F. App'x 45, 46 (2d Cir. 2015) (citing *DiStefano*, 286 F.3d at 84 ). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Jazini*, 148 F.3d at 185 ).

### ii. Rule 12(b)(5)

Rule 12(b)(5) permits a party to move to dismiss the complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (alteration in original) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) ); *see also Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant." (citing *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) )). In deciding a motion to dismiss pursuant to Rule 12(b)(5), a court considers whether the plaintiff has complied with Rule 4 of the Federal Rules of Civil Procedure, which governs the content, issuance and service of a summons. *See DeLuca v.*



*AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Vidurek v. Koskinen*, 789 F. App'x 889, 893 (2d Cir. 2019) (alteration in original) (quoting *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) ).[8]

[523 F.Supp.3d 333]

### b. Personal jurisdiction over Weigel

Defendants argue that the Complaint fails to allege any basis for the Court to exert personal jurisdiction over Weigel who is a German citizen and resident. (Defs.' Mem. 4–5 (citing Weigel Decl. ¶ 2).)

Plaintiff argues that (1) Defendants effectively concede that there is personal jurisdiction over Weigel, and (2) there is personal jurisdiction over Weigel under (a) New York's long-arm statute pursuant to section 302(a)(1) of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), or in the alternative, (b) based on agency theory. (Pl.'s Opp'n 5–10.) In addition, Plaintiff argues that the exercise of personal jurisdiction over Weigel comports with due process. (*Id.* at 11.)

### i. Defendants do not concede personal jurisdiction

Defendants assert that "[i]nstead of pleading the required allegations as to ... Weigel that would support personal jurisdiction, which it cannot, [Plaintiff] impermissibly extends its allegations as to GTE ... to ... Weigel through a 'collective' definition of the term 'GTE' in its Complaint." (Defs.' Reply 1.)

Plaintiff argues that because "Defendants concede that the Complaint alleges personal jurisdiction over GTE," and "all references to 'GTE' in the Complaint apply to [both GTE and Weigel]," Defendants effectively concede that there is personal jurisdiction over Weigel. (Pl.'s Opp'n 5–6.)

Although Defendants do not address whether the Court has personal jurisdiction over GTE, they do not concede personal jurisdiction over Weigel. To the contrary, Defendants' brief argues that the court *does not* have personal jurisdiction over Weigel. (Defs.' Mem. 4; Defs.' Reply 1–3.) Moreover, any concession of personal jurisdiction over GTE does not automatically extend to a concession of personal jurisdiction over Weigel. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008) ("Although [the defendants] have, for the purposes of this motion, assumed that the [c]ourt has personal jurisdiction over [the corporation], it does not necessarily follow that the [c]ourt has jurisdiction over [the president] and CEO of [the corporation] pursuant to [ section] 302(a)(1)." (citing *Pilates, Inc. v. Current Concepts Kenneth Endelman*, No. 96-CV-43, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996) )).

Accordingly, the Court finds that Defendants do not concede personal jurisdiction over Weigel.

### ii. The Court does not have personal jurisdiction over Weigel pursuant to New York's long-arm statute

Defendants argue that there is no personal jurisdiction over Weigel. (Defs.' Reply

[523 F.Supp.3d 334]

1–3.) Plaintiff asserts that the Court previously found that there is personal jurisdiction over Weigel under New York's long-arm statute.[9] (Pl.'s Opp'n 6–10.)

"There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum. *Id.* ("A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation — even those entirely unrelated to the defendant's contacts with the state.") Specific jurisdiction



requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim. *Id.* ("Specific or conduct-linked jurisdiction ... 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.' " (alteration omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown* , 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) )). Under New York law, courts exercise specific jurisdiction pursuant to N.Y. C.P.L.R. § 302 and general jurisdiction pursuant to section 301.

Section 302(a) permits courts "to exercise personal jurisdiction over [a] non-domiciliary" where the "cause of action aris[es] from any of the acts enumerated in the [statute]." N.Y. C.P.L.R. § 302(a). In addition, even if a plaintiff can establish jurisdiction under New York law, the court must also determine whether the "exercise of personal jurisdiction over a foreign defendant comports with the due process protections established under the United States Constitution." *Licci IV* , 732 F.3d at 168 (first citing *Best Van Lines, Inc. v. Walker* , 490 F.3d 239, 242 (2d Cir. 2007) ; and then citing *Int'l Shoe Co. v. Washington* , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ).

**1. The Court lacks personal jurisdiction over Weigel under section 302(a)(1)**

Defendants argue that the Court lacks personal jurisdiction over Weigel because the Complaint fails to plead "personal conduct by ... Weigel" and personal jurisdiction cannot be asserted based on "word play" that the Complaint "extends its allegations as to [GTE] to ... Weigel through a 'collective' definition of the term 'GTE.' " (Defs.' Reply 1–2.) Defendants note that "the only allegation in the Complaint as to *any* action taken by ... Weigel relates to an email he sent about an *Australian* patent infringement dispute" and that "Plaintiff does not even allege that ... Weigel took this action in a personal capacity

[523 F.Supp.3d 335]

rather than on behalf of [GTE]." (Defs.' Mem. 4.)

Plaintiff argues that "the actions of both GTE GmbH and Weigel set forth in the Complaint are sufficient to confer personal jurisdiction over Weigel under [ section] 302(a)(1) ... because [GTE] and Weigel transacted business and/or entered into contracts to supply goods and services in [New York]." (Pl.'s Opp'n 6.) In support, Plaintiff notes that the allegations in the Complaint against GTE apply equally to Weigel and that the Complaint states that there is personal jurisdiction over GTE because (1) "GTE has committed acts of patent infringement and other tortious acts within [New York]," (2) "GTE transacts business in [New York] and specifically has distributed, used, imported and/or sold infringing products, ... in ... New York," (3) the infringing product "was made, used, imported, sold or offered for sale, leased or otherwise made the subject of a commercial contract for Defendants' financial gain at the 2019 U.S. Open," and (4) "the USTA entered into a contract with GTE for let detection systems for use at the 2020 U.S. Open, and not [Plaintiff]." (*Id.* (quoting Compl. ¶¶ 8, 10, 21).)

