UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

Sara Coombs-Moreno, et al.,

                Plaintiffs,                **<u>MEMORANDUM & ORDER</u>**
                                             <u>22-CV-02234(EK)(LB)</u>

           -against-

The City of New York, et al.,

                Defendants.[1]

------------------------------------x

ERIC KOMITEE, United States District Judge:

        The plaintiffs in this case are current and former employees of several New York City agencies.  During the COVID-19 pandemic, they refused (for religious, medical, or philosophical reasons) to be vaccinated.  Many (but not all) of them suffered employment-related consequences as a result.  They brought this action in response, arguing that the City's vaccine mandate violated various federal constitutional and statutory provisions.

        The defendants have moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] For the following reasons, that motion is granted, except with

---

[1] The Clerk of the Court is respectfully directed to amend the caption as set out here.

[2] Defendants are the City of New York, Mayor Eric Adams, the New York City Department of Health and Mental Hygiene, Dr. Ashwin Vasan in his capacity as Commissioner of the Department of Health and Mental Hygiene, the New York City Department of Education, and Does 1-20.

respect to plaintiff Amoura Bryan's Title VII and New York City Human Rights Law claims against New York City and the Department of Education.[3]

## I.   Background

The following facts are taken from the Fourth Amended Complaint and certain court documents of which the Court may take judicial notice.  ECF No. 88; *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  Plaintiffs cite over 1300 pages of exhibits attached to the FAC, including a number of affidavits from plaintiffs and putative experts and reams of OSHA regulations.  At the motion to dismiss stage, the Court need not wade through materials that are not "written instruments" under Federal Rule of Civil Procedure 10(c).  *See Smith v. Hogan*, 794 F.3d 249, 254-55 (2d Cir 2015);[4] *see also Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 367 (E.D.N.Y.

---

[3] The municipal defendants are the City of New York, the New York City Department of Health and Mental Hygiene, and the New York City Department of Education.  The Department of Health and Mental Hygiene is suable.  *See* N.Y. Educ. Law § 2551; N.Y.C. Charter Ch. 22, § 564 ("The department may sue and be sued in and by the proper name of 'Department of Health and Mental Hygiene of the City of New York.'").  The Second Circuit has noted that whether the DOE is a non-suable agency of the City is "unclear."  *Broecker v. New York City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *1 n.2 (2d Cir. Dec. 26, 2023).  However, for the reasons set out in *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21-CV-4627, 2022 WL 3156179, at *13 (S.D.N.Y. Aug. 8, 2022), the Court concludes that the Department of Education is a suable entity.

[4] In *Smith*, the Second Circuit held that the plaintiff's affidavit was not a written instrument "or otherwise properly considered to be part of the complaint," per Rule 10(c).  *Id.*  The panel reasoned that "treating the affidavit as part of the complaint would do considerable damage to Rule 8(a)'s notice requirement" — indeed, the "requirement of a short and plain statement of a claim for which relief could be granted would be eviscerated." *Id.*

2021) (declining to consider 56 exhibits attached to plaintiff's Second Amended Complaint when deciding a motion to dismiss).

Between August and December 2021, in response to the COVID-19 pandemic, the New York City Commissioner of Health and Mental Hygiene issued nine orders requiring certain individuals to be vaccinated against COVID-19.  ECF Nos. 17-19 to 17-27. These included employees and contractors of the City Department of Education, along with certain other City employees and contractors, childcare workers, nonpublic school staff, and employees of private businesses.  *Id.*  All vaccine orders have since been lifted.[5]

Not all plaintiffs complain of the same harms.  Some allege that after they refused to be vaccinated, they were placed on leave without pay and have been "locked out of their jobs" since September 2021.[6]  Fourth Am. Compl. (FAC) ¶ 11, ECF No. 88.  Other plaintiffs remain gainfully employed; they allege that they originally refused the COVID-19 vaccine but were "coerced" into vaccination by the threat of leave without pay. *See, e.g.*, *id.* ¶¶ 11, 19, 37-38, 88.  Plaintiffs also allege that some (unnamed) individuals were harmed by the City's

_____

[5] *See* Order of the Board of Health to Amend the Requirement for COVID-19 Vaccination for City Employees and Employees of Certain City Contractors (Feb. 9, 2023); Order of the Board of Health Amending COVID-19 Vaccination Requirements for Department of Education Employees, Contractors, Visitors and Others (Feb. 9, 2023).
[6] Based on plaintiffs' allegations, the continued lock-out appears to be involuntary.  *See* FAC ¶ 11.

alleged misrepresentations regarding the effectiveness of the vaccines. *Id.* ¶ 11(c).  No individual plaintiff expressly alleges membership in this latter group.

The complaint invokes the "biblical practice of plant-based lifestyle medicine" and other unspecified religious, medical, and philosophical beliefs as the root of Plaintiffs' objection to receiving the COVID-19 vaccination. *See, e.g.*, *id.* ¶¶ 16-18, 20-36, 138-42.  Only one plaintiff alleges a more specific description of her religious beliefs.  Amoura Bryan

> exercised her right to refuse the Covid-19 vaccine so that she could practice her religious Biblical medical practice of Plant-Based Lifestyle Medicine, which includes consuming a 100% plant-based diet according to the Bible instruction in Genesis 1:29 along with practicing the nine (9) lifestyle interventions also prescribed by the Bible, namely exercise, water, outdoor fresh air, cleanliness or hygiene to name a few.

