UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

SARA COOMS, et al.

                        Plaintiffs,

            v.

THE CITY OF NEW YORK, MAYOR ERIC L. ADAMS,         INDEX No.: 1:22 CV 02234-EK-LB
COMISSIONER ASHWIN VASAN, MD, PHD
DEPARTMENT OF HEALTH AND MENTAL HYGIENE,
DEPARTMENT OF EDUCATION, AND DOES 1-20

                        Defendants.

_____

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS MOTION TO VACATE UNDER
## RULE 60(b)(2)(3)(6)

Jo Saint-George, Esq.
14216 Dunwood Valley Dr.
Bowie MD 20721-1246
jo@woc4equaljustice.org
Phone: 301-447-3600

Donna Este-Green, Esq. Bar#2517688
*25 Fairway Dr.*
*Hempstead, NY 11550*

Tricia S. Lindsay, Esq.
531 E. Lincoln Ave., Suite 5B
Mount Vernon, New York 10552

*Attorneys for Women of Color for Equal*
*Justice Plaintiffs*

## TABLE OF CONTENT

I       PRELIMINARY STATEMENT……………………………………………......1

II      PROCEDURAL AND HISTORICAL BACKGROUND  …………………………3

III     STANDARD OF REVIEW……………………………………………………21

IV      ARGUMENT SUMMARY…………………………………………………….25

V       CONCLUSION……………………………………………………………………39

TABLE OF AUTHORITIES

Statutes

OSHA 29 U.S.C. §660 Section 11(c)(1) & (2) ........................................................ 1,8,9

OSHA 29 U.S.C. §669 Section 20(a)(5) ............................................................... 1,8,9

OSHA 29 U.S.C. §658 (a) Section 7,8,9 ................................................................8))

OSH Act in 1970......................................................................................... 8

28 US Code §455(a)…………………………………………………………………1

28 US Code §455(b)(1) & (4)………………………………………………………..1

42 U.S.C. §247b……………………………………………………………………14

42 U.S.C. Chpt 6A Section 241-243…....………………………………………… 16

42 U.S.C. §1302………………………………………………………………..12

Public Health Law §206(l)…………………………………………………………14


Rules

Fed.R.Civ.Pro Rule 11 ....................................................................................

Rule 60(b)(2)(3)(6) .........................................................................................

Judicial Code of Conduct for United States Judges

Judicial Canon 3B(6) ……………………………………………………………….2

Judicial Canon 3(a)(1) & (4)…………………………………………………….. 28

United States Supreme Court Cases

Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 279 (1990)………………5, 19, 22

Biden v. Missiouri, 595 U.S. ____(2022)………………………………………………15

Mourning v. Family Publications Service, 411 U.S. 356, 369 (1973)…………………………..14

Jacobson v. Massachusetts, 197 U.S. 11 (1905).......................................................3- 9

City of Milwaukee v. Illinois and Michigan, 451 U.S. 304, 305 (1981)…………………………10

*Simpson v. Shepard*, 230 U.S. 352, 406 (1913)………………………………………………9

*Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U. S. 872 (1990) ………..18

*Opp. Cotton Mills v. Administrator of Wage and Hour Division of Department of Labor*, 312 U.S. 657 (1941). ………………………………………………………………………...18

*City of Boerne v. Flores*, 521 U.S. 507, (1997)…………………………………………………18

*Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992)………………………..19

*Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 851 (1987)………………….20, 21

*Klapprott v. United States*, 335 U.S. 601, 614-615, (1949)…………………………………..21

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S.Ct. 1444, 1450 (2023)…………….29

*Bell Atl. Corp. v. Twombly*,550 U.S. 544, 555—56 (2007)…………………………………….29

*Arizona v. United States*, 132 S. Ct 2492 (2012)…………………………………………………………….

*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)………………………………………………..41

*State v. Ballard*, 322 U.S. 78 (1944)…………………………………………………………34

*Murphy v. Nat. College Athletics Assoc.*, 138 S. Ct. 1461, 1480 (2018)………………………...41

*Armstrong v. Exception Child Center*, 575 U.S. 320, 332 (2015)………………………………32

*State v. Ballard*, 322 U.S. 78 (1944)…………………………………………………………..34

*American Tobacco Co. v. Patterson*, 456 U.S. 63, 68

(1982)………………………………….32

*Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 635 ………………………….....32

*Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997)…………………………………………..32

*Bread Political Action Committee v. FEC*, 455 U.S. 577, 580 1982)…………………….....……32

*Mutal Pharmaceutical Co. v. Bartlett*, 520 U.S. 479, 492 (2013)………………………………42

Federal Court Cases

*Cobell v. Norton* CV 96-1285 (D. D.C. 2006)……………………………………………………….4

*Collie v. Kendall, Civ. 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435 (N.D. Tex. July 6, 1999)* 7

*Quirk v. DiFiore, 2022 U.S. Dist. LEXIS 16063 (S.D.N.Y. Jan. 28, 2022)* .................................. 8

*State v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021)…………………………………………...9

*Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty*., 228 Cal. Rptr. 3d 406 (Cal. 2018)………………...………………………………………………………………… 18

*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982) …………………………………………………………………………………18

*Collie v. Kendall, Civ*. 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435, at 8-10 (N.D. Tex. July 6, 1999)…………………………………………………………………………………………..22

*Perez v. United States Postal Servis,* 76 F. Supp 3d. 1168 (W.D. Wash 2015) ………………...36

*Conoco Phillips*, 520 F. Supp. 2nd. 1282, 1330 (N.D. Okla. 2007)……………………………41

Federal Court of Appeals

*Brubaker v. City of Richmond* , 943 F.2d 1363, 1385 (4th Cir. 1991)........................................... 6

*Donovan v. Occupational Safety & Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983)……………8

U.S. v. Rybicki, 354 F. 3d. 124, 136 (2nd Cir. 2003)…………………………………………………8

*Steel Inst. of N.Y. v. City of N.Y.*, No. 12-276 (2nd. Cir. 2013)…………………………………19

*United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir.2005)…………………………...2

*Connecticut v. American Elec. Power Co*., Inc., 582 F.3d 309, 374 (2nd Cir. 2009)

*U.S. v. Mendoza*, 468 F.3d 1256 (10th Cir. 2006) …………………………………………………2

*Van Hoven v. Buckles & Buckles, P. L.C.,* 947 F.3d 889 (6th Cir. 020)………………………...22

*ExxonMobil Oil Corp. v. TIG Ins*. Co., 44 F.4th 163 (2nd Cir. 2022)………………………21, 23

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003). ...........21

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995)..............................22

*Kupferman v. Consol. Research & Mfg.* Corp., 459 F.2d 1072, 1078 (2d Cir. 1972)..............22

*Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988)………………………………………22

*U.S. v. Cooper*, 872 F.2d 1, 3 (1st Cir. 1988)…………………………………………………..22

*Cobell v. Norton*, 212 F.R.D. 14, 23 (D.D.C. 2002) ………………………………………………23

*Mandala v. NTT Data*, Inc., 88 F.4th 353, 360 (2nd Cir. 2023)………………………………23

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)……………………24

Bruzzese v. Garland, 21-1448 (2nd Cir. May 26, 2022)………………………………………..24

*Smith v. Hogan*, 794 F. 3d. 249, (2d. Cir. 2015)……………………………………………30

*Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)……………………………………31

*Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)………………………………………....31

*Reich v. Cambridgeport Air Systems*, Inc., 26 F.3d 1187 (1st Cir. 1994)………………….....34

*Marshall v. Wallace*, 1978 WL 18639, *4 (M.D.Penn.1978)…………………………………35

*Doca v. Marina Mercante Nicaraguense, S.A*., 634 F.2d 30, 33 (2d Cir. 1980)……………30, 33

State Court

*Garvey v. City of New York*, NY Slip Op 22335 (NY Supreme Court, Richmond 2022)……….24

## I.    PRELIMINARY STATEMENT

On September 25, 2024, Judge Komitee by order (Order) ECF #99 dismissed with prejudice all claims except two claims,[1] brought by a proposed class of New York City employees who were constructively discharged from their jobs for refusing to comply the City of New York and the New York City Department of Education (collectively the "City") nine (9)  Emergency Orders issued by the City's Department of Health and Mental Hygiene in 2021  (the "Mandates"). The Mandates required all City workers and private sector employees to take a Covid-19 vaccine manufactured either by Moderna, Pfizer or Johnson & Johnson in order to remain on their jobs. Plaintiffs' claims included a request among other things for punitive damage, injunctive relief and a prospective declaratory judgment stating that all U.S. Citizens have the fundamental right to refuse and choose their own medical treatment – including specifically the right to refuse any vaccine – as a religious practice protected by the Constitution's First Amendment Free Exercise Clause, and as non-religious practice protected by the Substantive Process Clause of the Fourteenth Amendment and further protected by the federal OSH Act, Title VII and Section 1983, so long as the religious or non-religious practice is not a crime. The OSH Act expressly provides at 29 U.S.C. §669 Section 20(a)(5) that all employees have the right to: 1) refuse medical treatments, medical exams, and immunizations/vaccine based on religious grounds; and 2) be free from wrongful discharge for exercising the aforementioned statutory OSH Act protection pursuant to 29 U.S.C. §660 Section 11(c)(1) which provides employees a private right of action under Section 11(c)(2).

All Plaintiffs, except for Plaintiff Amoura Bryan, requests that the Courts final Order is vacated pursuant to FRCP Rule 60(b)(2)(3)&(6) because: 1)  Judge Komittee violated the mandatory judicial disqualification rules under 28 US Code §455(a) and (b)(1& 4), 2) Judge

---

[1] The Title VII and New York City Human Rights Claims brought by Plaintiff Amoura Bryan were not dismissed and this Motion to Vacate does not apply to her claim.

Komittee failed to investigate the fraud on the court by Mayor Adams and the City's legal department mandated by the Code of Conduct for United States Judges Judicial Canon 3B(6) which admonishes that a "judge should take appropriate action upon receipt of reliable information indicating the likelihood ……that a lawyer violated applicable rules of professional conduct" for which vacatur is permitted under FRCP Rule 60(b(3)[2] and Rule 60(b)(6), 3) Judge Komitee disqualification caused him to fail to follow the law and make rulings unsupported by the law; and 4) that newly discovered evidence be admitted into the record that also supports Plaintiffs OSHA claims establishing that the Covid-19 virus and all other airborne communicable diseases are occupational illnesses covered by the OSH Act  to support Plaintiffs OSHA claims which new evidence would change the outcome of Plaintiffs case for which vacatur is also permitted pursuant to FRCP §60(b)(2)&(6).