Section 302(a)(1) permits courts to exercise specific jurisdiction over a non-domiciliary "who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1) ; *see also Chloé* , 616 F.3d at 169 (discussing section 302(a)(1) ). Section 302(a)(1) has two prongs: (1) the defendant must "have transacted business within the state," either itself or through an agent, and (2) the cause of action "must arise from that business activity." *Licci IV* , 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC* , 450 F.3d 100, 103 (2d Cir. 2006) ); *see also Yih v. Taiwan Semiconductor Mfg. Co.* , 815 F. App'x 571, 574 (2d Cir. 2020) (quoting N.Y. C.P.L.R. § 302(a)(1) ). Under New York state law, a defendant's lack of physical presence in the state is not dispositive of whether he transacts business within the state, "so long as the defendant's activities [within the state] were purposeful and there is a substantial relationship between the



transaction and the claim asserted." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007) (quoting *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006) ); *see also Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci II)*, 673 F.3d 50, 61 (2d Cir. 2012) ("A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.' " (quoting *Fischbarg*, 9 N.Y.3d at 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 )); *C. Mahendra (NY) LLC v. Nat'l Gold & Diamond Ctr., Inc.*, 125 A.D.3d 454, 3 N.Y.S.3d 27, 30 (2015) ("The statute applies where the defendant's New York activities were purposeful and substantially related to the claim.").

In determining whether a defendant is purposefully transacting business in New York, a court must look at "the quality of the defendant['s] New York contacts." *Fischbarg*, 9 N.Y.3d at 381, 849 N.Y.S.2d 501, 880 N.E.2d 22 ; *Best Van Lines*, 490 F.3d at 246 ("Courts look to 'the totality of the defendant's activities within the forum' to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes purposeful activity satisfying the first part of the test." (alteration in original) (first quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Invs.*, 510 F.2d 870, 873 (2d Cir. 1975) ; and then citing

[523 F.Supp.3d 336]

*Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965) )); *see also Licci II*, 673 F.3d at 62 (noting that a single act or "an ongoing course of conduct or relationship in the state may" suffice to establish jurisdiction). "[M]ore limited contacts regarding services to be performed outside New York would not satisfy [ section] 302(a)(1)." *Yih*, 815 F. App'x at 574.

To satisfy the "arising from" prong, a plaintiff must show that there is a "substantial relationship" or "articulable nexus" between the claim asserted and the actions taken in New York. *Best Van Lines*, 490 F.3d at 246 ; *see also Licci III*, 20 N.Y.3d at 339, 341, 960 N.Y.S.2d 695, 984 N.E.2d 893 ("[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted [supports a finding of jurisdiction under section 302(a)(1) ].").

In cases involving corporate defendants, the court's exercise of personal jurisdiction over a corporation's officer is predicated on a showing that the officer engaged in *personal* conduct that is related to the transaction that underlies the claim. *See Langer v. Paysafe Partners LP*, No. 19-CV-4388, 2020 WL 7684885, at *5 (E.D.N.Y. May 22, 2020) (" 'Corporate officers who transact business or commit a tort in New York while acting on behalf of their employer are subject to personal jurisdiction in New York.' ... [where a plaintiff] 'allege[s] personal conduct by the officer related to the transaction or tort which is the basis for the claim.' " (quoting *Pilates*, 1996 WL 599654, at *2–3 )), *report and recommendation adopted*, 2020 WL 7041085 (E.D.N.Y. Nov. 30, 2020) ; *see also Great W. Ins. Co. v. Graham*, No. 18-CV-6249, 2020 WL 3415026, at *16 (S.D.N.Y. June 22, 2020) (exercising personal jurisdiction over a chief operating officer who "held himself out as the primary representative of [a corporation], signed the [t]rust [a]greement, and was involved in conference calls concerning the [t]rust [a]ccount," transactions that formed the basis of the claims); *Levin v. Am. Document Servs., LLC*, No. 17-CV-1285, 2018 WL 2057144, at *10 (E.D.N.Y. Jan. 19, 2018) ("As an initial matter, jurisdiction over the representatives of a corporation 'may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state.' " (quoting *Giuliano v. Barch*, 2017 WL 1234042, at *6 (S.D.N.Y. Mar. 31, 2017) )), *report and recommendation adopted*, 2018 WL 1358815 (E.D.N.Y. Mar. 16, 2018). The complaint must proffer more than a general allegation that an officer is in control of a corporation. *See Pilates, Inc.*, 1996 WL 599654, at *3 ("[A] general allegation that an officer



controls a corporation is not sufficient to establish personal jurisdiction.").

Plaintiff's assertion that all allegations in the Complaint against GTE apply equally to Weigel is insufficient to provide a basis for the Court's exercise of personal jurisdiction. *See Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018) ("[The] plaintiff's conclusory and vague allegations in the amended complaint, which generally refer to 'defendants' in the plural and fail to describe [the individual defendant's] specific role ... in the [underlying acts], are insufficient to demonstrate [the individual defendant's] personal involvement in ... the alleged misconduct.").