*Id.* ¶ 138.  The complaint provides no specifics concerning other plaintiffs' religious or philosophical objections.

Plaintiffs allege that the vaccine mandate violated their federal constitutional and statutory rights, as well as New York state law.  FAC ¶ 1.  They bring claims under (1) the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(11)(c); (2) the First Amendment's Free Exercise Clause and the Fourteenth Amendment's guaranty of substantive due process; (3) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; (4) the New York City Human Rights Law,

Administrative code § 8-107(3), § 8-109(a)(f)(i); and (5) New
York's common law of fraud.  They seek declaratory and
injunctive relief, as well as monetary damages.  FAC ¶ 1.

On September 6, 2022, I denied plaintiffs' motion for
a temporary restraining order because they had not established a
sufficient likelihood of success on the merits.  *See* Mot. for
TRO & PI, ECF No. 17; Dkt. Order, Sept. 6, 2022.  I denied a
related application for injunctive relief on September 14, 2022.
*See* Mot. for Reconsideration of TRO, ECF No. 20; Dkt. Order,
Sept. 14, 2022.  Following this denial, plaintiffs filed a Third
Amended Complaint on September 15, 2022.  *See* Third Am. Compl.,
ECF No. 22.  Based on that new complaint, plaintiffs again filed
for emergency relief on October 26, 2022, and moved to
supplement their request for relief on November 16, 2022.  Mot.
for TRO, PI, & Conditional Class Certification, ECF No. 33; Mot.
to Amend/Correct/Supplement, ECF No. 38.  Again, I found that
plaintiffs were unlikely to succeed on the merits of their
claims.  *See e.g.*, Mem. & Order, ECF No. 37; Mem. & Order, ECF
No. 39.

Defendants initiated the instant Motion to Dismiss in
2023.  *See* Mot. to Dismiss, ECF No. 47.  Plaintiffs' several
submissions thereafter, together with the failure to follow the
Court's rules, elongated the briefing process.  *See e.g.*, Mot.
for Summary Judgment, ECF No. 57; Mot. to

Amend/Correct/Supplement Fourth Am. Compl., ECF No. 63; Mot. for Sanctions, ECF No. 64; Dkt. Order, Apr. 4, 2023.

On January 10, 2024, I granted plaintiffs leave to amend their complaint once again. Dkt. Order, Jan. 10, 2024. Plaintiffs filed their Fourth Amended Complaint on January 22, 2024 – the operative complaint here. *See* FAC. Consistent with my January 10, 2024 Order, defendants renewed their Motion to Dismiss on February 1, 2024. *See* Renewed Mot. to Dismiss, ECF No. 90; *see also* Opp'n to Renewed Mot. to Dismiss, ECF No. 91; Reply Supp. Renewed Mot. to Dismiss, ECF No. 95.

The Court acknowledges the following deficiencies in the Fourth Amended Complaint, as well as the inability of certain plaintiffs to bring suit. However, the Court need not wade into these deficiencies in greater detail due to the complete dismissal of the action, save for two claims brought by one plaintiff.

First, this case was initially brought by an association called "Women of Color for Equal Justice." That organization was dropped from the Fourth Amended Complaint after questions of standing emerged. Of the plaintiffs who remain, thirty-five assert no specific facts in support of their claims. Renewed Mot. to Dismiss at 2-3. Several plaintiffs are listed on ECF in the caption but not referenced in the body of the Fourth Amended Complaint at all, or vice-versa. *Id* at 2.

6

Second, the plaintiffs bring claims against the "Department of Children's Services," though no City agency bears that name. *Id.* This is presumably a reference to the Administration for Children's Services; that entity is not, however, subject to suit under the New York City charter. *E.g.*, *Thomas v. Admin. for Children's Servs.*, No. 21-CV-0047, 2021 WL 493425, at *2 (E.D.N.Y. Feb. 10, 2021).

Third, at least some plaintiffs in this case are or were also plaintiffs in other actions regarding the vaccine mandate, giving rise to the specter of claim-splitting. *See Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) ("It is well established, under the doctrine of 'claim splitting,' that a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits."); Mem. in Supp. Mot. to Dismiss at 6-7, ECF No. 48.

Lastly, three plaintiffs — Curtis Boyce, Ayse Ustares, and Sarah Wiesel — waived their claims against the Department of Education in exchange for health benefits through September 6, 2022. *See* Renewed Mot. to Dismiss, Ex. A; Ex. B; Ex. C, ECF Nos. 90-1, 90-2, 90-3. The New York County Supreme Court recently upheld and enforced an identical waiver to those executed by these plaintiffs. *See Sullivan v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.,* 2023 N.Y. Misc. LEXIS

2468 (N.Y. Sup. Ct. 2023).  Plaintiff Carla Grant executed a
similar waiver with the Department of Transportation in exchange
for health benefits through June 30, 2022.  *See* Renewed Mot. to
Dismiss, Ex. D; ECF No. 90-4.  These plaintiffs' claims are thus
also barred by *res judicata*.