These disqualifying failures and clear errors of law resulting from the bias and intentional prejudice by Judge Komitee has resulted in a serious deprivation of Plaintiffs substantive fundamental rights that has seriously affected the fairness, integrity, or public reputation of the judicial process. See *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir.2005)..." *U.S. v. Mendoza*, 468 F.3d 1256 (10th Cir. 2006)

Because of this new revelation regarding Judicial Komitee's deceptive practices and two-year cover-up of his disqualification, Plaintiffs are now afraid that there is not one judge in the Eastern District of New York court who will give a fair hearing in this case.  Consequently, Plaintiffs have filed with this Motion to Vacate the September 25, 2024 Order, a Motion to Recuse Judge Komitee so that he is not permitted to rule on this Motion to Vacate, and Plaintiffs have filed a Notice of Interlocutory Appeal because this case involves legitimate constitutional and

---

[2] See U.S. v. Mendoza, 468 F.3d 1256 (10th Cir. 2006"Judges are obligated to alert disciplinary authorities to possible unethical conduct by attorneys. Judges do not demonstrate possible bias or prejudice when they discharge that obligation.' R. Vol. II at 247; cf. *In re Cooper*, 821 F.2d 833, 838 (1st Cir.1987)..."

federal law claims that require the Second Circuit to give instruction to facilitate the fair and speedy resolution of Plaintiffs claims free from judicial bias.  Plaintiffs have great trepidation regarding the fair adjudication of this case because opposition to the New York vaccine mandates for the last two years have been filled with so much controversy that this case should be treated as an extraordinary case and all allowances made to give a fair and impartial hearing on the merits and newly presented evidence by a panel of three judges who are vetted by Plaintiffs as outlined at the end of this motion. All Exhibits attached to Plaintiffs Fourth Amended Complaint are hereby incorporated by this reference in the ECF#88 – (1-59)[3]

## II    PROCEDURAL & FACTUAL BACKGROUND

While there are two primary wars going on over sees in the Ukraine and in Gaza, America is also involved in a "Great Health Controversy" over whether federal, state and private employers have the constitutional right to mandate compulsory Covid-19 vaccination of employees and/or persons in public businesses and enforce grave sanctions including termination from employment, deprivation of employment benefits, preclusion of compensatory damages and exclusion from public places.

The City of New York, along with many private employers still mandating Covid-19 vaccines as a condition or pre-condition of employment believe they have the constitutional right to mandate employees and persons utilizing public businesses to submit to the Covid-19 vaccine or any vaccine now or in the future based on the federal common law articulated in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).  National bar associations have also declared that *Jacobson* is still good law.  Those "beliefs," however, are erroneous and a blatant disregard for the well-established OSHA safety regulations and laws and a reckless disregard for the fundamental rights

---

[3] Exhibits attached hereto are copies of Exhibit attached to the complaint but re-attached for ease of reference.

of competent adults to choose or refuse medical treatment for any reason.  While the masses of Americans maintain the "common belief" that government and private sector employers should enforce vaccines mandates for the  "common good" of the health and safety of society to prevent dangerous communicable disease -  as was the thought over 100 years ago in the *Jacobson* case - the undisputed facts then and now is that vaccines are incapable of preventing exposure to any infectious disease nor can any vaccine remove an infectious disease from the atmosphere where it is transmitted. The masses are hearing the truth about the failures of the Covid-19 vaccine and even they want justice for those terminated for refusing to take the Covid-19 vaccine.

Notwithstanding the extensive evidence presented to this Court by Plaintiffs to establish without doubt that every citizen possesses the God given fundamental right to refuse any vaccine, medical treatment or medical exam on religious and non-religious grounds, this Court nevertheless dismissed Plaintiffs claims in their entirety ignoring well establish case law and medical evidence. However, what Plaintiffs recently learned is that this Court's decision was corrupted by Judge Komitee's undisclosed disqualification for over two years and his own fraudulent acts in the management of this case as well as the City's fraud on the Court that resulted in a unscrupulous dismissal of Plaintiffs case.

Consequently, Plaintiffs submit this motion to vacate Judge Komitte's dismissal order that has brought the entire judicial system into disrepute. Before Plaintiff dives into the nuts and bolts of why this motion to vacate the order is necessary, some historical background needs to be provided to understand the history of vaccines and American's public health laws to give context to Plaintiffs' request. This motion has not been filed because Plaintiffs are just unhappy with the outcome. This motion is being submitted to explain how the September 25, 2024 order ECF#99 is nothing but a by product of deception, corruption and a conspiracy between Judge Komitee, the

City's Lawyers and Mayor Adams and DeBlasio to cover up the greatest attack on America's civil rights since the enactment of the Jim Crow laws.

### A.  History Behind Vaccine Public Policy & American Public Health Policy

In 1905, the U.S. Supreme Court made a historic legal determination, as a matter of federal common law, that the right to choose one's own medical treatment, which includes the right to refuse government sponsored vaccine medical treatment, is a fundamental human right based on the holdings in *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) (held: that there is "the inherent right of every freeman to care for his own body and health in such way as to him seems best….This court has more than once recognized it as a fundamental principle") This declaration of human rights was re-iterated in the U.S. Supreme Court decision in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) (holding – "we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process)  The legal question raised in each case was whether or not the inherent fundamental right is subject to limitation. While the facts in each case yielded a different outcome, what is paramount is that the Supreme Court articulated that the right exists for all.

However, many private and public sector employers, including the City believe they have the constitutional right to mandate employees and persons utilizing public businesses to submit to the medical treatment of the Covid-19 vaccine or any vaccine now or in the future based on the federal common law regarding the "police power of the states" that was also articulated in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).  The first question that must and erroneously concluded by Judge Komitee is whether the *Jacobson* case is still good law.

In 1905, when the U.S. Supreme Court made its decision in the *Jacobson*, the Court effectively legislated from the bench because at that time there was no federal department of

health nor any legislation that governed the situation when an individual right to control their own healthcare was in conflict with a states or governments need to manage what was a public health emergency. The Court was faced with the need to develop a legal framework for how to resolve a conflict between a states enumerated powers and authority given to states by the Constitution and the inherent rights of every citizen protected by the Constitution, particularly during an outbreak of a deadly communicable disease. The *Jacobson* decision was the first time that the Supreme Court enunciated an opinion about how federal and state governments could exercise their authority to respond specifically to a smallpox outbreak centered in state of Massachusetts. The *Jacobson* Court's ruling was consistent with the 10th Amendment of the Constitution, which grants states and local governments "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Also, consistent with the 10th Amendments federalist principles, the *Jacobson* Court stepped out on a ledge and boldly held that states not only have the general police power to enact criminal laws for public health and safety, but also states specifically are authorized to enact laws that criminalize the exercise of fundamental rights, including religious activity, ordinarily protected from government deprivation by the Constitution. *Jacobson* at 11 and 29.

The *Jacobson* Court upheld the State of Massachusetts criminal prosecution of Mr. Jacobson, a minister of a church, for refusing the smallpox vaccine based on medical freedom grounds, which landmark decision became the foundation for the federal common law that fundamental rights, including religious practices can be criminalized, specifically the religious practice of refraining from vaccines, so long as the criminal law is "reasonable" for the protection of public health and safety. Moreover, the *Jacobson* decision expressly enunciated a framework for the use of vaccines as a "method necessary" for the "extermination of a disease" for the

6

protection of public health and safety over individual liberties as granted by the U.S. Constitution. *Jacobson* at 12.

While this judicially created federal common law was issued at a time when Congress had not spoken or legislated on the issue of the governmental management of communicable disease outbreaks and Congress had not created and federal department health with corresponding administrative agencies, the court was faced with having to determine the constitutionality of Massachusetts' criminal sanctions for a citizen's refusal to comply with that states compulsory criminal vaccination law. At the same time, the *Jacobson* decision also provided a roadmap for Congress in the future to legislate to limit state police power to criminally punish and fine citizens for exercising their fundamental right to refuse government sponsored vaccines. The Supreme Court expressed in *Jacobson* the need for Congress to enact health laws to better address the patch work the Court had performed in its decision, as stated below:

> "it is for the legislature, and not the courts, to determine in the first instance whether vaccination is or is not the best mode for the prevention of smallpox and the protection of the public health." Id. at 197.  (Emphasis added)

> "A local enactment or regulation, even if based on the acknowledged police powers of a State, must always yield in case of conflict with the exercise by the General Government of any power it possesses under the Constitution, or with any right which that instrument gives or secures." (Emphasis added) *Jacobson* at 11-12.

With this backdrop and a careful review of the legislative history of the Congressional enactments of the later enacted several safety acts along with a plain reading of each act, it is clear that the federal common law articulated in *Jacobson* has been overruled, which Judge Komitee ignored in his dismissal as explained below.

"Federal common law in an area of national concern is resorted to in the absence of an applicable Act of Congress. When Congress addresses a question previously governed by a decision rested on federal common law, the need for such an unusual exercise of lawmaking by

federal courts disappears." *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 305 (1981) citing *Illinois v. Milwaukee*, 406 U.S. 91, 107 (1972).

In "determining whether a federal statute has displaced a federal common law…., a court must consider whether the federal statute "[speaks] directly to [the] question" otherwise answered by federal common law. Federal common law is used as a "necessary expedient" when Congress has not "spoken to a particular issue." See *Connecticut v. American Elec. Power Co.*, Inc., 582 F.3d 309, 374 (2nd Cir. 2009) Moreover, courts are to look to Congressional legislative history of a statute to determine if a statutory provision was "designed to overrule" a court ruling on the same subject.  If there is no specific statement in the legislative history regarding a court ruling, then the explicit terms and language of a statute is to be analyzed to ascertain congressional intent. See *U.S. v. Rybicki*, 354 F. 3d 124, 136 (2nd Cir. 2003).

### B. The 1944 Public Health & Welfare Act First Overruled Jacobson By Enacting Quarantine Laws

Prior to the *Jacobson* decision, in 1902, Congress enacted legislation titled "An Act" that regulated the interstate traffic, sale and license of "viruses, serums, toxins, and analogous products applicable to the prevention and cure of diseases of man," (also known as "live immunization/vaccine products" and drugs) that was managed by the Surgeon General of Marine Hospital Service (MHS), which later become the FDA. See Exhibit 1    According to the Centers for Disease Control Museum archives, MHS was the first public health agency in the U.S. formed in 1798 that was responsible for quarantining sick seamen exposed to contagious diseases on ships. Exhibit 2

While the Marine Hospital Service (renamed the Public Health Service (PHS) in 1939, grew to provide quarantine services nationwide, Congress did not enact legislation regarding federal and state management of communicable diseases until 1944 when Congress authorized

the PHS Surgeon General to promulgate quarantine regulations to control or prevent the spread of communicable diseases within interstate commerce. Exhibit 3 - Public Health Service Act, Pub. L. 78 – 4110, § 362, 58 Stat. 682, 704 (1944). The Public Health & Welfare Act, which is now 42 U.S.C. §264(a) titled "Regulations to control Communicable Disease," stated and continues to state as follows:

> The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

The scope of the list of "other measures" that can be implemented by the Surgeon General are contained in subsections Section 264(b) – (d) which permit human detention and includes the measures listed in Sections 265-271, which only include quarantine "measures" under various circumstances. (See Exhibit 3, Page 3, Section 201, See Exhibit 3(a) and 3(b))

Vaccine manufacture, development and licensing expanded between 1901 and 1944 – as revealed in the legislative history of the 1972 Communicable Disease Program Act. See Exhibit 4  Congress, however, never codified the *1905 Jacobson* decision into law to authorize the Surgeon General of PHS to enforce *Jacobson* type "compulsory vaccination and criminal sanctions" on American citizens as a method to control or prevent communicable diseases.  In a comprehensive review of the regulatory powers of the U.S. Health and Human Services (HHS) Secretary by the U.S. Middle District of Florida in the case *State v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021), it was pointed out that the primary method for controlling communicable diseases by the federal PHS and states at that time was through quarantine regulations.