Although the Complaint states that "Weigel is the CEO, sole employee, and sole [o]wner of GTE," (Compl. ¶ 6), Weigel's position in the corporation is insufficient to establish that he had personal involvement with the alleged illegal acts. *See Langer*, 2020 WL 7684885, at *5 (finding

[523 F.Supp.3d 337]

a lack of personal jurisdiction under section 302(a)(1) where the plaintiff failed to "allege any specific conduct by [an individual in perpetration of the alleged fraud] other than to conclusorily allege that he was the chief financial officer of [a corporation] and is believed to have engaged in a scheme to conceal [an] embezzlement and termination"); *Shostack v. Diller*, No. 15-CV-2255, 2015 WL 5535808, at *6 (S.D.N.Y. Sept. 16, 2015) (finding that the CEOs of corporations did not inherently have personal involvement in the underlying transactions at dispute simply because they were CEOs), *report and recommendation adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ; *Pilates, Inc.*, 1996 WL 599654, at *3 (finding that the plaintiff did not made a *prima facie* showing of personal jurisdiction over a corporation's president where the plaintiff did not allege any specific conduct by him or "describe [his] role in the allegedly infringing advertising or sales in New York"); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 982 (S.D.N.Y. 1992) (finding that the allegation that an officer sold infringing product "through a corporation which he controls" was insufficient by itself to establish personal jurisdiction). *Compare Blockchain Luxembourg S.A. v. Paymium, SAS*, No. 18-CV-8612, 2019 WL 4199902, at *12 (S.D.N.Y. Aug. 7, 2019) (declining to exercise personal jurisdiction over a CEO where the amended complaint alleged that the corporation's actions were taken at the direction of the CEO but was "devoid of any specific allegations pertaining to [the CEO's] infringing conduct") *with Rich v. Fox News Network LLC*, No. 18-CV-2223, 2020 WL 6276026, at *4–5 (S.D.N.Y. Sept. 15, 2020) (exercising personal jurisdiction where the amended complaint contained "multiple references" to an individual defendant's coordination with the corporation); *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 385 (S.D.N.Y. 2019) (exercising personal jurisdiction over officer defendant where the plaintiff showed that the officer defendant "supervis[ed] the conduct," received status reports on the business, and controlled the hiring decisions with regard to the underlying transaction at issue).

Plaintiff's receipt of an email from Weigel "who stated that his patent attorneys would [make] contact within days" with regard to Plaintiff's infringement claims, (Compl. ¶ 35), is also insufficient to confer personal jurisdiction. *See Barron Partners, LP v. Lab123, Inc.*, No. 07-CV-11135, 2008 WL 2902187, at *11 (S.D.N.Y. July 25, 2008) ("As to [the individual defendant], his limited email contact with [the plaintiff's analyst] is not sufficient to establish that he conducted business in New York, and, again, there is no substantial relationship alleged between [the] plaintiff's cause of action and [the individual defendant's] email activities.").

Because Plaintiff has failed to allege personal conduct by Weigel related to the underlying transactions, the Court declines to exercise personal jurisdiction over Weigel as an individual under section 302(a)(1). Accordingly, the Court analyzes whether there is personal jurisdiction over Weigel under agency theory. *See Shostack*, 2015 WL 5535808, at *4–5 (concluding that the



plaintiff's argument for the court's exercise of personal jurisdiction over individual defendants relied on an agency relationship with a corporation where the complaint failed to allege any personal involvement); *Arma*, 591 F. Supp. 2d at 647 ("Given that [the plaintiffs] do not allege ... any facts that [the corporation's CEO] personally engaged in any business in New York sufficient to confer jurisdiction over him as an individual under [ section] 302(a)(1), [the plaintiff's] argument necessarily relies on New

[523 F.Supp.3d 338]

York's agency theory of personal jurisdiction.").

## 2. The Court lacks personal jurisdiction over Weigel under agency theory

Defendants argue that Plaintiff fails to allege personal jurisdiction over Weigel under agency theory as Plaintiff "has not pled any facts showing that ... Weigel used [GTE] as his 'alter ego' or that ... Weigel has used [GTE] to transact his business rather than its own such that personal jurisdiction over ... Weigel is appropriate." (Defs.' Reply 2.) Defendants further assert that the Complaint does not allege "any personal benefit ... Weigel may or may not have received from the actions of GTE" and that Weigel's ownership of GTE does not automatically make him an agent "for the purpose[ ] of exercising personal jurisdiction under New York's long-arm statute." (*Id.* at 3.)

Plaintiff argues that "personal jurisdiction over Weigel exists under an agency theory" as (1) "Defendants acknowledge that there are sufficient allegations to confer personal jurisdiction over GTE," (2) GTE's "activities were performed for the benefit of Weigel," (3) "Weigel is the 'sole employee, and sole [o]wner of GTE,' " (4) "[Weigel's] contacts may have been made in his capacity as an officer or employee of GTE," (5) Weigel "conducted business in New York on behalf of GTE," and (6) "[GTE's] activities were performed with Weigel's knowledge." (Pl.'s Opp'n 8–10 (quoting Compl. 1).)

The New York Court of Appeals has established that an out-of-state corporate officer who has not personally transacted business in New York may still be subject to personal jurisdiction under section 302(a)(1) of New York's long-arm statute if the officer "exercised some control" over the corporation's "purposeful activities" in the state. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) ; *see also Chloé*, 616 F.3d at 164 (" Section 302(a) also confers jurisdiction over individual corporate officers who supervise and control an infringing activity."); *Murray Eng'g P.C. v. Remke*, No. 17-CV-6267, 2018 WL 3773991, at *5 (S.D.N.Y. Aug. 9, 2018) (noting the agency theory for personal jurisdiction under New York law). Thus, if a corporation is subject to personal jurisdiction, "then a corporate officer who has 'played a part in the [corporate] activities that gave rise to the action' is likewise subject to jurisdiction, to the extent that due process permits, due to the agency relationship between the corporation and the officer." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (alteration in original) (quoting *Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs., Inc.*, No. 04-CV-1852, 2005 WL 696897, at *4 (S.D.N.Y. Mar. 24, 2005) ).

To establish an agency relationship under New York's long-arm statute, a plaintiff must "convince the court that [the corporation] engaged in purposeful activities in [New York] in relation to [the plaintiff's] transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that [the individual defendant] exercised some control over [the corporation] in the matter." *Ramiro Aviles*, 380 F. Supp. 3d at 261 (first, fourth, fifth, and sixth alterations in original) (quoting *Arma*, 591 F. Supp. 2d at 647 ); *see also Chloé*, 616 F.3d at 162 (finding an agency relationship where an officer "shared in the profits from the bags [the corporate defendant] sold, had joint access to the [the corporate defendant's] bank account, used [the corporate defendant's] revenue to pay his ... rent, and shared in the decision-making and execution of the purchase and sale of handbags").