These issues notwithstanding, the case is dismissed in
its entirety, with the exception of two claims brought by Amoura
Bryan, for the reasons that follow.

## II.  Standard of Review

To overcome a motion to dismiss under Rule 12(b)(6), a
complaint must plead facts sufficient "to state a claim to
relief that is plausible on its face."  *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 570 (2007).[7]  A claim is facially
plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).

On a motion to dismiss, the district court must accept
all factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiffs' favor.  *See Lundy v.
Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 113 (2d
Cir. 2013).  However, the Court need not construe legal

---

[7] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

conclusions dressed as facts in favor of the plaintiffs.  *See Iqbal,* 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Additionally, district courts must police their own subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Lyndonville Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.").

### III. Discussion

#### A.   Occupational Safety and Health Act

In their first cause of action, plaintiffs assert that the City's policy of conditioning employment on vaccination violated their rights under the Occupational Safety and Health Act ("OSHA").  FAC ¶¶ 177-94.  Plaintiffs cite the "right" — ostensibly emanating from Section 20(a)(5) of OSHA — to be free from discrimination for "refus[ing] any medical examination, medical treatment, or immunization/vaccine."  *Id.* at ¶ 178; *see* 29 U.S.C. § 669(a)(5).  The plaintiffs assert a claim directly under this Section, *see, e.g., id.* ¶¶ 183-85; alternatively,

they contend that even if OSHA establishes no private right of action, this claim may be brought pursuant to 42 U.S.C. § 1983. *See id.* ¶¶ 189-190, 193-94.

The Court need not reach the merits of plaintiffs' OSHA claim.  There is no private right of action under OSHA, and the claim may not be brought under Section 1983.

"Under OSHA, employees do not have a private right of action." *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983).  On the contrary, "it is apparent from [OSHA's] detailed statutory scheme that the public rights created by the Act are to be protected by the Secretary and that enforcement of the Act is the sole responsibility of the Secretary." *Id.* at 927.  Several recent cases in this circuit have applied this conclusion in virtually identical circumstances, barring private plaintiffs from bringing COVID-19-related claims under OSHA. *See, e.g.*, *Vasquez v. City of New York*, No. 22-CV-05068, 2024 WL 1348702, *11 (E.D.N.Y. Mar. 30, 2024), *reconsideration denied*, No. 22-CV-05068, 2024 WL 1886656 (E.D.N.Y. Apr. 30, 2024); *Quirk v. DiFiore*, 582 F. Supp. 3d 109, 115-16 (S.D.N.Y. 2022).

Plaintiffs argue that even in the absence of a private right of action under OSHA, 42 U.S.C. § 1983 provides the vehicle for a Section 20(a)(5) claim. *See* ¶¶ 189-190, 193-94. This is not correct.  To seek redress through Section 1983, "a

10

plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*. *Blessing v. Freestone,* 520 U.S. 329, 340 (1997).  And even when a plaintiff can point to an individually enforceable right, *and* locate herself within the class of intended beneficiaries, a Section 1983 claim will still be dismissed if such an action "would be inconsistent with Congress'[s] carefully tailored [remedial] scheme." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989).  That will be the case where, for example, Congress has created "a comprehensive enforcement scheme that is incompatible with individual § 1983 enforcement." *Blessing*, 520 U.S. at 330; *see City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 121 (2005) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

In the case of OSHA, "it is apparent from the detailed statutory scheme that the public rights created by the Act are to be protected by the Secretary" of Labor, "and that enforcement of the Act is the sole responsibility of the Secretary." *Donovan,* 713 F.2d at 927; *see also Jacobsen v. N.Y. City Health & Hosps. Corp.*, No. 12 Civ. 7460, 2013 WL 4565037, at *7 (S.D.N.Y. Aug. 28, 2013) (collecting cases noting the same).  Given this detailed scheme — as well as the Second Circuit's directive to read enforcement as reserved to the

Secretary — it is clear that allowing OSHA enforcement under Section 1983 would be "incompatible" with Congress's dictates. *Blessing,* 520 U.S. at 341.  Thus, plaintiffs may not prosecute their OSHA claim under Section 1983.

**B.   Constitutional Claims**

Plaintiffs allege constitutional claims under both the First Amendment's Free Exercise Clause and under a Fourteenth Amendment substantive due process theory.  *See* FAC ¶¶ 195-226. They seek remedies through 42 U.S.C. § 1983.  *Id.* ¶ 196. However, plaintiffs have failed adequately to allege the necessary elements of a Section 1983 claim.

1.   Free-Exercise Claim

Plaintiffs allege that the vaccine mandate unconstitutionally impinges on the free exercise of their religion.  This argument has already been rejected by the Second Circuit, which held that a vaccine mandate covering certain New York *State* employees did not violate the Free Exercise Clause because the mandate was a neutral law of general applicability. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 290 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

The First Amendment dictates that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend I; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (incorporating the Clause against the states).  To state

a Free Exercise Claim, a plaintiff must, as a threshold matter, allege a "sincerely held" religious belief.  *See Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570, 574 (2d Cir. 2002).  Having done so, they must then plausibly allege that "the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation," or that the law's "purpose . . . is the suppression of religion or religious conduct."  *Okwedy v. Molinari,* 69 F. App'x. 482, 484 (2d Cir. 2003).