Just a few years after the *Jacobson* decision, the U.S. Supreme Court in *Simpson v. Shepard*, 230 U.S. 352, 406 (1913) affirmed state's authority to adopt quarantine regulations that did not conflict with federal law. The 1944 Public Health & Welfare Act (PHW Act) at 42 U.S.C §243 (a) specifically authorized the PHS Secretary to cooperate with states in the enforcement of quarantine regulations but not compulsory vaccination. (See Exhibit 3(a) and 3(b))

The only "police power" granted by Congress regarding control of communicable disease in the 1944 PHW Act to the Secretary or Surgeon General is outlined in 42 U.S.C §271 Penalties for Quarantine Violations – wherein the Surgeon General is authorized to criminally prosecute any person who violates any quarantine regulations under Section 264 – 266 subjecting an offender to up to 1 year in prison and/or a fine of up to $1,000. (See Exhibit 3(a) and 3(b))  While the criminal prison sanction and fine in §271/§368 (old version) is similar to the fine and prison sanctions in the *Jacobson* case, the fact that Congress has only authorized criminal penalties for quarantine violations and did not include sanctions for vaccine refusal is substantial evidence that Congress' passage of the 1944 PHW Act did in fact overturn the federal common law in the *Jacobson* decision.

The exclusion of the *Jacobson* common law language from the 1944 PSH Act is evidence that Congress rejected the *Jacobson* Court's authorization of criminal sanctions against citizens who refused to take a vaccine and opted to enact legislation that only criminalized the refusal by citizens to comply with quarantine laws, which is still the law today. If Congress wanted to adopt the judicially created *Jacobson* public policy, Congress could have - but for over 100 years Congress has refused to do so and they never will.

**C.  The 1972 Communicable Disease Control Program Overruled Jacobson Mandating Funding to Only Provide Voluntary Access to Vaccines**

Stronger evidence that the federal common law in *Jacobson* has been overturned, is Congress' enactment of the 1972 Communicable Disease Control Programs, Public Law 92-449, Sec. 1, Section 317, at 42 U.S.C. §247b – See Exhibit 4 - which is a vaccine grant or vaccine "spending" program wherein Congress annually appropriates funding to PHS/HHS to distribute funding to the states as an incentive for  states to develop programs that provide the general public with "access to free vaccines" for communicable disease management, specifically childhood vaccination as outline in 42 U.S.C. §300 generally.  42 U.S.C. §247b, states, in summary, that:

> The Secretary may make grants to States, and in consultation with the State Health authority…….. to assist in meeting the costs of communicable disease control programs. …. See Exhibit 4

Nowhere in the 1972 or current HHS enabling regulation, contained in 42 U.S.C. Cht. 6A Section 241-243 See Exhibit 4 did Congress give the HHS Secretary or Surgeon General authority to mandate "compulsory vaccinations with criminal sanctions."  Of all the federal agencies for which Congress could have enacted legislation consistent with *Jacobson*, Congress has yet to pass any legislation to empower the HHS Secretary to mandate *Jacobson*-type compulsory vaccinations. A cursory review of most state legislation around the country also reveals that states have not enacted *Jacobson* compulsory vaccinations with criminal sanctions. New York State specifically passed Public Health Law §206(l), which expressly prohibits the mandating of adult vaccines as follows:

> "Nothing in this paragraph shall authorize mandatory immunization of adults or children, except as provided in sections twenty-one hundred sixty-four and twenty-one hundred sixty-five of this chapter…." New York PHL §206(l)

All of the vaccine mandates around the country that do exist are mainly childhood vaccine requirements for public school admissions that rely on federal funding to provide children access to vaccines. Since the *Jacobson* decision, no state - other than recently in New York and New York City - has passed compulsory adult vaccination laws with criminal penalties.

While the U.S. Supreme Court recently held in *Biden v. Missouri*, 595 U.S. ____(2022) that the HHS general authority clause in 42 U.S.C. §1302, which permits the HHS Secretary to "promulgate regulations as may be necessary to the efficient administration of the functions with which [he] is charged," and that the general authority provision gives the Secretary broad authority to mandate healthcare facilities to ensure their medical staff is vaccinated or suffer financial sanctions, that *Biden* holding conflicts with its earlier holding in 1973 in *Mourning v. Family Publications Service*, 411 U.S. 356, 369 (1973), which is still good law. The *Mourning* decision which was rendered just one (1) year after the passage of the 1972 Communicable Disease Control Program, held the following:

> "The standard to be applied in determining whether the Secretary exceeded the authority delegated to him . . . is well established . . . Where the empowering provision of a statute states simply that the agency may `make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is `reasonably related to the purposes of the enabling legislation."

The *Mourning* holding stands for the principle that federal agency Secretaries can only exercise those powers that are "reasonably related" to the specific approved authorized activities listed in an agency's enabling legislation. In this case, the enabling language in the PHW Act since 1944 until now listed at 42 U.S.C. Chpt 6A Section 241-243 titled "General Powers" only authorizes the HHS Secretary to engage in activity related to the implementation of either "quarantine regulations and sanctions" or to provide grants and funding to states to make vaccines available for voluntary public use for communicable disease control.  This limiting

language in the PHW Act is substantial evidence that the federal common law articulated in *Jacobson* has been overruled by Congress and not codified into law. Neither HHS nor any other state or private entity can enforce *Jacobson*-type compulsory vaccinations with any sanctions, criminal or otherwise. Consequently, the *Biden* decision must also be overruled as it violates the separation of powers between OSHA and HHS/CMS. CMS has absolutely no power to mandate medical staff vaccination in exchange for insurance funding to hospitals. CMS is a federal agency and has to establish abide by OSHA federal law also, which protects all employees right to refuse vaccines or any medical treatment provided through HHS based on religious grounds. That is the law and has been for over 80 years.

While the Supreme Court in *Biden* made that point that Covid-19 is not an "occupational illness" covered by the OSH Act, that point was "dicta" not based in any in-depth legal analysis of the OSH Act Respiratory, PPE, Ventilation and General Duty standards that expressly govern airborne communicable diseases (collectively the Respiratory Standards). See Exhibit 5  Neither did the Court take full briefing on the question of whether Covid-19 is a covered OSHA illness, which it is.

The Supreme Courts statement was completely inconsistent with the OSHA guidelines and regulations that for decades have covered communicable diseases and ignores the fact that the OSHA General Duty Clause covers "any" hazard recognized in the workplace regardless of how the hazard gets into the workplace. The Supreme Court cannot effectively "gut" 50 years of legal precedent that OSHA covers all hazards in the workplace that could cause illness or death regardless of the fact that the hazard could exist in other places. To read the Supreme Courts "side" bar statement would exempt all employers from ever complying with OSHA standards affecting airborne hazards and would make it impossible for the US to ever deal with a pandemic if all employers did not have to comply with OSHA due to the Supreme Court statement that

Covid-19 is not an occupational illness. which is not true. See <u>Exhibit 6</u> - Affidavit of Dr. Peter McCullough attached for evidence that all communicable airborne diseases qualify as occupational illnesses based on their transmissibility.

### D.  The 1970 OSH Act Also Overruled Jacobson & Abrogated State Authority to Set Minimum Health & Safety Standards

Two years before the 1972 Communicable Disease Control Program was enacted, Congress enacted the historic Occupational Safety & Health Act of 1970 (OSH Act)  See <u>Exhibit 7</u> (copy of entire OSH Act), which created the federal Occupation Safety and Health Administration (OSHA) through its Constitutional power under Article 1, Section 8 of the Commerce Clause. The OSH Act specifically overruled the *Jacobson* decision by abrogating state police power to regulate in the area of health and safety specifically in places of business and workplaces affecting interstate commerce by providing exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" to meet the minimum standards.

Specifically, Congress reserved to the OSHA Secretary the power to set "a nationwide floor of minimally necessary safeguards" that federal, state and private employers and places of business are mandated to meet for public health and safety, established field preemption of state law to set minimum standards. 29 U.S.C. § 651(b) see *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018). The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards." *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

The constitutionality of this exclusive authority to set minimum standards mirrors Congress' power to set "minimum wage standards" in the Fair Labor Standards Act 29 U.S.C.A. §201 et seq. (FLSA) passed years earlier in 1933. See *Opp. Cotton Mills v. Administrator of Wage and Hour Division of Department of Labor*, 312 U.S. 657 (1941). Furthermore, the Supreme Court made clear in *City of Boerne v. Flores*, 521 U.S. 507, (1997) that "Congress can certainly enact legislation……. enforcing the constitutional right to the free exercise of religion." Before the *Boerne* case, this Court recognized in the *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U. S. 872, 878-882 (1990) "that the political branches could shield religious exercise through legislative accommodation, for example, by making an exception to proscriptive drug laws for sacramental peyote use." Smith at 890. The OSH Act at 29 U.S.C. §669 Section 20(a)(5) specifically "shields" employees' fundamental free exercise religious right to refuse vaccines.

While 29 U.S.C. §667 Section 18(a) of the OSH Act expressly reserves to states the right to assume authority to promulgate new "higher" standards for which OSHA standards already exist, municipalities do not have the right to regulate below the "minimum standards" as expressed in 29 U.S.C. 667 Section 18(c) of the OSH Act as follows:

> (c) The Secretary shall approve the plan submitted by a State under subsection (b), or any modification thereof, if such plan in his judgement --(2) provides for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under section 6 which relate to the same issues,.… (Emphasis added)

The Supreme Court in *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992) and the Second Circuit in *Steel Inst. of N.Y. v. City of N.Y.,* No. 12-276 (2nd. Cir. 2013) declared, in summary, that municipalities cannot regulate outside the express authority provided by the OSH Act.

While all vaccines obtain federal approval from the Food & Drug Administration (FDA), the 1938 Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).  The FDA does not have authority to regulate methods to be used to provide health and safety in physical places of business and workplaces.  Neither does FDA approval of any vaccine, nor does CDC recommendation that the Covid-19 vaccine is "safe and effective," automatically make any vaccine an OSHA approved "safety method." (See Exhibit 8, P.5, ¶18) The OSH Act provides minimum standards that regulate the "environments" of public and private workplaces and public accommodations (as they touch and concern the outside of a human person). The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse.  *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

Moreover, the OSH Act does not authorize the Secretary nor employers regulated by the OSH Act to prescribe "medical treatments" to eliminate workplace hazards.  According to Dr. Montgomery and the FDA, vaccines are a medical treatment and not an environmental safety method. (See Exhibit 8, P.5, ¶18) The prescribing of the Covid-19 vaccine as a medical treatments is exclusively reserved to physicians and licensed healthcare professionals in the 50 states. It is a felony, specifically in New York for any unauthorized person to prescribe a "medical treatment." See New York Education Law §6520& §6521 and §6512   Because employers are not medical professionals, it is a felony in New York and in any other state with a similar law for an employer to "prescribe" instruct an employee to take a vaccine. The OSHA act coupled with state health practice laws together prevent the unauthorize practice of medicine in most states.

Because Congress gave exclusive control over the setting of minimum safety standards to the OSHA Secretary, the police power afforded to states and municipalities by the *Jacobson* decision was fully abrogated preventing state/municipal agencies and private employers from establishing safety measures that they "believe" are "reasonable" based on a state's, municipality and private employers' independent discretion or guess work.