Courts consider whether the out-of-state corporate officer was a " 'primary

[523 F.Supp.3d 339]

actor[ ] in the transaction in New York' that is the source of [the] litigation, and are not '[a] corporate employee ... who played no part in' the [transaction]." *Retail Software Servs., Inc. v. Lashlee* , 854 F.2d 18, 22 (2d Cir. 1988) (quoting *Kreutter* , 71 N.Y.2d at 470, 527 N.Y.S.2d 195, 522 N.E.2d 40 ); *see also Kinetic Instruments* , 802 F. Supp. at 984 ("[A] corporation is not necessarily the agent of a corporate officer simply by virtue of the officer's position with the company.").

The Complaint grouped Weigel's activities with that of GTE, and Plaintiff's opposition memorandum makes conclusory arguments that the "activities were performed for the benefit of Weigel," "[Weigel's] contacts may have been made in his capacity as an officer or employee of GTE," Weigel "conducted business in New York on behalf of GTE," and "[GTE's] activities were performed with Weigel's knowledge." (Pl.'s Opp'n 8–10.) These statements are insufficient to provide the Court with a factual basis to conclude that Weigel was a primary actor in the underlying dispute. *See Wolo Mfg. Corp.* , 349 F. Supp. 3d at 199 (finding personal jurisdiction over the defendant corporations but not the individual defendant under the agency theory because the complaint grouped the activities of the individual defendant and the defendant corporations and included only vague allegations about the individual defendant's actions); *Arma* , 591 F. Supp. 2d at 648 (finding that although the plaintiff provided detailed accounts of an officer's role in connection with an agreement, personal jurisdiction over an officer under agency theory was inappropriate because the plaintiff did not offer "specific allegations" about the officer's role in the underlying transaction after the agreement terminated); *M. Shanken Commc'ns, Inc. v. Cigar500.com* , No. 07-CV-7371, 2008 WL 2696168, at *6 (S.D.N.Y. 2008) (noting that to make the requisite showing of control, the plaintiff "must sufficiently detail the defendant[']s conduct so as to persuade a court that the defendant was a 'primary actor' in the specified matter in question; control cannot be shown based merely upon a defendant's title or position ... or upon conclusory allegations that the defendant controls the corporation" (quoting *Karabu Corp. v. Gitner* , 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) )).

Although "Weigel cannot hide from jurisdiction in New York simply because his contacts may have been made in his capacity as an officer or employee of GTE," (Pl.'s Opp'n 8), Weigel's role at GTE does not automatically provided a basis for the Court to exercise personal jurisdiction over him. *See Murray Eng'g P.C.* , 2018 WL 3773991, at *5 ("[T]he simple fact that the [i]ndividual [d]efendants were the sole shareholders in [the defendant company] or maintained exclusive control over the company's profits, bank accounts, and significant business decisions would not be enough to establish that they were 'primary actors' in the relevant conduct [or establish personal jurisdiction]." (quoting *Cigar500.com* , 2008 WL 2696168, at *6 )); *Leger v. Kalitta* , No. 16-CV-6545, 2018 WL 2057142, at *5 (E.D.N.Y. Jan. 26, 2018) (declining to extend personal jurisdiction under agency theory over out-of-state CEO and sole owner of corporation who was involved in the human resource management of the corporation because the plaintiff did not allege that the CEO negotiated, authorized, or corresponded about the employment contract); *Shostack* , 2015 WL 5535808, at *4–5 (declining to exercise personal jurisdiction under the agency theory where the plaintiff "assert[ed] no facts alleging that the [officers] had any direct involvement in the actions giving rise to this litigation"). *But see*

[523 F.Supp.3d 340]

*Wallace Church & Co. Inc. v. Wyattzier, LLC* , No. 20-CV-1914, 2020 WL 4369850, at *8 (S.D.N.Y. July 30, 2020) (finding that the individual defendants who negotiated and signed the agreement underlying the action were "primary actors" and subject to personal jurisdiction); *Ramiro Aviles* , 380 F. Supp. 3d at 261 (exercising personal jurisdiction under the



agency theory where the corporation's CEO was involved in the corporation's daily activities and "direct[ed the] outflows of investor capital," which formed the basis of the plaintiff's claims).

Accordingly, Plaintiff fails to make a *prima facie* showing that Weigel was a primary actor in the transactions at issue or acted as an agent of GTE and the Court declines to exercise personal jurisdiction over Weigel.[10]

**c. Service of process**

Defendants argue that because Plaintiff failed to serve them pursuant to the Hague Service Convention [the "Hague Convention"] and because service via email is prohibited for Defendants located in Germany, there "has been no effective service of process on either Defendant." (Defs.' Mem. 5–7.)

Plaintiff argues that Defendants were properly served with process "in accordance with the Court's Order authorizing alternate service" via the email address previously used to communicate with Defendants "and that Defendants were aware of these proceedings because of this service." (Pl.'s Opp'n 12.)

**i. Service under the Hague Convention is not mandatory**

Defendants assert that because they are a foreign corporation and foreign individual both located in Germany, and "Plaintiff has made no representation in their written submissions to the Court that it has attempted to serve the Defendants via the [Hague Convention] process," there is insufficient service of process. (Defs.' Mem. 5.) Defendants argue that Germany has authorized service through its Central Authority as the only means of service under the Hague Convention for its citizens. (Defs.' Reply 3–4.)

Plaintiff asserts that "alternative service is proper even though [it] did not first attempt to serve Defendants through the Hague [Convention]" as it was not required to attempt service via the Hague Convention prior to seeking alternate service under Rule 4(f)(3) of the Federal Rules of Civil Procedure. (Pl.'s Opp'n 12–13.)