As noted above, only one plaintiff has made even the faintest effort to describe the religious beliefs at issue with any specificity at all.[8]  In that regard, the claims here are even weaker than those rejected in *We The Patriots*.  *Cf. We The Patriots*, 17 F.4th at 272 (plaintiffs contended that vaccination "would violate their religious beliefs because those vaccines were developed or produced using cell lines derived from cells obtained from voluntarily aborted fetuses.").  In making this observation, this Court need not — and does not — engage in sincerity analysis.  That process is constitutionally fraught.[9]

---

[8] Apart from the one plaintiff described as following the "biblical practice of plant-based lifestyle medicine," FAC ¶¶ 138-42, 203, plaintiffs do not enumerate their specific religious objections to the vaccine mandate. Plaintiffs instead refer generally to their "religious practice of abstaining from the COVID-19 [vaccine]." FAC ¶ 159.

[9] "In a country with the religious diversity of the United States, judges cannot be expected to have a complete understanding and appreciation of the role played by every person who performs a particular role in every religious tradition." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591

It is also, however, inherently fact-intensive; as such it cannot even be attempted where, as here, plaintiffs have pled virtually nothing about the beliefs at issue.[10]

More importantly, the plaintiffs have not alleged that the mandates targeted religion or treated religious belief less generously than lay practice.  Under existing precedent, a law does not violate the Free Exercise Clause if it is generally applicable, the government can articulate a rational basis for enforcement, and any burden upon religion is incidental rather than purposeful.  *See Emp. Div., Dep't of Hum. Res. of Or. v. Smith,* 494 U.S. 872, 879 (1990); *Emilee Carpenter, LLC v. James,* 107 F.4th 92, 109 (2d Cir. 2024).  At the same time, laws that treat religious belief less favorably than other conduct are not generally applicable (or, said differently, they are not "neutral" towards religion).  *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (per curiam); *see Okwedy,* 69 F. App'x. at 484.

It was against this legal landscape that the Second Circuit rejected the Free Exercise Clause challenge to the State's vaccine mandate in *We The Patriots*, 17 F.4th at 290,

---

U.S. 732, 757 (2020); *see also Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969) (civil courts should not resolve questions that would require them "to engage in the forbidden process of interpreting and weighing church doctrine").

[10] We return to this issue in the analysis of plaintiffs' Title VII religious-discrimination claims.  *See* Section III.C below.

which post-dated *Roman Catholic Diocese*.  There, the Court of
Appeals held that the vaccine mandate was facially neutral
because a) "the evidence before the district courts failed to
raise an inference that the regulation was intended to be a
covert suppression of particular religious beliefs," and b)
certain comments made by Governor Kathy Hochul were not
reasonably understood to reveal that the vaccine mandate was
targeted at individuals with religious opposition to required
vaccination. *Id.* at 282-284.  Additionally, the Court held that
despite medical exceptions to the mandate, the law was generally
applicable because "[c]omparability is concerned with the risks
various activities pose," and medical exemptions are far
narrower and more connected to a compelling government interest
in health promotion than religious exemptions.  *Id.* at 285-288.[11]
That holding binds this Court.

This case bears no material distinction from *We The
Patriots* and other cases previously decided in this Circuit.
Plaintiffs have failed to state a violation of the Free Exercise
clause.

2.  Substantive Due Process

---

[11] *See also Kane v. de Blasio,* 623 F. Supp. 3d 339, 356-58 (S.D.N.Y.
2022) (vaccine mandate for City employees was neutral and generally
applicable, and DOE articulated a rational basis for the policy); *Rizzo v.
NYC Dep't of Sanitation,* No. 23-CV-7190, 2024 WL 3274455, at *5 (S.D.N.Y.
July 2, 2024) (collecting cases rejecting Free Exercise challenges to City
employee vaccine policies).

The due process clause has been held to have a "substantive" component, guaranteeing some unenumerated rights. The first step in evaluating a substantive due process claim "is to identify the constitutional right at stake." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). Here, Plaintiffs invoke "the inherent right of every freeman to care for his own body and health in such way as to him seems best" and, on that basis, to decline unwanted medical treatment. FAC ¶ 199-202 (citing *Jacobson v. Massachusetts,* 197 U.S. 11, 26 (1905)).

To succeed, the plaintiffs must establish that the right they claim is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). They have not clearly attempted to do so, and any such effort would not succeed. The Supreme Court and Second Circuit have "consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *We The Patriots*, 17 F.4th at 293. Indeed, *Jacobson,* which plaintiffs cite for the right to decline medical treatment, held that "urgent public health needs of the community can outweigh the rights of an individual to refuse vaccination." *Id.* at 293 n.35 (explaining

16

why *Jacobson* remains binding).  On this basis, a neighboring district court held that New York's vaccine mandate implicated no fundamental right, and that no substantive due process violation had been visited upon City employees.  *See Kane,* 623 F. Supp. 3d at 360-61.  The reasoning in that case applies with equal force here.