### E. The OSH Act Consensus Requirement Further Abrogated State Police Power

Finally, Congress' intent to overturn *Jacobson* is further manifested by the fact that 29 U.S.C. §655 Section 6(a) & (b)(1)&(5) of the OSH Act requires the OSHA Secretary (when promulgating or modifying standards) to seek consensus on standards with other national organizations including specifically the Secretary of HHS as well as state or political subdivisions, which must be "based upon research, demonstrations, experiments," as stated below:

> <u>Secretary shall, ……….by rule promulgate as an occupational safety or health standard any national consensus standard…</u>… upon the basis of information submitted to him ……by an interested person, a representative of any organization of employers or employees, a nationally recognized standards-producing organization, the Secretary of Health and Human Services, the National Institute for Occupational Safety and Health, or a State or political subdivision……. Section 6(a) &(b)1

> Development of standards under this <u>subsection shall be based upon research, demonstrations, experiments, and such other information as may be appropriate</u>. In addition to the attainment of the highest degree of health and safety protection for the employee… Section 6(b)(5)

The articulated goal of the consensus requirement should be interpreted as an express rejection of the holding in *Jacobson* that scientific proof or evidence is not needed to enforce compulsory vaccines as a public health and safety method – as was stated in Jacobson below:

> "The <u>common belief</u>, however, is that it has a decided tendency to prevent the spread of this fearful disease and to render it less dangerous to those who contract it. While not accepted by all, it is accepted by the mass of the people, as well as by most members of the medical profession. It has been general in our State and in most civilized nations for generations. It is generally accepted in theory and generally applied in practice, both by the voluntary action of the people and in obedience to the command of law. Nearly every

17

State of the Union has statutes to encourage, or directly or indirectly to require, vaccination, and this is true of most nations of Europe. **A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts. The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone**. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive, for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. *Jacobson* at 34-35. (Emphasis added)

Congress' enactment of the consensus requirement language in the OSH Act under 29 U.S.C. §655 Section 6(a) & (b)(1) in the OSH Act is direct evidence that Congress' intended to establish safety standards on more than "common beliefs," but upon the recommendations of a consensus of leaders in the environmental and public health industries and on "available research, demonstrations, experiments…… to assure "the greatest protection of the safety or health of the affected employees." See 29 U.S.C. §655 Section 6(a) & (b)(1) (Emphasis added)  At that time, the *Jacobson* Court favored the "common beliefs" of the masses over the "beliefs" of those like Mr. Jacobson who did "not believe" in the use of vaccines as a method to manage the smallpox disease, which the OSH Act expressly protects.

The *Jacobson* Court gave deference to the "police power" of the states, in the absence of Congressional action, despite the fact that there was no evidence to support the state of Massachusetts "common beliefs" about vaccines. The OSH Act consensus requirement expressly eliminated the power of courts and governments to enforce "arbitrary belief systems" about the effectiveness of vaccines to prevent transmission of communicable diseases while protecting the rights of citizen to believe and choose their own "health practices," including the rights of citizens like Plaintiff Amoura Bryan[4] who puts her belief and faith in Biblical Plant-Based Lifestyle Medicine instead of drugs.

---

[4] Ms. Bryan is not included in this motion to vacate but is referenced because she was originally part of the proposed class.

Since its inception, the OSHA Secretary through the consensus process has never approved vaccines as an approved "environmental safety method." Vaccines are approved by the FDA for voluntary personal ingestion but are incapable of meeting the OSHA safety method standards, as discussed below. The decision in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 279 (1990) read in conjunction with the OSH Act standards and mandates establishes that each person has the fundamental right for religious or non-religious reasons to refuse FDA approved or emergency authorized vaccine medical treatments and has the right to practice whatever medical treatment each person chooses so long as the religious or non-religious medical practice has not been declared a crime by a state or federal government under its 10Th Amendment consistent with *Jacobson* framework.

In this current case involving the City of New York Covid-19 vaccine mandates, the City has enforced a vaccine that does not meet the OSHA minimum methods standards for airborne hazards and the City enforcement does not respect the expressed preemption clause in the OSH Act at 29 USC §667 Sec. 18, that bans unauthorized state workplace safety laws and violates the OSH Act ban on employer termination of employees for refusing an illegal safety method contained in 29 USC §669 Sec. 20(a)(5) discussed more fully later.

The City and private employers have arrogantly enforced an illegal safety method simply because the City and private employers "believe" they have "authority" to enforce whatever safety method they "believe" to be in the best interest of their employees, which is simply not the case. The City represented its "common belief" that it has power to regulate without accountability in its motion to the New York Supreme Court in the case *Garvey v. City of New York*, NY Slip Op 22335 (NY Supreme Court, Richmond 2022), as follows:

> "The City, as a government employer, has a duty to maintain a safe workplace. See generally N.Y. Labor Law §27-a. <u>The obligation of how best to do so is within the discretion of the employer.</u> See New York State Inspection Sec. & law Enforcement Emples. Dist. Council, 82 v. Cuomo, 64 N.Y. 2d 233, 237-40 (1984)."

19

The City does not have "discretion" to create workplace safety laws when all 50 states have already agreed that OSHA in consensus with the states would set standards that are effective for the protection of all citizens. This irrational belief by the City can only be corrected by an express declaration by the Courts that Jacobson has been overruled. Otherwise, states and private employers will continue to take advantage of the fact that no court has expressly overruled *Jacobson* in a written opinion, despite the legislative history and law that clearly establishes that *Jacobson* was overruled over 80 years ago.  All of this information has been presented to Judge Komitee and he has refused for 2 years to provide Plaintiffs with a hearing for the parties to discuss the law policy under pending Plaintiffs claims to arrive at a fair and appropriate solution of Plaintiffs claims.   Now that Judge Komitee's disqualification has become apparent, this motion to vacate is necessary to ensure Plaintiffs truly secure a fair and impartial ultimate decision even on appeal.


III.    STANDARD OF REVIEW

   A. Judicial Disqualification

Federal Rule of Civil Procedure 60(b)(6) permits the court to vacate a judgment or final order on the grounds that [a judge] was disqualified under § 455(a) at the time the judge heard the action and entered judgment…." *Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 851 (1987). Rule 60(b)(6) provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." See *Klaprott v. United States*, 335 U.S. 601, 614-615, (1949)[5]

---

[5] FRCP Rule 60(b)(6) states that on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (b)(6) any other reason that justifies relief.

The Supreme Court in *Liljerg* specifically held that "in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Id. at 864 Vacatur is necessary when the aim is "restoring the public's confidence in the courts and protecting litigants' access to fair, efficient, and unbiased adjudication." *ExxonMobil Oil Corp. v. TIG Ins*. Co., 44 F.4th 163 (2nd Cir. 2022)    Also, when the appearance of partiality is "convincingly established and …. the motion to vacate was filed as promptly as possible, the appropriate remedy [is] to vacate…..  See *Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 852 (1987)

In this case, however, Judge Komitee was disqualified under §455(a) and §455(b) (1&4) which are reviewed under similar standards except that Section 455(b) operates differently, requiring "actual knowledge  .  .  .  regarding disqualifying circumstances and provid[ing] a bright line as to disqualification based on a known financial interest in the subject matter in controversy or any other interest that could be substantially affected by the outcome of the proceeding. See *Chase Manhattan Bank  v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).

Furthermore, the U.S. Supreme Court made clear in *Liljeberg v. Health Servs. Acquisition Cor*p., 486 U.S.  847, 871 (1988) that "Congress intended the provisions of §455(b) to remove any doubt about recusal in cases where "a judge's interest  is  <u>too closely connected</u>  <u>with  the  litigation</u> <u>to  allow his participation</u>," as was found by the Second Circuit in the *Chase* case. (Emphasis added)

### B.  Breach of Judicial Canon to Investigate Fraud on the Court

Alternatively, Rule 60(b)(3) and Rule 60(b)(6) permits this Court to set-aside a final order based on clear and convincing evidence of "misrepresentation, fraud," which includes false statements of law made to the tribunal by a lawyer in violation of the New York Rules of

Professional Conduct Rule 3.3.  It is well settled law that the "making of a false statement of law or fact is …. reprehensible" and should be sanctioned, or in this case the September 25, 2024 Order should be vacated by this Court. See *Collie v. Kendall, Civ.* 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435, at 8-10 (N.D. Tex. July 6, 1999)   The New York Rules of Professional Conduct further states that "legal argument <u>based on a knowingly false representation of law constitutes dishonesty toward the tribunal</u>. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it." Rule 3.3 - Page 142[6]   The "concept of fraud on the court embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases'" *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (quoting *Kupferman v. Consol. Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2d Cir. 1972)) "Fraud upon the court as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." Hadges, 48 F.3d at 1325 See also *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988).

The First Circuit held in *U.S. v. Cooper*, 872 F.2d 1, 3 (1st Cir. 1988) that:

**There is no right to advocate untruth**…..

The Sixth Circuit held in *Van Hoven v. Buckles & Buckles, P. L.C.,* 947 F.3d 889 (6th Cir. 2020) that a misrepresentation of the law is established when "**the legal contention was objectively baseless at the time it was made, making it "legally indefensible," or "groundless in law**," *Brubaker v. City of Richmond* , 943 F.2d 1363, 1385 (4th Cir. 1991).

---

[6] New State Bar NY Rules of Professional Conduct  - https://www.nycourts.gov/ad3/AGC/Forms/Rules/Rules%20of%20Professional%20Conduct%2022NYCRR%20Part%201200.pdf

Finally, judges have a duty pursuant to Judicial Canon 3B6 of the Code of Conduct for the United States Judges to "initiate appropriate action when a judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a lawyer." See *Cobell v. Norton*, 212 F.R.D. 14, 23 (D.D.C. 2002)  "In the face of such misconduct, it would be an act of negligence for this Court to stand idly by."  Id. at 24

## C.  Judicial Bias Caused Clear Error of Law & Fraud on the Court

Rule 60(b)(6) also allows courts to vacate a final order when there is clear error of law, which results in a clear injustice that has no other remedy than vacatur.  Denial of a vacatur under Rule 60(b) is reviewed for an abuse of discretion such "discretion is abused when (1) its decision rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within the range of permissible decisions." See also *ExxonMobil Oil Corp. v. TIG Ins. Co*., 44 F.4th 163 (2nd Cir. 2022)  Because of Judge Komitee's disqualifying bias and direct interest in the outcome of this case financially, none of his rulings on Plaintiffs claims cannot be found within the range of permissible decisions and must be vacated.