Rule 4(f) authorizes service upon individuals in foreign countries:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention];
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice ...; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f) ; *see also Mattel, Inc. v. Animefun Store*, No. 18-CV-8824, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) ("[ Rule 4(h) ] confirms that service of process on foreign corporations may be made

[523 F.Supp.3d 341]

using the same methods outlined in [ Rules] 4(f)(1) and 4(f)(3), among other provisions.").

The rule does not specify any hierarchy and, consistent with the rule, courts in the Second Circuit "have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f)."[11] *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-BR-13164, 2020 WL 7345988, at *11 (Bankr. S.D.N.Y. 2020) (quoting *Wash. State Inv. Bd. v. Odebrecht S.A.*, 17-CV-8118, 2018 WL 6253877, at *3 (S.D.N.Y. Sept. 21, 2018) ); *see also Merrimack Mut. Ins. Co.*, 2020 WL 5879405, at *1 ("[T]here is no hierarchy among the subsections in Rule 4(f).") (alteration in original) (quoting *Advanced Aerofoil Techs., AG v. Todaro*



, No. 11-CV-9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) ).

As these courts have found, "a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the [c]ourt may order service pursuant to Rule 4(f)(3)." *Merrimack Mut. Ins. Co.* , 2020 WL 5879405, at *1 (quoting *AMTO, LLC v. Bedford Asset Mgmt., LLC* , No. 14-CV-9913, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015) ); *see also In re Graña y Montero S.A.A. Sec. Litig.* , No. 17-CV-1105, 2019 WL 259778, at *3 (E.D.N.Y. Jan. 9, 2019) ("[U]nder Rule 4(f)(3), a plaintiff is not *required* to attempt service through the other provisions of Rule 4(f) before the [c]ourt may order service pursuant to Rule 4(f)(3).") (alteration in original) (quoting *Stream SICAV v. Wang* , 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) ), *report and recommendation adopted* , 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019) ; *Stream SICAV* , 989 F. Supp. 2d at 278 (same); *S.E.C. v. Anticevic* , No. 05-CV-6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (same); *see also Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria* , 265 F.R.D. 106, 115 (S.D.N.Y. 2010) ("Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief." (quoting *KPN B.V. v. Corcyra D.O.O.* , No. 08-CV-1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) )).

Thus, "nothing in Rule 4(f) itself ... suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." *In re Fairfield Sentry Ltd.* , 2020 WL 7345988, at *11 (quoting *In re GLG Life Tech Corp. Sec. Litig.* , 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ); *see also Convergen Energy LLC v. Brooks* , No. 20-CV-3746, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020) ("[T]here is no strict requirement that a plaintiff pursue service through an international agreement before asking a court's assistance in ordering alternative service, and the decision of whether to allow that service is committed to the sound discretion of the district court." (quoting *Peifa Xu v. Gridsum Holding Inc.* , 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020) )).

[523 F.Supp.3d 342]

Accordingly, Plaintiff was not required to attempt service through the Hague Convention before seeking alternative service via email.

### ii. Alternate service via email is authorized

Defendants argue that "although Plaintiff asserts that it has emailed an untranslated version of the Complaint and other documents pursuant to the Court's [Order], "Germany has objected to any service method under Article 10" of the Hague Convention, which courts have interpreted to include objections to service via email. (Defs.' Mem. 6–7.) Defendants argue that "service under [ Rule] 4(f)(3) does not excuse prohibitions of the Hague Convention" as "any service under [the rule] must be by 'means not prohibited by international agreement.' " (Defs.' Reply 4 (quoting Fed. R. Civ. P. 4(f)(3) ).)

Plaintiff argues that "service via email is not prohibited by Germany's objection to service of process under Article 10 of the Hague" as "Germany's objection to [the] provision ... only concerns service via postal channels and does not preclude email service." (Pl.'s Opp'n 13.) Plaintiff argues that Defendants cite to cases outside the Second Circuit — which hold that country-specific objections to service via email are invalid — that have been "soundly rejected" by the Second Circuit. (*Id.* at 14–15.) In support of service via email, Plaintiff asserts that due process requirements are satisfied because Defendants "operate and monitor" the email addresses and because "Defendants were apprised of the pendency of this action with enough time to respond to [Plaintiff's] application for preliminary injunction, appear[ed] in this action *pro se* , and retain[ed] counsel in this action." (*Id.* at 16.)

Courts have the discretion to authorize service pursuant to Rule 4(f)(3). *See Merrimack Mut. Ins. Co.* , 2020 WL 5879405, at *1 ("The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." (quoting *AMTO, LLC* , 2015 WL 3457452, at *4 )). "Under [



Rule] 4(f)(3), a [c]ourt may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Cunningham v. Gen. Motors LLC*, No. 20-CV-3097, 2020 WL 4748157, at *1–2 (S.D.N.Y. Aug. 17, 2020) (quoting *F.T.C. v. Pecon Software Ltd.*, No. 12-CV-7186, 2013 WL 4016272, at *3 (S.D.N.Y. Aug. 7, 2013) ); *see also In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *11 (first citing *Odebrecht*, 2018 WL 6253877, at *4 ; then citing *Stream SICAV*, 989 F. Supp. 2d at 278 ).

**1. Service via email is not prohibited by international agreement**

Under the Hague Convention, service through a country's Central Authority is the primary method of service. *See* Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 2, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 [hereinafter Hague Convention]; *Advanced Aerofoil Techs., AG*, 2012 WL 299959, at *2 ("Service through a country's Central Authority is the primary method of service permitted under the Hague Convention." (citing Hague Convention)).

Article 10 of the Hague Convention authorizes service of process through alternative means such as "postal channels," if the signatory country does not object to that means of service. Hague Convention, art. 10(a); *see also Cunningham*, 2020 WL 4748157, at *1–2 (noting that service of process via postal channels

[523 F.Supp.3d 343]

is permitted if the signatory country fails to object to such); *Advanced Aerofoil Techs., AG*, 2012 WL 299959, at *1–2 (same). When a signatory country only objects to those means of service enumerated in Article 10, Rule 4(f)(3) provides courts with the authority to order alternate means of service not specifically listed in Article 10. *See Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) ("Where a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10].").