Because plaintiffs have not articulated a fundamental constitutional right, they fail to state a substantive due process claim upon which relief may be granted.

## C.   Title VII

Plaintiffs' claim of religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, is similarly without merit, for all plaintiffs but one.

Plaintiffs allege that the City "violated Title VII by placing Plaintiffs on indeterminate [leave without pay] for exercising their right to refuse to submit to the Vaccine orders. . . ."  *See* FAC ¶ 233.  To establish a prima facie case of religious discrimination under Title VII, a plaintiff must allege that that (1) she held a "bona fide religious belief conflicting with an employment requirement"; (2) she informed her employer of this belief; and (3) she was "disciplined for failure to comply with the conflicting employment requirement."  *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).  The Second Circuit has explained that "the evidence

necessary to satisfy this initial burden [i]s minimal . . . ."
*Zimmermann v. Asscs. First Cap. Corp.*, 251 F.3d 376, 381 (2d
Cir. 2001).  However, at the motion to dismiss stage, a
plaintiff "must at a minimum assert nonconclusory factual matter
sufficient to nudge its claims' across the line from conceivable
to plausible to proceed." *E.E.O.C. v. Port Auth. of NY & NJ*,
768 F.3d 247, 254 (2d Cir. 2014).  Individual defendants may not
be held liable under Title VII.  *Lore v. City of Syracuse,* 670
F.3d 127, 169 (2d Cir. 2012).

        To identify a bona fide religious belief, courts
assess "whether the beliefs professed by a claimant are
sincerely held and whether they are, in his own scheme of
things, religious." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d
Cir. 1984) (citing *United States v. Seeger*, 380 U.S. 163, 185
(1965).  "Sincerity analysis is exceedingly amorphous, requiring
the factfinder to delve into the claimant's most veiled
motivations and vigilantly separate the issue of sincerity from
the factfinder's perception of the religious nature of the
claimant's beliefs.  This need to dissever is most acute where
unorthodox beliefs are implicated." *Id*.  To determine whether a
plaintiff's belief is "religious," courts must analyze whether
the plaintiff's professed beliefs implicate "ultimate
concern[s]." *Int'l Soc. For Krishna Consciousness, Inc. v.
Barber*, 650 F.2d 430, 440 (2d Cir. 1981).  A concern is

18

"ultimate" when "a believer would categorically disregard elementary self-interest in preference to transgressing its tenets." *Id.*

If a plaintiff satisfies her burden to allege a prima facie case of religious discrimination, the burden shifts to the employer "to show that it cannot reasonably accommodate the plaintiff without undue hardship on the conduct of the employer's business." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd and remanded*, 479 U.S. 60 (1986).  An accommodation is an undue burden when it is "substantial in the overall context of an employer's business." *Groff v. DeJoy,* 600 U.S. 447, 468 (2023).  This, too, is a "fact-specific inquiry," which requires the Court to analyze "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id.* at 468, 470-71.

One plaintiff, Amoura Bryan, has cleared the (relatively low) hurdle to allege a prima facie case.[12]  Ms. Bryan subscribes to the "religious Biblical medical practice of Plant-Based Lifestyle Medicine, which includes consuming a 100%

---

[12] Ms. Bryan did not attach a right-to-sue letter to the complaint.  *See* Pl.'s Ex. 2, ECF No. 88-2.  However, exhaustion of administrative remedies is not a pleading requirement, as "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Public Works Dep't,* 879 F.3d 486, 491 (2018).

plant-based diet according to the Bible instruction in Genesis 1:29 along with practicing the nine (9) lifestyle interventions also prescribed by the Bible, namely exercise, water, outdoor fresh air, cleanliness or hygiene to name a few." FAC ¶ 138. She alleges that receiving the COVID-19 vaccination is inconsistent with this belief because she hoped to rely upon biblical medical practices for protection from COVID-19. *See id.* ¶¶ 139-142. Additionally, Ms. Bryan pleads that "for exercising her religious practice" — that is, for declining to be vaccinated — she was placed on leave without pay. *Id.* ¶ 142. These allegations, while highly general, are sufficient at this stage. And the assessment of whether the City could have reasonably accommodated Ms. Bryan without undue hardship is a fact-intensive assessment that cannot be determined from within the four corners of the complaint. *See Groff,* 600 U.S. at 468.

Therefore, Ms. Bryan's Title VII claim may proceed, but only against certain municipal defendants: the City and the Department of Education (because, as noted above, individuals may not be liable under Title VII). *Lore,* 670 F.3d 169. The third municipal defendant, the Department of Health and Mental Hygiene, is not Ms. Bryan's employer. FAC ¶ 138.