## D.  New Evidence

Finally, Rule 60(b)(2) also allows a court to relieve a party from a final judgment, order, or proceeding due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). To prevail on a Rule 60(b)(2) motion, a movant must show that:  (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant [was] justifiably ignorant of them despite due diligence, (3) the evidence [is] admissible and of such importance that it probably would have changed the outcome, and (4) the evidence [is] not . . .

merely cumulative or impeaching.  See *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)  *Bruzzese v. Garland*, 21-1448 (2nd Cir. May 26, 2022)

## IV.    ARGUMENT

Filed contemporaneously with this Motion to Vacate is Plaintiffs' Motion to Recuse Judge Komitte pursuant to 28 U.S. Code §455(a) and §455(b)(4), which by this reference is hereby incorporated as if all facts, law and arguments are made herein and filed at ECF #106. In summary, Plaintiffs have requested that Judge Komitte be recused from hearing this Motion to Vacate due to his prior disqualifications that should have been disclosed immediately on the day Judge Komitee was assigned to this case two years ago. Furthermore, Plaintiffs also incorporate their prior Rule 11 Sanction Motions at ECF #64 & #70 and Plaintiff's Rule 60(b)(3) Fraud on the Court Motions at ECF#74 + #79, which motions are also hereby attached incorporated herein by this reference. Rather than restate the content of those motions, Plaintiffs request that those motions are read prior to reading this motion for the sake of keeping this motion on focused on the facts that permit a vacatur of the September 25, 2024 dismissal order. Therefore, this motion will focus on the key evidence that demonstrate by clear and convincing evidence that the September 25, 2024 Order dismissing all of Plaintiffs claims must be vacated under FRCP Rule 60(b)(3)(6)&(2).

### A.  Disqualification Alone Is Grounds for Vacatur

Plaintiffs Motion to Recuse Judge Komitee states simply that there is no question that Judge Komitee made a conscious decision to hide his extrajudicial "substantial legal activity" as general counsel for Viking Investment Group who managed the joint investment of $500 Million into the Moderna Technology manufacturer of the mRNA vaccines sold to the U.S. and mandated by the City along with other vaccines for all City workers to take to keep their jobs. To date, Judge

Komitee has not disclosed to Plaintiff his prior extrajudicial involvement in the commercialization and financing of the very Modern mRNA vaccine that Plaintiffs have refused to take along with other vaccine and lost their jobs over.

Also, Judge Komitees failure to submit his Federal Financial Reports for two year after he was commissioned to the court and along with his failure to expressly disclose in his Financial Reports his specific ownership interest in Moderna vaccines at a time when the vaccine mandates had just been initiated is evidence that Judge Komitee failures were sinister and calculated so that he could cover his prejudice and bias in favor of the Moderna vaccine mandate to his own benefit.

Because the U.S. purchased in 2021 over 300 Million doses of the Modern mRNA vaccine and around 15 Million New York residents and employees took the Moderna vaccine, it was obvious that Judge Komitee had a direct stake in the outcome of Plaintiffs case. Because Plaintiffs sought a declaration that no U.S. Citizen can be mandated contrary to their religious beliefs to take any vaccine, including the Moderna vaccine, medical treatment or examination pursuant to the OSH Act at 29 U.S.C. §660 Section 20(a)(5), Judge Komitte had a special interest in refusing that declaration because it would result in the decline in sales of the Modern mRNA to the U.S. Judge Komittee's September 25, 2024 dismissal of Plaintiffs case directly benefits him because private and public sector employers can continue to mandate the Moderna or any other vaccine as a condition of employment, which was never the case before NYC's Moderna and other vaccine Mandate came into existence in 2021. Moderna like all the other vaccine manufacturers has made billions of dollars from the City's Mandates and Judge Komitee was a direct financial beneficiary through his Viking Equities.

These egregious disclosure failures alone is a basis for the vacatur of Judge Komitte's dismissal of Plaintiffs claims. His dismissal was fruit from a poisonous tree that cannot be corrected by anything other than vacatur.

25

**B.  Failure to Investigate Fraud On The Court**

Finally, Judge Komittee's prejudice in favor of the City's Moderna vaccine Mandates was specifically manifested by his conscious refusal to investigate the City's legal fraud on the court outlined in Plaintiffs' Rule 11 and Rule 60(b)(3) motions, despite Plaintiffs having had provided Judge Komitee with over 200 cases to show that the City lied to the Court about Plaintiffs not having a private right of action under OHSA. The case law is clear, there is no right to lie to the Court, particularly to make false legal contentions unsupported by any case law.

The Court had a duty pursuant to Judicial Canon 3B6 of the Code of Conduct for the United States Judges to "initiate appropriate action when a judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a lawyer." See *Cobell v. Norton,* 212 F.R.D. 14, 23 (D.D.C. 2002)  "In the face of such misconduct, it would be an act of negligence for this Court to stand idly by."  Id. at 24

 Judge Komitee's deliberate dereliction of his judicial duty to take action to at minimum hold a hearing to publicly and on the record interrogate the City's Lawyers as to the basis of their legal claim that Plaintiffs did not have a private right of action pursuant to the OSH Act at 29 USC §669 Sec. 11(c) (1) & (2) and to discuss and evaluate some of the over 200 cases provided by Plaintiffs that support their claim that Sect.11(c) does in fact provide a private right of action violates Judicial Canon 3(a)(1) & (4) that admonishes judges to provide the right for litigants to be heard to avoid the appearance of impropriety."  Judicial Canon 3A(4) also states that "[a] judge should accord to every person who has a legal interest in a proceeding….. the full right to be heard…"  Judge Komitee's refusal to hear the evidence supporting Plaintiffs fraud on the Court claim is evidence of Judge Komitee's bias and inability to failure adjudicate Plaintiffs claims. Hind sight, the fact that no hearings were held in Plaintiffs case by Judge Komitee is substantial evidence

that Judge Komitee knew himself that he was disqualified to hear any of Plaintiffs case, which makes his two year cover up even more sinister.

If Judge Komitee's ruling is allowed to remain, there will be a gross miscarriage of justice in the denial of Plaintiffs' fundamental First Amendment Free Exercise and Substantive Due Process rights protected by the federal OSH Act, Section 1983, and Title VII  and a waste of judicial resources will occur because Plaintiffs will appeal and make these same claims and possibly have the case remanded back to this court, which Plaintiffs seek to avoid.

Moreover, millions of private sector employers both big and small will continue to indiscriminately mandate employees to be vaccinated when there is no pandemic – as many do now – demanding proof of vaccination as a "condition of employment" which is strictly banded by the OSHA Act Section 20(a)(5).  It is well established law articulated by the U.S. Supreme Court in *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992) and supported by the Second Circuit in *Steel Inst. of N.Y. v. City of N.Y.*, No. 12-276 (2nd. Cir. 2013) that municipalities cannot regulate outside the express authority provided by the OSH Act and neither can employers enforce safety requirements as "pre-conditions of employment."

Therefore, the September 25, 2024 Order must not stand due to such judicial bias.

### C.  Judicial Bias Caused Clear Errors of Law

Judge Komitee's prejudice for his own financial greed was so great that he also made many clear errors of law that cannot be found within the range of permissible decisions and warrant vacatur of the September 25, 2024 Order pursuant to Rule 60(b)(6) because justice will not be served. See *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2nd Cir. 2022)  The clear errors of law made by Judge Komitee are summarized here and detailed below as follows:

1) Error for refusing to  accept as true "all inferences from Plaintiffs complaint as is the law and failure to admit and consider Plaintiffs expert affidavits and Plaintiffs' evidentiary

affidavits on a motion to dismiss under FRCP Rule 10(a); See Affidavits at ECF # 88-(23-34 & ECF #88-36 and ECF#88-8)

2) Error in denying Plaintiffs OSHA private right of action under 29 U.S.C. §660 Sec. 11(c)(1) & (2) and OSHA preemption claim under 29 USC 667 Sec. 18(a);

3) Error denying Plaintiffs 42 U.S.C. §1983 private right of action for the City's violation of Plaintiff's Constitutional First Amendment Free Exercise right to refuse any vaccine which is further protected by the federal law under the OSH Act at 29 USC §660 Sec. 11(c)(1) & (2). The U.S. Supreme Court made clear in their most recent June 2023 decision in the case *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S.Ct. 1444, 1450 (2023) that §1983 provides an expressed cause of action to any person deprived of any right secured by the Constitution and "laws" "that unambiguously confer federal individual rights…."

## 4.  EXPERT & PLAINTIFFS' AFFIDAVIT EVIDENCE REJECTED DUE TO JUDICIAL BIAS

It is axiomatic, that when ruling on a motion to dismiss, a court is to accept all well-pleaded, factual allegations in the complaint as true and drawing all inferences in favor of the plaintiff. See, e.g., *Bell Atl. Corp. v. Twombly*,550 U.S. 544, 555—56 (2007). Rather than follow this simple and clear rule of law, Judge Komitee nephariously refused to "draw all inferences" from Plaintiffs Complaint, which included attached affidavits and exhibits, in Plaintiffs favor so that their valid First Amendment Free Exercise claims could survive the City's motion to dismiss. Instead Judge Komitee's reveals his deep bias in favor of the City's Moderna and all vaccine Mandate by falsely claiming on Page 8 of his Order that Plaintiffs did not make "facially plausible claims that would allow the court to draw reasonable inferences that the defendant was liable for misconduct" and that "plaintiffs have pled virtually nothing about the beliefs at issue…" See Order ECF #99, Page 14

Yet, Judge Komitee acknowledged on Page 4 of his Order that the complaint "invokes the biblical practice of plant-based lifestyle medicine and other unspecified religious….and philosophical beliefs as the root of Plaintiffs objection to receiving the Covid-19 vaccine."  This statement is actually a clear admission by Judge Komitee that Plaintiffs Complaint on its face did in fact provide evidence of a facially plausible First Amendment Free Exercise of "religion" claim that Judge Komitee could draw reasonable inferences that the City could have violated Plaintiffs First Amendment Free Exercise rights.

If there was any doubt about the "plausibility" of Plaintiffs the claims, which is not conceded, Judge Komitee could have considered the 12 Plaintiff affidavits, and two expert affidavits attached to the Complaint that provided various letters from Plaintiffs that detailed their religious beliefs. Instead, Judge Komitee cover's up his bias in favor of the City's Maderna and all vaccine Mandates and misquotes the Second Circuits holding in *Smith v. Hogan*, 794 F. 3d. 249, (2d. Cir. 2015) for the proposition that FRCP Rule 10(a) does not require him to consider Plaintiffs affidavits in a review of a motion to dismiss because Plaintiffs affidavits are not "written instruments" pursuant to FRCP Rule 10(a) that should be considered to be part of the Plaintiffs Complaint.

This conclusion ignores the rest of the *Smith* holding that provides a bright line rule[7] that requires courts to only exclude affidavits that: 1) do considerable damage to Rule 8(a)'s notice requirement of a short and plain statement of a claim for which relief could be granted; and 2) complicate and severely compromise the ability of defendants and the courts to test the legal viability of complaints at the pleading stage, a right that is integral to federal procedure. The *Smith* court specifically held that "a court may consider an "integral document" where the complaint

---

[7] *Smith v. Hogan* at 255 (2015)

"relies heavily upon its terms and effect….. a document that evidences legal rights or duties or sets forth the legal basis for his claims." *Smith* at 254-255

The affidavits attached to Plaintiffs Complaint in no way did violence the FRCP Rule 8 notice requirements and were clearly "integral" to all Plaintiffs complaint because the facts regarding each Plaintiffs religious practice of refusing vaccines was contained in various letter exhibits attached to the affidavits rejected by Judge Komitee refused to consider.

The Second Circuit Court of Appeals has held that on a motion to dismiss a court's task "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Also, the Second Circuit stated that it has "repeatedly warned that the pleading requirements in discrimination cases are very lenient, even de minimis." See *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)

Therefore, Judge Komitees refusal to accept all well-pleaded factual allegations in Plaintiffs complaint as true and refusal to draw all inferences in Plaintiffs favor, while turning a blind eye to the affidavits attached to Plaintiffs Complaint that provide further evidence of Plaintiffs claims is supported by well-established law.