Courts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means. *See ShelterZoom Corp. v. Goroshevsky*, No. 19-CV-10162, 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) (affirming service via email for a defendant residing in Russia as Russia's objection to Article 10 did not explicitly extend to an objection to electronic service); *Mattel, Inc.*, 2020 WL 2097624, at *5 ("China's objection to service by postal channels under Article 10 of the Hague Convention does not encompass service by email and ... service by email is not prohibited by any international agreement."); *Zanghi v. Ritella*, No. 19-CV-5830, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020) ("The Hague Convention does not prohibit ... service by email."); *see Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 339 (S.D.N.Y. 2015) (declining to "extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email"); *AMTO, LLC*, 2015 WL 3457452, at *7 (authorizing service via email under Rule 4(f)(3) to a defendant residing in Russia where Russia did not explicitly object to electronic service and neither international agreement nor Russian law prohibited service via email); *Pecon Software Ltd.*, 2013 WL 4016272, at *5 ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *Gurung*, 279 F.R.D. at 220 ("[India's] objection to service through postal channels does not amount to an express rejection of service via electronic mail ..., [s]everal other courts have found service by electronic mail appropriate where a signatory nation has not objected to that specific means of service").



The United States and Germany are signatories to the Hague Convention.[12] Although Germany has objected to Article 10,[13] an objection to Article 10 does not prohibit service via email. *See Sulzer Mixpac AG*, 312 F.R.D. at 331–32 ("[T]he [c]ourt finds more persuasive the reasoning of several courts that have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email."). Because Germany has not

[523 F.Supp.3d 344]

explicitly objected to service by electronic means, and the Court is not aware of any other international agreement or German law that prohibits service via email, the Court concludes that service via email on Defendants may qualify as an alternative means of service under Rule 4(f)(3). *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 434 (S.D.N.Y. 2009) (authorizing service on counsel in Germany and noting that "[a]lthough Germany has objected to specific forms of service otherwise enumerated in the Hague Convention, it has not expressly barred alternative forms of effective service not referenced in the Hague Convention").

**2. Service via email comports with due process**

Alternate service by email pursuant to Rule 4(f) comports with due process.

The Due Process Clause requires that the alternative means of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ; *see also ShelterZoom Corp.*, 2020 WL 4252722, at *2 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652 ); *Mattel, Inc.*, 2020 WL 2097624, at *5 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652 ). "[S]ervice by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *Cunningham*, 2020 WL 4748157, at *1–2 (quoting *Pecon Software Ltd.*, 2013 WL 4016272, at *5 ); *see also Merrimack Mut. Ins. Co.*, 2020 WL 5879405, at *2 ("[T]he plaintiff ... initially notified the defendant of its claim via the email address listed on the website and received a response from an individual 'who represented herself as an adjuster hired by [the defendant] to investigate the claim.' [Thus], service via email comports with due process." (second alteration in original)); *Cunningham*, 2020 WL 4748157, at *1–2 (finding that service on a German defendant via email comported with due process where the email "was provided by the same counsel now objecting to email service" and "based on the email-tracking tool used by [the plaintiffs, the defendant] opened the email sent to him a mere [twelve] minutes after it was sent to him"); *Zanghi*, 2020 WL 589409, at *6 (finding that judicial approval of service via email is generally supported by facts indicating that the person to be served would likely receive the documents); *Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380, 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to meet the requirements of due process." (citing *Elsevier, Inc., v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) )).

Courts have found service by email to satisfy due process where defendants conducted business using the relevant email address and defendants appeared in court subsequent to service by email. In *Mattel, Inc.*, the district court found that service via email comported with due process requirements where the defendants "engaged in online business and regularly communicated with customers through email," counsel for the defendants informed the plaintiff of his representation and the defendants' knowledge of the action, and counsel for the defendants "engaged in settlement discussions and actively participated in the discovery process." *Mattel, Inc.*, 2020 WL 2097624, at *5 ; *see also Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (finding that service via email was proper where the plaintiff "showed that [the] defendants



[523 F.Supp.3d 345]

conduct[ed] business extensively, if not exclusively, through their [i]nternet websites and correspond[ed] regularly with customers via email"). *But see Ehrenfeld v. Salim a Bin Mahfouz* , No. 04-CV-9641, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (declining to permit service via an email address that was "apparently only used as an informal means of accepting requests for information rather than for receiving important business communications," and where the plaintiff "provided no information that would [have led] the [c]ourt to conclude that [the][d]efendant maintain[ed] the website, monitor[ed] the email address, or would be likely to receive information transmitted to the email address").

Service upon Defendants via email, like the service in *Mattel Inc.* , comports with due process because Defendants communicated directly with Plaintiff's counsel concerning anticipated or pending patent infringement litigation on prior occasions via email, (Compl. ¶ 35), and received adequate notice of this litigation via email, (*see* Order to Show Cause dated July 8, 2020). *See Zanghi v. Ritella* , No. 19-CV-5830, 2020 WL 6946512, at *2 (S.D.N.Y. Nov. 25, 2020) ("[T]he [c]ourt permitted ... [service] by email when there was evidence that the defendant had used the email address within the past year but disallowed email service for other defendants when there was no proof that the email addresses were 'operational and accessed' by the defendants recently." (quoting *Zanghi* , 2020 WL 589409, at *7 ("[The defendant's] recent use of the address indicates that an email to it is likely to reach him."))); *ShelterZoom Corp.* , 2020 WL 4252722, at *2 (holding that service via email to a foreign defendant satisfied due process where the plaintiff's counsel received a response regarding an email sent to the defendant's personal email address); *Convergen Energy LLC* , 2020 WL 4038353, at *6 (finding that "service by email is reasonably calculated to notify [the defendant] of the action" where the defendant's counsel "contacted [the plaintiffs] only after [the plaintiffs] had emailed [the defendant] at [his personal email address], suggesting that [he] received the email and contacted his counsel thereafter").