For all other plaintiffs, the Fourth Amended Complaint does not allow the reader to divine a bona fide belief — even at the highest levels of generality. *See Cagle v. Weill Cornell*

*Medicine,* 680 F. Supp. 3d 428, 435-36 (S.D.N.Y. 2023) (plaintiff failed to allege bona fide belief, where complaint alleged only that she had "religious beliefs" and that those beliefs included "religious practices of non-vaccination"); *Friend v. AstraZeneca Pharms. LP*, 2023 WL 3390820, at *3 (D. Md. May 11, 2023) ("While Plaintiff's complaint asserts that he 'had bona fide religious beliefs that conflicted with AstraZeneca's COVID-19 vaccine mandate,' it alleges no facts to allow this Court to assess what Plaintiff's religious beliefs are and how they conflict."); *McKinley v. Princeton Univ.*, No. 22-CV-5069, 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("Without Plaintiff providing facts showing what sincerely held religious belief she holds that prevented her from complying with COVID-19 Policies, Plaintiff fails to adequately allege a cognizable claim for religious discrimination.").   As described above, plaintiffs claim religious objections to the COVID-19 vaccine.  FAC ¶ 1.  Yet they provide no supporting facts, which prevents the Court from analyzing whether these beliefs are sincerely held or implicate ultimate concerns.  *See, e.g.*, *id.* ¶¶ 16-18, 20-36.

In addition, there are portions of the complaint that invoke non-religious motivations for the plaintiffs' vaccine refusal.  For example, in a single sentence that runs almost two pages, the plaintiffs refer to having exercised their "fundamental right" to refuse vaccination "on religious and non-

religious grounds." *Id.* ¶ 1; *see also id.* ¶ 36 (referring to requests for "religious and / or medical exemptions").  Absent any detail about plaintiffs' religious beliefs, the plaintiffs cannot claim that they are bona fide.

**D.   New York City Human Rights Law**

Plaintiffs also allege religious discrimination under the New York City Human Rights Law ("NYCHRL").  The NYCHRL prohibits discrimination based on the actual or perceived "creed" or religion of any person.  N.Y.C. Admin. Code § 8-107(1)(a).  A NYCHRL claim must be construed "more liberally than its State and federal counterparts," in favor of plaintiffs, "to the extent that such a construction is reasonably possible."  *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278–79 (2d Cir. 2009).

> 1.   Plaintiff Bryan Has Alleged a Prima Facie Case of Religious Discrimination Under the NYCHRL

Like Title VII, the City's Human Rights Law requires a plaintiff to allege a bona fide religious belief to make out a prima facie case of discrimination.  Specifically, under the NYCHRL, a plaintiff must demonstrate that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the

conflicting employment requirement." *Weber v. City of New York*, 973 F. Supp. 2d 227, 263 (E.D.N.Y. 2013) (collecting cases).

Ms. Bryan is the only plaintiff who articulates a prima facie NYCHRL religious-discrimination claim. She (a) articulates a bona fide belief in the "biblical practice" of plant-based medicine; (b) pleads that she told her employers about this belief; and (c) alleges retaliation for refusal to receive vaccination. FAC ¶¶ 138-142. These claims meet the threshold for Ms. Bryan to proceed under the NYCHRL at this stage. No other plaintiffs, however, approach even this low pleading bar. *See Lugo v. City of New York*, 518 F. App'x 28, 30 (2d Cir. 2013) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal or state discrimination claims, it still requires a showing of some evidence from which discrimination can be inferred."); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

At the next step of NYCHRL analysis, the burden shifts to the employer "to rebut the presumption of discrimination by clearly setting forth, through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 (N.Y. 2004). Here, defendants cannot carry that burden. At the motion to dismiss stage, the Court may only consider the facts in the FAC, which pleads that

plaintiff's religion was not accommodated.  *See* FAC ¶¶ 138-42;
*Davis v. Boeheim,* 24 N.Y.3d 262, 268 (N.Y. 2014).  Thus, Ms.
Bryan's NYCHRL claim may proceed.

      2.    Bryan's NYCHRL Claim May Proceed Against Certain
            Municipal Defendants

Under the NYCHRL, an employer like New York City is
liable for the conduct of its employee or agent "only where":
(1) "the employee or agent exercised managerial or supervisory
responsibility;" (2) "the employer knew of [an] employee's or
agent's discriminatory conduct, and acquiesced in such conduct
or failed to take immediate and appropriate corrective action .
. ."; or (3) the employer "should have known of the employee's
or agent's discriminatory conduct and failed to exercise
reasonable diligence to prevent [it]."  N.Y.C. Admin. Code § 8-
107(13)(b).

Here, the third factor is easily satisfied at this
stage: the City cannot (and does not) contend that it lacked
knowledge of the vaccine mandate, the absence of a religious
exemption therefrom, or the consequences of non-compliance.
Thus, Ms. Bryan's NYCHRL claim is proper against the City of New
York and the Department of Education.  As noted above, however,
the Department of Health and Mental Hygiene is not Ms. Bryan's
employer.  FAC ¶ 138.

      3.    Bryan's NYCHRL Claims Against the Individual
            Defendants Are Dismissed

Unlike Title VII claims, NYCHRL claims may be brought against individual defendants.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017).  In addition, supervisory liability for individual defendants is available under the statute — though not based on the supervisor's position alone.  *See Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 308 (2015).