## 2. DISMISSAL OF OSHA CLAIMS DUE TO FINANCIAL SELF INTEREST

The fact that Judge Komitee still owns a big stake in Viking which owns a substantial equity in Modern is the real reason Plaintiffs OSHA claims were never going to be fairly evaluated by Judge Komitee. If Judge Komitee rules that all use employees have the right to refuse the Moderna vaccine, sales would drop and the value of his equity investment would drop. Therefore, Judge Komitees siding with the City's fraudulent legal contentions that Plaintiffs have no OSH

Act claims at all (preemption nor private right of action) was in his self-interest and must be vacated.

### 2(a)  OSHA PROVIDES PROTECTIONS OF CONSTITUTIONAL RIGHTS

The U.S. Supreme Court held in *Armstrong v. Exceptional Child Center, Inc*., 575 U.S. 320, 332 (2015) "that a private right of action under federal law is not created by mere implication but must be "unambiguously conferred." (citing *Gonzaga Univ. v Doe*, 536 U.S. 273, 283 (2002).  The task of the court "is limited solely to determining whether Congress intended to create the private right of action" which "must  begin with the language of the statute itself…" *Touche Ross Co v. Redington*, 442 U.S. 560, 568, (1979).

"Absent a clearly expressed legislative intention to the contrary, statutory language must ordinarily be regarded as conclusive." *Bread Political Action Committee v. FEC*, 455 U.S. 577, 580 (1982) (citations omitted). "In approaching a statute, moreover, a judge must presume that Congress chose its words with as much care as the judge himself brings to bear on the task of statutory interpretation..." *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 635(1982)  "[T]he legislative purpose is expressed by the ordinary meaning of the words used." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)  The U.S. Supreme Court specifically held in *Robinson v. Shell Oil Co*., 519 U.S. 337, 341, (1997) the following:

"statutory interpretation focuses on the language itself, the specific context in which that language is used, and the **broader context of the statute as a whole**." (Emphasis added)

### 2(b)  OSHA 29 U.S.C. §669 SECTION 20(A)(5) PROTECTS EMPLOYEES RIGHT UNDER THE FIRST AMENDMENT FREE EXERCISE OF RELIGION THAT WAS WRONGLY DISMISSED

Before Congress can confer a private right of action for the deprivation of an activity or existing fundamental right, Congress has to first legalize the activity if it was previously a crime. Until the OSH Act was enacted in 1970, the right to refuse vaccines based on the

*Jacobson* federal common law was still a crime. Congresses intent to legalize the right to refuse vaccination and to protect all employees First Amendment Free Exercise right to refuse vaccines on religious grounds is unambiguously expressed in OSH Act at 29 U.S.C. §20(a)(5), which states as follows:

> **Nothing in this or any other provision of this Act shall be deemed to** authorize or **require** medical examination**, immunization**, or treatment **for those who object thereto on religious grounds**, except where such is necessary for the protection of the health or safety of others. See §20(a)(5)

Because Congress never codified the *Jacobson* federal common law into statutory federal criminal law, Congress did not need to repeal or expressly legalize an individual's right to refuse government mandated vaccines provided through the U.S. Health & Human Services. Consequently, the protective language in Sec. 20(a)(5) that provides all employees the right to "object" or refuse any immunization, medical treatment or medical testing based on "religious grounds" (hereinafter the "Mandate Ban") is strong evidence of Congress' intent to legalize and protect the right to refuse vaccines, medical treatment and medical testing as a First Amendment Free Exercise of religion. Essentially, the OSH Act did codify the most important aspect of the *Jacobson* decision, which is that is "the inherent right of every freeman to care for his own body and health in such way as to him seems best," but of course only subject to reasonable criminal laws. *Jacobson* at 26

Moreover, Sec. 20(a)(5) is a "ban" against employer mandating employees to submit to immunization/vaccines, medical treatment and medical tests based on religious ground.  provides an "automatic" exemption (hereinafter the "Mandate Ban"). The OSH Act General Duty Clause 29 USC §654 only mandates employees to "comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

Also, nothing in the language allows employers to place pre-conditions on an employees exercise of their right to refuse employer mandated vaccines or medical treatments, like requirements that the employee explain their religious beliefs, or to disclose what faith community they belong to and neither does the provision require employees to provide a letter from their clergy to "prove" they have a "sincerely" held belief. The "sincerely held belief requirement" in most Title VII cases is not applicable in the context of the OSH Acts protection of the free exercise right to refuse vaccines. While the EEOC is an agency with the U.S. Department of Labor as is OSHA, neither the EEOC Secretary nor the OSHA Secretary have authority to place any pre-conditions on employees OSHA rights to refuse vaccines, medical treatments or medical testing based on religious grounds. The Mandate Ban provisions does not contain any preconditions that an employee must meet to exercise their right.

Therefore, Section 20(a)(5) should <u>not</u> be interpreted as a "reasonable accommodation" of the religious practice of refusing vaccines; rather, Section 20(a)(5) is a Congressional statutory ban against employers exercising their power to force employees to submit to any vaccine, medical treatment or test as a condition of employer.  The Supreme Court already has held that it was "impermissible even for the courts to examine the truth or falsity of religious beliefs." See *United States v. Ballard*, 322 U.S. 78 (1944), which means that employers do not have the power courts are unable to exercise when an employee exercises their rights under Section. 20(a)(5).

Lastly, since vaccines are not necessary and are incapable of preventing exposure to the Covid-19 virus in the atmosphere, there is no need for any employer to have any discretion over the Section 20(a)(5) objection provision.   Although the Mandate Ban does contain a limit on an employee's right to object as highlighted in the phrase of Section 20(a)(5) stated below:

"except where <u>such is necessary</u> for the protection of the health or safety of others."

That "necessary" clause, however, can only be interpreted in two ways that is consistent with the OSH Act's existing infectious disease regulatory standards. First, as previously discussed, vaccines can never be "necessary" to protect the health or safety of others because vaccines cannot remove an infectious virus from the atmosphere or to "shield an employee or another person from exposure" to an infectious virus. Essentially, the infectious/respiratory standard nullifies the necessity to enforce vaccines as a "protective method" for the safety of others. Therefore, the "necessary" exception cannot apply immunizations/vaccines.  Finally, the affidavit of Dr. Peter McCullough provides the medical evidence of why vaccines are never necessary as a "environmental safety" method. See Exhibit 6


## 2(c) JUDICIAL BIAS CAUSED THE DISMISSAL OF PLAINTIFFS PRIVATE RIGHT OF ACTION

The greatest harm by Judge Komitee's prejudice in this case was the fact that he refused to issue an injunction after Plaintiffs made two request to stop the enforcement of the City's vaccine mandates and to keep Plaintiffs in their jobs. Plaintiffs request for TRO and preliminary injunctions based on preemption was wrongly denied because Komitee believed the lie that Plaintiffs don't have a private right of action. It's simply not true as summarized above, but explained in more detail here as was in my complaint and motions.

Plenty of lower federal district courts have held that the OSH Act provides a private right of action for retaliatory discharge for exercising protected rights under the OSH Act. See *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994)  The federal district court in  *Perez v. United States Postal Service, 76 F. Supp. 3d 1168, (W.D. Wash 2015)* explained the legislative objective of Section 11(c) as follows:

> "Section 11(c) functions to safeguard employees against adverse actions taken on account of their engagement or suspected engagement in activity protected under the Act, thereby ensuring that health and safety violations will be reported." Perez v. U.S. Postal Serv., 76 F.Supp.3d 1168 (W.D. Wash. 2015)

The express private right of action contained in the OSH Act is as follows at 29 USC §660

Section 11(c):

> (1) No <u>person shall discharge or in any manner discriminate against any employee</u> because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding <u>or because of the exercise by such employee</u> on behalf of himself or others <u>of any right afforded by this Act</u>.  (Emphasis added)

> (2) Employee who believes that he has been <u>discharged or otherwise discriminated against by any person in violation of this subsection **may**</u>, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. <u>If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against</u> such person.  (Emphasis added)

Section 11(c)(2) of the OSH Act expressly provides a private right of action which states that "[a]ny employee who believes that he has been discharged… by any person in violation of this subsection <u>may</u>… file a complaint…. [and] In any such action the United States district courts <u>shall</u> have jurisdiction to order all appropriate relief including rehiring, reinstatement of the employee to his former position with back pay." This private right of action and remedies are clear on the face of Section 11(c)2) namely all "appropriate relief including rehiring or reinstatement of the employee to his former position with back pay."

The 1st Circuit in *Reich* also reviewed the legislative history of the OSH Act and found that the term "all appropriate relief" conveyed on courts the power to award compensatory and punitive damages along with rehiring, reinstatement with backpay in a cause of action analogous to an intentional tort. Id. at 1194 (quoting 29 U.S.C. § 660 Section 11(c)(2)). Id at 1190-1191. Courts have also found that appropriate relief includes ……expunging negative employment references, and posting notice. See, e.g., *Marshall v. Wallace*, 1978 WL 18639, *4 (M.D.Penn.1978).

In summary, Section 20(a)(5) should be read together with the plain language in

Sections 11(c)(1)&(2) as a "whole" wherein  an employee has the right to maintain a right of action for any deprivation of their right to refuse immunization expressly protected in Section 20(a)(5) of the Act.

Nothing in Section 11(c)(2) expressly requires an employee to first exhaust administrative remedies with the Secretary of OSHA. This fact is evident by the below highlighted phrase:

> Any employee who believes that he has been discharged ….by any person in violation of this subsection **may,….. file a complaint** with the Secretary alleging such discrimination

The single word "may" is irrefutable evidence that Congress did not intend for employees to first exhaust any administrative review process to make a claim for wrongful discharge in Federal Court.  If Congress intended otherwise, it could have used the word "shall" to preclude any action.  Furthermore, the phrase "In any such action" also supports the interpretation that a wrongly discharged employee is not required to first exhaust any administrative remedy through the OSHA Secretary, but rather the United States district courts "shall" have jurisdiction over "any action" brought.  Furthermore, the phrases "no person" in the beginning of Section 11(c)(1) and "any person" in Section 11(c)(2), also establishes Congress' intent to permit claims against "persons," including officials of municipalities or states.

Lastly, the OSH Act private right of action in subsection (c) is listed under Section 11 titled "Judicial Review" but is separate from the enforcement powers granted to the OSHA Secretary in Sections 9 and 10 of the OSH Act. Congress through OSH Act, and not through rules or regulations, created the private right of action to protect the fundamental Free Exercise Right of employees to refuse vaccines in Section 20(a)(5).

This private right of action was not created by the OSHA Secretary, and the Secretary cannot promulgate regulations or rules to limit this express private right action absent a Congressional amendment or repeal. Section 11(c) is a statutory provision that protects the

fundamental rights of employees as the *Boerne* court held Congress had power to do. *Boerne* at 508.

As previously discussed, the OSH Act overruled the federal common law in *Jacobson* decision by abrogating state police power to regulate in the area of health and safety specifically in places of business and workplaces affecting interstate commerce by providing exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" to meet the minimum standards. See 29 U.S.C. 651 Section 2(b)(5).