The current global pandemic provides further reason to find that service via email satisfies due process, as it is the most efficient method to accomplish service. Although emails may get lost in a defendant's spam folder, compared to postal mail, emails are more reliable. *See Sulzer Mixpac AG* , 312 F.R.D. at 331–32 (noting that "[e]mail communications may be more reliable than long-distance postal communications" and finding that service by email satisfied the requirements of constitutional due process).

Accordingly, the Court finds that service via email satisfied due process.

### iii. Service in the English language is authorized

Defendants asserts that there is improper service of process because Plaintiff served an untranslated version of the Complaint and other documents instead of serving the documents in German language pursuant to the Hague Convention process and Rule 4(f)(3). (Defs.' Reply 4–5).

Plaintiff asserts that "[t]he translation 'requirement' [which is 'not even mandatory'] is only triggered when service is affected through the Central Authority under the Hague Convention" and that [w]here a method of service is directed via other means the document need not be translated." (Pl.'s Opp'n 15 n.3.) Plaintiff notes that Defendants have not been prejudiced in their ability to respond to the Complaint by the lack of translation as

[523 F.Supp.3d 346]

Defendants have adequate understanding of English exemplified by the fact that (1) Defendants attempted to represent themselves in this action, (2) Defendants "conducted business in English for decades," (3) Defendants' "most significant customers ... operate in countries



whose primary language is English," and (4) "emails and other documents attached to Defendants' response to the preliminary injunction show that ... Weigel regularly communicates with [Defendants'] clients in English." (*Id.* at 15–16.)

Under Article 5 of the Hague Convention, "[i]f the document is to be served [by the Central Authority], the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed." Hague Convention, art. 5. Germany requires that service by their Central Authority "be permissible only if the document to be served is written in, or translated into, the German language."[14] This translation requirement is limited to documents served pursuant to Article 5 as "[t]here is no similar provision for translation requirements under the alternative methods of service provided for in Articles 8 through 11." *Taft v. Moreau* , 177 F.R.D. 201, 204 (D. Vt. 1997) (noting that although Canada has a French translation requirement under Article 5, "[d]ocuments served upon Quebec residents or citizens under Article 10(a) need not be translated into French in order to comply with the Hague Convention"); *see also Signify N. Am. Corp. v. Axis Lighting Inc.* , No. 19-CV-5516, 2019 WL 4994288, at *3 (S.D.N.Y. Oct. 8, 2019) ("Translation may be required if process is served under [Article 5]. Article 10(b) contains no parallel translation requirement."); *Heredia v. Transp. S.A.S., Inc.* , 101 F. Supp. 2d 158, 161–62 (S.D.N.Y. 2000) ("[I]t is well-settled that the translation requirement is triggered only when it is the Central Authority that serves the document, an alternative method of service that is set forth in [Article 5]."); *Lemme v. Wine of Japan Imp., Inc.* , 631 F. Supp. 456, 464 (E.D.N.Y. 1986) (stating that the translation requirement is triggered only when the country's Central Authority serves the document); *Weight v. Kawasaki Heavy Indus.* , 597 F. Supp. 1082, 1086 (E.D. Va. 1984) ("A Japanese translation is required only when the service of process is transmitted through the 'Central Authority' pursuant to [Article 5].... However, [Article 10(a)] contains no such requirement for direct postal service."); *cf. Signify N. Am. Corp.* , 2019 WL 4994288, at *3 (finding that although the law of Québec may require that documents in Quebecois courts be translated into French, there is "no authority to suggest that [the] internal rule should not permit English-language documents to be served upon those receiving process in Québec").

While Defendants cite *McConnell* for the proposition that documents served to defendants that reside in Germany must be translated to German, *McConnell* involved service via Germany's Central Authority and is inapposite to this case. *McConnell v. Transatlantic Cap. Corp.* , No. 92-CV-5451, 1993 WL 337996, at *1 (S.D.N.Y. Aug. 31, 1993). Thus, service of documents in English language via alternate service was authorized. *See Koch v. Rodenstock* , No. 06-CV-6586, 2010 WL 2010900, at *1 (S.D.N.Y. May 18, 2010) ("[W]hile [Article 5] applies to the initial service of process on a foreign national, it does not require the [German] translation of all court orders and other documents

[523 F.Supp.3d 347]

generated during the course of an ongoing U.S. litigation.").

Although a failure to provide a translation of the document in a language the defendant understands might be constitutionally unreasonable, Defendants have not claimed lack of notice or an inability to understand the language of the Complaint, Summons, or other documents. (*See* Defs.' Mem.; Defs.' Reply); *AMTO, LLC* , 2015 WL 3457452, at *10 (authorizing service via email on a defendant located in Russia "without the necessity of translation into the Russian language" where it was shown that he was proficient in English). To the contrary, Weigel's declaration states that he is "sufficiently proficient in the English language," (Weigel Decl. 1), Weigel attempted to represent GTE in this action, (Min. Entry dated July 22, 2020), and Defendants were apprised of the pendency of this action with enough time to respond, (Min. Entry dated July 29, 2020). *See Advanced Access Content Sys. Licensing Adm'r,*



*LLC v. Shen* , No. 14-CV-1112, 2018 WL 4757939, at *6 n.8 (S.D.N.Y. Sept. 30, 2018) (finding that a Chinese defendant who "regularly conduct[ed] business in English — for example, many of [the defendant's] websites are in English and accept payment in U.S. dollars" and who "submitted a declaration shortly after appearing in [the] action, in English," had an adequate understanding that he had been sued). Indeed, email service of English language documents provided Defendants with "notice ... of the pendency of the action and afford[ed] [them] an opportunity to present [their] objections." *Luessenhop v. Clinton County* , 466 F.3d 259, 269 (2d Cir. 2006) (quoting *Mullane* , 339 U.S. at 314, 70 S.Ct. 652 ).

Accordingly, the Court finds that Plaintiff's service by email of documents written in the English language is authorized and comports with due process.