To establish liability against a supervisor, a plaintiff must "prove at least some minimal culpability on the part of" that individual.  *Id.* at 309.  So, for example, the district court dismissed a NYCHRL claim against former New York State Attorney General Eric Schneiderman and another State executive where the plaintiff had "fail[ed] to allege any facts which could tend to show that either defendant was ever aware of [plaintiff's] allegations of discrimination or otherwise participated in discriminatory conduct."  *Morgan v. N.Y. Atty. Gen.'s Office,* 11-CV-9389, 2013 WL 491525, at *13 (S.D.N.Y. Feb. 8, 2013).

Applying this standard, the individual defendants must be dismissed on this claim. [13]  There are no allegations in the

---

[13] The individual defendants are Mayor Eric Adams, former Mayor Bill de Blasio, NYC Department of Health and Mental Hygiene Commissioner Ashwin Vasan, former Health and Mental Hygiene Commissioner Dave Chokshi, and "Does 1-20," about whom no details are pled in support of the discrimination claims.  FAC ¶¶ 40-41, 43-44.  The Does are referenced on the face of the

complaint that any individual defendant personally participated
in the employment decisions at issue or bears any individual
"culpability" for Ms. Bryan's termination.  *Marchuk,* 100 F.
Supp. 3d at 309.  For instance, the complaint does not allege
that Mayor de Blasio had any personal role in crafting the
*employment* consequences for vaccine refusal, the contours of any
exemptions or accommodations, or the application of those
policies to any person.  *See Morgan,* 2013 WL 491525, at *13; *see
generally* FAC.  Ms. Bryan's NYCHRL claim will therefore proceed
only against the City and the Department of Education.

**E.    Federal Declaratory Judgment Act**

        Plaintiffs attempt to bring a cause of action under
the Federal Declaratory Judgment Act, seeking declaratory and
injunctive relief.  *See* 28 U.S.C. § 2201; FAC ¶¶ 234-54.
District courts have discretion to determine whether and when to
entertain declaratory judgment actions.  *See Wilton v. Seven
Falls Co.*, 515 U.S. 277, 282 (1995).  This court denied
plaintiffs' request to amend their complaint to include claims
for declaratory and injunctive relief under 28 U.S.C. §§ 2201-
02*, see Women of Color for Equal Just. v. City of N.Y.*, 2022 WL
17083109, at *4 (E.D.N.Y. Nov. 18, 2022), and those rulings

---

complaint but never again in the document.  *See generally id.*  Mayor Adams
and Commissioner Vasan are sued in their official capacities, while former
Mayor DeBlasio and former Commissioner Chokshi are sued in their personal
capacities.  FAC ¶¶ 40-41, 43-44.

remain the law of the case.  See *Musacchio v. United States*, 577
U.S. 237, 244-45 (2016) ("[W]hen a court decides upon a rule of
law, that decision should continue to govern the same issues in
subsequent stages in the same case.").  Thus, the Court declines
to entertain a declaratory judgment action here, either.

**F.    Common Law Fraud**

Finally, Plaintiffs allege that all defendants are
liable for common-law fraud.  Plaintiffs allege a handful of
false statements and omissions made by New York City's Health
Commissioner, Dave A. Chokshi, in the Vaccine Orders.  For
example, plaintiffs claim that Dr. Chokshi

> falsely represented in the Vaccine Orders that
> 'vaccination is an effective tool to prevent the
> spread of Covid-19 and benefits both vaccine
> recipients and those they come into contact with' when
> it is impossible for any vaccine to shield any person
> from exposure or prevent anyone from coming into
> contact with any hazardous airborne communicable
> disease in the workplace atmosphere.

FAC ¶ 275.  No plaintiff has established standing to bring this
claim.

In federal court, plaintiffs are obligated to
"demonstrate standing for each claim that they press and for
each form of relief that they seek."  *TransUnion LLC v. Ramirez*,
594 U.S. 413, 431 (2021).  In other words, standing must be
alleged on a claim-by-claim basis.  *See Friends of the Earth,*

*Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

There are three familiar elements of Article III standing.  First, a plaintiff must have suffered an "injury in fact." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  "To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016). Particularized means that it "affect[s] the plaintiff in a personal and individual way."  *Id.*

Second, "the injury has to be fairly traceable to the challenged action of the defendant." *Lujan,* 504 U.S. at 560. "Fairly traceable" means that "there must be a causal connection between the injury and the conduct complained of." *Dep't of Ed. v. Brown,* 600 U.S. 551, 561 (2023) (discussing *Lujan*).  To prove causation, "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury — in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024).

Finally, it must be "likely" rather than "speculative" that the injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561.

The FAC describes three classes of plaintiffs: (1) the "locked out class" of City employees who refused vaccination; (2) the "coerced class" who received COVID-19 vaccines "so that they could get their jobs and salary back"; and (3) "City employees who relied on the City's material misrepresentation that the Covid-19 vaccine 'is an effective tool to prevent the spread of Covid-19' (See Vaccine Orders) and submitted to the administrative injection of the Covid-19 into their bodies and thereafter experienced one or more Covid-19 infections that resulted in physical, and/or psychological injury . . . ." *Id.* ¶ 11(a)-(c).