However, nowhere in the OSH Act has Congress given the OSHA Secretary authority to go into federal court to seek declaratory and injunctive relief to stop a state or municipality, like the City, from enforcing state or municipal created laws, like the City's Mandate, that violate the OSH Act preemption clause for creating new safety regulations that fall below the OSHA standards. Congress only gave the OSHA Secretary authority under 29 USC §658 Sec. 9 of the OSH Act to "inspect," "investigate," and "issue with reasonable promptness citations" against employers for violations of existing OSHA standards, rules or regulations promulgated under Sec. 6 of the OSH Act by the Secretary and his or her predecessors.

Essentially, Sec. 11(c)(1) is an anti-discrimination and whistleblower provision and Sec.11(c)(2) is the provision that expressly provides a remedy to employees when they have exercised their rights and have suffered adverse retaliation by their employer either specifically when the employee has reported employer violations of OSHA regulations. The OSH Act regulation at 29 C.F.R. §1977 et al. does provide an extensive "regulatory" scheme for the Secretary to investigate and enforce employee whistle blower claims in specifically arising from employer violations of the standards, rules or regulations and employee reporting of such claims. See Exhibit 9   That scheme does not address in any way enforcement of employee non-regulatory

related – specifically there is no redress spelled out for violations of the Ban on medical mandates in Sec. 20(a)(5).

The obvious reason that violations of the Ban on vaccine Mandates are not covered in the regulations and Sec. 11(c)(2) and employees are provided an option ("may") to file with the Secretary is because the Secretary's enumerated powers under 29 USC §659 Sec. 9, limits the Secretaries enforcement powers to only enforcing violations of regulations and standards.  29 USC §669 Sec. 20(a)(5) is not a rule, regulation or standard promulgated by the Secretary pursuant to Sect 6 for which the Secretary has authority to issue a citation in the event of a violation.  29 USC §669 Sec. 20(a)(5) of the OSH Act was not promulgated by the OSHA secretary.  Sec. 20(a)(5) is statutory provision enacted by Congress for the purpose of protecting the First Amendment Free Exercise of religious practices of employees' object to immunization/vaccines/ medical examinations and treatment based on their religion.

Finally, the Sec. 20(a)(5) does not create a new constitutional right already covered by the First Amendment Free Exercise clause. Rather Sec. 20(a)(5) enumerates specific types of religious practices, namely objections to immunization, medical exams and treatment on religious grounds that are already protected by the First Amendment Free Exercise clause for which the OSH Act provides an additional lawyer of protection by expressly banning employer discharge or discrimination of employees who exercise those specific First Amendment Free Exercise religious practices. The phrase "on religious grounds" makes clear that the basis for any person's objection must be based on some religious belief or belief system provided under First Amendment.

Furthermore, 1st Circuit in *Reich v. Cambridgeport Air Systems*, Inc., 26 F.3d 1187 (1st Cir. 1994) also reviewed the legislative history of the OSH Act and found that the term "all appropriate relief" conveyed on courts the power to award compensatory and punitive damages along rehiring, reinstatement with backpay in a cause of action analogous to an intentional tort. Id.

at 1194 (quoting 29 U.S.C. § 660 Section 11(c)(2)). Id at 1190-1191. Courts have also found that appropriate relief includes reinstatement, expunging negative employment references, and posting notice. See, e.g., *Marshall v. Wallace*, 1978 WL 18639, *4 (M.D.Penn.1978).

Therefore, Judge Komitee's reliance on the holdings in the cases *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F. 2d, 918, 926 (2nd Cir. 1983) and *Quirk v. Difiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022) to find that the OSH Act did not provide Plaintiffs a private right of action was clear error, when the statute expressly contains a right of action. While the Second Circuit in *Donovan* held in a single sentence without much explanation that "[u]nder OSHA, employees do not have a private right of action," the plaintiffs in the *Donovan* and *Quirk* cases specifically sought to enforce employer compliance with specific OSHA regulations and were not seeking damages and injunctive relief for an employer's violation of the employees statutory rights contained in the OSH Act under OSHA 29 U.S.C. §669 Section 20(a)(5) which protections were given by Congress when the OSH Act was enacted. Those cases involved violations of regulations, which the OSH Act clearly states are controlled by the Secretary under administrative investigation procedures in 29 U.S.C. §659 Section 9.

The *Donovan* and *Quirk* holdings, along with all the similar holdings by other lower federal courts in the 200 cases provided by Plaintiffs to Judge Komittee, cannot apply to retaliation claims available under Section 11(c)(2) for violations of  under OSHA 29 U.S.C. §669 Section 20(a)(5) because the Plaintiffs injuries in this case are not "caused" by an employer's breach of a safety regulation.

Last but not least, if Judge Komitee and the City's legal contention is correct that the Secretary has all power to protect the rights of employees, then why hasn't the OSHA Secretary filed national lawsuits and injunctions against all the big corporations, public employers and

particularly healthcare facilities for their termination of millions of employees who refused to take the Moderna and other Covid-19 vaccines? Why, because the OSHA Secretary has no power.

Therefore, Judges Komitee ruling is completely wrong and has no basis in the plain reading of the statute.

### 2(d)  CITY'S MANDATES VIOLATE OSH ACT EXPRESSED PREEMPTION CLAUSE

Finally, Judge Komitee's self interest also caused him to completely ignore the Plaintiffs claim that the OSHA Act preempts the City's vaccine mandates. "Congress derives its power to preempt state law under the Supremacy Clause in VI of the United States Constitution. See *Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1480 (2018)*. "Conflict preemption, occurs ….." where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) see also *Arizona v. United States*, 132 S. Ct. 2492, (2012) Conflict preemption requires that the state law materially impede or thwart the federal law or policy or alternatively impose a duty that is inconsistent—i.e., in conflict—with federal law. See *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 493 (2013).

As will be discussed in detail below, the City's Vaccine Orders conflict with the entire scheme of the federal OSH Act, primarily because it is impossible for the Covid-19 vaccine or any vaccine as a "method" to meet the OSH Act Respiratory Standard methods, Ventilation standard methos, Personal Protective  Equipment standard methods and air purification standard method – which methods are aimed at "removing recognized" airborne hazards from the workplace. (See Exhibit 5 – Collectively the "Respiratory Standards & regs) Consequently, the City's Vaccine Orders thwart and expressly conflicts with Congress' policy of only permitting the use of "authorized" safety methods to be used in workplaces and applicable public places for the purpose of preventing exposure to airborne hazards like the Covid-19 virus. Failure to meet

the "minimum" safety standard is a clear conflict that cannot be overcome.

Additionally, the Vaccine Orders have also impermissibly served as a substitute for compliance with the existing Respiratory Standard requirements that requires the use of respirators and/or ventilation equipment specifically air purification systems proven to remove airborne hazards from the workplace, including virus hazards like the Covid-19 virus. See *ConocoPhillips,* 520 F.Supp.2d 1282, 1330 (N.D. Okla. 2007)

### 2(e)  OSHA'S AUTHORIZED RESPIRATORY METHODS STANDARD PREEMPTS ALL UNAUTHORIZED METHODS AND RENDERS VACCINES UNNECESSARY

An occupational safety and health standard is one that "requires conditions, or the adoption or use of one or more practices, means, **methods**, operations, or processes, reasonably **necessary** or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. §652 Section 3(8) (Emphasis added).  To specifically address infectious communicable diseases of any severity, including Covid-19, TB, SARS or Ebola, OSHA has only approved the specific methods in the list of Respiratory Standards, that  include OSHA's Personal Protective Equipment standard 29 CFR §1910.132, the Respiratory Protection standard 29 CFR §1910.134 which mandates employer to provide employee respirators, like the Powered Air Purifying Respirators (PAPR); and the OSHA General Duty Clause 29 U.S.C. §654 Section 5, which mandates employers to eliminate any known hazard in the workplace through engineer and administrative methods, which includes authorized ventilation and air purification regulations that can remove airborne viruses from the atmosphere. Plaintiffs' OSHA Hygeniest expert Bruce Miller (whose affidavit was rejected by Judge Komitee) explains how the standards work to provide the most effective methods to protect employees from airborne hazards and the duties of employers. See Exhibit 9

41

These approved safety methods have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic,[8] (See Appendix #11) and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Appendix #12, Page 1) Furthermore, at the beginning of the Covid-19 Pandemic, the supply of respirators was increased by the Ford Motor Company who increased manufacture of PAPRs and other safety equipment to meet the demand. (See Appendix #17)

The primary objective of the OSHA Respiratory Standards is to implement "practices, means, **methods**, operations, or processes" that, at minimum, either: 1) remove hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere based on a plain reading of the Respiratory regulation in 29 CFR 1910.132 and the OSHA General Duty Clause. (See Appendix #3 (General Duty Clause, #7 and #8) Consequently, employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See 29 USC 670 §21(d)(3), Pub.. L 105-97, §2 See *Doca v. Marina Mercante Nicaraguense, S.A*., 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

According to the CDC, the virus that causes Covid-19 is an airborne hazardous viral infection that is transmitted in airborne sprays or droplets from person to person in all environments and is an infectious disease which will always be in workplaces and public places. Therefore, to effectively provide a safe workplace during the Covid-19 pandemic, employers are mandated by the OSHA regulations to only use safety "methods" that meet the OSHA Respiratory

---

[8] In 2009 the World Health Organization declared H1N1 a global pandemic – See
https://www.youtube.com/watch?v=10Nfk0zcTAk&t=38s

regulation. See Exhibit 5

In summary, if a safety method does not meet the two objectives listed above, then the method cannot meet the OSHA minimum safety method standard.  It is obvious that it is impossible for any vaccine to remove infectious diseases from the atmosphere, and neither can a vaccine shield a person from exposure to any airborne infectious hazard. As addressed in the affidavit of Dr. Montgomery, and the FDA, vaccines are a "medical treatment" and cannot meet this minimum authorized standard and are therefore illegal. (See Exhibit 8, Page 5, ¶18) It is important to understand that the basic safety principle undergirding the OSHA standards is the duty of employers to remove "hazards" from the workplace and not "people" under the General Duty clause.

Furthermore, OSHA expert and Certified Hygienist Bruce Miller explains that the OSHA authorized respirators, specifically the Powered Air Purifying Respirators (PAPR) are 99.97% effective at shielding employees from exposure to any airborne hazard, which is the highest level of effectiveness rendering vaccines unnecessary. See Exhibit 9 Mr. Miller further explains that OSHA also mandates employers to install new ventilation/air purification systems capable of removing Covid-19 like infectious airborne hazards from the workplace atmosphere as another most effective method for meeting the OSHA respiratory standard.