### III. Conclusion

For the foregoing reasons, the Court grants the motion to dismiss and dismisses the action against Weigel pursuant to Rule 12(b)(2) for lack of personal jurisdiction and denies the motion to dismiss the action against GTE for insufficient service of process.

SO ORDERED.

--------

Notes:

[1] "In tennis, gameplay begins with a serve," which involves a player hitting a tennis ball "with a racquet so it will fall into the diagonally opposite service box." (Compl. ¶ 13.) "If the ball ... contacts the net on the serve, but then still proceeds to the proper service box, it is called a let ...." (*Id.* ) Because it may be difficult "to determine whether a let has occurred ... [a]utomated [let detection] systems have ... been developed to overcome these challenges." (*Id.* ¶ 14.)

[2] (Defs.' Mem. in Supp. of Defs' Mot. to Dismiss ("Defs.' Mem."), Docket Entry No. 21-1; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 22.)

[3] (Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 20.)

[4] The Complaint refers to both GTE and Weigel when it refers to GTE. (Compl. 1.)

[5] The Court assumes the truth of the factual allegations in the Complaint for purposes of this Memorandum and Order. *See Wolo Mfg. Corp. v. ABC Corp.* , 349 F. Supp. 3d 176, 194 (E.D.N.Y. 2018) ("Where ... personal jurisdiction is challenged by way of a motion pursuant to [Rule 12(b)(2) ], the [c]ourt must 'assume[ ] the truth of the plaintiff's factual allegations,' " (third alteration in original) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.* , 722 F.3d 81, 85 (2d Cir. 2013) )).

[6] Plaintiff asserts that it "receiv[ed] interest" in the Net System from USTA. (*Id.* ¶ 18.)

[7] Plaintiff had requested that the Court grant a preliminary injunction by default because "Defendants have not filed any response with the Court." (Pl.'s Reply Mem. in Supp. of Pl.'s App. For Prelim. Inj. 2, Docket Entry No. 10.) Thus, Plaintiff's application is rendered moot following the declarations of Weigel and Carey. (*See* Weigel Decl.; Carey Decl.)

[8] Defendants erroneously seek dismissal for insufficient service of process under Rule 12(b)(4). "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004) ; *see also D.S. by & through C.S. v. Rochester Cty Sch. Dist.* , No. 19-CV-6528, 2020 WL 7028523, at *4 (W.D.N.Y. Nov. 30, 2020) ("Objections to sufficiency of process under [Rule] 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." (quoting *DiFillippo v. Special Metals Corp.* , 299 F.R.D. 348, 352–53 (N.D.N.Y. 2014) )). Because this case does not address compliance with Rule 4(b) — the content of the summons or the form of



the process — the Court analyzes Defendants' motion to dismiss for insufficient service of process under Rule 12(b)(5) only. *See* 5B Federal Practice and Procedure § 1353 ("Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare."); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen* , No. 14-CV-1112, 2018 WL 4757939, at *3 (S.D.N.Y. Sept. 30, 2018) ("Although [the defendant] has challenged service under both Rules 12(b)(4) and 12(b)(5) ..., his arguments do not identify substantive deficiencies in the summons, complaint, or accompanying documentation; thus, [his] motion is governed by Rule 12(b)(5).").

[9] At the TRO hearing, Plaintiff informed the Court that "[D]efendants have appeared and rendered services" at an event that has been held in New York for many years and the Court noted that there was personal jurisdiction over Defendants pursuant to section 302(a) because the contract at issue involved a facility in New York. (Tr. of Order to Show Cause dated June 1, 2012 ("Tr.") 3:1–14, annexed to Pl.'s Opp'n as Ex. 1, Docket Entry No. 20-1.) Irrespective of its prior ruling, the Court now analyzes whether there is personal jurisdiction over Weigel. *See Raymond Corp. v. Meyer* , No. 20-CV-916, 2020 WL 4816028, at *2 (N.D.N.Y. Aug. 19, 2020) ("[B]ecause it now appears that subject matter jurisdiction was lacking at the time the [c]ourt issued the [TRO], the [c]ourt will grant [the defendant's] motion and dissolve the [TRO]."); *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.* , No. 18-CV-2897, 2018 WL 2022626, at *9 (S.D.N.Y. Apr. 30, 2018) (dissolving TRO for lack of personal jurisdiction); *NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.* , No. 14-CV-3945, 2014 WL 2619588, at *6 (S.D.N.Y. June 11, 2014) (same).

[10] Because the Court lacks personal jurisdiction over Weigel under New York law, the Court declines to address whether the exercise of personal jurisdiction comports with constitutional due process requirements. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani* , 295 F. Supp. 3d 404, 411 (S.D.N.Y. 2017) (finding that defendant's contacts with the forum state "satisfy the minimum contacts prong of the constitutional inquiry for the same reasons that they satisfy the statutory inquiry").

[11] Although some courts have held that service must be made in compliance with the Hague Convention prior to attempting service under Rule 4(f)(3), *see AMTO, LLC v. Bedford Asset Mgmt., LLC* , No. 14-CV-9913, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015) ("[A] party must attempt service in compliance with the [Hague Convention] before petitioning for permission to serve by alternative means." (collecting cases)); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.* , No. 10-CV-1853, 2012 WL 4801452, at *9–10 (S.D.N.Y. Oct. 5, 2012) ("Because [the defendant] did not attempt to serve [process] through India's Central Authority, ... alternative service via overnight courier as allowed by [the court's order] was ineffective."), the Court is persuaded by the plethora of case law in the Second Circuit which suggests otherwise.

[12] *See* Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17; *Cunningham* , 2020 WL 4748157, at *1–2 (noting that both countries are signatories to the Hague Convention).

[13] *See* Declarations, Hague Conference on Private International Law Conférence de La Haye de droit international privé, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=402&disp=resdn ("Service pursuant to Article 10 of the Convention shall not be effected.").

[14] *See* Declarations, Hague Conference on Private International Law Conférence de La Haye de droit international privé, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=402&disp=resdn.

--------