The third class refers to a fraud-induced injury.  The problem for the plaintiffs is that, while the FAC describes this class, no *individual* plaintiff alleges any injury traceable to the City's alleged misrepresentations.  FAC ¶¶ 11-38 (describing the plaintiffs).  Allegations that "thousands of people" were harmed is insufficient to state a particularized injury that any individual *plaintiff* was harmed.  *Id.* ¶ 282; *see Spokeo*, 578 U.S. at 339 (2016).  Indeed, it is axiomatic that "a citizen does not have standing to challenge a government regulation

simply because the plaintiff believes that the government is acting illegally." *All. for Hippocratic Med.*, 602 U.S. at 381.

A detailed, plaintiff-by-plaintiff assessment reveals that no plaintiff claims that he or she got vaccinated in reliance on the alleged misrepresentations at issue — or any other facts that could plausibly be construed as a basis for membership in the "misrepresentation class."  Thus, no individual plaintiff has standing for plaintiffs' fraud claim.

Most plaintiffs refused COVID-19 vaccination and therefore could not be injured by reliance on allegedly false statements about the vaccine's effectiveness.  FAC ¶ 12-36 (detailing that sixty out of the sixty-five named plaintiffs refused vaccination).[14]  Three plaintiffs do not allege whether or not they were vaccinated and therefore similarly cannot state a particularized injury relating to the alleged misstatements.

The complaint describes the remaining two plaintiffs as belonging to the "coerced class" — those who received COVID-19 vaccines based on the threat of adverse employment consequences.  *Id.* ¶¶ 11(b), 37-38.  Only one of the two, Jesus Coombs, alleges that he was infected with COVID-19 following vaccination.  *Id.* ¶ 38.  Mr. Coombs pleads that he "took the

---

[14] The Court counts sixty-five named plaintiffs, assuming that a) plaintiffs whose names are spelled in different ways are the same person; and b) plaintiffs whose names are listed twice are only one person, rather than two people with the same name.  *See generally* FAC; Docket No. 22-CV-2234.

Covid-19 vaccine and thereafter sustained a Covid-19 infection and health problems." *Id.; see also id.* ¶ 169.  His allegation that he experienced health problems following vaccination states a concrete injury.  *Spokeo*, 578 U.S. at 339.  But, Mr. Coombs's injury is not "fairly traceable" to the *fraud* claim.  *Lujan,* 504 U.S. at 560-61.  The FAC pleads that:

> On January 13, 2022, Mr. Coombs was placed on leave without play for refusing to submit to the Vaccine Orders.  He was scheduled to be terminated, but because he is the sole income earner in his home, he with much gilt, anxiety and distress, submitted to the Vaccine Order and returned to work on February 15, 2022.

FAC ¶ 38.  This passage suggests no reliance on — or even awareness of — the Health Commissioner's allegedly false statements.  *Id.*  Put differently, Mr. Coombs does not allege a causal link between any allegedly fraudulent statement and his injury.  *See All. for Hippocratic Med.,* 602 U.S. at 385. Therefore, Mr. Coombs, too, lacks standing to bring a *fraud* claim.  Because no plaintiff has standing to bring this claim, it is dismissed for lack of jurisdiction.[15]

## IV.  Conclusion

With the exception of Ms. Bryan's Title VII and NYCHRL claims against the City and the Department of Education,

---

[15] This claim is also likely untimely, based on plaintiffs' failure to file a notice of claim with the City.  *See* N.Y. Gen. Mun. Law 50-e (requiring that a plaintiff must file a notice of claim prior to commencement of an action against a municipality and must serve the notice of claim within ninety (90) days after the claim arises).

plaintiffs' claims are dismissed.  Plaintiffs' fraud claim is
dismissed without prejudice.  *See Katz v. Donna Karan Co.,
L.L.C.,* 872 F.3d 114, 116 (2d Cir. 2017) (dismissal for lack of
subject matter jurisdiction must be without prejudice).  All
other claims are dismissed with prejudice.  *See, e.g.*, *Liang v.
Home Reno Concepts, LLC*, 803 F. App'x 444, 448 (2d Cir. 2020)
(denying leave to amend was proper where plaintiff already had
"three bites at the apple" and was still unable to state a
claim); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (courts may
deny leave to amend based on "futility of amendment"); *Wallace
v. Conroy*, 945 F. Supp. 628, 639 (S.D.N.Y. 1996) (collecting
cases).

Finally, plaintiffs' motion for sanctions and motion
to vacate the denial of preliminary injunctive relief are
denied.  ECF Nos. 64, 74.  The motion to strike the Fourth
Amended Complaint and all other pending motions related to the
Fourth Amended Complaint and the motion to dismiss are denied as
moot.  ECF Nos. 75, 82, 83, 87, 96, 98.

A status conference on the remaining claims shall be
held at 10:30 AM on November 7, 2024 in Courtroom 6G North.


SO ORDERED.

                                        /s/ Eric Komitee
                                    _____
                                    ERIC KOMITEE
                                    United States District Judge


Dated:      September 25, 2024
            Brooklyn, New York