Finally, the Supreme Court made clear in *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88 (1992) that "when a state law directly and substantially regulates workplace safety or health issue with respect to which a federal standard has been established, including OSHA minimum standards, then the state law or regulation is preempted" and should be declared unconstitutional void as a violation of a federal law implemented under Congress' powers authorized by the Constitution.  Id. 116

### 2.(f) <u>THE NYC VAX ORDERS ARE NOT SAVED AS LAWS OF GENERAL APPLICABILITY</u>

A state or municipal safety law could possibly be saved from preemption according to the findings in *Gade* at 109, but, only if the law: 1) is "generally applicable" issued under a state's general police power, and 2) does not conflict with OSHA standards.  Unlike the "general applicable" definition first articulated in *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U. S. 872, 873 (1990), the court in *Gade at* 107 defined laws of general applicability, in the context of "health and safety" standards governed by the OSH Act, as laws that "regulate workers simply as members of the general public…"  Examples of safety laws of general applicability are "traffic safety or fire safety," "taxi, bridges or tunnel regulations or criminal laws that "regulate the conduct of workers and nonworkers alike" or regulate workers in non-workplaces to protect the public. See also *Steel Institute of New York v. City of New York*, 716 F.3d 31,38 (2nd Cir. 2013) (held New York law regulating construction cranes outside the workplace as generally applicable to the safety of the general public.)

Based on the *Gade* definition of a workplace safety law of general applicability, the City's Vaccine Orders do not meet the definition. The Vaccine Orders expressly conflict with the Respiratory minimum standards and the Vaccine Orders only apply to City and private sector employers and do not apply to all City residents like the retired, or unemployed residents. Also, the "generally applicable" definition in the landmark case *Employment Division, Oregon v. Smith*, 494 U.S. 872 (1990) does not apply in the case of vaccine mandates because the choice to refuse to submit to a vaccine mandate is no longer a crime. The *Smith* holding was predicated based on the fact that the religious practice of smoking Peyote was a crime that "generally applied" to all persons, which the Vaccine Orders do not.

3.  **JUDICIAL BIAS DISMISSED A VALID SECTION 1983 AND CONSTITUTIONAL CLAIMS**

Finally, Judge Komitee denial of Plaintiffs Section 1983 and Constitutional claims are flat out irrational and reflects a determination by a Judge Komitte to continue to make his millions from his Moderna investment rather than to recognize the God given inalienable rights of all American citizens to choose what goes inside their body, only subject to limitations of necessary criminal laws.  Judge Komitee claim that Plaintiffs are unable to state a claim under Section 1983 because the OSH Act gives "sole responsibility" to the Secretary to protect Plaintiffs' OSHA rights which is "incompatible" with Congress's dictates" is found nowhere in the OSH Act. As carefully explained previously, the Secretary has absolutely no power to enforce monetary sanctions or seek injunctive relief against an employer for violating OSH Act expressed ban in 29 USC §669 Sec. 20(a)(5) against vaccine, medical treatment or testing mandates forced on employees.

Most importantly the U.S. Supreme Court in a very recent case held in the case *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S.Ct. 1444, 1450 (2023) that §1983 provides an expressed cause of action to any person deprived of any right secured by the Constitution and "laws" "that unambiguously confer federal individual rights…."  Specifically, the Supreme Court held:

> Section 1983 has, since the 1870s, provided an express cause of action to any person deprived (by someone acting under color of state law) of "any rights . . . secured by the Constitution and laws." The Court has long refused to read §1983's unmodified term "laws" to mean only *some* of the laws."

As outlined in detail above, the OSH Act is a federal law expressly and unambiguously protects specific constitutional First Amendment Free Exercise religious right to refuse vaccines, medical treatment and medical tests. When Plaintiffs exercised their OSHA protected religious rights, the City enforced its vaccine Mandate and deprived Plaintiffs of their jobs under "color" of the City's

health department authority that was preempted by the OSH Act preemption clause. Judge Komitee's prejudice is the sole blame for the Courts dismissal of such fundamental rights.

### D.  NEW EVIDENCE MUST BE ADMITTED TO CORRECT BIAS

For the last year, counsel for Plaintiffs have been reaching out to vaccine development and clinical expert Dr. Peter McCullough to secure his expert testimony to further support Plaintiffs claim that vaccines are not necessary because they are incapable of preventing the transmission and spread of Covid-19 nor any other airborne communicable disease. Due to Dr. McCullough's worldwide travels as an expert, Plaintiffs were only able to secure his expert testimony just one day after Judge Komitee issued his ruling. Plaintiffs had planned to file a supplement to their pending responsive motion.

 Dr. McCulloughs extensive expert affidavit provides detailed scientific information regarding the mechanics of virus transmission and infection and explains why vaccines are not necessary and are incapable of preventing transmission to make any vaccine mandate a constitutional public health safety measure. Dr. McCullough further explains why the OSH Act existing respiratory, PPE, ventilation standards that cover workplace airborne communicable diseases are critically necessary to protect workers and the general public during any pandemic from serious injury from any and all airborne communicable diseases.

Dr. Mccullough's affidavit further points out that Covid-19 like all airborne communicable diseases like Influenza, H1N1, Ebola are and have always been defined as occupational illnesses covered by the OSH Act because they are airborne hazards that enter the workplace by employees who as part of their jobs talk and while talking spray vapors of airborne pathogens like the Covid-19 virus into the workplace atmosphere exposing other employees who get infected and cause employee respiratory system injury and even death. Due to the pathology of the transmission of

46

airborne hazards in the workplace, airborne hazards including Covid-19 must be covered illnesses under the OSHA to protect employers.

Dr. McCullough further points out that while the OSH Act standard at Section 1904.5(2) contains a limitation of liability provision that protect employers from unreasonable monetary workers' compensation claims, that those liability limitations do not remove the Covid-19 virus or any other airborne communicable diseases from the OSHA definition of an occupation illness that that exempts employers from meeting its duties under the OSHA General Duty clause and respiratory standards.

Dr. McCullough finally explains that it is the OSHA General Duty Clause that mandates employers to remove all recognized workplace hazards and/or to shield employees from recognized hazards that keep American workers safe while they work. If any airborne communicable disease, including Covid-19, is not considered an "occupational illness" covered by the OSH Act that mandates all employers to remove the Covid-19 hazard or shield employees from exposure to the airborne hazard, then America would never have effective methods to slow or stop the spread of any communicable disease because the millions of employers would never have any duty to comply with the existing OSHA airborne communicable disease regulations and standards.

According to Dr. McCullough to exempt all communicable diseases, including Covid-19, from the OSH Act as a covered workplace illness would result in a major public health catastrophe that could result in millions dying from a communicable disease outbreak because no employer would ever have the duty to comply with the OSHA General Duty Clause and effective standards.

In summary, according to Dr. McCullough, the OSH Act standards and regulations that cover airborne hazards are the only necessary methods needed during any pandemic and not vaccines.

Because of Judge Komitee's serious prejudice in this case that has denied Plaintiffs their right to be heard on any of their motions, and Plaintiffs were denied the right to perform discovery in this case, then justice requires the admission of Dr. Petere McCullough's affidavit into the record to further support Plaintiffs claim that they have valid OSHA rights and claims that must be vindicated in the Courts.

## V    CONCLUSION

Judge Komitee's disqualification and failures to investigate the fraud on the Court has so affected the integrity of this Court as a whole that this motion cannot be heard by Judge Komitee and this motion must be vacated and re-assigned to a three judge panel for a ruling on this request. However, because Plaintiffs have been so traumatized by learning of Judge Komitee's deceptive prejudice and failure to disqualify over the last two years, Plaintiffs fear that there is not one judge commissioned in the entire Easter District of New York that can truly be fair in this case because the vaccine mandates has been such a controversial legal issue affecting the lives of millions, Plaintiffs requests to avoid any additional appearances of prejudice that the Chef Justice of this Cour order one of the following:

1. Provide a special certification of this case for direct interlocutory appeal to the Second Circuit Court of Appeals, since the fraud on the Court relied on in the dismissal of Plaintiffs case (the fraudulent claim that the OSH Act does not provide a private right of action for statutory rights and that Section 1983 does not provide a private right of action) is based on decisions made by the Second Circuit and included substantive Constitutional claims that demand a higher review. If the Chef Justice provides a certificate of interlocutory appeal for the Court of Appeals to hear this case consistent with the Notice of Appeal filed by Plaintiffs, Plaintiffs also request that the Chef Justice

48

ask that the Second Circuit judges to also provide to Plaintiffs affidavits making the below listed disclosures as outlined in the questions below; or

2. allow Plaintiffs to select three (3) judges to review this motion and be assigned to this case after the Chef Judge obtains sworn affidavit (that will be given to Plaintiffs for selection) from all judges commissioned to the Court who swear under penalty of perjury with yes or no answers to the following questions, from which Plaintiffs can select to the best of their ability a judge who does not have the appearance of bias against their case:

    i. Yes or No, the judge has participated as a lawyer before becoming a judge as an outside counsel or inside counsel for any pharmaceutical company that manufactures vaccines and if so, state the name of the pharmaceutical company, describe all legal activity provided for the pharmaceutical including significant transaction disclosed to the public in a press release;

    ii. Yes or No, that the judge as of the date of the affidavit does not and for 7 years prior of the date of the affidavit has not owned any type of financial investment or equity or debt interest directly or indirectly in Moderna or any vaccine manufacturer, and if the judge has owned any equity or debt interest in any vaccine manufacturer, provide the name of the vaccine manufacturer, the year(s) of ownership of the equity or debt interest, and the amount and cash value of the interest;

    iii. Yes or No, that the judge's spouse as of the date of the affidavit does not and for 7 years prior of the date of the affidavit has not owned any type of financial investment or equity or debt interest directly or indirectly in Moderna or any vaccine manufacturer, and if the judge has owned any

49

equity or debt interest in any vaccine manufacturer, provide the name of the vaccine manufacturer, the year(s) of ownership of the equity or debt interest, and the amount and cash value of the interest;

iv.    Yes or No, that the judge has advocated publicly or privately now and since the last 5 years that the Covid-19 vaccine or any vaccine should be mandated for the public to take or lose their jobs, or ability to attend universities or received government benefits;

v.    Yes or No, that the judge has advocated publicly or privately for the federal court staff to be mandated to take any Covid-19 vaccine since March 2020 until the present,

vi.    Yes or No, that the judge has spoken on any continuing legal education panel or event regarding vaccine mandates and if so name the title of the CME, provide date of the event and the CME materials;

vii.    Yes or No, the judge has participated on a Covid-19 Pandemic safety type commission for any state, non-profit, private company or government entity and if so, state the name of the commission served on, years of service and topics covered;

viii.    Yes or No, the judge has children or siblings (collectively called Family Members) that own any type of investment in any vaccine manufacturers that Family Members have owned at any time during the period Jan. 2018 until the present and if so, list the name of the vaccine manufacturers.

Plaintiffs deserve the right to insure that whatever judges are assigned to their case now or on appeal, that all judges make the appropriate disclosures so that Plaintiffs going forward can obtain unbiased adjudication of their case. Because of Judge Komitees deception in refusing to recuse

himself in the beginning Plaintiff case and the corrupt practices of the City of New York which Judge Komitee's failures to investigate the fraud on the court have cast doubt in the minds of Plaintiffs as to the ability of the entire justice system to provide a fair and unbiased ruling in this case. Therefore, Plaintiffs request that this case not be treated as a standard case, but that the above extra-precautions are taken to protect the rights of millions of Americans that Plaintiffs are fighting for.

Dated: October 25, 2024                                        Respectfully submitted,

                                                              /s/ *Jo Saint-George*
                                                              _____
                                                              Jo Saint-George, Esq.
                                                              14216 Dunwood Valley Dr
                                                              Bowie MD 20721-1246
                                                              Email: jo@woc4equaljustice.org
                                                              Counsel for Plaintiffs